No. 23-15118

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

In re: **TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION**,

MEOR ADLIN; FRANKLIN AJAYE; ANDREW BARTON; RACHEL DILLER; SCOTT FREDERICK; DAVID KUO; DICKSON LEUNG; BRENDEN G. MALOOF; DONALD WORTMAN; HARLEY ODA; ROY ONOMURA; SHINSUKE KOBAYASHI; PATRICIA LEE; NANCY KAJIYAMA; DELLA EWING CHOW; JAMES KAWAGUCHI; SHARON CHRISTIAN,           Plaintiffs - Appellees,
  v.

XANADU CORP.; DAVID GOULD,         Objectors - Appellants,
  v.

ALL NIPPON AIRWAYS,         Defendant.

On Appeal from the Orders of the United States District Court
for the North District of California, No. 3:07-cv-05634, Hon.
Charles R. Breyer, United States District Judge

**APPELLANT'S EXCERPTS OF THE RECORD
VOLUME I**

J. Allen Roth, Esq.
Law Office of J. Allen Roth
805 S. Alexandria St.
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

*Attorneys for Objector-Appellants
David Gould and Xanadu Corp.*

1-ER-001

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document relates to:<br>ALL ACTIONS | Case No. 07-cv-05634-CRB<br><br>**ORDER DENYING MOTION FOR RECONSIDERATION** |

Before the Court is a motion for reconsideration filed by Xanadu Corp. and David Gould (collectively, "Xanadu"). As explained below, the Court denies the motion.

I.   **BACKGROUND**

In August of 2022, Plaintiffs moved for a secondary distribution of the remaining settlement funds in this case. See Mot. for Secondary Distribution (dkt. 1347). Xanadu filed an objection. See Xanadu Obj. (dkt. 1353). The objection argued that Class Counsel sought too much money in fees,[1] that Class Counsel should have notified class members about their checks by email, that Class Counsel should have posted notice about their request for fees on the Chinese and Japanese versions of the litigation website, and that unclaimed funds should escheat to the state. Id. at 1–3, 5. The objection next complained that the claims administrator, Rust Consulting, had already approved Xanadu's claim and that "decades after the ticket purchases occurred, years after the claims were submitted,

---

[1] It incorrectly accused Class Counsel of seeking 55% of the remaining funds. Id. at 10. In fact, Class Counsel sought 18%. See Order Granting Plaintiffs' Motion for Secondary Distribution two days later. See Order (dkt. 1378) at 7.

1-ER-002

and over one year since the issuance of Xanadu's <u>Notice of Claim Final Determination</u>, Class Counsel wants to completely audit and relitigate [Xanadu's] approved claim because the claimant's postal mail was returned and the claimant wanted the check reissued." <u>Id.</u> at 7. Xanadu asserted: "There exists no reason that the clamant should have to relitigate the approved claim at this juncture." <u>Id.</u> at 9. Plaintiffs responded, listing a number of reasons why Xanadu's claim aroused suspicion. <u>See</u> Reply (dkt. 1356).[2] Those reasons amply justified re-auditing Xanadu's claim. Accordingly, the Court ordered that "Class Counsel and Rust may audit/re-examine Corp. Xanadu's claim, consistent with their obligation to pay only qualified claimants." Order Setting Hearing (dkt. 1358). The Court subsequently directed Class Counsel to file an update on Rust's audit of Xanadu's claim. <u>See</u> Order Directing Filing (dkt. 1368).

Class Counsel updated the Court repeatedly on its review of Xanadu's claim. <u>See</u> 11/8/22 Notice (dkt. 1370); 12/7/22 Further Notice (dkt. 1371); 1/16/23 Further Notice (dkt. 1374). The 1/16/23 Further Notice included a detailed declaration from Joel Botzet, a program manager for Rust, explaining Rust's determination that "Xanadu did not provide the documentation needed to support its claim and is therefore due $0 in settlement

---

[2] For example: Xanadu's alleged 1,337 tickets are exclusively supported with a one-page affidavit, <u>id.</u> at 2; this is "highly unusual for a business, particularly one that purportedly purchased tickets . . . for its own use," <u>id.</u> at 4 (citing Castillo Decl. ¶ 7); Rust sent a determination letter to Xanadu's Wilshire Blvd. office on August 24 2021, which USPS returned as undeliverable; Rust emailed Corp. Xanadu, which confirmed that that address was correct, <u>id.</u> at 3; Rust mailed a check to Corp. Xanadu's Wilshire Blvd. office on March 17, 2022, which USPS returned as undeliverable, <u>id.</u>; on July 30, 2022, a Mr. Suica emailed Rust indicating that Corp. Xanadu had not received a check, and providing a new mailing address on Santa Monica Blvd, <u>id.</u>; on August 26, 2022, a Nicaragua-based attorney representing Corp. Xanadu emailed Class Counsel threatening legal action because Corp. Xanadu had not received a check, <u>id.</u> at 4; Class Counsel could not find any online presence for Corp. Xanadu, including on the California Secretary of State's Business Search website, <u>id.</u>; Class Counsel could find no records of actual employees for Corp. Xanadu, <u>id.</u>; Class Counsel learned that the Wilshire Blvd. and Santa Monica Blvd. addresses were both private rental mailboxes, <u>id.</u> at 5; alleged representatives of Corp. Xanadu have also referred to it as Xanadu Corp, <u>id.</u>; Corp. Xanadu appears to lack an email system; the email provided for its claim was corpxanadu@phreakmail.com, <u>id.</u>; Corp. Xanadu's phone number is a landline in Oregon and its use of a Nicaragua-based attorney is unusual, <u>id.</u>; mail to Corp. Xanadu was returned, <u>id.</u>; Class Counsel asked Corp. Xanadu for its company formation documents or to make a representative from Corp. Xanadu available, and it refused to do so, <u>id.</u>

benefits." Botzet Decl. (dkt. 1375) at ¶ 22; see also id. ¶¶ 18–23. Based on Botzet's sworn statement, the Court was persuaded that this was the correct conclusion, reached after a lengthy and fair process. Accordingly, the Court directed Class Counsel to file an updated proposed order granting the Motion for Secondary Distribution and reflecting Rust's conclusion as to Xanadu. See Order Directing Filing of Proposed Order (dkt. 1376). Class Counsel promptly complied. See Proposed Order (dkt. 1377). The Court adopted the Proposed Order in large part,[3] filing an Order Granting Plaintiffs' Motion for Secondary Distribution two days later. See Order (dkt. 1378).

Shortly thereafter, Xanadu filed both an Objection to the 1/16/23 Further Notice and Proposed Order ("PO Objections") (dkt. 1379), and a Motion Pursuant to Rules 59(b) and 60(b)(1) and (6) for Reconsideration of the Court's Order ("Mot. for Reconsideration") (dkt. 1380)[4]; see also Reply re Mot. for Reconsideration (dkt. 1382); Exhibits (dkt. 1383). Plaintiffs oppose the motion. See Opp'n to Mot. for Reconsideration (dkt. 1382); Sur-Reply re Mot. for Reconsideration (dkt. 1384).[5]

## II. LEGAL STANDARD

The Court presumes that Xanadu intends to invoke Rule 59(e) of the Federal Rules of Civil Procedure, and not Rule 59(b).[6] Rule 59(e) pertains to motions to alter or amend judgments. However, "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999). The Court reviews the present motion for any clear error that it committed in its original order. "The clear error standard is significantly deferential and is not met unless the reviewing court is

---

[3] The Court awarded half of the attorneys' fees that Class Counsel requested. See id. ¶ 10.
[4] Although Xanadu's motion is called a Motion for Reconsideration, it does not rely on Civil Local Rule 7-9 (allowing parties to file a motion for leave to file a motion to reconsider any interlocutory order on any ground in Civil Local Rule 7-9(b)). See Mot.
[5] Plaintiffs request leave to file a sur-reply. Id. The Court grants leave.
[6] Rule 59(b) governs the time in which a motion for a new trial must be filed. Fed. R. Civ. P. 59(b).

left with a 'definite and firm conviction that a mistake has been committed.'" Cohen v. U.S. Dist. Ct. for N. Dist. of Cal., 586 F.3d 703, 708 (9th Cir. 2009) (quoting Concrete Pipe & Prods. v. Constr. Laborers Pension Tr., 508 U.S. 602, 623 (1993)). A mistake occurs when the court's prior decision is "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). A clear error does not exist solely because "another reasonable judicial body 'would have arrived at a different result.'" J & J Sports Prods., Inc. v. Juanillo, C-10-01801 WHA, 2011 WL 335342, at *1 (N.D. Cal. Feb. 1, 2011) (quoting All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011).

Rule 60(b)(1) provides that a Court may relieve "a party"[7] from a final judgment, order, or proceeding in the case of "mistake, inadvertence, surprise, or excusable neglect." "The ordinary meaning of the term 'mistake' in Rule 60(b)(1) includes a judge's legal errors." Kemp v. United States, 142 S. Ct. 1856, 1862 (2022). Rule 60(b)(6) provides for the same relief for "any other reason that justifies relief." "Rule 60(b)(6) has been used sparingly as an equitable remedy to prevent manifest injustice." United States v. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993). "A movant seeking relief under Rule 60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment." Henson v. Fidelity Nat'l Fin., Inc., 943 F.3d 434, 443–44 (9th Cir. 2019) (internal quotation marks omitted).

### III. DISCUSSION

Xanadu's motion for reconsideration is quite short but explains that "[t]he basis for the reconsideration is found" in its objections to the proposed order. Mot. for Reconsideration at 2 (incorporating by reference the PO Objections).[8] Xanadu's

---

[7] As Plaintiffs point out, Xanadu is not a party to this litigation. See Opp'n to Mot. for Reconsideration at 3.

[8] The motion also suggests as an additional ground that Xanadu had inadequate time to respond to the 1/16/23 status update, which deprived it of its procedural due process rights. Id. at 2; see also Reply re Reconsideration at 4 ("Objectors have a due process right to lodge a response to the 'Notice.'"). Xanadu offers no legal authority in support of this point, and the Court is skeptical that a would-be class member indeed has a "due process right" to respond to a status update. However, assuming that Xanadu has such a right, the Court has now received and reviewed

objections do not warrant reconsideration.

First, "a motion to reconsider is not a vehicle permitting the unsuccessful party to 'rehash' arguments previously presented." Bailey v. Diaz, No. C 12-1414 CRB (PR), 2013 WL 6189183, at *1 (N.D. Cal. Nov. 25, 2013) (discussing Rule 59(e) motion). And simply disagreeing with a court's decision does not meet the definition of "mistake, inadvertence, surprise, or excusable neglect." See Buckley v. BMW of N. Am., No. 20-56397, 2022 WL 16756341, at *1 (9th Cir. Nov. 8, 2022) (citing Lemoge v. United States, 587 F.3d 1188, 1192–99 (9th Cir. 2009)) (discussing Rule 60(b)(1)). Many of the objections that Xanadu now makes to the proposed order are simply rehashes of the objections Xanadu made to the motion for secondary distribution. Compare PO Objections at 3 (Rust already approved Xanadu's claim and then unfairly required Xanadu to prove up its claim beyond what was required of other claimants) with Xanadu Obj. at 7–10 (Class Counsel wants to "relitigate the approved claim" and "treat [Xanadu] differently than the other claimants who went through Rust Consulting's process")[9]; PO Objections at 7 ("Rust merely placed a copy of the motion on their website and did not place it on the Chinese or Japanese language versions of the website. . . . Class Counsel could have simply sent an email to Class Members") with Xanadu Obj. at 2 ("Email costs nothing. . . . Neither Rust Consulting nor Class Counsel posted a notice on the Chinese or Japanese version of the website"); PO Objections at 8 ("turning over uncashed checks to the state is

---

Xanadu's objections. Moreover, as Xanadu represents that "counsel was in the process of the final edit [of the Objections to the PO] at the time this Court rendered the Order, which is why they were uploaded a few minutes after the Order," id. at 2, the Court has confidence that it has the benefit of Xanadu's complete thoughts on the proposed order.

[9] Xanadu complains repeatedly that Rust required more of Xanadu than it did of other claimants. See PO Objections at 3, 4, 5, 6, 8–13. This is likely true. See, e.g., Sur-Reply re Mot. for Reconsideration at 2 ("Rust's conclusion as to Corp Xanadu's claim was based on Rust's examination of Corp Xanadu's claim over several months, which included a Zoom interview with Corp Xanadu's CEO, Rich Sutton, on November 1, 2022, and all documents and information provided by Corp Xanadu by November 30, 2022."). But Rust did not do so in a vacuum. It did so after a number of irregularities raised suspicion about whether Xanadu was actually a class member, see Reply, and after the Court agreed that re-auditing Xanadu's claim was appropriate, see Order Setting Hearing. At that point, it would have been meaningless for Rust to subject Xanadu only to the original process in place for verifying claims. See Botzet Decl. (dkt. 1322-1) ¶¶ 15–20. Nor was Rust limited to the particular issues that raised its alarm in the first place.

a preferred method of dealing with it. . . . it will be permissible to submit those funds to the unclaimed property funds of those persons' respective states") with Xanadu Obj. at 5 ("any redistribution of funds without escheating domestic claimants' money violates public policy and is unlawful."). The Court has already analyzed those arguments and disagreed with Xanadu's position.

Second, to the extent that Xanadu's objections raise new issues, they do not change the Court's view of the motion for secondary distribution. For example, Xanadu asserts that "Rust mismailed Xanadu's check reissuance," PO Objections at 3, which was "concealed until the filing," id. at 4 (citing Botzet Decl. Ex. 4 (dkt. 1375-4)); see also Reply re Mot. for Reconsideration at 2 ("additional factual details came to light about the uncashed checks") (citing to Botzet Decl. Ex. 4). Xanadu leaps from its own "mismailed" check to suggesting that "in reality, Rust's checks"—plural—"were mismailed (see Entry 1375-4) and over 25% of claimants did not receive or did not cash their checks." PO Objections at 13; id. at 14 ("Rust Consulting Acted Negligently in Mailing Checks Using Faulty Software which Explains the Large Percentage of Unpaid Checks."). This is an unwarranted leap, based on a single check. Moreover, while the envelope for that single check only shows the addressee's names and street address (cutting off the city, state, and zip code), the envelope also shows that it was stamped "RETURN TO SENDER - TEMPORARILY AWAY - UNABLE TO FORWARD," suggesting that the missing city, state, and zip code were not the impediment to delivery. See Botzet Decl. Ex. Ex. 4; see also Botzet Decl. ¶ 12 (USPS returned due to no forwarding address). Beyond that, whether or not Rust properly addressed the envelope with the reissued payment, Rust undertook a re-audit of Xanadu's claim, with the Court's blessing, and reasonably concluded that Xanadu had failed to provide the documentation needed to support its claim. Xanadu's additional accusation that Class Counsel was inappropriately "enmesh[ed]" in the audit process, and motivated by its desire for increased attorneys' fees, is unsupported. And while Xanadu apparently has a plausible response to Rust's suggestion that it acted improperly in the In re: Parking Heaters settlement, see PO

Objections at 5–6, the Court's decision does not depend on Xanadu's actions in the In re: Parking Heaters settlement. See Order ¶ 4 (listing six subparts supporting Rust's conclusion,[10] of which the In re: Parking Heaters settlement was one).

Accordingly, Xanadu has failed to satisfy the demanding standards of Rules 59(e), 60(b)(1), or 60(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES the motion for reconsideration.

**IT IS SO ORDERED.**

Dated: January 25, 2023



CHARLES R. BREYER
United States District Judge

---

[10] Xanadu repeatedly states that "this Court's Order made findings of fact and conclusions of law," Mot. for Reconsideration at 2, and that it appears "as if a full evidentiary hearing occurred and that this Court is making findings," PO Objections at 2. Not so. The Court held that "Rust determined 'there is $0 due in settlement benefits' to Corp Xanadu," and it listed "numerous factors" upon which Rust based its decision. See Order ¶ 4.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Case No. 07-cv-05634-CRB |
| | **ORDER GRANTING PLAINTIFFS' MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| **This Document Relates To:** **ALL ACTIONS** | |

This litigation has been completely settled since December 2019, when the Court granted final approval of the last settlement (ECF No. 1318) and entered a final judgment as to the last Defendant (ECF No. 1319). In the approximately two years after that, the claims administrator, Rust Consulting, Inc. ("Rust"), processed settlement class members' claims to the settlements and made an initial distribution of the net settlement funds on March 17, 2022. Plaintiffs now seek entry of an order authorizing a secondary distribution of the remaining uncashed net settlement funds, additional claims administration expenses, and further attorneys' fees and reimbursement of expenses in connection with settlement administration.

The Court, having reviewed Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and

1  Reimbursement of Expenses ("Motion") (ECF No. 1347), the objections by Corp Xanadu, David Gould, and Kelly Overvold (together, "Objectors") (ECF Nos. 1353, 1357), Plaintiffs' reply in support of the Motion (ECF No. 1356), Plaintiffs' notices regarding Corp Xanadu's claim, including Rust's final determination as to Corp Xanadu's claim (ECF Nos. 1370, 1371, 1374), and the Court's files and records in this matter, hereby finds that the relief requested is almost entirely appropriate.

Accordingly, it is hereby ORDERED and DECREED that:

1. The Court authorizes a holdback of $50,000 for Claimant Michael Chekian[1];

2. The Court overrules the objections by Objector Corp Xanadu, because Corp Xanadu did not establish that it had any qualifying purchases. In failing to do so, therefore, not only has it failed to establish that it is entitled to share in the settlement proceeds, but it has also failed to establish that it is a settlement class member. Courts considering class action settlements must verify that every class member has standing, and it is the class member's burden to establish standing. *In re Volkswagen "Clean Diesel" Mktg.*, No. 15-MD-02672-CRB, 2022 WL 17730381, at *1 (N.D. Cal. Nov. 9, 2022) (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021)). Non-class members have no standing to object to the settlement of a class action. *Clean Diesel*, 2016 WL 6248426, at *22 (N.D. Cal. Oct. 25, 2016), aff'd sub nom. *Clean Diesel*, 895 F.3d 597 (9th Cir. 2018), and aff'd sub nom. *Clean Diesel*, 741 F. App'x 367 (9th Cir. 2018).

3. Corp Xanadu (claim number 0000144970) filed a claim to the settlements in this litigation. Rust audited Corp Xanadu's claim because the audit threshold established for businesses was 1,000 or more tickets. Corp Xanadu did not support any of its claimed ticket purchases with actual invoices or other corporate records. Instead, Corp Xanadu's alleged 1,337 claimed tickets are supported by a one-page Affidavit, executed by the alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's

---

[1] *See* Tr. of Remote Zoom Video Conference Proceedings 14:17–18. 16:1–3 (Nov. 4, 2022) (ECF No. 1347). If Mr. Chekian is unable to produce adequate support for his claim, the $50,000, or a relevant portion thereof, will be subject to *cy pres* distribution.

September 20, 2020 audit letter. On September 30, 2022, at the direction of the Court (ECF No. 1358) and the request of Class Counsel, Rust requested additional documentation or information from Corp Xanadu to establish the legitimacy of its claim.

    4. Rust has now completed reviewing the documents and information that Corp Xanadu provided by November 30, 2022 and has made a determination on Corp Xanadu's claim (ECF No. 1374). Specifically, Rust determined "there is $0 due in settlement benefits" to Corp Xanadu based on numerous factors, including, but not limited to:

(a) The 144 American Airlines itineraries that Corp Xanadu provided for claimed ticket purchases between the dates of July 2015 and August 2015 did not verify that Corp Xanadu was the payor of the foregoing claimed ticket purchases. Thus, even though those purchases fell within a qualifying period for the settlement classes, Corp Xanadu provided no documentation (*e.g.*, bank statements) that it paid for such purchases[2];

(b) During an interview with Rich Sutton, Corp Xanadu's CEO, Mr. Sutton informed Rust that the documents used to determine the number of tickets claimed for American Airlines and the other airlines were destroyed. Without this information, Rust was unable to verify the methodology used to determine the number of ticket purchases claimed;

(c) Rust requested, but Corp Xanadu did not provide, the date when the foregoing documents were destroyed and information to explain the difference in the records maintained for the years 2002 – 2008 and 2009 – 2015, including the names of the employees that maintained the records for these two time periods. Accordingly, Rust was not able to verify that the documentation ever existed to substantiate the

---

[2] Rust noted that Corp Xanadu redacted the name of the payor from all itineraries that it provided to Rust, which the Court finds to be inconsistent with Corp Xanadu's obligation to demonstrate that it was the purchaser of these tickets. *See Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) (holding that three objectors lacked standing to challenge settlement because none had purchased the defendant's product and suffered injury).

   ticket purchases claimed;

(d) Aside from the claimed purchases on American Airlines, Corp Xanadu provided no documentation of purchases for any travel on other qualifying airlines to substantiate its claim;

(e) Rust also asked Corp Xanadu to provide any marketing material and/or magazine ads for Corp Xanadu services to confirm the nature of Corp Xanadu's business, which Corp Xanadu never provided; and

(f) After Mr. Sutton represented that Corp Xanadu never owned any property in the United States, including vehicles, Rust asked Corp Xanadu to explain why it filed a claim and received a settlement payment in *In re: Parking Heaters Antitrust Litigation* in 2019 (this indirect purchaser plaintiff settlement, which Rust administered, paid monies to those who purchased an aftermarket parking heater for their commercial vehicles between October 1, 2007 and December 31, 2012). Corp Xanadu did not provide any explanation.

5. In summary, Rust determined that Corp Xanadu is not a settlement class member because it does not have any valid claim to the net settlement funds. As Corp Xanadu is not a settlement class member, the Court need not consider its objections.

6. The Court will nevertheless address the merits of all objections raised. The Court overrules the objections by Objectors Corp Xanadu, David Gould, and Kelly Overvold for several reasons:

(a) First, the Objectors received notice of the proposed secondary distribution and filed objections, directly contradicting their argument that Plaintiffs and Rust failed to provide reasonable notice of such distribution. Furthermore, Class Counsel already provided notice of each of the three rounds of settlements, which the Court approved (ECF Nos. 1009, 1259-1, 1318). There is no authority for the proposition that a comprehensive notice program pursuant to Federal Rule of Civil Procedure 23 is required when Class Counsel and the Court are simply seeking to redistribute uncashed settlement funds as part of the claims administration process. *See, e.g., Six*

  *(6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990) ("Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds."); *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (noting that "as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'");

(b) Second, the Objectors received notice of Plaintiffs' request for attorneys' fees and reimbursement of expenses and filed objections, directly contradicting their argument that Plaintiffs failed to provide reasonable notice of such request. Moreover, Class Counsel already provided reasonable notice to settlement class members of their fee requests in connection with each of the three rounds of settlements (ECF Nos. 986, 1227, 1307), and the deadlines to object to these requests have long passed. The pending request for attorneys' fees and reimbursement of expenses relates to Class Counsel's lodestar and expenses in connection with settlement administration between August 1, 2019 and July 31, 2022. Additionally, this Court invited Class Counsel to submit this request. Hr'g Tr. at 9:12-16 (Jul. 6, 2022). The amount of fees requested fall below the amount described in the settlement notice for the prior settlement round;[3]

(c) Third, given the amount of the remaining uncashed settlement funds (*i.e.*, $5,448,087.41), the Objectors' contention that such funds should escheat to the states is unsupported in the Ninth Circuit and in class actions generally[4]—and is

---

[3] Class Counsel requested attorneys' fees of 33%, and the Court granted 25% in connection with the third and final round net settlement fund (ECF Nos. 1307 at 1 (motion), ECF No. 1314 at 14 (order)). The Court's award here of additional attorneys' fees from the remaining settlement funds results in a fee award of less than the 33% noticed.

[4] In *Six (6) Mexican Workers*, 904 F.2d at 1307–09, the Ninth Circuit recognized that permitting funds to escheat to the government could be appropriate in certain kinds of cases, like FLSA wage damage cases. But *Six (6) Mexican Workers* by no means held that allowing unclaimed funds to escheat was required in all class action cases. Moreover, that opinion reiterated that "Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Id.* at 1307.

nowhere to be found in any of the settlement agreements at issue. *See Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017) ("[r]edistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members" and because "class settlements rarely 'pay individual class members the full value of their claims'"); William B. Rubenstein, Newberg on Class Actions, § 12:30 (5th ed.) ("Redistribution is more likely to bring the class members closer to that value rather than to be a windfall.").

7. Having addressed the holdback for Mr. Chekian and the objections by Corp Xanadu, David Gould, and Kelly Overvold, the Court grants the Motion.

8. The Court authorizes reimbursement of additional claims administration expenses totaling $125,921.00 in connection with Rust's anticipated work through the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation.

9. The Court authorizes reimbursement of incurred litigation expenses totaling $4,876.85 in connection with Class Counsel's settlement administration work from August 1, 2019 through July 31, 2022.

10. The Court awards attorneys' fees in connection with Class Counsel's settlement administration work from August 1, 2019 through the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation. While Class Counsel requests an award of $1 million, the Court instead awards $500,000, for the following reasons:

(a) Class Counsel is correct that they should be awarded fees for their work since the last fee award. *See* Motion for Fees in Third Round (dkt. 1307) at 13 (explicitly only seeking fees for work up to July 31, 2019). They explain that they have "engaged in extensive motion practice to ensure the accurate and timely processing of claims and to guarantee the fair and reasonable distribution of net settlement funds across settlement class members," and that they are "actively overseeing and collaborating with Rust on various claims administration and settlement distribution." Motion at 10. In the three years since the third round settlement

1  (from August 1, 2019 through July 31, 2022), Class Counsel have spent 617.9
2  hours, for a lodestar of $341,935.50. *Id.* at 3–4.
3  (b) Class Counsel is also correct that courts in this Circuit can count anticipated
4  future work in calculating fee awards. *Cf. In re Volkswagon "Clean Diesel" Mktg.*
5  *Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x 655, 659 (9th Cir. 2018) (no
6  error in including projected time in cross-check). They anticipate "incurring
7  additional lodestar through the secondary distribution . . . a *cy pres* distribution, if
8  necessary, at the end of the litigation, any further motion practice by Mr. Chekian,
9  including an appeal, and a further notice of post-distribution accounting." Motion
10 at 11. They also assert that they "will not seek further attorneys' fees in this
11 litigation after this motion." *Id.* at 4.
12 (c) Class Counsel do not attempt to explain how their anticipated work will add up
13 to $658,064.50 ($1 million minus the current lodestar of $341, 935.50). One of the
14 cases they cite, *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension*
15 *Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017), refers to "125 anticipated future
16 hours" based on "time managing class members' claims." But Plaintiffs here do not
17 attempt any such breakdown of anticipated time. Plaintiffs make this choice
18 because they are seeking a percentage-of-recovery, not their exact lodestar. Mot. at
19 11. The Court awarded Class Counsel a percentage-of-recovery in each of the prior
20 three rounds of settlements. *See generally* Order Granting Attorneys' Fees and
21 Expenses (dkt. 1314); *see id.* at 14 (awarding 25% of the round three net settlement
22 fund). Still, even a percentage-of-recovery analysis would benefit from some
23 estimate of the lodestar represented by the anticipated work, in order to perform a
24 cross-check on the percentage. <u>See</u> *id.* at 9 (referencing importance of lodestar
25 cross-check).
26 (d) Class Counsel explain that their $1 million request amounts to 18.355% of the
27 remaining settlement fund of $5,448,087.41. Mot. at 11. They argue that 18.355%
28 is modest not only in terms of the remaining funds but also given all of the work

|   |   |
|---|---|
| 1 | they have performed on this case for the past 15 years.  Id.  They note that they have |
| 2 | received a cumulative negative multiplier of -0.75 based on work through July 31, |
| 3 | 2019, which resulted in unreimbursed lodestar of $10,987,873.85, and that their |
| 4 | unreimbursed lodestar has only increased since then.  Id. (citing Castillo Decl. (dkt. |
| 5 | 1347-2) ¶ 16).  Class Counsel argue that awarding Class counsel $1 million in fees |
| 6 | now would still result in a cumulative negative multiplier of -0.77 based on their |
| 7 | work through July 31, 2022, and less than that considering their anticipated work.  |
| 8 | Id. (citing Castillo Decl. ¶ 17). |

(e) The Court does not dispute that Class Counsel has done an excellent job on this case for many, many years.  But, while 18% sounds like a low number, the Court simply does not believe that a percentage-of-recovery basis for awarding fees is appropriate.  The Court already awarded Plaintiffs fees for all three rounds of settlements—i.e., the total fund amount of $104,388,254.38—that took into account factors like the results achieved, the risks of litigation, the skill and quality of the work, the contingent nature of the fee, and awards made in similar cases.  See, e.g., Order Granting Attorneys' Fees and Expenses at 3, 5–8.  But those factors are less applicable at this stage.  Before the Court is not a new pot of money but a portion of the original $104,388,254.38.  The remaining fund is $5,448,087.41 because that is how much money the uncashed checks add up to.  If there were more uncashed checks and the remaining fund was $10,000,000, or $20,00,000, would Class Counsel be entitled to 18% of that?  More money left in the fund is not tied to a better result by Class Counsel.  Nor does more money left in the fund seem necessarily tied to more work left for Class Counsel to do.  At this phase—where Class Counsel have already been compensated for the recovery they achieved for the class—the Court believes that fees should be aimed at reimbursing Class Counsel for the work they actually did, and will do, in effectuating everything post-settlement.  In that case, the lodestar method is more appropriate.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) ("Courts in the Ninth Circuit

award fees in common fund cases under either the 'percentage-of-recovery' method or the 'lodestar' method.").

(f) Using the lodestar method, the Court will approve an award of $500,000.00. This sum represents the current lodestar of $341,935.50, see Motion at 4, plus an additional $158,064.50 for the work on this case that Class Counsel has already done since seeking that $341,935.50 in August of 2022 (including the recent, very prompt, preparation of the proposed order upon which this order is based, *see* Proposed Order (dkt. 1377)), and the anticipated work that Class Counsel will continue to do to bring the case to its conclusion.

11. The Court directs Plaintiffs to pay the awarded fees and expenses from the remaining settlement fund of $5,448,087.41.

12. The Court authorizes a secondary distribution of the remaining settlement funds of $5,448.087.41, less the holdback of $50,000 for Mr. Chekian, less the additional claims administration expenses of $125,921.00 for Rust and reimbursement of litigation expenses of $4,876.85 for Class Counsel authorized by the Court above, and less the attorneys' fees of $500,000 for Class Counsel awarded by the Court above.

13. If there are any further remaining settlement funds after the secondary distribution, assuming such funds will be economically infeasible to distribute, Plaintiffs shall propose an appropriate *cy pres* recipient with approval from the Court after the check void date for this secondary distribution. At that time, Class Counsel will also provide an update to the Court regarding the final resolution of Mr. Chekian's claims.

**IT IS SO ORDERED.**

Dated: January 19, 2023

CHARLES R. BREYER
United States District Judge

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document relates to:<br>ALL ACTIONS | Case No. 07-cv-05634-CRB<br><br>**ORDER DIRECTING FILING OF PROPOSED ORDER** |

In light of Class Counsel's recent update, see Notice (dkt. 1374), the Court DIRECTS Class Counsel to file an updated proposed order granting the Motion for Secondary Distribution of Remaining Settlement Funds (dkt. 1347). The proposed order should reflect: (1) Rust's conclusion as to Corp. Xanadu's claim, see Notice at 2:12–14, and (2) the Court's desired holdback of $50,000, as reflected at the November 4, 2022 hearing, see Transcript (dkt. 1369) at 14:17–18.

**IT IS SO ORDERED.**

Dated: January 17, 2023

CHARLES R. BREYER
United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION<br><br>This Document relates to:<br>ALL ACTIONS | Case No. 07-cv-05634-CRB<br><br>**ORDER SETTING HEARING** |

The Court hereby sets a hearing for Friday, October 28, 2022 at 10:00 AM, via Zoom webinar. At that hearing, the Court will hear argument on (1) Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds (dkt. 1347) and (2) Mr. Chekian's claim.[1] In the intervening time, Class Counsel and Rust may audit/re-examine Corp. Xanadu's claim, consistent with their obligation to pay only qualified claimants.

**IT IS SO ORDERED.**

Dated: September 28, 2022

CHARLES R. BREYER
United States District Judge

---

[1] The Court previously gave Mr. Chekian until September 30 to submit all of his documentation to Rust. The Court envisions that Rust will make a determination regarding Mr. Chekian's claim by October 28.