**No. 23-15118**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**In re:  TRANSPACIFIC PASSENGER AIR
TRANSPORTATION ANTITRUST LITIGATION**,

MEOR ADLIN; FRANKLIN AJAYE; ANDREW BARTON; RACHEL
DILLER; SCOTT FREDERICK; DAVID KUO; DICKSON LEUNG;
BRENDEN G. MALOOF; DONALD WORTMAN; HARLEY ODA; ROY
ONOMURA; SHINSUKE KOBAYASHI; PATRICIA LEE; NANCY
KAJIYAMA; DELLA EWING CHOW; JAMES KAWAGUCHI; SHARON
CHRISTIAN,                                    Plaintiffs - Appellees,
  v.

XANADU CORP.; DAVID GOULD,              Objectors - Appellants,
  v.

ALL NIPPON AIRWAYS,                          Defendant.

---

**On Appeal from the Orders of the United States District Court
for the North District of California, No. 3:07-cv-05634, Hon.
Charles R. Breyer, United States District Judge**

---

### APPELLANTS' EXCERPTS OF THE RECORD
### VOLUME 3

---

J. Allen Roth, Esq.
Law Office of J. Allen Roth
805 S. Alexandria St.
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

*Attorneys for Objector-Appellants*
*David Gould and Xanadu Corp.*

1
2
3
4
5
6
7
8
9

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **DECLARATION OF JOEL K. BOTZET IN SUPPORT OF PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

20
21
22
23
24
25
26
27
28

Declaration of Joel K. Botzet in Support of Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses;

I, JOEL K. BOTZET, declares and states that:

1.    I am a Program Manager for Rust Consulting, Inc. ("Rust"), the Court-appointed Claims Administrator for the class action Settlements in this case. My business address is 920 Second Avenue South, Suite 400, Minneapolis, Minnesota 55402. My business telephone number is 612-359-2035. I am authorized to make this declaration on behalf of Rust.

2.    Rust has extensive experience in class action matters, having provided settlement administration services in class action lawsuits affecting millions of class members in cases involving antitrust, employment, consumers, banking and financial services, property, insurance, securities, and products liability, among its more than 8,000 projects.

3.    Except as otherwise stated, I am fully familiar with and have personal knowledge of the matters stated in this declaration and am competent to testify about them if called upon to do so. I submit this declaration to provide the Court and the parties to the above-captioned action with information responding to (1) the Objections to the Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses (ECF No. 1353) and (2) the September 14, 2022 objection that was emailed to the Court and Class Counsel from Scott Zaban (szaban@gmail.com) on behalf of claimant Kelly Overvold.

A.    **Objector Corp Xanadu's Claim**

4.    Corp Xanadu (claim number 0000144970) filed a claim to each of the three rounds of Settlements in this action online through the settlement website (www.airlinesettlement.com). Corp Xanadu's contact information is:

First and Last Name: Corp Xanadu

Email: corpxanadu@phreakmail.com

Phone: (801) 823-1320

Address: 5042 Wilshire Boulevard #35581, Los Angeles, California 90036

5.    Corp Xanadu's claim includes the following tickets:

| Airline | Route | Date | Number of Tickets |
|---|---|---|---|
| American Airlines | USA to Tokyo | 2004 | 150 |
| Cathay Pacific Airways | USA to Tokyo | 2004 | 62 |

---

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

| | USA to Tokyo | 01/01/2005 − 01/31/2005 | 10 |
|---|---|---|---|
| Delta Airlines | USA to Tokyo | 2008 | 90 |
| Japan Airlines | USA to Tokyo | 02/01/2005 − 12/31/2005 | 260 |
| | USA to Tokyo | 2006 | 270 |
| | USA to Tokyo | 2007 | 270 |
| United Airlines | USA to Tokyo | 2003 | 35 |
| | USA to Tokyo | 2003 | 190 |
| **Total** | | | 1,337 |

6. Rust audited Corp Xanadu's claim because the audit threshold established for businesses was 1,000 or more tickets. Corp Xanadu did not support any of its claimed ticket purchases with actual invoices or other corporate records. Instead, Corp Xanadu's alleged 1,337 claimed tickets are supported by a one-page Affidavit, executed by the alleged Secretary of Corp Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's September 20, 2020 audit letter. Rust initially approved the claim based on the signed Affidavit.

7. Attached hereto as **Exhibit 1** is a true and correct copy of Corp Xanadu's Audit Response that includes Mr. Suica's Affidavit.

8. Rust determined that Mr. Suica's Affidavit constituted acceptable support for Corp Xanadu's claim and approved the claim in its entirety.

9. On August 24, 2021, Rust sent a determination letter by USPS to Corp Xanadu's alleged Wilshire Boulevard address initially approving the claim, which USPS returned as undeliverable with no forwarding address on September 22, 2021.

10. On October 11, 2021, Corp Xanadu emailed Rust indicating that it did not receive the determination letter and stating that the Wilshire Boulevard address was correct. Rust replied to the email and attached the determination letter.

11. On March 17, 2022, Rust mailed a check in the amount of $603,831.08 by USPS to Corp Xanadu's alleged Wilshire Boulevard address, which USPS again returned as undeliverable with no forwarding address on April 11, 2022.

---

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

12. On April 25, 2022, Rust sent the claimant names and addresses of all checks returned as undeliverable, including the check to Corp Xanadu, to a vendor to obtain an updated address through an automated process called "batch trace," which did not return a better or updated address for Corp Xanadu.

13. On July 26, 2022, consistent with this Court's order at the July 6, 2022 hearing, Class Counsel advised Rust to stop reissuing checks immediately and proceed with voiding uncashed original checks as of July 31, 2022 and uncashed reissued checks as of August 30, 2022.

14. On July 30, 2022, Mr. Suica emailed Rust indicating that Corp Xanadu did not receive a check and provided a new mailing address: 8605 Santa Monica Boulevard #10287, West Hollywood, California 90069. Rust did not process this request because it came after Class Counsel's request to stop reissuing checks on July 26, 2022.

15. On August 24, 2022, Mr. Suica emailed Rust inquiring about reissuance of the check.

16. With the exception of Mr. Suica's July 30, 2022 email, Rust answered Corp Xanadu's multiple emails regarding its claim status.

**B.     Objector David Gould's Claim**

17. David Gould (claim number 0000139761) filed a claim to each of the three rounds of Settlements in this action online through the settlement website (www.airlinesettlement.com). Mr. Gould's claim included 96 tickets on various airlines, including eight *Satogaeri* tickets.

18. The audit threshold established for individuals was 125 tickets or more and/or 50 or more tickets for each of the Japan (Fuel Surcharge) and/or *Satogaeri* Settlement Classes. As Mr. Gould's claimed tickets fell under the audit threshold, Rust did not audit him.

19. On August 24, 2021, Rust mailed Mr. Gould a determination letter, initially approving his claim. On March 17, 2022, Rust mailed him a check for $6,733.21, which Mr. Gould cashed on May 31, 2022. There is no additional correspondence between Mr. Gould and Rust or Mr. Gould and Class Counsel.

### C. Objector Kelly Overvold's Claim

20.     Kelly Overvold (claim number 0000105324) filed a claim to rounds one and two of Settlements in this action online through the settlement website (www.airlinesettlement.com). Ms. Overvold's claim included 64 tickets on various airlines.

21.     As stated, *supra*, the audit threshold established for individuals was 125 tickets or more and/or 50 or more tickets for each of the Japan (Fuel Surcharge) and/or *Satogaeri* Settlement Classes. As Ms. Overvold's claimed tickets fell under the audit threshold, Rust did not audit her.

22.     On August 24, 2021, Rust mailed Ms. Overvold a determination letter, initially approving her claim. On March 17, 2022, Rust mailed her a check for $139.24 to the address provided on Ms. Overvold's claim form.

23.     On May 31, 2022, Ms. Overvold emailed Rust providing a change of address and requesting a check reissue. On June 1, 2022, Rust replied to her confirming that it had updated her address and submitted her request for a check reissue. In the reply, Rust stated, "You should allow a minimum of 4 – 8 weeks for the reissued check to be mailed." On July 27, 2022, Rust mailed the reissued check to Ms. Overvold's updated address; the check had a void date of August 30, 2022. On August 30, 2022, Rust determined that this reissued check remained uncashed and voided it.

24.     On September 14, 2022, Ms. Overvold emailed Rust requesting a check reissue. On the same day, Rust replied to Ms. Overvold stating that the deadline to request a check reissue had passed.

### D. Scope of Rust's Claims Administration Work Generally

25.     As the Claims Administrator, Rust is required to follow the terms of the Settlement Agreements and the claims administration process approved by the Court. The Distribution Plan approved by the Court ordered Rust to prepare and mail checks to qualified claimants in the amounts equal to their *pro rata* share of the Settlement Funds.

26.     During the distribution phase, the scope of Rust's services included the following:

     a.     Calculate and distribute the initial payment distribution to Settlement Class Members that were determined to have approved claims;

     b.     Remail payments returned as undeliverable with forwarding addresses. Payments returned by the U.S. Postal Service with forwarding addresses were flagged and the addresses were updated in Rust's database. Rust then reissued payments and mailed them to the updated addresses;

     c.     Trace and remail payments returned as undeliverable with no forwarding addresses. Payments returned by the U.S. Postal Service with no forwarding addresses were flagged in Rust's database with this designation. As part of its normal practices, Rust then performed a batch trace through a vendor to locate updated addresses, as it did with Corp Xanadu without success. Alternative mailing addresses returned from trace were updated in Rust's database. Rust then reissued payments and mailed them to the updated addresses returned from trace; and

     d.     Reissue payments upon request. Rust worked with Settlement Class Members who requested reissue payment requests, including assisting Settlement Class Members and financial institutions with the check cashing process.

27.    The claims administration of the Settlements began in 2015, prior to the common use of email addresses and electronic payments in class action settlements. Therefore, settlement communications via email were not part of the Settlement Class Member notification process and electronic payment information was not part of the claim filing or settlement distribution processes in this action.

28.    Tens of thousands of Settlement Class Members received notice of the settlements in this action and filed claims, including Corp Xanadu, Mr. Gould, and Ms. Overvold.

---

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

29.     Rust sent determination letters by USPS to all claimants, including Corp Xanadu, Mr. Gould, and Ms. Overvold, and answered emails from claimants inquiring about their claim status.

30.     After the initial distribution on March 17, 2022, Rust received inquiries from claimants primarily residing outside of the United States who were experiencing difficulty cashing or depositing their checks. Rust, in consultation with Class Counsel, established a process for claimants who contacted Rust because they were unable to cash a physical check. For these claimants, Rust made payments via PayPal.

31.     During the claims administration process, Rust conducted all outreach to claimants by mail. This included mailing Request for Information letters to claimants with claims determined to be deficient or ineligible; Request for More Information letters in the audit process; and Notice of Determination Letters to all individuals and entities who filed claims and whose claims were not withdrawn. These letters were mailed to the most current address in the settlement database, whether provided on the claim form, by the claimant through email, phone, or mail, or through address trace.

32.     At the start of claims administration, before notices were mailed, Rust established an email address, info@airlinesettlement.com, for claimant inquiries. The email address was provided on all outbound communications to Settlement Class Members and available on the settlement website, www.airlinesettlement.com.

33.     Rust does not provide regular claim status updates to Settlement Class Members by email but does respond to Settlement Class Members' requests for claim status updates by email, phone, and mail upon request. Not all claimants provided an email address.

34.     As an experienced class action settlement claims administrator, Rust determined the best way to handle undeliverable checks is to utilize a "batch trace" process with a vendor as outlined in this declaration. Rust's email communications with Settlement Class Members were

limited to receiving and responding to email inquiries directed to Rust by Settlement Class Members.

35. Neither the Court's orders regarding settlement distribution nor the Federal Rules of Civil Procedure require Rust to email each of the 96,133 individuals and companies that submitted claims in this action every time Plaintiffs file a motion. There is no efficiency or precedent for emailing or mailing motions to claimants when they are readily available on the settlement website. Furthermore, this would expend much of the remaining uncashed settlement funds.

36. Since Plaintiffs moved for secondary distribution of the remaining settlement funds on August 8, 2022, Rust has received 16 e-mails with questionable, potentially fraudulent, requests for reissuance of checks. Each of these emails are in substantially the same form and same language. They request that Rust reissue a check for under $10,000 and "split the check into two checks or issue a check in the amount for $9,500" because the claimant "cannot cash a check and walk out of the bank with more than $10,000 in cash." Each of these claimants list their address as different units in various apartment complexes on West Duarte Road in Arcadia, California, or as post office boxes in Southern California. Accordingly, Rust has been carefully reviewing these check reissue requests and verifying the legitimacy of the claimants and their claims. To verify the legitimacy of these claims, Rust is in the process of seeking interviews from each of these claimants in connection with their requests for reissuance of checks. These interviews will seek explanations from these claimants regarding their alleged purchases and will seek to understand (1) why they all have similar addresses or post office box addresses, (2) why they have substantively identical emails, and (3) why they disclosed the appearance of attempts to circumvent federal law requiring banks to report cash transactions of $10,000 or more pursuant to the Currency and Foreign Transactions Reporting Act, among other fraud prevention inquiries. Rust will conduct the interviews and evaluate the results of the interviews and reissue requests with Class Counsel as needed.

---

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB

### E. Rust's Process for Undeliverable Checks

37. Between 2015 and February 28, 2022, 1,289 claimants contacted Rust with a change of address. Rust updated those addresses in the settlement database. Indeed, after Ms. Overvold emailed Rust providing a change of address and requesting a check reissue on May 31, 2022, Rust replied on June 1, 2022, confirming that it had updated Ms. Overvold's address and submitted her request for a check reissue that was mailed on July 27, 2022.

38. After the distribution as some checks were returned as undeliverable, Rust used the unique barcode printed on each check to identify the claimant record in the settlement database. Rust imaged the returned checks and flagged them as undeliverable in the settlement database. Rust included a code that indicated whether the Post Office had included a forwarding address, and if so, keyed the indicated address in the settlement database. For checks returned as undeliverable without forwarding addresses, Rust created files of names and last known addresses that were sent to a vendor to obtain an updated address through the automated "batch trace" process describe above. Rust uses vendors commonly used by class action administrators to return a better or updated address for those whose checks were returned as undeliverable. A check was re-mailed if an updated address was obtained.

39. During the distribution phase, Rust traced 5,444 undeliverable checks. For those, 3,391 alternative addresses were returned and checks were remailed. Of these remailed checks, 2,314 were cashed.

40. As of August 3, 2022, 16,216 checks in the amount of $5,448,087.41 or 5% of the initial amount distributed remain uncashed. Of those, 3,337 checks do not have mailable addresses.

### F. Settlement Website

41. At the start of the claims administration, Rust established the settlement website, www.airlinesettlement.com, in 10 languages. Prior to sending notice for Phase 2 in June 2018, the website was changed to provide information in four languages: English, Japanese, Traditional

---

Chinese, and Simplified Chinese. Prior to sending notice for Phase 3 in July 2019, the website was changed to provide information in three languages: English, Japanese, and Traditional Chinese. Rust provided status updates through the initial distribution on March 17, 2022 in these languages on the website.

42.     On April 8, 2022, Rust posted the Notice of Post-Distribution Accounting to the Court Documents page of the settlement website.

43.     On August 9, 2022, Rust posted the documents related to the Motion for Secondary Distribution to the Court Documents page of the settlement website.

44.     The Court Documents page is linked to the English, Chinese, and Japanese pages of the settlement website. Rust updated the settlement status on the English home page of the website when these documents were posted. The home pages for other languages were not updated when there were no changes to the Commonly Asked Questions.

**G.     Rust's Experience in Similar Actions**

45.     In a similar airline antitrust litigation matter, such as *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891, No. 2:07-cv-05107-SJO-AGR (C.D. Cal.), Rust followed a similar distribution plan that did not include sending reminder notifications to Settlement Class Members who did not cash their settlement payments.

46.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 15th day of September 2022 in Minneapolis, Minnesota.

Joel K. Botzet

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

9
10

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB |
| | MDL No. 1913 |
| **This Document Relates To:** | **DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF PLAINTIFFS'** |
| **ALL ACTIONS** | **REPLY IN SUPPORT OF MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Declaration of Elizabeth T. Castillo in Support of Plaintiffs' Reply in Support of Motion for
Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and
Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

I, ELIZABETH T. CASTILLO, declare and state that:

1. I am an attorney duly licensed to practice law in California and admitted to practice in this Court. I am an attorney with Cotchett, Pitre & McCarthy, LLP, Co-Lead Counsel for the Plaintiffs and the Classes ("Class Counsel"). The matters described herein are based on my personal knowledge and, if called as a witness, I could and would testify competently thereto. I make this declaration pursuant to 28 U.S.C. § 1746.

2. I make this declaration in support of Plaintiffs' Reply in Support of Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses submitted herewith.

3. On July 26, 2022, Class Counsel advised Rust to stop reissuing checks immediately and proceed with voiding uncashed original checks as of July 31, 2022 and uncashed reissued checks as of August 30, 2022 because they intended on filing a motion for secondary distribution of the remaining uncashed settlement funds shortly and needed to calculate the exact amount of the available funds.

4. On the morning of August 26, 2022, a Nicaragua-based attorney, Karla Corea, who purportedly represents Corp Xanadu, emailed Class Counsel threatening legal action because Corp Xanadu did not receive the check that Rust sent to it on March 17, 2022. On the same day, a Pennsylvania-based attorney, John Allen Roth, who represents Corp Xanadu and filed the Objections on behalf of Corp Xanadu and David Gould, moved for leave to appear *pro hac vice* in the Action, which the Court granted (ECF No. 1352).

5. Upon receiving Ms. Corea's email, Class Counsel immediately contacted Rust to gather any relevant facts set forth in Declaration of Joel K. Botzet submitted herewith.

6. After learning that Corp Xanadu did not provide *any* documentation to support its 1,337 claimed tickets except for Mr. Suica's one-page Affidavit, Class Counsel began investigating Corp Xanadu's claims and Corp Xanadu itself given the number of questionable,

potentially fraudulent claimants requesting reissuance of checks since the filing of the Motion on August 8, 2022.

7.     Regarding Corp Xanadu's claims, Class Counsel found them to be highly suspicious. For example:

- Corp Xanadu did not provide *a single receipt* showing a ticket purchase, *any* canceled check, *any* credit card statement, *any* travel itinerary, or *any* email confirmation of ticket purchases for its claimed 1,337 tickets over a five-year period, which is highly unusual for a business, particularly one that purportedly purchased tickets the tickets for its own use; and

- In investigating its claim, Class Counsel also learned that Corp Xanadu failed to provide origin or destination airports or travel dates for *any* of its alleged ticket purchases.

8.     Regarding Corp Xanadu itself, Class Counsel also found it to be highly suspicious:

- Class Counsel could not find *any* online presence whatsoever, including on the California Secretary of State's California Business Search website (https://www.sos.ca.gov/business-programs/business-entities). While there appears to be a "Xanadu Corporation" that incorporated in 1987, the address associated with that entity does not correspond to the addresses Corp Xanadu provided to Rust and the entities otherwise appear to be unrelated;

- In addition to not being able to verify that Corp Xanadu exists at all, Class Counsel could find no records of actual employees employed by it. No one appears to have worked for Corp Xanadu, which raises the question of how it could have had over 1,000 claimed tickets over the relevant period;

- Further, in investigating the alleged purchases, Class Counsel determined that Corp Xanadu's claimed Wilshire Boulevard address is not associated with any actually operating business but is instead a private rental mailbox inside "Wilshire Mailbox," which appears to be a generic notary and shipping center in Los Angeles (*see below*);



- Class Counsel also investigated the alternative address that Corp Xanadu provided and found that it is also not associated with any operating business, let alone one named Corp Xanadu. Corp Xanadu's alleged current Santa Monica Boulevard address is associated with a virtual mailbox provider, "Earth Class Mail" (*see below*);



- Alleged representatives or agents (including alleged counsel) have alternatively (and contradictorily) referred to the company as Xanadu Corp;

- Corp Xanadu appears to lack a true corporate email system, which would be unusual for an entity that had the capacity to make over a 1,000 transpacific travel purchases over the relevant period. For example, the email contact information provided in connection with Corp Xanadu's claim is "corpxanadu@phreakmail.com." This is highly unusual by itself;

- Corp Xanadu's phone number ((801) 823-1320) is associated with a landline in Ogden, Utah;

- Corp Xanadu "use" of an alleged foreign attorney (Karla Corea), residing in Nicaragua, is unusual; and

- Finally, the fact that Corp Xanadu's determination letter and check were both returned, along with the request for a reissued check to be sent elsewhere is itself worthy of investigation.

9. Given the preliminary findings above, on the evening of August 26, 2022, Class Counsel replied to Ms. Corea's email and included Mr. Roth, stating that they were investigating Corp Xanadu's claims. To facilitate validation of Corp Xanadu's claims, Class Counsel requested Ms. Corea and Mr. Roth provide Corp Xanadu's company formation documents showing that it is a bona fide company as well as Mr. Suica's availability by Zoom to discuss Corp Xanadu's business and claims to the settlements in this action. Class Counsel also followed up in this request on September 2, 2022.

10.   On September 6, 2022, Mr. Roth flatly refused Class Counsel's request. While Corp Xanadu offered to provide the Court "under seal, a copy of his identification to demonstrate that he is the person who submitted the claim" (Objs. at fn. 3), this does not facilitate Class Counsel and Rust's validation of Corp Xanadu's claims. Class Counsel and Rust's concerns are with the legitimacy of Corp Xanadu and its claim to the settlements in this action—not with the identification of the person who filed the claim.

11.   For the reasons set forth, *supra*, Plaintiffs are concerned Corp Xanadu may lack standing to object to the Motion. Class Counsel's investigation into the validity of Corp Xanadu's claims and Corp Xanadu itself—conducted after USPS returned Rust's check to Corp Xanadu as undeliverable with no forwarding address and upon receiving Ms. Corea's email threatening legal action—reveals that Corp Xanadu may not be a bona fide company and that Mr. Suica's Affidavit may be false. Class Counsel have sought verification of Corp Xanadu's proof of membership in at least one Settlement Class and have been repeatedly stymied.

12.   At this time, without the additional requested information, Class Counsel recommend denying Corp Xanadu's claim in full given the significant and substantial red flags regarding its claimed purchases. Class Counsel cannot verify Xanadu's alleged purchases, let alone verify that such a company even exists. To be clear, it is certainly possible that its claims are legitimate, but until Corp Xanadu can provide additional information, Class Counsel cannot recommend approving and paying this claim.

13.   Class Counsel requested attorneys' fees of 33%, and the Court granted 25%, in connection with the third and final round net settlement fund (*see* ECF Nos. 1307 at 1 (motion), ECF No. 1314 at 14 (order)). Even if the Court grants further attorneys' fees of $1 million, or 18.355%, from the remaining settlement funds of $5,448,087.41, this would only result in a fee award of 26.77% in connection with third and final round net settlement fund (*i.e.*, far less than the 33% noticed).

---

1  14. Attached hereto as Exhibit A is a true and correct copy of the primary email thread

2 between Class Counsel and Corp Xanadu's counsel since August 26, 2022 (which does not

3 include the emails below that Mr. Roth sent separately). This email thread also includes

4 correspondence between Rust and Corp Xanadu between October 11, 2021 and August 24, 2022

5 (*see* pages 6-11).

6  15. Attached hereto as Exhibit B is a true and correct copy of Mr. Roth's August 29,

7 2022 email on behalf of Corp Xanadu to Class Counsel.

8  16. Attached hereto as Exhibit C is a true and correct copy of the secondary email

9 thread between Class Counsel and Mr. Roth on behalf of Corp Xanadu between September 6,

10 2022 and September 9, 2022.

11  17. Exhibits A through C reflect all written communication between Class Counsel

12 and Corp Xanadu as of this filing.

13  18. I declare under penalty of perjury under the laws of the United States that the

14 foregoing is true and correct to the best of my knowledge.

15  Executed this 15th day of September 2022 in Burlingame, California.

          */s/ Elizabeth T. Castillo*
          Elizabeth T. Castillo

# EXHIBIT A

**Elizabeth Castillo**

| | |
|---|---|
| **From:** | Elizabeth Castillo |
| **Sent:** | Friday, September 2, 2022 5:00 PM |
| **To:** | Karla Corea; 'office@jarothlaw.com' |
| **Cc:** | Adam Zapala; Christopher L. Lebsock; Seth R. Gassman; Michael P. Lehmann; Haan, Ann; Botzet, Joel; Krause, Jace; info@airlinesettlement.com |
| **Subject:** | RE: TransPacific Airline Claim 0000144970 |
| **Attachments:** | RE: TransPacific Airline Claim 0000144970 |

Dear Counsel,

We are following up on our August 26, 2022 email below requesting Corp Xanadu's company formation documents and Mr. Suica's availability for a conference by Zoom, which will help facilitate the validation of Corp Xanadu's claim for 1,337 tickets to the settlements in *In re Transpacific Passenger Air Transportation Antitrust Litigation*. As you are aware, the Court ordered us to file the reply in support of our motion for a secondary distribution of the remaining settlement funds by September 12, 2022. Mr. Roth's August 29, 2022 email to me stated that he intended to respond to our August 26, 2022 email by the end of the week (*i.e.*, today) (*see attached*). If we do not hear from you shortly, Rust will not be able to validate your claim and respond to your request for a check re-issue.

Thank you,
Liz Castillo

Elizabeth T. Castillo (profile)

**COTCHETT PITRE & McCARTHY LLP**

A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE
840 Malcolm Road, Suite 200 | Burlingame, CA 94010
Phone: (650) 697-6000 | Fax: (650) 697-0577 | Email: ecastillo@cpmlegal.com

**CONFIDENTIALITY NOTICE**: This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

---

**From:** Elizabeth Castillo
**Sent:** Friday, August 26, 2022 8:05 PM
**To:** Karla Corea <k.corea@2-law.com>; office@jarothlaw.com
**Cc:** Adam Zapala <AZapala@cpmlegal.com>; Christopher L. Lebsock <clebsock@hausfeld.com>; Seth R. Gassman <sgassman@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Haan, Ann <ahaan@rustconsulting.com>; Botzet, Joel <jbotzet@rustconsulting.com>; Krause, Jace <KrauseJace@rustconsulting.com>; info@airlinesettlement.com
**Subject:** RE: TransPacific Airline Claim 0000144970

Dear Ms. Corea,

Thank you for emailing us regarding Corp Xanadu's claim no. 144970 to the settlements in *In re Transpacific Passenger Air Transportation Antitrust Litigation* earlier today. We immediately contacted the claims administrator, Rust Consulting, after receiving your email.

Rust confirmed that it sent the final determination letter to Corp Xanadu's address (5042 Wilshire Blvd #35581, Los Angeles, CA 90036) by USPS on September 22, 2021; <u>USPS returned this letter as undeliverable with no forwarding address</u>. Upon receiving an email from Carlos Suica on behalf of Corp Xanadu on October 11, 2021 indicating that Corp Xanadu did not receive a final determination letter and verifying that the Wilshire Boulevard address was correct, <u>Rust replied to that email and included the final determination letter in the body of the email</u>. On April 11, 2022, Rust mailed a check to Corp Xanadu's Wilshire Boulevard address by USPS; <u>again, USPS returned this letter as undeliverable with no forwarding address</u>. Pursuant to Rust's protocol on undeliverable mail, Rust sent all checks returned as undeliverable, including the check to Corp Xanadu, to Trace, which did not return a better or updated address for Corp Xanadu.

In conducting due diligence regarding Corp Xanadu's claim, we found that Corp Xanadu's Wilshire Boulevard address is associated with a private rental mailbox inside Wilshire Mailbox, a notary and shipping center in Los Angeles. You appear to be an attorney based in Nicaragua. Another attorney, John Allen Roth based in Pennsylvania, who purportedly represents Corp Xanadu, moved for leave to appear pro hac vice in the above-captioned action earlier today.

Rust is investigating the undeliverable mail issue with Corp Xanadu's Wilshire Boulevard address. <u>To ensure that we share Rust's findings with the right person, please let us know if we should be providing updates to you, Mr. Roth, or Mr. Suica.</u>

As Class Counsel, we are investigating Corp Xanadu's claim for 1,337 tickets, which contains no supporting documentation except a one-page affidavit signed by Mr. Suica. As you are aware, we have a duty to protect the interests of Settlement Class Members and ensure the distribution of settlement funds to eligible Settlement Class Members only. To facilitate our validation of Corp Xanadu's claim, (1) please send us Corp Xanadu's Articles of Incorporation and other such documents, including bylaws, demonstrating that it is a bona fide company. We ask for this information because, as you surely know, Corp Xanadu has almost no online presence; and (2) please provide a few days and time next week (*i.e.*, August 29, 2022 to September 2, 2022) that Mr. Suica is available for a conference by Zoom with us to discuss:

- Why USPS returned mail sent to Corp Xanadu's Wilshire Boulevard address on multiple occasions as undeliverable with no forwarding address;
- The nature of Corp Xanadu's business and its number of employees given Corp Xanadu's absence on the California Secretary of State's website and online generally; and
- More information regarding the airline tickets purchased that are referenced in Mr. Suica's October 2, 2020 Affidavit.

We look forward to hearing from you.

Liz Castillo

Elizabeth T. Castillo (profile)

**COTCHETT PITRE & McCARTHY LLP**
A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE
840 Malcolm Road, Suite 200 | Burlingame, CA 94010
Phone: (650) 697-6000 | Fax: (650) 697-0577 | Email: ecastillo@cpmlegal.com

**CONFIDENTIALITY NOTICE**: This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client

relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

---

**From:** Adam Zapala <AZapala@cpmlegal.com>
**Sent:** Friday, August 26, 2022 9:35 AM
**To:** Karla Corea <k.corea@2-law.com>
**Cc:** Christopher L. Lebsock <clebsock@hausfeld.com>; Michael P. Lehmann <mlehmann@hausfeld.com>; Seth R. Gassman <sgassman@hausfeld.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>
**Subject:** RE: TransPacific Airline Claim 0000144970

Karla,

I'm not even sure I understand your position. We are not obligated to send class notice out every time a distribution is contemplated. That is not what Rule 23 requires. Our motions for distribution were posted on the website. Claims determinations were communicated to individual class members. That said, I cannot comment further because I don't know the individual situation with your client's claim. What I can say is that we responded to your inquiry promptly by contacting the claims administrator to determine the background, if any, on this claim. When we have more information about the claim, we will let you know. Thanks.

Adam J. Zapala (Bio)
**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE**
840 Malcolm Road, Suite 200 | Burlingame, CA 94010
Tel: (650) 697-6000 | Fax: (650) 697-0577 | Email: azapala@cpmlegal.com

**CONFIDENTIALITY NOTICE**: This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

---

**From:** Karla Corea <k.corea@2-law.com>
**Sent:** Friday, August 26, 2022 9:31 AM
**To:** Adam Zapala <AZapala@cpmlegal.com>
**Subject:** RE: TransPacific Airline Claim 0000144970

Attorney Zapala:

Would class counsel consent change the response deadline for 10 days?

If stipulated, we would file a simple motion asking to modify the response times because we just learned of the pending motion for second distribution. If class counsel won't stipulate, we'll have to go into arguments about notification to the interested parties as to the pending motion.

Karla Corea, Esq.

------- Original Message -------
On Friday, August 26th, 2022 at 12:07 PM, Karla Corea <k.corea@2-law.com> wrote:

> Thank you for your response.  The "unilateral" deadline isn't mean to be inconvenient or demanding, but is because your motion for second distribution and additional attorney fees has a return date of August 22 and a reply date of August 29.  The only notice of this motion the class received was a posting on the website apparently on August 9, which a class member would have to literally be checking every day to receive notice and an opportunity to be heard.  Our client emailed the class administrators BEFORE you filed your motion and that email was NOT ANSWERED.  If they would have replied and advised that a motion was forthcoming, of course, it'd have been looked for.
>
> If you are willing to consent to an extension of these deadlines, we're happy to work with you on the time needed.  Otherwise, we feel the Court needs to be aware that there's an issue so it doesn't sign the Order considering the significant amount of money in this claim compared to what's left in the fund.
>
> Karla Corea, Esq.

------- Original Message -------
On Friday, August 26th, 2022 at 11:05 AM, Adam Zapala <AZapala@cpmlegal.com> wrote:

> Karla,
>
> We will look into your contentions, but your unilateral deadline that we resolve things in a matter of hours after contacting us is unreasonable.  I won't go into the other inaccuracies in your email.  But we will be in contact with the claims administrator to determine what is going on. Thank you.
>
> Adam J. Zapala (Bio)
>
> **COTCHETT PITRE & McCARTHY LLP**
> **A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE**
>
> 840 Malcolm Road, Suite 200  |  Burlingame, CA 94010
>
> Tel: (650) 697-6000  |  Fax:  (650) 697-0577  |  Email: azapala@cpmlegal.com
>
> **CONFIDENTIALITY NOTICE**:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.  The information is intended only for the use

of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

**From:** Karla Corea <k.corea@2-law.com>
**Sent:** Friday, August 26, 2022 12:07 AM
**To:** Adam Zapala <AZapala@cpmlegal.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>; mlehmann@hausfeld.com; clebsock@hausfeld.com
**Subject:** TransPacific Airline Claim 0000144970

You don't often get email from k.corea@2-law.com. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

We represent Corp. Xanadu which did not receive its payment for the above referenced claim. Despite the large amount, the claims administrator provided no notice to the client as to the status. The claims administrator ignored an email submitted in late July 2022.

You provided zero notice to the class other than a notice on your website of your motion for a second distribution along with attorney fees for yourselves.

You could have easily emailed class members and notified them of this pending motion. In addition, the claims administrator could have easily contacted our client if there was a delivery problem with their check.

If you will not resolve our clients claim today, our client will: (1) Appear in the action, (2) Ask to file an objection out of time, and (3) Object and APPEAL the failure to pay our cliient for their approved claim.

We need to hear from you by 3:00 p.m. Pacific Time or we must file the motion.

K. Corea, Esq.

Attorney for Corp. Xanadu

---------------

## determination letter?

To info@airlinesettlement.com on 2021-10-11 17:01

Details

```
Hello,

I am writing on behalf of Corp Xanadu.  Transpacific
settlement claim number 0000144970.
```

Shouldn't we have received a determination letter?  The settlement website refers to determination letters being sent prior to distribution of settlement payments.

We have not received ours.

The company's address as provided at the time of entering its claims remains active, which is:

Corp Xanadu
5042 Wilshire Blvd #35581
Los Angeles, CA 90036

If you could proceed and send the determination letter via reply email here, that would suffice.

Carlos Suica
Secretary

-------------------------------------------------------------------------------------

Thank you for your inquiry. Your letter was returned to us as "Return to Sender/Not Deliverable As Addressed/Mailbox closed or Unknown" by the USPS.

Below is a copy of the determination letter sent to you via USPS on August 24, 2021.

NOTICE OF CLAIM FINAL DETERMINATION for Class Member ID 146338

We have received and processed the Claim Form(s) that you filed in the Transpacific Airline Settlement along with any supporting documentation you may have provided at our request.  Upon reviewing the claim and purchase information provided below are the ticket counts that qualify for each of the settlement classes:

| Settlement Class | QualifiedTicketCount |
|---|---|
| JAL Settlement Class: | |
| Air France/Singapore Airlines/Vietnam Airlines Settlement Class: | |
| Thai Airways Settlement Class: | |
| Malaysian Air Settlement Class: | |
| Cathay Pacific Airways/Qantas Settlement Class: | |
| ANZ Settlement Class: | |
| EVA/China Airlines Settlement Class: | |
| PAL Settlement Class: | |
| Settlement Class III (passenger air transportation originating in the U.S. that included at least one segment to Asia/Oceania from a Defendant between January 1, 2000 and December 1, 2016 | |

7

3-ER-332

Japan Settlement Class (Fuel Surcharge):

*Satogaeri* Settlement Class:

<u>This letter is for informational purposes only</u> and you do not need to do anything in response.  The ticket totals
are the basis for calculating the settlement benefits for which you are entitled.  More information including the Settlement Class definitions is located on the website www.airlinesettlement.com.

Sincerely,

Settlement Administrator
Transpacific Air Settlement
P O Box 209
Faribault, MN 55021-1609
info

@
air
lin
es
ett
le
m
en
t.c
o
m

----------------------

# Re: determination letter?

To airlinesettlement on 2022-07-30 18:28

Details

Hello,

I write once again regarding Transpacific settlement claim
number 0000144970.

We still haven't received our settlement check.

We have now relocated our offices.  As such I will appreciate
it if you will send the company's settlement payment to the
following address:

Corp Xanadu
8605 Santa Monica Blvd #10287
West Hollywood, CA 90069

Please confirm receipt of this email and let me know when we
can expect to receive the payment.  Furthermore, please see
that the settlement check is payable ONLY to the name of the
company:  CORP XANADU -- and that no company officer's name is
included on the check.  Including a company officer's name
will make it a 2-party check and will make it much more
complicated for the company to negotiate the payment.

Sincerely,

Carlos Suica
Corp Xanadu

------------------------------

## Re: determination letter?



To <u>airlinesettlement</u> on 2022-08-24 09:34

<u>Details</u>

```
Hello,

I am not finding any reply from you regarding the below
reissue request.  Can you confirm if the settlement payment
was sent to the new address or if not when we might expect to
receive it?

Sincerely,

Carlos Suica
Corp Xanadu
```

# EXHIBIT B

## Elizabeth Castillo

| | |
|---|---|
| **From:** | J A Roth <jroth@jarothlaw.com> |
| **Sent:** | Monday, August 29, 2022 6:45 AM |
| **To:** | Elizabeth Castillo |
| **Subject:** | RE: TransPacific Airline Claim 0000144970 |

You don't often get email from jroth@jarothlaw.com. <u>Learn why this is important</u>

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Counsel:

We received your communication relating to the TransPacific matter. We just received this issue late last week and are reviewing various Ninth Circuit decisions to determine if this is being handled correctly from the viewpoint of a class member and whether this office will be handling the process or if local counsel will be retained.

Until we have a chance to thoroughly read the terms of the settlement and the opinions approving the same, and to determine what the client's rights and responsibilities are, we cannot at this time intelligently advise the client or respond to your request to engage in informal discovery. We hope to respond by the end of the week.

J. A. Roth, Esq.

# EXHIBIT C

**Elizabeth Castillo**

| | |
|---|---|
| **From:** | Adam Zapala |
| **Sent:** | Friday, September 9, 2022 10:48 AM |
| **To:** | Christopher L. Lebsock; Seth R. Gassman; Elizabeth Castillo |
| **Subject:** | FW: TransPacific Airline |

Adam J. Zapala (Bio)
**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE**
840 Malcolm Road, Suite 200 | Burlingame, CA 94010
Tel: (650) 697-6000 | Fax: (650) 697-0577 | Email: azapala@cpmlegal.com

**CONFIDENTIALITY NOTICE**: This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521. This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited. If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments. Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

**From:** J A Roth <jroth@jarothlaw.com>
**Sent:** Friday, September 9, 2022 10:45 AM
**To:** Adam Zapala <AZapala@cpmlegal.com>
**Subject:** RE: TransPacific Airline

This office is not aware of any fraud. Please provide evidence of any fraud so we may research it.

J. Roth, Esq.

------- Original Message -------
On Tuesday, September 6th, 2022 at 6:32 PM, Adam Zapala <AZapala@cpmlegal.com> wrote:

Dear Mr. Roth:

This email responds to the email that you sent to my partner, Elizabeth Castillo, set forth below.

1

Thank you for your email.  We are disappointed that you and your client have refused to provide further information validating your client's alleged purchases.  As you know, as Class Counsel, we have a duty to ensure that settlement funds are paid to claimants that made valid purchases.  Additional information has come to light, which suggests that your client may not have valid purchases, or at least may not have the level of purchases it averred to in a declaration under oath. This is precisely why we have asked for additional information. If you and your client are not willing to provide the additional information sought in order to validate Corp. Xanadu's claim, Rust and Class Counsel will not support distribution of any funds to your client, and we will advise the Court of potential concerns surrounding Corp. Xanadu's claim. We also want to alert you to the existence of California State Bar Formal Opinion No. 1996146, https://www.calbar.ca.gov/Portals/0/documents/ethics/Opinions/1996-146.htm, and ask that you satisfy yourself that you are in compliance with all ethical provisions that govern attorney conduct in the State of California.

With respect to your statement about Class Counsel's fee request, your contention is incorrect.  As an initial matter, Class Counsel are seeking their fee petition at the invitation of the Court.  Moreover, Class Counsel previously provided notice of its intended fee.  Please let us know if you reconsider your position. Thank you.

Adam J. Zapala (Bio)

**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE**

840 Malcolm Road, Suite 200  |  Burlingame, CA 94010

Tel: (650) 697-6000  |  Fax:  (650) 697-0577  |  Email: azapala@cpmlegal.com

**CONFIDENTIALITY NOTICE**:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender.   The information is intended only for the use of the individual or entity named above.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney-client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney-client relationship shall be created unless established in a separate, written retainer agreement or by court order.

**From:** Elizabeth Castillo <ecastillo@cpmlegal.com>
**Sent:** Tuesday, September 6, 2022 7:34 AM
**To:** Adam Zapala <AZapala@cpmlegal.com>; Christopher Lebsock <clebsock@hausfeldllp.com>; Seth Gassman <sgassman@hausfeldllp.com>
**Subject:** Fwd: TransPacific Airline

Sent from my iPhone

Begin forwarded message:

> **From:** J A Roth <jroth@jarothlaw.com>
> **Date:** September 6, 2022 at 12:21:08 AM PDT
> **To:** Elizabeth Castillo <ecastillo@cpmlegal.com>
> **Subject: RE: TransPacific Airline**
> **Reply-To:** J A Roth <jroth@jarothlaw.com>

You don't often get email from jroth@jarothlaw.com. Learn why this is important

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Dear Ms. Castilo:

Thank you for your email.

Considering the representations to the Court that your firm and Rust Consulting audited the claims and approved them, we decline to make the claimant available for any form of deposition relitigating the matter.

Your request for attorney fees without reasonable notice to the class violates Rule 23. Your plan to "redistribute" claimant funds to Class Counsel without sending an email to claimants whose checks were returned is objectionable. You have a 25% fail rate and have a duty to let the people know that their checks never made it to them, especially with many claimants being international. Not telling claimants their checks were returned constitutes fraudulent concealment.

You need to immediately withdraw your motion for an award of fees and first notify the class and all persons affected by your plan.  Reasonable notice would be at least an email to all class members about your fees.  Claimants who did not receive their checks should be emailed advising them how to request their funds before you seek to convert the funds into attorney fees.

We trust you understand this position.

J. A. Roth, Esq.

1  Kelly Overvold
2020 Pennsylvania Ave NW #407
2  Washington, DC 20006
202-556-5220
3  Kelly.overvold@gmail.com

4               **UNITED STATES DISTRICT COURT**

5             **NORTHERN DISTRICT OF CALIFORNIA**

6  IN RE: TRANSPACIFIC PASSENGER AIR         Case No.: 07-cv-05634-CRB
   TRANSPORTATION ANTITRUST LITIGATION
7

8                                            MDL No. 1913

9

10                                           OBJECTIONS TO THE MOTION FOR SECONDARY
                                             DISTRIBUTION OF REMAINING SETTLEMENT
11                                           FUNDS AND REQUEST FOR ATTORNEY FEES
                                             AND REIMBURSEMENT OF EXPENSES
12

13                                           (DOCKET ENTRY 1347)

14          Kelly Overvold ("Kelly") objects to the Motion for Secondary Distribution of Remaining

15  Settlement Funds and Request for Attorney Fees and Reimbursement of Expenses.

16  **BACKROUND FACTS:**

17          As this court is aware, the present litigation relates to airline tickets purchased for travel to

18  destinations in Asia and Oceanic locations.

19          According to Class Counsel, 16,216 checks were not cashed, of the 61,109 checks issued, an

20  amount just over twenty-six percent (26.54%) either never reached claimants or arrived after the void date on the

21  checks.

22          Rush Consulting states on their website, "Top Claims Administrators by Number of Settlements"

23  and "Top Claims Administrators by Aggregate Settlement Amount" and "With a decades-long history as a leading

24  class action settlement administrator, our experience includes 8,000 complex and time-sensitive projects of all sizes

25  and types."

26          Based on Rust Consulting's own admission they have a long history of administering claims and

27  knew or should have known that claimants addresses would change during the 7 year period in which claimants

28  (DOCKET ENTRY 1347) - 1

                            3-ER-344

1    were able to lodge claims. Claimants provided email addresses during the claim lodging processes which would lead

2    them to believe that Rust Consulting would advise them of updates or notice of issuance of checks to claimants.

3              Kelly's partner received his settlement check in May 2022 at 2020 Pennsylvania Ave NW #407,

4    Washington, DC 20006 and upon waiting an additional time, Kelly contacted the settlement administrator on May

5    31ˢᵗ 2022 to request a replacement check.

6              On June 1, 2022 Rust Consulting responded stating a new check would be issued within four (4)

7    to eight (8) weeks. The check that Rust Consulting sent was issued fifty-seven (57) days or eight (8) weeks and one

8    (1) day after the request was approved.

9              The check was not received until early September with a void date of August 30, 2022, the check

10   was received after it was already void, the letter did not have a post mark to show date the United States Post Office

11   received it, only a metered stamp.

12             Based on Rust Consulting's extensive knowledge of handling claims and settlements they knew or

13   should have known that sending checks with 34 days of validity places an undue burden on the claimant and counts

14   on the United States Postal Service to deliver mail in a timely manner, something the entire country was made aware

15   during the 2020 Presidential Election should not be counted on.

16             Rust Consulting failed to actively provide notice to claimants that checks had been disbursed and

17   provide notice of a date that if a check is not received to contact the Settlement Administrator by mail or email to

18   request a replacement check. In short, Rust Consulting failed to provide fair notice to claimants of the disbursement

19   of checks and failed to resolve issues in a quick and timely manner.

20   **<u>OBJECTOR:</u>**

21             Objector Kelly is an individual resident of Washington, DC, USA. Kelly filed a timely claim and

22   the claim was approved in this case based on her personal and family travel. Kelly never received her First

23   Distribution payment. Kelly was only made aware of the failure to receive this payment due to her partner receiving

24   his payment. Kelly emailed Rust Consulting to request a check to be reissued, Rust Consulting failed to reissue the

25   check in a timely manner, taking over eight (8) weeks to reissue the check, when Rust Consulting knew it was

26   placing a deadline of July 31ˢᵗ to stop issuing checks and had a deadline of August 31ˢᵗ as the void deadline for the

27   check. Kelly has notified Rust Consulting that her replacement check arrived after the void date and was told "The

28   deadline to request a reissue has passed. Payments that have passed the void date on the check are no longer being

(DOCKET ENTRY 1347) - 2

3-ER-345

accepted. We will mark your record that you have requested your payment to be reissued but there is no guarantee

that the payment will be reissued." This is not the fault of Kelly, it is the fault of the Class Counsel's failure to

properly provide notice to Class Members.

**DISCUSSION:**

I.       **CLASS COUNSEL AND RUST CONSULTING BREACHED THEIR FIDUCIARY**

**DUTY BY NOT NOTIFYING APPROVED CLAIMANTS THAT: (1) CHECKS**

**WOULD BE DISBURSED; (2) CHECKS HAD BEEN DISBURSED; (3) CHECKS HAD**

**BEEN RETURNED; and (4) CHECKS WERE NOT CASHED**

In this case, class members lodged claims between 2015 and 2019. There was no further

communication from Class Counsel or Rust Consulting as to updates. In 2022, Class Counsel filed a motion to

distribute funds to class members. A notice along with the motion was placed on the Airline Settlement website,

however, emails were not sent to class members notifying them that payments were to be distributed, to update their

addresses by a certain date to avoid returned payments, that checks had been distributed and a date in which if not

received that claimants should request a reissuance.

As a result of the lack of communication with class members, 16,216 checks either did not reach

the claimant, were not cashed, or were received after the void date written on the check, this is in excess of twenty-

six (26) percent.

With due respect to Class Counsel, it appears that it benefited Class Counsel to not provide proper

notification to claimants and Rust Consulting to not reissue checks in a timely manner as Class Counsel stands to

receive 30% of the remaining funds as attorney fees if this motion is approved.

For this reason alone, Class Counsel's motion should be denied pending Rust Consulting

contacting the 16,216 claimants that did not receive their funds and providing those claimants a way to update their

mailing address and to provide fair notification of disbursement.

**CONCLUSION:**

Based on the above, the motion for second distribution and attorney fees must be denied. Rust

Consulting must attempt to contact all claimants that did not receive or did not cash their check at the email

addresses provided when filing an approved claim. Those claimants should be allowed the opportunity to update

(DOCKET ENTRY 1347) - 3

1    their address to receive a reissued check and Rust Consulting must provide notice of the date the check is mailed and

2    a date in which if the reissued check is not received to contact the claims administrator for further assistance.

3

4

5

6

7            Dated 14 September 2022                    Respectfully submitted,

8

9                                                       _____

10                                                      Kelly Overvold
                                                        Objector
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(DOCKET ENTRY 1347) - 4

John Allen Roth, Esq.
Law Office of J. Allen Roth
805 Alexandria Street S.
Latrobe PA  15650
jroth@jarothlaw.com
(724) 686-8003

*Counsel for Objectors David
Gould and Xanadu Corp.
APPEARING PRO HAC VICE*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | ) Case No. 07-cv-05634-CRB |
| | ) |
| | ) MDL No. 1913 |
| | ) |
| | ) **OBJECTIONS TO THE MOTION** |
| | ) **FOR SECONDARY DISTRIBUTION** |
| | ) **OF REMAINING SETTLEMENT** |
| | ) **FUNDS AND REQUEST FOR** |
| | ) **ATTORNEY FEES AND** |
| | ) **REIMBURSEMENT OF EXPENSES** |
| | ) **(DOCKET ENTRY 1347)** |

Xanadu Corp. ("Xanadu") and David Gould ("Gould"), collectively "Objectors,", by and through their undersigned counsel, *pro hac vice,* objects to the Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorney Fees and Reimbursement of Expenses.

**BACKGROUND FACTS:**

As this Court is aware, the present litigation relates to airline tickets purchased for travel to destinations in Asia and Oceanic locations.  After making an initial distribution to claimants, Class Counsel now seeks to have the claims administrator, Rust Consulting, redistribute remaining funds to the class members, but wants to keep fifty-five percent (55%) of the funds to reward itself.  *See* Entry 1347.

According to Class Counsel, 44,893 checks were cashed, but 16,216 checks were not. In other words, over twenty-five percent (25%) of payments never reached the claimants. *Id.* Class Counsel does not elaborate on how many of these checks were returned and how many were simply too burdensome to the claimants to cash.[1]

Despite the claimants having lodged their claims between 2015 and 2019, neither Rust Consulting nor Class Counsel made any effort to notify claimants that checks issued to them were not delivered, were returned, or simply went uncashed. Of course, unless the claimants were actively checking the website published for this case, they would have had no knowledge to be on the lookout for checks.

Based on information from Class Counsel, instead of contacting the claimants at the email they provided, Rust Consulting simply ran the addresses through something called a "TRACE" Database. Common sense would be that the claimants would know their updated address better than a cryptic database. Email costs nothing, but notification to claimants that their funds never reached them most probably would eviscerate the fund leaving no attorney fees left for Class Counsel to take.

As to the motion for attorney fees, despite having all of the email addresses of the persons who submitted claims in this case, the only notice of the pending motion was a post on the English version of litigation website dated August 9, 2022. Neither Rust Consulting nor Class Counsel posted a notice on the Chinese or Japanese version of the website. The language

---

[1] Considering that this case involved Asia and Oceania destinations, many claimants reside overseas. Banks in international locations often charge a clearing fee for foreign checks. Unlike more modern litigations, Rust Consulting offered no electronic payment for these claimants unless they wrote in and asked.

issue probably would not have changed the outcome because its unlikely that class members, especially foreign claimants with small claims, check the website often. An email, however, would provide fair notice.

A final problem exists, also apparently to avoid paying approved claims which would lower the amount of money reasonably earmarked for Class Counsel's desire to convert the fund to its own property as attorney fees: Class Counsel are attempting to relitigate the final determination of approved claims.

### **OBJECTORS**

Objector Gould is an individual resident in Taiwan, with a business address in Costa Rica. He travels throughout Asia frequently. Gould filed a claim in this case based on his personal, family, and business travel. Gould received his payment from the First Distribution. Gould's payment on the second distribution would be affected by the Class

Objector Xanadu is an enterprise. It filed a timely claim. Its claim was approved. The Post Office returned Xanadu's check.. However, Rust Consulting did not reach out to Xanadu. Xanadu had to complain to Rust Consulting, and the check was purportedly reissued. However, the Post Office returned the check as well. When Xanadu inquired again, Rust Consulting ignored it. Xanadu retained counsel and when the issue fell upon Class Counsel, they decided to attempt to relitigate the claim. They want to depose the claimant, have explanations for the travel given, and receive corporate records. This may have all been appropriate during the claims auditing process; however, now it appears to be a ruse to increase the amount of money available to Class Counsel. Specifically, when Class

Counsel looked at the claim, they noticed that Xanadu claimed 800 tickets in the Japan Settlement Class which, unlike the $.05 per ticket paid to ANZ claimants, Xanadu's approved claim provided over $700 per ticket. This is not the fault of Xanadu, it is the fault of Class Counsel's poor noticing to Class Members and attrition during the Third Round of this litigation. If Xanadu is paid, the numbers Class Counsel submitted to this Court change and its request for attorney fees would seem even more outrageous considering the large number of claimants who never received their checks.

**DISCUSSION**

I. **CLASS COUNSEL AND RUST CONSULTING BREACHED THEIR FIDUCIARY DUTY BY NOT NOTIFYING APPROVED CLAIMANTS THAT: (1) CHECKS WOULD BE DISBURSED; (2) CHECKS WERE RETURNED; and (3) CHECKS WERE NOT CASHED.**

In this case, class members lodged their claims from 2015 through 2019. Years passed without class members hearing anything. In 2022, Class Counsel filed its motion to distribute funds. While a notice along with the motion was placed on the website, emails were not sent to class members suggesting they be on the lookout for their payment or that they should update their address if it changed.

As a result of the lack of communication with class members, 16,216 checks either did not reach their destination or were not cashed. That is a fail rate in excess of 25%.

In most litigations, the claims administrator notifies the claimants when a check is returned or not cashed. However, in this case, Class Counsel did not direct Rust Consulting to send a simple email to the 16,216 people who did not receive their money.

With all due respect, the reason appears obvious:  Class Counsel seeks approval to take over 30% of the remaining funds as attorney fees without giving the class members any notification of their request.  There simply exists no incentive to disperse the remaining funds to their rightful owner when Class Counsel want the money for themselves.

For this reason alone, Class Counsel's motion should be denied. Rather than allow Class Counsel to redistribute the funds, the claims administrator must be directed to notify the claimants who did not receive payment how to update their address.

## II.     CLASS COUNSEL AND RUST CONSULTING NEED TO ESCHEAT UNCLAIMED FUNDS

Regardless of the terms and conditions of the prior distribution orders and the settlement agreements, any redistribution of funds without escheating domestic claimants' money violates public policy and is unlawful. Every state maintains a requirement that abandoned or uncashed checks be escheated if they exceed a certain amount, usually $25.00. *See* Table B. Those statutory schemes also have requirements that the stakeholder attempt to contact the person who did not cash their check.  Rust Consulting and Class Counsel maintain a fiduciary duty to comply with these laws with respect to claimants in the United States.

## III.    CLASS COUNSEL MUST PROVIDE REASONABLE NOTICE TO ALL KNOWN CLASS MEMBERS OF ITS REQUEST FOR ATTORNEY FEES

Class Counsel seeks $3,000,000 of $5,448,087, which is 55% of the remaining funds.  As stated above, these are not simply leftover funds, but funds that never reached the claimants who were approved.

Rule 23(h) governs requests for attorney fees. There exists a strict notification process when Class Counsel seeks fees. Rule 23(h)(1) explains, "Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." *See also Stair v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008).

Rule 23(h)(2) explains that, "A class member, or a party from whom payment is sought, may object to the motion." Of course, without being aware of the motion, class members cannot object.

Simply put, Class Counsel is required to submit their basis for attorneys' fees well before objections are due so that the class has a full and fair opportunity to address the claims made. *In re Mercury Interactive Corp. Secs. Litig.*, 618 F.3d 988 (9th Cir. 2010). Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." Id. at 993-94.

Posting notice of the motion less than two weeks before objections are due on a website that class members have not checked for years– and not providing any update on the Japanese or Chinese versions of the website simply does not constitute a "reasonable manner.". On the contrary. in a case like this one, where the claims administrator has the email and postal address of every class member who filed a claim, the "reasonable manner" would be at least by email to the majority of members who provided it, and postal mail to the few members who did not.

Because Class Counsel violated Rule 23(h)(1) and (2), this Court should deny the motion for attorney fees without prejudice until: (1) All

persons whose checks were returned or uncashed are notified and given an opportunity to claim their funds; (2) All domestic claimants that cannot be reached, over $25, have their funds escheated to the appropriate state agency; and (3) Class Counsel provides a notice of its motion for attorney fees to class members who filed a claim by email, and in the case that no email exists in the records, via postal mail.

## IV. CLASS COUNSEL CANNOT RELITIGATE APPROVED CLAIMS

In the case of objector Xanadu, it has an approved claim.[2] *See* Exhibit A. As explained in the *Declaration of Joel K. Botzet*, Entry 1322-1, paragraph 15, business that filed claims of less than 1,000 tickets were not audited. In Xanadu's case, the claims administrator indeed audited the claim. "Rust reviewed all responses supplied by the claimants from the 'Request for More Information' letters and determined responses to be acceptable support for the number of tickets claimed if any of the following documentation was provided:  a. Receipts showing ticket purchases; b. Cancelled checks; c. Credit card statements; d. Travel itineraries; e. Email confirmation of ticket purchases; and/or f. Affidavit or declaration attesting that the number of tickets claimed is accurate." *Id.* at 18. Rust then passed the responses through a "Quality Assurance" review. *Id* at 20.

Now, decades after the ticket purchases occurred, years after the claims were submitted, and over one year since the issuance of Xanadu's *Notice of Claim Final Determination*, Class Counsel wants to completely audit and relitigate the approved claim because the claimant's postal mail was returned and the claimant wanted the check reissued.

---

[2] This is different than the case of the *Chekian* claim, which was a denied claim, but the claimant asked Rust to accept an audit response because he did not receive notice of the audit. This objection is based on *approved* claims that Class Counsel seeks to relitigate.

Class Counsel would not be requesting to audit the claimant's approved claim if it was a different ticket class, valued a small amount of money. However, Class Counsel obviously sees that the claimant submitted his claim under the class of tickets that paid over $200 or over $700 per ticket on a *pro rata* basis resulting in a large claim that will eat into the requested attorney fees.

In this case, strict deadlines existed to submit claims. Financial Recovery Services, a corporation that purchased 82 claims that were excluded from the distribution, objected and sought to have its clients' claims reviewed and approved. *See* Entry 1323. Class Counsel vehemently objected based on the time involved, the cost to the class, and the amount of money to litigate the matter. Class Counsel argued that "a cutoff date is essential and at some point the matter must be terminated." *See* Entry 1324, page 11. Class Counsel argued that "the legal system relies on deadlines to function." *Id.* This Court agreed and would not allow the late litigation of the claims. *See* Entry 1327. This Court concurred that the time of "six to nine months" required to administer review would be prejudicial. In this case, relitigating the approved claim will result in longer time periods because the imminent appeal will take more than that time.

The same factors that apply to a late claimant should apply to any attempt by class counsel to relitigate its own final determination. That is, the factors in *In re: Orthopaedic Bone Screw Prods. Liab. Litig.*, 246 F3d 315, 321 (3d Cir. 2001), cited at page 2 of this Court's opinion at Entry 1327, should apply. First, there exists prejudice to the claimant of which Class Counsel is determined to relitigate and deny the claim. It is extremely

difficult, if not impossible, to provide any form of evidence decades later that will convince Class Counsel to pay claimants instead of themselves. Second, the length of the delay is unreasonable. Claimant submitted his claim four years ago, it was approved over one year ago in a "final determination." There is no reason for the delay except that Class Counsel saw a threat to their attorney fees motion. Finally, Class Counsel did not act in good faith. They wrote the policies that Rust used to accept the claims and now they simply want to treat claimants who did not receive their checks differently.

In the present case, Class Counsel alleged no extrinsic fraud that prevented an audit earlier. On the contrary, business claimants with less than 1,000 tickets at all received no audit– even if they were high value tickets. There exists no reason that the claimant should have to relitigate the approved claim at this juncture.[3]

There exists no reason to treat the objector-claimant differently than the other claimants who went through Rust Consulting's process. Rust did not ask for this additional information, but Class Counsel did since it could affect their attorney fees.

In the present case, there is nothing that can be submitted that will satisfy Class Counsel. While the claim was approved pursuant to the policies set up by Rust Consulting and Class Counsel, now Class Counsel has a financial interest in the outcome of the claim. They want to disprove the claim to increase the pot of funds available for attorney fees and justify a second distribution. Claimants, on the other hand, after receiving the Notice

---

[3] The claimant will provide this Court, under seal, a copy of his identification to demonstrate that he is the person who submitted the claim. In addition, the payment can be made by wire transfer to the company name so that there is no question that the recipient will receive the funds.

of Final Determination, have no reason to keep their records. These companies are mostly defunct as the ticket purchases occurred decades ago. Nothing new can be submitted

Class counsel must demonstrate that "they would prosecute the case in the interest of the class...rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011). Here, the incentive is 55% attorney fees that might have to be altered as a result of claims that class counsel seeks to relitigate at this late stage.

There exists no assertion that some form of extrinsic fraud occurred. Class Counsel and Rust Consulting had no interest in litigating the claim prior to it being approved in a "final" determination. They had the opportunity to fully and fairly litigate the assertions provided in response to the audit. They chose not to. Now, a year and a half after they approved the claim, they wish to reopen the matter at this late stage.

This Court should not allow any relitigation of approved claims for class members at this late stage.

**<u>CONCLUSION</u>**

Based on the above, the motion for second distribution and attorney fees must be denied. Rather, several things need to happen. First, all approved claimants who submitted claims but did not receive or cash their check must be contacted via email by Rust Consulting and given an opportunity to update their address or receive an electronic payment. Second, any domestic claims that are subject to escheat laws that still are

not distributed must be turned over to the appropriate state authority.
Third, Class Counsel can resubmit their motion for attorney fees after
notifying all class members who submitted a claim via email, with a postal
mail notice to the few class members that did not provide an email, and
providing an opportunity to object pursuant to Rule 23(h)(1) and (2).  Finally,
Class Counsel should not relitigate approved claims.

Respectfully submitted,

*/s/ J. Allen Roth, Esq.*

_____

J. Allen Roth, Esq.

COUNSEL FOR OBJECTORS
DAVID GOULD AND XANADU
*PRO HAC VICE)*

**_EXHIBIT A_**

NOTICE OF CLAIM FINAL DETERMINATION for Class Member ID 146338

 We have received and processed the Claim Form(s) that you filed in
the Transpacific Airline Settlement along with any supporting
documentation you may have provided at our request. Upon reviewing the
claim and purchase information provided below are the ticket counts
that qualify for each of the settlement classes:

Settlement  Class
         Qualified        Ticket  Count

JAL Settlement Class:
 72
 Air France/Singapore Airlines/Vietnam Airlines Settlement Class:
 537
 Thai Airways Settlement Class:
 537
 Malaysian Air Settlement Class:
 72
 Cathay Pacific Airways/Qantas Settlement Class:
 72
 ANZ Settlement Class:
 1874
 EVA/China Airlines Settlement Class:
 944
 PAL Settlement Class:
 1874
Settlement Class III (passenger air transportation originating in the
U.S. that included at least one segment to Asia/Oceania from a
Defendant between January 1, 2000 and December 1, 2016):
 1816
Japan Settlement Class (Fuel Surcharge):
  800
 _Satogaeri _Settlement Class:

 This  letter  is for    informational  purposes      only and you
do not need to do anything in response. The ticket totals are the
basis for calculating the settlement benefits for which you are
entitled.  More information including the Settlement Class definitions
is located on the website www.airlinesettlement.com [1].

Sincerely,
Settlement Administrator
Transpacific Air Settlement
PO Box 2209
Faribault, MN 55021-1609

EXHIBIT B – ESCHEAT STATUTES GOVERNING UNCASHED CHECKS

| State | Statutory Citation for Unclaimed Property | Statutory Citation for General Presumption of Abandoned Property | Statutory Citation for Escheat Provisions |
|---|---|---|---|
| Alabama | Ala Code §35-12-70 et seq. | Ala Code §35-12-72 | Ala Code §43-6-2 et seq. |
| Alaska | Alaska Stat. §34.45.010 et seq. | Alaska Stat. §34.45.110 | Alaska Stat. §13.12.105 |
| Arizona | Ariz. Rev. Stat. Ann. §44-301 et seq. | Ariz. Rev. Stat. Ann. §44-302 | Ariz. Rev. Stat. Ann. §14-2105 |
| Arkansas | Ark. Stat. Ann. §18-28-201 et seq. | Ark. Stat. Ann. §18-28-202 | Ark. Stat. Ann. §28-13-101 et seq. |
| California | Cal. Civ. Proc. Code §1500 et seq. | Cal. Civ. Proc. Code §1511 et seq. | Cal. Civ. Proc. Code §1410 et seq. and §1440 et seq. |

| | | | |
|---|---|---|---|
| Colorado | Colo. Rev. Stat. §38-13-101 et seq. | Colo. Rev. Stat. §38-13-103 | Colo. Rev. Stat. §15-12-914 |
| Connecticut | Conn. Gen. Stat. §3-56a et seq. | Conn. Gen. Stat. §3-57a – §3-64a | Conn. Gen. Stat. §3-63a |
| Delaware | Del. Code Ann. tit. 12, §1130 et seq. | Del. Code Ann. tit. 12, §1170 | Del. Code Ann. tit. 12, §1101 et seq. |
| District of Columbia | D.C. Code Ann. §41-101 et seq. | D.C. Code Ann. §41-103 | D.C. Code Ann. §19-701 |
| Florida | Fla. Stat. §717.001 et seq. | Fla. Stat. §717.102 | Fla. Stat. §716.01 et seq. |
| Georgia | Ga. Code §44-12-190 et seq. | Ga. Code §44-12-193 – §44-12-209 | Ga. Code §52-3-50 et seq. |

3-ER-361

| | | | |
|---|---|---|---|
| Guam | | | Guam Code Ann. tit. 15, §1201 et seq. |
| Hawaii | Hawaii Rev. Stat. §523A-1 et seq. | Hawaii Rev. Stat. §523A-3 | Hawaii Rev. Stat. §532-14 |
| Idaho | Idaho Code §14-501 et seq. | Idaho Code §14-502 | Idaho Code §14-113 |
| Illinois | Ill. Rev. Stat. ch. 765, §1026/15-101 et seq. | Ill. Rev. Stat. ch. 765, §1026/15-201 | Ill. Rev. Stat. ch. 755, §20/0.01 et seq. |
| Indiana | Ind. Code §32-34-1-1 et seq. | Ind. Code §32-34-1-20 | Ind. Code §29-1-17-12 |
| Iowa | Iowa Code §556.1 et seq. | Iowa Code §556.2 – 556.9 | Iowa Code §633.543 et seq. |

3-ER-362

| | | | |
|---|---|---|---|
| Kansas | Kan. Stat. Ann. §58-3934 et seq. | Kan. Stat. Ann. §58-3935 | Kan. Stat. Ann. §59-901 et seq. |
| Kentucky | Ky. Rev. Stat. §393A.010 et seq. | Ky. Rev. Stat. §393A.040 et seq. | Ky. Rev. Stat. §393.010 et seq. |
| Louisiana | La. Rev. Stat. Ann. §9:151 et seq. | La. Rev. Stat. Ann. §9:154 | La. Civil Code Art. 902 |
| Maine | Me. Rev. Stat. Ann. tit. 33, §1951 et seq. | Me. Rev. Stat. Ann. tit. 33, §1953 | Me. Rev. Stat. Ann. tit. 18A, §2-105 |
| Maryland | Md. Commercial Law Ann. §17-101 | Md. Commercial Law Ann. §17-301 – 17-308 | Md. Estates and Trusts §3-105 |
| Massachusetts | Mass. Gen. Laws. Ann. ch. 200A, §1 et seq. | Mass. Gen. Laws. Ann. ch. 200A, §1A – 6C | Mass. Gen. Laws. Ann. ch. 200A, §1 et seq. |

3-ER-363

| Michigan | Mich. Comp. Laws §567.221 et seq. | Mich. Comp. Laws §567.223 – §567.237 | Mich. Comp. Laws §700.2105 |
| --- | --- | --- | --- |
| Minnesota | Minn. Stat. §345.01 et seq. | Minn. Stat. §345.31 – §345.39 | Minn. Stat. §524.2-105 |
| Mississippi | Miss. Code Ann. §89-12-1 et seq. | Miss. Code Ann. §89-12-5 – §89-12-19 | Miss. Code Ann. §89-11-1 et seq. |
| Missouri | Mo. Rev. Stat. §447.010 et seq. | Mo. Rev. Stat. §447.505 – §447.536 | Mo. Rev. Stat. §470.010 et seq. |
| Montana | Mont. Code Ann. §70-9-801 et seq. | Mont. Code Ann. §70-9-803 | Mont. Code Ann. §72-14-101 et seq. |
| Nebraska | Neb. Rev. Stat. §69-1301 et seq. | Neb. Rev. Stat. §69-1302 – §69-1309 | Neb. Rev. Stat. §30-2305 |

| State | | | |
|---|---|---|---|
| Nevada | Nev. Rev. Stat. §120A.010 et seq. | Nev. Rev. Stat. §120A.500 | Nev. Rev. Stat. §154.010 et seq. |
| New Hampshire | N.H. Rev. Stat. Ann. §471:C-1 et seq. | N.H. Rev. Stat. Ann. §471:C-2 – 471:C-18 | N.H. Rev. Stat. Ann. §561:10 |
| New Jersey | N.J. Rev. Stat. §46:30B-1 et seq. | N.J. Rev. Stat. §46:30B-7 | N.J. Rev. Stat. §3B:22-25 et seq. |
| New Mexico | N.M. Stat. Ann. §7-8A-1 et seq. | N.M. Stat. Ann. §7-8A-2 | N.M. Stat. Ann. §45-2-105 |
| New York | N.Y. Abandoned Property Law §101 et seq. | N.Y. Abandoned Property Law §300 – §1317 | N.Y. Abandoned Property Law §200 et seq. |
| | | N.C. Gen. Stat. §116B-53 | N.C. Gen. Stat. §116B-1 et seq. |

| | | | |
|---|---|---|---|
| North Carolina | N.C. Gen. Stat. §116B-51 et seq. | | |
| North Dakota | N.D. Cent. Code §47-30.1-01 et seq. | N.D. Cent. Code §47-30.1-02 | N.D. Cent. Code §30.1-04-05 |
| Ohio | Ohio Rev. Code Ann. §169.01 et seq. | Ohio Rev. Code Ann. §169.02 | Ohio Rev. Code Ann. §2105.07 |
| Oklahoma | Okla. Stat. tit. 60, §651 et seq. | Okla. Stat. tit. 60, §651.1 – §659 | Okla. Stat. tit. 87, §271 et seq. |
| Oregon | Or. Rev. Stat. §98.005 et seq. | Or. Rev. Stat. §98.308 – §98.342 | Or. Rev. Stat. §112.055 |
| Pennsylvania | Pa. Stat. tit. 72, §1301.1 et seq. | Pa. Stat. tit. 72, §1301.2 – §1301.10 | Pa. Stat. tit. 27, §11 et seq. |
| | | P.R. Code tit. 7, §2103 | |

| Puerto Rico | P.R. Code tit. 7, §2101 et seq. | | P.R. Code tit. 7, §2104 |
|---|---|---|---|
| Rhode Island | R.I. Gen. Laws §33-21-1 et seq. | R.I. Gen. Laws §33-21.1-2 | R.I. Gen. Laws §33-21.1-1 et seq. |
| | R.I. Gen. Laws §33-21.1-1 et seq. | | |
| South Carolina | S.C. Code Ann. §27-18-10 et seq. | S.C. Code Ann. §27-18-30 – §27-18-175 | S.C. Code Ann. §27-19-10 et seq. |
| South Dakota | S.D. Codified Laws Ann. §43-41B-1 et seq. | S.D. Codified Laws Ann. §43-41B-2 | S.D. Codified Laws Ann. §29A-2-105 |
| Tennessee | Tenn. Code Ann. §66-29-101 et seq. | Tenn. Code Ann. §66-29-104 – §66-29-112 | Tenn. Code Ann. §31-6-101 et seq. |
| Texas | | Tex. Property Code Ann. §72.101 | Tex. Property Code Ann. §71.001 et seq. |

| | Tex. Property Code Ann. §72.001 et seq. | Tex. Property Code Ann. §73.101 | |
| --- | --- | --- | --- |
| Utah | Utah Code Ann. §67-4a-101 et seq. | Utah Code Ann. §67-4a-201 | Utah Code Ann. §75-2-105 |
| Vermont | Vt. Stat. Ann. tit. 27, §1241 et seq. | Vt. Stat. Ann. tit. 27, §1242 | Vt. Stat. Ann. tit. 14, §681 et seq. |
| Virginia | Va. Code §55.1-2500 et seq. | Va. Code §55.1-2501 | Va. Code §55.1-2400 et seq. |
| Virgin Islands | V.I. Code §28, §651 et seq. | V.I. Code §28, §653 | V.I. Code §15, §121 et seq. |
| Washington | Wash. Rev. Code §63.29.010 et seq. | Wash. Rev. Code §63.29.20 | Wash. Rev. Code §11.08.101 et seq. |
| | | W. Va. Code §36-8-2 | W. Va. Code §42-1-3c |

| West Virginia | W. Va. Code §36-8-1 et seq. | | |
|---|---|---|---|
| Wisconsin | Wis. Stat. §177.01 et seq. | Wis. Stat. §177.02 | Wis. Stat. §863.39 |
| Wyoming | Wyo. Stat. §34-24-101 et seq. | Wyo. Stat. §34-24-103 – §34-24-117 | Wyo. Stat. §2-4-101 |

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Classes*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

3-ER-370

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, the Honorable Charles R. Breyer will determine whether to hold a hearing or decide a civil matter on the papers. Plaintiffs are available for hearing should the Court find it appropriate. Through this motion, Plaintiffs seek entry of an order authorizing a secondary distribution of the remaining settlement funds, additional claims administration expenses, and further attorneys' fees and reimbursement of expenses in connection with settlement administration. Plaintiffs' motion is based on this Notice of Motion and Motion; the accompanying Memorandum of Points and Authorities in support thereof; the Declaration of Joel K. Botzet, a representative from the Court-appointed claims administrator, Rust Consulting, Inc. ("Botzet Decl."); the Declaration of Elizabeth T. Castillo ("Castillo Decl."); a proposed order; the Court's files and records in this matter; and such other matters as the Court may consider.

Dated: August 8, 2022                                  Respectfully submitted,

/s/ Elizabeth T. Castillo                              /s/ Christopher L. Lebsock
Adam J. Zapala (245748)                                Michael P. Lehmann (77152)
Elizabeth T. Castillo (280502)                         Christopher L. Lebsock (184546)
**COTCHETT, PITRE & McCARTHY, LLP**                    Seth R. Gassman (311702)
840 Malcolm Road                                       **HAUSFELD LLP**
Burlingame, CA 94010                                   600 Montgomery Street, Suite 3200
Phone: (650) 697-6000                                  San Francisco, CA 94111
Fax: (650) 697-0577                                    Phone: (415) 633-1908
azapala@cpmlegal.com                                   Fax: (415) 358-4980
ecastillo@cpmlegal.com                                 mlehmann@hausfeld.com
                                                       clebsock@hausfeld.com
                                                       sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs and the Classes*

---

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement    1
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

# TABLE OF CONTENTS

                                                                                    Page

I.    INTRODUCTION ...........................................................................................1

II.   BACKGROUND ............................................................................................1

      A.    Further Post-Distribution Accounting................................................1

      B.    Mr. Chekian's Claims ........................................................................2

      C.    Rust's Claims Administration Budget ...............................................3

      D.    Class Counsel's Lodestar and Expenses Since August 1, 2019 ...........3

            1.    Motion Practice........................................................................4

            2.    Settlement Administration Work ..............................................5

            3.    Unreimbursed Expenses...........................................................5

III.  ARGUMENT ................................................................................................5

      A.    A Secondary Distribution of the Remaining Settlement Funds Is Feasible and
            Appropriate ........................................................................................6

      B.    Class Counsel's Request for Reimbursement of Claims Administration and
            Litigation Expenses Is Justified ........................................................7

            1.    Rust's Expenses .......................................................................8

            2.    Class Counsel's Expenses........................................................8

      C.    Class Counsel's Request for Additional Attorneys' Fees Is Appropriate..............9

IV.   CONCLUSION............................................................................................12

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB                                              i

3-ER-372

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bank of Am. Corp. Sec. Litig.*,
   No. 4:99-MD-1264-CEJ, 2015 WL 3440350 (E.D. Mo. May 28, 2015) ....................... 10

*In re BankAmerica Corp. Sec. Litig.*,
   775 F.3d 1060 (8th Cir. 2015) ................................................................. 10

*Camberis v. Ocwen Loan Servicing LLC*,
   No. 14-CV-02970-EMC, 2018 WL 6068999 (N.D. Cal. Nov. 20, 2018) ................... 5, 6

*Corzine v. Whirlpool Corp.*,
   No. 15-cv-05764-BLF, 2019 WL 7372275 (N.D. Cal. Dec. 31, 2019) ........................... 9

*In re Diamond Foods, Inc., Sec. Litig.*,
   No. 11-CV-05386-WHA, 2015 WL 12942208 (N.D. Cal. Dec. 14, 2015) ..................... 7

*Harris v. Marhoefer*,
   24 F.3d 16 (9th Cir. 1994) ......................................................................... 7

*Hester v. Vision Airlines, Inc.*,
   No. 2:09-CV-00117-RLH, 2017 WL 4227928 (D. Nev. Sept. 22, 2017) ...................... 6

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009) ........................................................... 6

*In re Ins. Brokerage Antitrust Litig.*,
   297 F.R.D. 136 (D.N.J. 2013) ..................................................................... 6

*Jones, et al. v. CertifiedSafety, Inc.*,
   No. 17-02229 (N.D. Cal. Feb. 15, 2022), ECF No. 237 .................................... 7

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 4:13-md-02420-YGR, 2019 WL 3856413 (N.D. Cal. Aug. 16, 2019) ................... 7

*In re Media Vision Tech. Sec. Litig.*,
   913 F. Supp. 1362 (N.D. Cal. 1995) ............................................................. 7

*Mehling v. N.Y. Life Ins. Co.*,
   248 F.R.D. 455 (E.D. Pa. 2008) ................................................................. 6

*In re MRRM, P.A.*,
   404 F.3d 863 (4th Cir.2005) ..................................................................... 10

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

ii

3-ER-373

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................. 7

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................. 9

*In re Oracle Sec. Litig.*,
   131 F.R.D. 688 (N.D.Cal.1990) ......................................................................... 9

*In re PaineWebber Ltd. P'ships Litig.*,
   999 F. Supp. 719 (S.D.N.Y. 1998) .................................................................. 10

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
   281 F. Supp. 3d 833 (N.D. Cal. 2017) ............................................................... 9

*Schulein, et al., v. Petroleum Dev. Corp., et al.*,
   No. 8:11-cv-01891-JVS-AN (C.D. Cal. Mar. 14, 2016) ................................... 7

*Vincent v. Hughes Air West, Inc.*,
   557 F.2d 759 (9th Cir. 1977) ............................................................................. 7

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ........................................................................... 9

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Prods. Liab. Litig.*,
   746 F. App'x. 655 (9th Cir. 2018) ...................................................................... 9

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

iii

3-ER-374

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Should the Court authorize a secondary distribution of the remaining settlement funds to settlement class members who cashed their checks and who would receive a minimum payment of $10 from the secondary distribution?

2.      Should the Court authorize additional claims administration expenses by Rust Consulting, Inc. ("Rust") and reimbursement of incurred litigation expenses by Class Counsel?

3.      Should the Court award further attorneys' fees in connection with settlement administration from the remaining settlement funds?

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

iv

3-ER-375

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

At the July 6, 2022 hearing on claimant Michael Chekian's motion for additional time to provide supporting documentation for his claims (ECF No. 1339), the Court granted Mr. Chekian's motion and ordered him to provide the required documentation by September 30, 2022 (ECF No. 1343). The Court also (1) directed Plaintiffs to hold back $46,878.87 for Mr. Chekian in the event that he provides supporting documentation for his claims by September 30, 2022; (2) invited Plaintiffs to move for attorneys' fees and reimbursement of expenses incurred in connection with settlement administration; (3) ordered Plaintiffs to proceed with a secondary distribution of the remaining settlement funds; and (4) inquired about a potential *cy pres* distribution. Hr'g Tr. at 9:12-16 (Jul. 6, 2022). Plaintiffs hereby submit this motion pursuant to the Court's instructions at the hearing.

## II.    BACKGROUND

### A.    Further Post-Distribution Accounting

On April 7, 2022, Plaintiffs submitted a Post-Distribution Accounting pursuant to various orders[1] and this District's Procedural Guidance for Class Action Settlements (ECF No. 1333). The Post-Distribution Accounting provided, *inter alia*, that Plaintiffs distributed the net settlement funds to qualifying settlement class members on March 17, 2022; that the net settlement funds were $104,388,254.38; that the initial distribution was $104,387,320.59 due to rounding to the nearest cent when calculating the *pro rata* share per qualified claim; and that the check void date was June 15, 2022. *Id.* at 1, 3. Plaintiffs could not provide the number and value of uncashed checks when they submitted the Post-Distribution Accounting because the check void date had not passed yet. *Id.* at 3. Plaintiffs stated they would provide a further

---

[1] *See* Order Granting Plaintiffs' Motion to Distribute Settlement Funds and Overruling Objection (ECF No. 1327); Order Granting Plaintiffs' Administrative Motion to Extend Deadline to Distribute Net Settlement Funds (ECF No. 1329); Order Granting Plaintiffs' Administrative Motion to Correct Declaration of Joel Botzet Re: Claims Administration and Distribution of Net Settlement Funds (ECF No. 1331).

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

1

3-ER-376

recommendation as to whether a secondary redistribution of the remaining settlement funds, or a *cy pres* award, is appropriate once the check void date passed. *Id.* at 3-4.

Given the pendency of Mr. Chekian's objection (ECF Nos. 1334, 1339), Plaintiffs continued to permit Class Members to cash checks after the check void date of June 15, 2022. Hr'g Tr. at 7:8-10 (Jul. 6, 2022). In anticipation of proceeding with a secondary distribution pursuant to the Court's order, however, Rust stopped permitting Class Members to cash checks as of July 31, 2022. Botzet Decl. ¶ 4.[2] As of this filing, the number and value of checks cashed or assumed cashed were 44,893 and $98,939,233.18, respectively. *Id.* ¶ 6. The number and value of uncashed checks were 16,216 and $5,448,087.41, respectively. *Id.* The total amount of the remaining settlement funds available is therefore $5,448,087.41 before subtracting the hold back for Mr. Chekian (*see infra*). *Id.*

**B.    Mr. Chekian's Claims**

Pursuant to the Court's order at the July 6, 2022 hearing on Mr. Chekian's motion for additional time to provide supporting documentation, Rust held back $46,878.87 for Mr. Chekian from the remaining settlement funds—the maximum amount for which he would qualify if he provides adequate supporting documentation for all of his claimed qualifying tickets by September 30, 2022. Botzet Decl. ¶ 7. Rust will review all supporting documentation provided by Mr. Chekian and make a final determination on his claim after that date. *Id.* ¶ 8. Class Counsel will provide an update to the Court regarding the final determination on Mr. Chekian's claims. Castillo Decl. ¶ 3.

After holding back $46,878.87 for Mr. Chekian pursuant to the Court's order, the amount of the remaining settlement funds is $5,401,208.54. Botzet Decl. ¶ 9.

---

[2] Certain Class Members asked Rust to re-issue checks for various reasons since distribution occurred (*e.g.*, they did not receive checks, they moved abroad). *Id.* ¶ 5. The re-issued checks have void dates in the future. *Id.* For purposes of calculating the remaining settlement funds available for a secondary distribution, Rust assumes these Class Members have cashed their re-issued checks. *Id.*

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB                                                                2

3-ER-377

### C.   Rust's Claims Administration Budget

Class Counsel engaged a recognized expert in class action claims administration, Rust, for purposes of administering claims to the settlements (*see*, *e.g.*, ECF No. 1297 at 13). Class Counsel and Rust developed, and the Court approved, the plan of allocation and claim forms for each of the three rounds of settlements (*see*, *e.g.*, ECF No. 1306). Rust estimated, and the Court authorized, claims administration expenses totaling $1,770,593 to date.[3]

Rust anticipates incurring additional expenses of $125,921.00 in connection with the secondary distribution, which includes administration costs (*i.e.*, settlement website, toll-free number, distribution and tax reporting, distribution inquiry support, fees, and expenses), and a *cy pres* distribution, if necessary, at the end of the litigation. Botzet Decl. ¶ 10. Rust expects that settlement administration through the secondary distribution and any *cy pres* distribution will take six months, which includes time for account reconciliation and communications with Class Members. *Id.* ¶ 11.

### D.   Class Counsel's Lodestar and Expenses Since August 1, 2019

Class Counsel last moved for attorneys' fees and reimbursement of expenses in connection with the All Nippon Airways Ltd., Co. ("ANA") settlement on August 8, 2019 (ECF No. 1307). Taking into account the Court's attorneys' fees award on the ANA net settlement fund (ECF No. 1314 at 14) along with its previous fee awards in this litigation, Class Counsel's unreimbursed lodestar was $10,987,873.85 for work performed from March 28, 2008 through July 31, 2019, which amounts to a negative multiplier of -0.75. Castillo Decl. ¶ 17. Since moving for attorneys' fees and reimbursement of expenses on August 8, 2019, Class Counsel's unreimbursed lodestar and expenses have only increased. *Id.*

With respect to straight lodestar, Class Counsel have collectively spent 617.9 hours or collectively incurred a lodestar of $341,935.50 from August 1, 2019 through July 31, 2022. *Id.* ¶

---

[3] The Court authorized Plaintiffs to pay claims administration expenses to Rust from the settlement funds. *See* ECF Nos. 948-3 at 2, 1009 at 2 ($599,083 from the first round of settlements); 1130-3, 1252 at 2 ($771,510 from the second round of settlements); 1307-2 at ¶¶ 83-86, 1314 at 2 ($400,000 from the third round of settlements).

6, 10, Exs. A-B. Class Counsel has vetted this lodestar and excluded any time relating to administrative tasks or matters unrelated to claims administration. *Id.* Class Counsel also anticipates incurring additional lodestar through the secondary distribution proposed *infra*; a *cy pres* distribution, if necessary; any further motion practice by Mr. Chekian, including an appeal; and a further notice of post-distribution accounting. *Id.* ¶ 7. Class Counsel will not seek further attorneys' fees in this litigation after this motion. *Id.* Class Counsel provides a summary of their vetted lodestar as follows:

### 1. <u>Motion Practice</u>

Class Counsel has engaged in motion practice to ensure the accurate and timely processing of claims and to guarantee the fair and reasonable distribution of net settlement funds across settlement class members. Castillo Decl. ¶ 8. Class Counsel's motion practice since August 1, 2019 include:

- Moving for and receiving authorization to distribute the net settlement funds;
- Filing post-distribution accounting to comply with the Court's orders and this District's Procedural Guidance for Class Action Settlements;
- Moving for scheduling changes when complications in the claims process arose;
- Reviewing and responding to Financial Recovery Services' ("FRS'") letter to the Court seeking to submit late claims and retroactively apply supporting documentation to late and deficient claims;
- Reviewing and responding to FRS's objection to the distribution of the net settlement funds;
- Reviewing and responding to Mr. Chekian's motion to allow his claim; and
- Reviewing and responding to Mr. Chekian's motion for an extension to provide supporting documentation for his claims. *Id.*

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

4

3-ER-379

## 2. Settlement Administration Work

In addition to motion practice, Class Counsel has been actively overseeing and collaborating with Rust on settlement administration, as the Court would expect. Castillo Decl. ¶ 9. Class Counsel's settlement administration tasks since August 1, 2019 include:

- Weekly or monthly meetings with Rust to discuss the status of claims processing and myriad issues raised by various claimants, including third-party filers with large claims;
- Reviewing and editing deficiency, audit, and final determination letters;
- Providing updates for the settlement website (www.airlinesettlement.com) and toll-free number (1-800-439-1781); and
- Corresponding with claimants, such as businesses like FRS and individuals like Mr. Chekian. *Id.*

## 3. Unreimbursed Expenses

With respect to expenses, Class Counsel collectively incurred unreimbursed expenses of $4,876.85 from August 1, 2019 through July 31, 2022. Castillo Decl. *Id.* ¶ 11, 13, Exs. C-D. These expenses relate to the storage of documents through the final termination of this action, including any appeals, pursuant to the protective order (ECF No. 404); legal research; service of documents; and administrative costs, such as photocopies, postage, and mileage reimbursement. *Id.* Class Counsel anticipates incurring additional expenses through the end of the litigation but will not seek reimbursement of these expenses after this motion. *Id.* ¶ 12.

## III. ARGUMENT

Through this motion, Plaintiffs seek (1) authorization for a secondary distribution of the remaining settlement funds; (2) authorization for reimbursement of Rust's additional claims administration expenses and Class Counsel's further litigation expenses; and (3) an award of attorneys' fees for work performed in connection with claims administration and settlement distribution.

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

5

3-ER-380

## A. A Secondary Distribution of the Remaining Settlement Funds Is Feasible and Appropriate

"Federal courts have broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Camberis v. Ocwen Loan Servicing LLC*, No. 14-CV-02970-EMC, 2018 WL 6068999, at *3 (N.D. Cal. Nov. 20, 2018) (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir. 1990)). A secondary distribution provides class members an additional opportunity to claim the remaining uncashed settlement funds. *See Camberis*, 2018 WL 6068999, at *3 (citing *Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (noting that "as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'")). "[R]edistribution of unclaimed class action funds to existing class members is proper and preferred" because it "ensures that 100% of the [settlement] funds remain in the hands of class members" and because "class settlements rarely 'pay individual class members the full value of their claims[.]'" *Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at *2 (D. Nev. Sept. 22, 2017) (quoting William B. Rubenstein, <u>Newberg on Class Actions</u>, § 12.30 (5th ed. 2015)).

Because there are sufficient funds available to perform a secondary distribution, Plaintiffs recommend that the Court authorize a secondary distribution to settlement class members who cashed their checks and who would receive a minimum payment of $10 from the secondary distribution. Botzet Decl. ¶ 14. A secondary distribution ensures that as much of the remaining settlement funds as possible are paid to settlement class members. *Id.* The inclusion of a guaranteed minimum payment will encourage settlement class members to cash their checks by alleviating any concern that doing so would not be worthwhile. *Id.* Courts have repeatedly approved class action settlements featuring minimum settlement payments for class members. *See, e.g.*, *In re Ins. Brokerage Antitrust Litig.*, 297 F.R.D. 136, 143 (D.N.J. 2013) ($10 minimum); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 498 (S.D.N.Y. 2009) ($10 minimum); *Mehling v. N.Y. Life Ins. Co.*, 248 F.R.D. 455, 463-64 (E.D. Pa. 2008) ($50 minimum).

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

6

3-ER-381

Depending on the amounts that the Court authorizes for Rust's additional claims administration expenses and Class Counsel's attorneys' fees and reimbursement of expenses, the amount of the remaining settlement funds available for a secondary distribution is up to $5,401,208.54 (*i.e.*, the amount of the remaining settlement funds less the hold back for Mr. Chekian). Botzet Decl. ¶ 9. If there are any further remaining settlement funds after the secondary distribution, Plaintiffs assume such funds will be economically infeasible to distribute and will propose an appropriate *cy pres* recipient with approval from the Court after the check void date for this secondary distribution and final resolution of Mr. Chekian's claims. Castillo Decl. ¶ 5.

### B.    Class Counsel's Request for Reimbursement of Claims Administration and Litigation Expenses is Justified

Courts reimburse attorneys prosecuting class claims on a contingent basis for "reasonable expenses that would typically be billed to paying clients in non-contingency matters," *i.e.*, costs like claims administration which are "incidental and necessary to the effective representation of the Class." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1048 (N.D. Cal. 2008); *see also Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 773 (9th Cir. 1977). Reimbursable costs include, *inter alia*, those for consultants, service of process, transcripts, computer research, photocopies, postage, and telephone/fax. *In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1995).

Furthermore, courts in this Circuit have authorized the payment of additional claims administration expenses to the claims administrator post-distribution. *See* Stipulation and Order Regarding Uncashed Check Funds ¶ 18*, Jones, et al. v. CertifiedSafety, Inc.*, No. 17-02229 (N.D. Cal. Feb. 15, 2022), ECF No. 237 (authorizing payment to claims administrator for additional services arising from the reissuance of checks from the remaining amount of uncashed checks); *In re Diamond Foods, Inc., Sec. Litig.*, No. 11-CV-05386-WHA, 2015 WL 12942208, at *1 (N.D. Cal. Dec. 14, 2015) (authorizing payment to claims administrator for additional services above the amount previously authorized by the court in connection with the administration and distribution of the settlement fund); *In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-

---

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

7

3-ER-382

02420-YGR, 2019 WL 3856413, at *9 (N.D. Cal. Aug. 16, 2019), *vacated in part*, No. 19-16855, 2020 WL 1481643 (9th Cir. Jan. 30, 2020), and *aff'd*, 853 F. App'x 56 (9th Cir. 2021) (unpublished) (same); Civ. Min. – General § 2.2, *Schulein, et al., v. Petroleum Dev. Corp., et al.*, No. 8:11-cv-01891-JVS-AN (C.D. Cal. Mar. 14, 2016), ECF No. 315 (same).

### 1.   <u>Rust's Expenses</u>

Here, the Court previously authorized claims administration expenses to Rust totaling $1,770,593. *See, supra*, at 3, fn. 3. Rust anticipates incurring additional expenses of $125,921.00. Botzet Decl. ¶ 10. The additional expenses relate to Rust's anticipated work through the secondary distribution proposed *supra* and a *cy pres* distribution, if necessary, at the end of the litigation. *Id.* The Corrected Declaration of Joel K. Botzet (ECF No. 1330-1) in support of Plaintiffs' Motion for Authorization to Distribute Net Settlement Funds (ECF No. 1322) details Rust's claims administration work leading up to the initial distribution. Exhibit A to the Botzet Declaration submitted herewith itemizes Rust's anticipated claims administration expenses through the end of the litigation. Botzet Decl., Ex. A.

Rust's additional claims administration expenses of $125,921.00, which include the anticipated expenses of effectuating a secondary distribution and *cy pres* distribution, are reasonable given these expenses represent under 2.5% of remaining settlement funds. *Id.* ¶ 12. Plaintiffs request the Court to authorize Rust's additional claims administration expenses from the remaining settlement funds.

### 2.   <u>Class Counsel's Expenses</u>

Class Counsel requests reimbursement of out-of-pocket litigation expenses of $4,876.85 from August 1, 2019 through July 31, 2022 that were reasonably and necessarily incurred and for which they have not been previously reimbursed. Castillo Decl. ¶ 11. In summary, these expenses relate to the storage of documents through the final termination of this action, including any appeals, pursuant to the protective order (ECF No. 404); legal research; service of documents; and administrative costs, such as photocopies, postage, and mileage reimbursement. *Id.* Class Counsel provides a breakdown of the expenses in Exhibits C-D to the Castillo Declaration. *Id.*,

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

8

3-ER-383

1  Exs. C-D. Class Counsel anticipates incurring additional expenses through the end of the litigation
2  but will not seek reimbursement of those expenses after this motion. *Id.* ¶ 12.

3      **C.**    **Class Counsel's Request for Additional Attorneys' Fees Is Appropriate**

4          Courts in the Ninth Circuit award fees in common fund cases under either the "percentage-
5  of-recovery" method or the "lodestar" method. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047
6  (9th Cir. 2002). However, "the primary basis of the fee award remains the percentage method,"
7  with the lodestar used "as a cross-check on the reasonableness of a percentage figure." *Id.* at 1050,
8  n.5. This Court followed the percentage-of-the-recovery method in awarding fees for the prior
9  three rounds of settlements (ECF Nos. 1009, 1252, 1314). Regardless of which method is chosen,
10  the Ninth Circuit encourages "a cross-check using the other method." *In re Online DVD-Rental*
11  *Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015).

12          Courts in this District have awarded attorneys' fees for class counsel's post-settlement
13  work—including hours that will be spent in the future. *See In re Volkswagen "Clean Diesel"*
14  *Mktg., Sales Practices, and Prods. Liab. Litig.*, 746 F. App'x. 655, 659 (9th Cir. 2018) (holding
15  that "[t]he district court did not err in including projected time in its lodestar cross-check; the
16  court reasonably concluded that class counsel would, among other things, defend against appeals
17  and assist in implementing the settlement"); *Reyes v. Bakery & Confectionery Union & Indus.*
18  *Int'l Pension Fund*, 281 F. Supp. 3d 833, 856 (N.D. Cal. 2017) (including "125 anticipated future
19  hours" to be spent on "communicating with the settlement administrator and responding to
20  inquiries from class members" in the lodestar calculation); *Corzine v. Whirlpool Corp.*, No. 15-
21  cv-05764-BLF, 2019 WL 7372275, at *11 (N.D. Cal. Dec. 31, 2019) (including "an estimate of
22  250 hours for future work to complete Settlement's claims process through 2026" in the lodestar
23  calculation). These district courts ultimately granted attorneys' fees based on a percentage of the
24  settlement fund that included anticipated post-settlement work to assess the reasonableness of the
25  percentage calculation. *Clean Diesel*, 746 F. App'x at 659; *Reyes*, 281 F. Supp. 3d at 861;
26  *Corzine*, 2019 WL 7372275, at *12; *see also In re Oracle Sec. Litig.*, 131 F.R.D. 688, 692
27  (N.D.Cal.1990) ("[I]t is inherently illogical for lawyers to undertake litigation on the basis of the

28

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement     9
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

3-ER-384

risks and rewards they perceive at the beginning, yet be compensated on the basis of the risks and rewards the *court* perceives at the end of the litigation.").

Similarly, other courts outside of this District have found that post-settlement legal work and monitoring is a compensable activity for which counsel is entitled to a reasonable fee. *In re BankAmerica Corp. Sec. Litig.*, 775 F.3d 1060, 1068 (8th Cir. 2015). In fact, courts around the country have awarded attorneys' fees consistent with this rationale. *See, e.g., In re Bank of Am. Corp. Sec. Litig.*, No. 4:99-MD-1264-CEJ, 2015 WL 3440350, at *2 (E.D. Mo. May 28, 2015) (awarding attorneys' fees for class counsel's post-settlement work, including two additional rounds of distribution, in light of the "extraordinary complexity and length of the post-settlement proceedings."); *In re PaineWebber Ltd. P'ships Litig.*, 999 F. Supp. 719, 725 (S.D.N.Y. 1998) (awarding multiplier of lodestar for future benefits including claims administration); *In re MRRM, P.A.*, 404 F.3d 863, 869 (4th Cir. 2005) (allocating part of the fee award to post-settlement work in recognizing that counsel "continues to perform significant services on behalf of the class").

Class Counsel understand their fiduciary duty to look after the best interests of class members and have carried out that duty throughout the 12 years of active litigation and the almost three years of post-settlement administration work. Consequently, post-settlement, Class Counsel have engaged in extensive motion practice to ensure the accurate and timely processing of claims and to guarantee the fair and reasonable distribution of net settlement funds across settlement class members. *See, supra,* at § II(D)(1); Castillo Decl. ¶ 8 (listing Class Counsel's post-settlement motion practice work). Class Counsel have also been actively overseeing and collaborating with Rust on claims administration and settlement distribution. *See, supra,* at § II(D)(2); Castillo Decl. ¶ 9 (listing Class Counsel's settlement administration work).

In the nearly three years post-settlement, Class Counsel have expended 617.9 hours or incurred a lodestar of $341,935.50 from August 1, 2019 through July 31, 2022. Castillo Decl. ¶ 6. Class Counsel have vetted this lodestar to ensure that it only includes work related to claims administration and settlement distribution. *Id.* Class Counsel provides their total hours and lodestar, computed at historical rates, from August 1, 2019 through July 31, 2022 as Exhibits A

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

10

3-ER-385

and B to the Castillo Declaration. *Id.*, Exs. A-B. Class Counsel anticipates incurring additional lodestar through the secondary distribution proposed *supra*; a *cy pres* distribution, if necessary, at the end of the litigation; any further motion practice by Mr. Chekian, including an appeal; and a further notice of post-distribution accounting. *Id.* ¶ 7. Class Counsel will not seek further attorneys' fees in this litigation. *Id.* Class Counsel asks the Court to award attorneys' fees of $1 million, or 18.355%, from the remaining settlement funds of $5,448,087.41. *Id.* ¶ 14. This request for attorneys' fees in connection with claims administration and settlement distribution is modest and reasonable—not only in the context of the remaining settlements funds but in the context of the substantial work performed by Class Counsel over the last 15 years and the substantial monetary benefit to the class. As background, Class Counsel has received a cumulative negative multiplier of -0.75 based on work performed through July 31, 2019. *Id.* ¶ 16. Class Counsel's unreimbursed lodestar was $10,987,873.85 for work performed through July 31, 2019. *Id.* Since August 1, 2019, Class Counsel's unreimbursed lodestar and expenses have only increased through final approval, claims administration, and motion practice. *Id.*

The additional $1 million in attorneys' fees would result in a cumulative negative multiplier of -0.77 based on work performed through July 31, 2022—and less than that if the Court takes into consideration Class Counsel's anticipated work through the secondary distribution, *cy pres* distribution, potential further motion practice by Mr. Chekian, and a further post-distribution accounting. *Id.* ¶ 17. This means for each lodestar dollar that Class Counsel reasonably expended on the litigation, Class Counsel would only receive up to 77 cents. *Id.* Class Counsel's unreimbursed lodestar would be $10,329,809.36 for work through July 31, 2022 and more than that through the end of this litigation. *Id.*

Regardless of the amount of the attorneys' fees and reimbursement of costs and expenses that the Court may award, there will be sufficient funds available to perform a secondary distribution of the remaining settlement funds to settlement class members who cashed their checks and who would receive a minimum payment of $10 from the secondary distribution. The

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB — 11

3-ER-386

following table outlines the allocation of the remaining settlement funds if the Court grants all the requested relief in this motion:

|  | Amount | Percent of Remaining Net Settlement Funds |
|---|---|---|
| Remaining Settlement Funds | $5,448,087.41 | 100% |
| Holdback for Mr. Chekian | $46,878.87 | 0.860% |
| Additional Claims Administration Expenses | $125,921.00 | 2.311% |
| Reimbursement of Litigation Expenses | $4,876.85 | 0.090% |
| Further Attorneys' Fees | $1,000,000.00 | 18.355% |
| Total Amount of Secondary Distribution | $4,270,410.69 | 78.384% |

As the table above shows, if the Court grants all the relief requested in this motion, over 78% of the remaining settlement funds will return to the pockets of qualified settlement class members. Castillo Decl. ¶ 4.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) authorize additional claims administration expenses by Rust and reimbursement of incurred litigation expenses by Class Counsel, (2) award further attorneys' fees in connection with settlement administration, and (3) authorize a secondary distribution of the remaining settlement funds less the holdback of $46,878.87 for Mr. Chekian, less any additional claims administration expenses for Rust and reimbursement of litigation expenses for Class Counsel authorized by the Court, and less any further attorneys' fees awarded by the Court.


Dated: August 8, 2022                          Respectfully submitted,

/s/ Elizabeth T. Castillo                      /s/ Christopher L. Lebsock
Adam J. Zapala                                 Michael P. Lehmann
Elizabeth T. Castillo                          Christopher L. Lebsock
COTCHETT, PITRE & McCARTHY, LLP                Seth R. Gassman
840 Malcolm Road                               HAUSFELD LLP
Burlingame, CA 94010                           600 Montgomery Street, Suite 3200

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB                12

3-ER-387

Phone: (650) 697-6000                    San Francisco, CA 94111
Fax: (650) 697-0577                      Phone: (415) 633-1908
                                         Fax: (415) 358-4980

*Co-Lead Counsel for Plaintiffs and the Classes*

Plaintiffs' Notice of Motion and Motion for Secondary Distribution of Remaining Settlement   13
Funds and Request for Attorneys' Fees and Reimbursement of Expenses;
MDL No. 1913; Case No. 3:07-cv-05634-CRB

3-ER-388

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB |
| | MDL No. 1913 |
| **This Document Relates To:** | **DECLARATION OF JOEL K. BOTZET IN SUPPORT OF PLAINTIFFS' MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |
| **ALL ACTIONS** | |

Declaration of Joel K. Botzet in Support of Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

I, JOEL K. BOTZET, declares and states that:

1.        I am a Program Manager for Rust Consulting, Inc. ("Rust"), the Court-appointed Claims Administrator for the class action Settlement in this case. My business address is 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402-2469. My business telephone number is 612-359-2035. I am authorized to make this declaration on behalf of Rust.

2.        Rust has extensive experience in class action matters, having provided settlement administration services in class action lawsuits affecting millions of class members in cases involving employment, consumers, banking and financial services, property, insurance, securities, and products liability, among its more than 8,000 projects.

3.        Except as otherwise stated, I am fully familiar with and have personal knowledge of the matters stated in this declaration and am competent to testify about them if called upon to do so. I submit this declaration to provide the Court and the parties to the above-captioned action with information regarding Rust's claims administration work.

**A.        Further Post-Distribution Accounting**

4.        In anticipation of proceeding with a secondary distribution pursuant to the Court's order, Rust stopped permitting Class Members to cash checks as of July 31, 2022.

5.        Rust notes, however, that certain Class Members asked Rust to re-issue checks for various reasons since distribution occurred on March 17, 2022 (*e.g.*, they did not receive checks, they moved abroad). The re-issued checks have void dates in the future. For purposes of calculating the remaining settlement funds available for a secondary distribution, Rust assumes these Class Members have cashed their re-issued checks.

6.        As of this filing, the number and value of checks cashed or assumed cashed were 44,893 and $98,939,233.18, respectively. The number and value of uncashed checks were 16,216 and $5,448,087.41, respectively. The total amount of the remaining settlement funds available is therefore $5,448,087.41 before subtracting the hold back for Mr. Chekian (*see infra*).

---

**B.    Mr. Chekian's Claims**

7.    Pursuant to the Court's order at the July 6, 2022 hearing on Mr. Chekian's motion for additional time to provide supporting documentation, Rust held back $46,878.87 for Mr. Chekian from the remaining settlement funds—the maximum amount for which he would qualify if he provides adequate supporting documentation for all of his claimed qualifying tickets by September 30, 2022.

8.    Rust will review all supporting documentation provided by Mr. Chekian and make a final determination on his claim after that date.

9.    After holding back $46,878.87 for Mr. Chekian pursuant to the Court's order, the amount of the remaining settlement funds is approximately $5,401,208.54.

**C.    Rust's Claims Administration Budget**

10.    Rust anticipates incurring additional expenses of $125,921.00 in connection with the secondary distribution and a *cy pres* distribution, if necessary, at the end of the litigation. The additional expenses include administration costs in connection with the settlement website, toll-free number, distribution and tax reporting, distribution inquiry support, fees (*e.g.*, project management), and expenses (*e.g.*, post office box rental).

11.    Rust expects that claims administration through the secondary distribution and any *cy pres* distribution will take six months, which includes time for account reconciliation and communications with Class Members.

12.    Rust's additional claims administration expenses are reasonable given these expenses represent under 2.5% of remaining settlement funds of approximately $5,401,208.54.

13.    A true and correct copy of Rust's proposal for claims administration work through the end of the litigation is attached hereto as Exhibit A.

**D.    Proposed Secondary Distribution**

14.    Because there are sufficient funds available to perform a secondary distribution, Rust recommends that the Court authorize a secondary distribution to settlement class members

---

Declaration of Joel K. Botzet; MDL No. 1913; Case No. 3:07-cv-05634-CRB          2

who cashed their checks and who would receive a minimum payment of $10 from the secondary distribution. A secondary distribution ensures that as much of the remaining settlement funds as possible are paid to settlement class members. The inclusion of a guaranteed minimum payment will encourage settlement class members to cash their checks by alleviating any concern that doing so would not be worthwhile.

15.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 5th day of August 2022 in Minneapolis, Minnesota.

_____
Joel K. Botzet

# EXHIBIT A



*Transpacific Air*
**Distribution Phase II**
**August 3, 2022**

<span style="color:red">**CLASS ACTION NOTICE AND SETTLEMENT SERVICES**</span>

Number of Payments                                13,960

**Administration Costs**
  Website                                         $8,200
  Call Center                                     10,922
  Distribution and Tax Reporting                  52,449
  Distribution Inquiry Support                     9,600
  Fees                                            41,250
  Expenses                                         3,500

  **Total Project Cost**                       **$125,921**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF PLAINTIFFS' MOTION FOR SECONDARY DISTRIBUTION OF REMAINING SETTLEMENT FUNDS AND REQUEST FOR ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES** |

Declaration of Elizabeth T. Castillo in Support of Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses; MDL No. 1913; Case No. 3:07-cv-05634-CRB

I, ELIZABETH T. CASTILLO, declares and states that:

1. I am an attorney duly licensed to practice law in California and admitted to practice in this Court. I am an attorney with Cotchett, Pitre & McCarthy, LLP, Co-Lead Counsel for the Plaintiffs and the Classes ("Class Counsel"). The matters described herein are based on my personal knowledge and, if called as a witness, I could and would testify competently thereto. I make this declaration pursuant to 28 U.S.C. § 1746.

2. I make this declaration in support of Plaintiffs' Plaintiffs' Motion for Secondary Distribution of Remaining Settlement Funds and Request for Attorneys' Fees and Reimbursement of Expenses.

A.    **Further Post-Distribution Accounting**

3. Class Counsel will provide an update to the Court regarding the final determination on Mr. Chekian's claims.

4. If the Court grants all the relief requested in this motion, over 78% of the remaining settlement funds will return to the pockets of qualified settlement class members.

5. If there are any further remaining settlement funds after the secondary distribution, Plaintiffs assume such funds will be economically infeasible to distribute and will propose an appropriate *cy pres* recipient with approval from the Court after the check void date for this secondary distribution and final resolution of Mr. Chekian's claims.

B.    **Class Counsel's Lodestar and Expenses Since August 1, 2019**

6. With respect to straight lodestar, Class Counsel have collectively spent 617.9 hours or collectively incurred a lodestar of $341,935.50 from August 1, 2019 through July 31, 2022. Class Counsel has vetted this lodestar and excluded any time relating to administrative tasks or matters unrelated to claims administration.

7. Class Counsel anticipates incurring additional lodestar through the proposed secondary distribution; a *cy pres* distribution, if necessary; any further motion practice by Mr.

---

Chekian, including an appeal; and a further notice of post-distribution accounting. Class Counsel will not, however, seek further attorneys' fees in this litigation after this motion.

### 1. Motion Practice

8.    Class Counsel has engaged in motion practice to ensure the accurate and timely processing of claims and to guarantee the fair and reasonable distribution of net settlement funds across settlement class members. Class Counsel's motion practice since August 1, 2019 include:

- Moving for and receiving authorization to distribute the net settlement funds;
- Filing post-distribution accounting to comply with the Court's orders and this District's Procedural Guidance for Class Action Settlements;
- Moving for scheduling changes when complications in the claims process arose;
- Reviewing and responding to FRS's letter to the Court seeking to submit late claims and retroactively apply supporting documentation to late and deficient claims;
- Reviewing and responding to FRS's objection to the distribution of the net settlement funds;
- Reviewing and responding to Mr. Chekian's motion to allow his claim; and
- Reviewing and responding to Mr. Chekian's motion for an extension to provide supporting documentation for his claims.

### 2. Settlement Administration Work

9.    In addition to motion practice, Class Counsel has been actively overseeing and collaborating with Rust on settlement administration, as the Court would expect. Class Counsel's settlement administration tasks since August 1, 2019 include:

- Weekly or monthly meetings with Rust to discuss the status of claims processing and myriad issues raised by various claimants, including third-party filers with large claims;
- Reviewing and editing deficiency, audit, and final determination letters;
- Providing updates for the settlement website (www.airlinesettlement.com) and toll-free number (1-800-439-1781); and

---

- Corresponding with claimants, such as businesses like FRS and individuals like Mr. Chekian.

10.    True and correct copies of Class Counsel's vetted hours and lodestar, computed at historical rates, from August 1, 2019 through July 31, 2022, are attached hereto as Exhibits A (Cotchett, Pitre & McCarthy, LLP) and B (Hausfeld LLP).

### 3.    Unreimbursed Expenses

11.    With respect to expenses, Class Counsel collectively incurred unreimbursed expenses of $4,876.85 from August 1, 2019 through July 31, 2022 that were reasonably and necessarily incurred and for which they have not been previously reimbursed. These expenses relate to the storage of documents through the final termination of this action, including any appeals, pursuant to the protective order (ECF No. 404); legal research; service of documents; and administrative costs, such as photocopies, postage, and mileage reimbursement.

12.    Class Counsel anticipates incurring additional expenses through the end of the litigation but will not seek reimbursement of these expenses after this motion.

13.    True and correct copies of Plaintiffs' vetted unreimbursed expenses from August 1, 2019 through July 31, 2022 are attached hereto as Exhibits C (Cotchett, Pitre & McCarthy, LLP) and D (Hausfeld LLP).

### C.    Attorneys' Fees Request

14.    Class Counsel asks the Court to award attorneys' fees of $1 million, or 18.355%, from the remaining settlement funds of $5,448,087.41.

15.    This request for attorneys' fees in connection with claims administration and settlement distribution is modest and reasonable—not only in the context of the remaining settlements funds but in the context of the substantial work performed by Class Counsel over the last 15 years and the substantial monetary benefit to the class.

16.    Taking into account the Court's attorneys' fees award on the ANA net settlement fund (ECF No. 1314 at 14) along with its prior previous fee awards in this litigation, Class

---

Counsel's unreimbursed lodestar was $10,987,873.85 for work performed from March 28, 2008 through July 31, 2019, which amounts to a negative multiplier of -0.75. Since moving for attorneys' fees and reimbursement of expenses on August 8, 2019, Class Counsel's unreimbursed lodestar and expenses have only increased.

17.     The additional $1 million in attorneys' fees would result in a cumulative negative multiplier of -0.77 based on work performed through July 31, 2022—and less than that if the Court takes into consideration Class Counsel's anticipated work through the secondary distribution, *cy pres* distribution, potential further motion practice by Mr. Chekian, and a further post-distribution accounting. This means for each lodestar dollar that Class Counsel reasonably expended on the litigation, Class Counsel would only receive up to 77 cents. Class Counsel's unreimbursed lodestar would be $10,329,809.36 for work through July 31, 2022 and more than that through the end of this litigation.

18.     I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 8th day of August 2022 in Burlingame, California.


                              */s/ Elizabeth T. Castillo*
                              Elizabeth T. Castillo

*In re Transpacific Passenger Air Transportation Antitrust Litigation*
**Case No. 07-cv-05634-CRB**

## EXHIBIT A

COTCHETT, PITRE & McCARTHY, LLP

Hours Reported and Lodestar on a Historical Basis

August 1, 2019 through July 31, 2022

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **ATTORNEY HOURS** | | | |
| Zapala, Adam (P) | 43.00 | $750 | $ 32,250.00 |
| Castillo, Elizabeth (P) | 202.50 | $725 | $ 146,812.50 |
| Castillo, Elizabeth (P) | 40.10 | $650 | $ 26,065.00 |
| | | | |
| **NON-ATTORNEYS** | | | |
| Verducci, Jaclyn (SPL) | 79.00 | $325 | $ 25,675.00 |
| Caylao, Michael (SPL) | 186.50 | $325 | $ 60,612.50 |
| Delavan, Alexandra (PL) | 8.30 | $275 | $ 2,282.50 |
| Lipson, Carlo (PL) | 0.40 | $275 | $ 110.00 |
| | | | |
| **TOTAL:** | **559.80** | | **$ 293,807.50** |

(P)      Partner
(SA)     Senior Associate
(A)      Associate
(OC)     Of Counsel
(SPL)    Senior Paralegal
(PL)     Paralegal
(LC)     Law Clerk

1

3-ER-400

*In re Transpacific Passenger Air Transportation Antitrust Litigation*
**Case No. 07-cv-05634-CRB**

### EXHIBIT B

HAUSFELD LLP

Hours Reported and Lodestar on a Historical Basis

August 1, 2019 through July 31, 2022

| NAME | TOTAL HOURS | HOURLY RATE | LODESTAR |
|---|---|---|---|
| **ATTORNEY HOURS** | | | |
| Coolidge, Melinda R. (P) | 0.20 | $700 | $      140.00 |
| Gassman, Seth (OC) | 45.40 | $780 | $ 36,473.00 |
| Lebsock, Christopher L. (P) | 10.60 | $900 | $   9,555.00 |
| Lehmann, Michael P. (P) | 1.00 | $1,150 | $   1,150.00 |
| Ratner, Brian A. (P) | 0.90 | $900 | $      810.00 |
| | | | |
| **TOTAL:** | **58.10** | | **$ 48,128.00** |

(P)      Partner
(SA)    Senior Associate
(A)      Associate
(OC)    Of Counsel
(SPL)   Senior Paralegal
(PL)    Paralegal
(LC)    Law Clerk

1

3-ER-401

*In re Transpacific Passenger Air Transportation Antitrust Litigation*
**Case No. 07-cv-05634-CRB**

## EXHIBIT C

COTCHETT, PITRE & McCARTHY, LLP

Expenses Incurred

August 1, 2019 – July 31, 2022

| EXPENSE CATEGORY | AMOUNT INCURRED |
|---|---|
| Computer Research (Lexis, Westlaw, PACER, etc.) | $ 1,314.05 |
| Court Costs (Filing fees, etc.) | $    51.00 |
| Document Depository | $ 2,891.00 |
| Document Production | $     0.00 |
| Experts / Consultants | $     0.00 |
| Messenger Delivery | $     0.00 |
| Overnight Delivery (Federal Express, etc.) | $     0.00 |
| Photocopies – In House | $    76.20 |
| Photocopies – Outside | $     0.00 |
| Postage | $     4.08 |
| Service of Process | $   183.00 |
| Special Master | $     0.00 |
| Telephone / Facsimile | $     0.00 |
| Transcripts (Hearings, Depositions, etc.) | $     0.00 |
| Travel (Airfare and Ground Travel) | $    56.32 |
| Travel (Meals and Lodging) | $    21.26 |
| **TOTAL:** | **$ 4,596.91** |

1

3-ER-402

*In re Transpacific Passenger Air Transportation Antitrust Litigation*
**Case No. 07-cv-05634-CRB**

### EXHIBIT D

HAUSFELD LLP

Expenses Incurred

August 1, 2019 – July 31, 2022

| EXPENSE CATEGORY | AMOUNT INCURRED |
|---|---|
| Computer Research (Lexis, Westlaw, PACER, etc.) | $ 144.95 |
| Court Costs (Filing fees, etc.) | $ 0.00 |
| Document Depository | $ 0.00 |
| Document Production | $ 0.00 |
| Experts / Consultants | $ 0.00 |
| Messenger Delivery | $ 24.95 |
| Overnight Delivery (Federal Express, etc.) | $ 0.00 |
| Photocopies – In House | $ 0.60 |
| Photocopies – Outside | $ 0.00 |
| Postage | $ 0.00 |
| Service of Process | $ 0.00 |
| Special Master | $ 0.00 |
| Telephone / Facsimile | $ 4.99 |
| Transcripts (Hearings, Depositions, etc.) | $ 0.00 |
| Travel (Airfare and Ground Travel) | $ 48.90 |
| Travel (Meals and Lodging) | $ 55.55 |
| **TOTAL:** | **$ 279.94** |

1

3-ER-403

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **PLAINTIFFS' NOTICE OF POST-DISTRIBUTION ACCOUNTING** |

Plaintiffs hereby submit this Post-Distribution Accounting and the supporting Declaration of Joel K. Botzet ("Apr. 7, 2022 Botzet Decl.") from Rust Consulting, Inc. ("Rust"), the Court-appointed claims administrator, pursuant to various orders[1] and this District's Procedural Guidance for Class Action Settlements ("Guidance"). On March 17, 2022, Plaintiffs distributed the net settlement funds to eligible Class Members. Plaintiffs provide the following information on post-distribution accounting:

|  |  | Source |
|---|---|---|
| **Total Net Settlement Fund** | $104,388,254.38[2] | Mar. 8, 2022 Botzet Decl. ¶ 24. |
| **Total Number of Class Members** | 61,770 Class Members authorized for payment, totaling 29,963,888 qualifying tickets. | *Id.* ¶¶ 23, Exs. C-D. |
| **Total Number of Class Members to Whom Notice Was Sent and Not Returned as Undeliverable** | <u>Round 2 Settlements</u> Postcard notice was sent to 45,406 potential Class Members, of which 44,782 were not returned as undeliverable. <br><br> <u>Round 3 Settlement</u> Email notice was sent to 47,328 potential Class Members, of which 42,412 were not returned as undeliverable; mail notice was sent to 7,834 potential Class Members for whom email addresses | Apr. 7, 2022 Botzet Decl. ¶ 5. |

---

[1] *See* Order Granting Plaintiffs' Motion to Distribute Settlement Funds and Overruling Objection (ECF No. 1327); Order Granting Plaintiffs' Administrative Motion to Extend Deadline to Distribute Net Settlement Funds (ECF No. 1329); Order Granting Plaintiffs' Administrative Motion to Correct Declaration of Joel Botzet Re: Claims Administration and Distribution of Net Settlement Funds (ECF No. 1331).

[2] This figure represents the net settlement funds available for distribution. *See* Corrected Declaration of Joel K. Botzet Re: Claims Administrator and Distribution of Net Settlement Fund ¶ 24 (ECF No. 1330-1) ("Mar. 8, 2022 Botzet Decl."). The amount of the initial distribution was $104,387,320.59 due to rounding to the nearest cent when calculating the *pro rata* share per qualified claim. *Id.*

| | | |
|---|---|---|
| | were unavailable, of which 7,259 were not returned as undeliverable.[3] | |
| **Number of Claim Forms Submitted** | 96,133 | Mar. 8, 2022 Botzet Decl. ¶¶ 6, Ex. D |
| **Percentage of Claim Forms Submitted** | Not applicable[4] | |
| **Number and Percentage of Opt-Outs** | Round 1 Settlements: 1<br>Round 2 Settlements: 1<br>Round 3 Settlement: 0 | *See*, *e.g.*, Plaintiffs' Motion for Final Approval of Round 1 Settlements at 3 (ECF No. 999); Plaintiffs' Motion for Final Approval of Round 2 Settlements at 2 (ECF No. 1234); Plaintiffs' Motion for Final Approval of Round 3 Settlement at 2 (ECF No. 1308). |
| **Number and Percentage of Objections** | Round 1 Settlements: 1<br>Round 2 Settlements: 1<br>Round 3 Settlement: 0 | *See*, *e.g.*, Plaintiffs' Motion for Final Approval of Round 1 Settlements at 3 (ECF No. 999); Plaintiffs' Motion for Final Approval of Round 2 Settlements at 2-3 (ECF No. 1234); Plaintiffs' Motion for Final Approval of Round 3 Settlement at 2 (ECF No. 1308). |
| **Average Recovery Per Claimant** | $1,689.93 | Mar. 8, 2022 Botzet Decl., Ex. D |
| **Median Recovery Per Claimant** | $43.52 | *Id.* |
| **Largest Amount Paid to Class Members** | $4,582,006.74 | *Id.* |
| **Smallest Amount Paid to Class Members** | $1.12 | *Id.* |
| **Method(s) of Notice** | A combination of Direct Notice, Travel Agency Notice, Paid Media | *See*, *e.g.*, Declaration of Shannon Wheatman, Ph.D. in Support of |

---

[3] These figures reflect email and postcard/mail notice provided to potential class members in connection with the Rounds 2 and 3 Settlements.

[4] This figure cannot be calculated because the notice program for the Round 1 Settlements primarily involved media notice.

| | Notice, Earned Media, Settlement Website (airlinesettlement.com), Toll-Free Phone Number, and/or Post Office Box depending on the round of settlements | Plaintiffs' Motion for Approval of Notice Program and Notice Forms ¶¶ 9-40 (ECF No. 1297-3) |
|---|---|---|
| **Method(s) of Payment to Class Members** | Check by mail or wire transfer | Mar. 8, 2022 Botzet Decl. *Id.* ¶ 28 |

The Guidance also requests the number and value of checks not cashed and the amounts distributed to each *cy pres* recipient. Given that Plaintiffs only distributed the Net Settlements Funds on March 17, 2022 and the check void date is June 15, 2022, information regarding the number and value of checks not cashed is unavailable at this time. After the check void date, Plaintiffs will provide a further summary to the Court regarding what Net Settlements Funds remain uncashed. If there are sufficient funds available to perform a secondary distribution of the remaining Net Settlement Funds to Class Members who cashed their checks, Class Counsel and Rust anticipate making such a recommendation to the Court. If the remaining Net Settlement Funds as of the void date are insufficient to make a secondary redistribution economically feasible, Plaintiffs will propose an appropriate *cy pres* recipient at that time with ultimate approval from the Court.

The Guidance further requests information regarding administrative costs, the attorneys' fees and costs, the attorneys' fees in terms of percentage of the settlement fund, and the multiplier, if any. Plaintiffs previously provided information regarding administrative and attorneys' costs in connection with the Joint Declaration in Support of Plaintiffs Motion for Award of Attorneys' Fees and Reimbursement of Expenses ¶¶ 83-86, 94-100, Ex. 6 (ECF No. 1307-2). Regarding attorneys' fees, the Court granted a cumulative award of $34,164,648.14.[5] This award represents

---

[5] $34,164,648.14 is the sum of (1) $9 million, or 28.86%, in fees that the Court granted from the Round 1 Settlements, resulting from calculated net settlement funds of $31,181,800.27 (ECF No. 1009), (2) $11,038,071.51, or 22.54%, in attorneys' fees that the Court granted from the Round 2 Settlements, resulting from calculated net settlement funds of $48,970,485.79 (ECF No. 1252),

---

23% of the total settlement fund of $148,152,000 and 25% of the net settlement funds of $136,658,592.58.[6] The award also represents a cumulative negative multiplier of -0.75 based on work performed through July 31, 2019.[7] Plaintiffs have incurred additional lodestar since July 31, 2019 in connection with seeking final approval of the ANA settlement, claims administration, and settlement distribution; however, Plaintiffs have not accounted for this additional lodestar in the multiplier calculation.

As stated, *supra*, once the check void date has passed, Plaintiffs will provide an update to the Court regarding any remaining Net Settlement Funds and will provide a further recommendation as to whether a secondary redistribution of the remaining Net Settlement Funds, or a *cy pres* award, is appropriate.

Pursuant to the Guidance, Plaintiffs will post this Post-Distribution Accounting on the settlement website (airlinesettlement.com). Plaintiffs are available for a hearing on the Post-Distribution Accounting if the Court wishes.

Dated: April 7, 2022

Respectfully submitted,

/s/ *Adam J. Zapala*
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com

/s/ *Christopher L. Lebsock*
Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980

---

and (3) $14,126,576.63, or 25% in attorneys' fees that the Court granted from the Round 3 Settlement, resulting from calculated net settlement funds of $56,506,306.52 (ECF No. 1314).
[6] *Id.*; *see also* Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses at 1 (ECF No. 1307-2).
[7] $34,164,648.14 is a -0.75 multiplier of $45,152,522.00, which is Plaintiffs' lodestar from March 28, 2008 through July 31, 2019. *See* Plaintiffs' Motion for Award of Attorneys' Fees and Reimbursement of Expenses ¶¶ 92, fn. 92, Ex. 5 (ECF No. 1307-2).

---

1    ecastillo@cpmlegal.com

2

3    *Co-Lead Counsel for Plaintiffs*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

Adam J. Zapala (245748)
azapala@cpmlegal.com
Elizabeth Castillo (280502)
ecastillo@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Michael P. Lehmann (77152)
mlehmann@hausfeldllp.com
Christopher Lebsock (184546)
clebsock@hausfeldllp.com
Seth R. Gassman (311702)
sgassman@hausfeldllp.com
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

*Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | Civil Action No. 3:07-CV-05634-CRB |
| | MDL No: 1913 |
| **This Document Relates to:** | **DECLARATION OF JOEL K. BOTZET RE: POST-DISTRIBUTION ACCOUNTING** |
| **ALL ACTIONS** | |

JOEL K. BOTZET declares and states that:

1.    I am a Program Manager for Rust Consulting, Inc. ("Rust Consulting"), the Court-appointed Claims Administrator for the class action Settlement in this case. My business address is 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402-2469. My business telephone number is 612-359-2035. I am authorized to make this declaration on behalf of Rust Consulting.

2.    Rust Consulting has extensive experience in class action matters, having provided settlement administration services in class action lawsuits affecting millions of class members in cases involving employment, consumers, banking and financial services, property, insurance, securities, and products liability, among its more than 8,000 projects.

3.    Except as otherwise stated, I am fully familiar with and have personal knowledge of the matters stated in this declaration and am competent to testify about them if called upon to do so.

4.    I submit this declaration to provide the Court and the parties to the above-captioned action with information regarding the Post-Distribution Accounting.

**Notice Sent**

5.    On June 25, 2018, Rust caused Postcard Notice of the ANZ, EVA, China Airlines, and PAL Settlements to be sent via the United States Postal Service ("USPS") to 45,406 potential Class Members who submitted a claim in a previous settlement. 44,782 of these notices were not returned as undeliverable.

6.    On July 8, 2019, Rust caused notice of the All Nippon Airways ("ANA") Settlement to be sent:

    a.    Via email to 47,328 potential Class Members who either submitted a claim in a previous settlement or who registered during the certification

program for the litigation with ANA.  42,412 of the email notices were sent to valid email addresses that did not fail or bounce back as undeliverable.

b.      Via USPS to 7,834 potential Class Members who submitted a claim in a previous settlement and for whom no email contact information was available. 7,259 of the mailed notices were not returned as undeliverable.

7.      I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 7th day of April, 2022 in Minneapolis, Minnesota.

Joel K. Botzet

1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    IN RE TRANSPACIFIC PASSENGER            Case No.  07-cv-05634-CRB
     AIR TRANSPORTATION ANTITRUST
9    LITIGATION                              **ORDER GRANTING PLAINTIFFS'
                                             MOTION TO DISTRIBUTE
10                                           SETTLEMENT FUNDS AND
                                             OVERRULING THE OBJECTION**
11   This Document relates to:
     ALL ACTIONS
12

13          This Court previously granted final approval of class action settlements against 13

14   airline defendants, finding that the notice plan for each settlement was fair, adequate, and

15   reasonable, satisfied due process and Rule 23(c)(2) and 23(e)(l), and was the best

16   practicable under the circumstances.  See Dkts. 1009, 1259-1, 1318.  The settlements

17   involved three separate "Phases," depending on which airline a claimant had purchased her

18   ticket(s) from and during which time period.  Phase 1 had a claims closing date of either

19   October 13, 2015 or April 3, 2018; Phase 2 had a claims closing date of December 31,

20   2018; and Phase 3 had a claims closing date of April 1, 2020.  Botzet Decl. (dkt. 1322-1) ¶

21   6.  The total settlement fund available is $104 million.  Id. ¶ 24.  61,768 individuals and

22   entities have been authorized for payment.  Id. ¶ 23.  Plaintiffs now move for authorization

23   to distribute the net settlement funds.  Mot. (dkt. 1322).  Plaintiffs have submitted a

24   detailed declaration by Joel K. Botzet, a Program Manager for Rust Consulting, Inc., the

25   court-appointed claims administrator.  See Botzet Decl.

26          Financial Recovery Services (FRS), a corporation that purports to represent 82

27   claimants excluded from the distribution, objects.  See Obj. (dkt. 1323).  FRS does not

28   dispute that its clients' Phase 1 and Phase 2 claims were "submitted after the Phase 1 and

Phase 2 deadlines" and were therefore untimely.  Id. at 2.  But FRS argues that the Court
should use its inherent equitable powers to include these claimants in the distribution.
Although FRS does not explain why its clients failed to file timely Phase 1 and Phase 2
claims, FRS insists that these earlier deadlines were "arbitrary" because all auditing and
distribution was to happen later anyway.  Id. at 3–4.

     Plaintiffs argue that processing untimely claims now will prejudice timely claimants
because it will require "six to nine months and result in additional claims administration
expenses of at least $435,000."  Reply (dkt. 1324) at 8 (citing Supp. Botzet Decl. (dkt.
1324-1) ¶ 19-20).  FRS argues that this overstates the delay, and that any delay falls on
class counsel, who have known of FRS' objection since September 16, 2019 but neither
processed the untimely claims nor brought the issue to the Court's attention.  Obj. at 12,
Supp. Obj. (dkt. 1325) at 7-8.

     In determining whether to include untimely claims in a class action settlement,
courts use their equitable powers under Federal Rule of Civil Procedure 23.  See In re
Orthopedic Bone Screw Prods. Liab. Litig., 246 F.3d 315, 321 (3d Cir. 2001).  In doing so,
courts balance four factors to determine whether a claimant engaged in "excusable
neglect": (1) the danger of prejudice to the non-movant; (2) the length of the delay and its
potential effect on judicial proceedings; (3) the reason for the delay, including whether it
was within the reasonable control of the movant; and (4) whether the movant acted in good
faith. Id. at 322-23 (citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507
U.S. 380, 395 (1993)).  The third factor—whether delay was within the movant's
control—is typically most important.  In re Oxford Health Plans, Inc., 383 Fed. Appx. 43,
45 (2d Cir. 2010).  Although the burden is on the untimely claimant to show excusable
neglect, this burden is not especially demanding.  See Late Claims, 4 William B.
Rubenstein, Newberg on Class Actions § 12:23 (5th ed.).

     Assuming without deciding that FRS' objections are properly before the Court,[1] the

---

[1] Plaintiffs make several arguments as to why FRS' objection is procedurally invalid, but
the Court expresses no view on those in today's order.

United States District Court
Northern District of California

2

Court concludes that FRS has not made a showing of excusable neglect that would justify its clients' inclusion in the settlement fund. FRS does not appear to contest (1) that its clients had notice of the dates on which Phases 1 and 2 concluded; or (2) that its clients missed those deadlines. Yet FRS offers no excuse for its clients' delay and does not argue it was outside their reasonable control. See Bone Screw, 246 F.3d at 322; Oxford, 383 Fed. Appx. at 45 (noting that this third factor is most important); see 4 Newberg on Class Actions § 12:23. The Court also credits the claims administrator's statement that including untimely claimants would result in an additional six to nine month delay to timely claimants. See Supp. Botzet Decl. ¶ 19-20. On these facts, the Court finds that there was no excusable neglect.

Reframing the issue, FRS insists that the question is "not whether FRS' clients have shown good cause for not meeting the interim Phase 1 and 2 deadlines, but, rather, whether those deadlines should be enforced." See Supp. Obj. at 4. This is not a real distinction. The Court does not enforce deadlines mindlessly, but it enforces them when claimants who are aware of the deadlines miss them without an explanation.

The Court therefore GRANTS the motion to authorize distribution of the net settlement funds, consistent with the process outlined in the declaration. The claims administrator, in consultation with class counsel, shall distribute the net settlement funds pro rata. Pursuant to this district's Procedural Guidance on Class Action Settlements, within 21 days of this order, class counsel will submit a Post-Distribution Accounting detailing the status of distribution.

**IT IS SO ORDERED.**

Dated: February 3, 2022

CHARLES R. BREYER
United States District Judge

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | **Case No. 3:07-cv-05634-CRB**<br><br>**MDL No. 1913**<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUNDS** |
| This Document Relates To:<br><br>**ALL ACTIONS** | Hearing Date: February 11, 2022<br>Judge: Hon. Charles R. Breyer<br>Time: 10 a.m.<br>Courtroom: 6, 17th Floor |

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds; MDL No. 1913; Case No. 3:07-cv-05634-CRB**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ...................................................................................................1

II. BACKGROUND ...................................................................................................1

III. ARGUMENT .......................................................................................................3

    A.    Legal Standard .............................................................................................3

    B.    FRS's Objection Is Procedurally Invalid. ..................................................4

    C.    FRS Failed to Show Excusable Neglect. ....................................................6

            1.    FRS Does Not Offer Any Reason for Its Failure to Submit Claims and Deficiency Cures in Connection with Phases 1 and 2 Before the Court-Approved Phases 1 and 2 Deadlines. ...............................................6

            2.    Class Members Who Submitted Timely and Valid Claims Will Suffer Prejudice from the Relief FRS Seeks. ..............................................7

IV. CONCLUSION .....................................................................................................9

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**                                                                  i

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

3-ER-417

1

<u>**Table of Authorities**</u>

2                                                                              **Page(s)**

3    **Cases**

4    *Blank v. Jacobs,*
          No. 03-CV-2111(JS)(WDW), 2012 WL 13034912 (E.D.N.Y. Nov. 29, 2012) .........................3
5
6    *In re Crazy Eddie Securities Litig.,*
          906 F. Supp. 840 (E.D. N.Y. 1995) ...............................................................4

7    *In re Gypsum Antitrust Cases,*
          565 F.2d 1123 (9th Cir. 1977) ....................................................................7
8
9    *In re Homestore.com Inc.,*
          225 F.R.D. 252 (C.D. 2004)......................................................................6

10   *Krakauer v. Dish Network LLC,*
11        2019 WL 3002883 (M.D. N.C. 2019) ........................................................7

12   *In re Orthopedic Bone Screw Prods. Liab. Litig.,*
          246 F.3d 315 (3d Cir. 2001)..................................................................3, 4, 7
13
14   *In re Oxford Health Plans, Inc.,*
          383 Fed. Appx. 43 (2d Cir. 2010) ............................................................4, 7
15
16   *Palazzo v. Gulf Oil Corp.,*
          764 F.2d 1381 (11th Cir. 1985) .................................................................4

17   *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership,*
18        507 U.S. 380 (1993)..............................................................................3

19   *Rowland v. California Men's Colony, Unit II Men's Advisory Council,*
          506 U.S. 194 (1993)..............................................................................4

20   *S.E.C. v. Hardy,*
21        803 F.2d 1034 (9th Cir. 1986) .................................................................6

22   *Udoinyion v. The Guardian Sec.,*
          440 F. App'x 731 (11th Cir. 2011) ...........................................................4
23
24   *United States v. Hagerman,*
          545 F.3d 579 (7th Cir. 2008) ...................................................................4

25   *In re Valdez,*
26        289 F. App'x. 204 (9th Cir. 2008) (unpublished) .......................................6

27

28

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**   ii
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**

3-ER-418

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen,
   AG*, 139 S. Ct. 2645 (2019).................................................................................6

**Other Authorities**

Federal Rule of Civil Procedure

   16...........................................................................................................................4, 6

   23...........................................................................................................................3, 6

   24...........................................................................................................................6

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**   iii
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**

3-ER-419

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

## I. INTRODUCTION

After 12 years of hard-fought litigation and multiple years of processing claims, conducting deficiency reviews, and auditing claims—all of which culminated in the Court-appointed claims administrator, Rust Consulting, Inc. ("Rust"), sending final determination letters in August 2021—Co-Lead Class Counsel ("Class Counsel") moved for distribution of the net settlement funds last month in the amount of $104,387,133.10 in connection with 61,768 timely and valid claims totaling 29,929,759 qualifying tickets. Pls.' Notice of Mot. and Mot. for Order Authorization to Distribute Net Settlement Funds at 6 (ECF No. 1322) ("Mot.").

Financial Recovery Strategies ("FRS"), a third-party claims filer, which appears here without counsel, now seeks to derail this carefully designed distribution process on behalf of unidentified class members that it purportedly represents—all in an effort to force its admittedly late claims and late deficiency cures into the claims administration process. *See* Obj. of FRS to Mot. at 2 (ECF No. 1323) ("Obj.") ("FRS does not dispute that the proofs of claim and deficiency cures that are the subject of this objection . . . were submitted *after* the Phase 1 and Phase 2 deadlines.") (emphasis added). The Court should overrule FRS's objection because it is procedurally invalid, FRS has not articulated *any* explanation for its failure to comply with Court-ordered claims-filing deadlines, and the relief that FRS seeks will prejudice *all* class members who filed timely and valid claims, among other reasons.

## II. BACKGROUND

Plaintiffs filed this case in 2007 and disseminated the first settlement notice seven years ago in 2015. Rust, the Court-appointed claims administrator, also began processing the first claims in 2015. In designing a notice plan and claims administration protocol for each of the three phases of settlements ("Phases"), Rust and Class Counsel proposed schedules with deadlines for each Phase, which the Court considered and adopted. The Court granted final approval of Phase 1A Settlements[1] and 1B Settlements[2] on May 26, 2015 (ECF No. 1009). The Court set an October 13,

---

[1] "Phase 1A Settlements" collectively refer to Plaintiffs' settlements with Cathay Pacific Airways, Qantas Airways, and Thai Airways.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

2015 claims-filing deadline for the Phase 1A Settlements and an April 3, 2018 claims-filing deadline for the Phase 1B Settlements (ECF No. 968). The Court granted final approval of the Phase 2 Settlements[3] on October 11, 2018 (ECF No. 1259) and set a claims-filing deadline of December 31, 2018 for the Phase 2 Settlements (ECF No. 1165 at ¶ 8). Finally, the Court granted final approval of the Phase 3 Settlement[4] on December 3, 2019 (ECF No. 1318) and set a claims-filing deadline of April 1, 2020 for the Phase 3 Settlement (ECF No. 1306).

Pursuant to the established claims-filing deadlines ordered by the Court for each Phase, *supra*, Rust declined to accept claims for each Phase from **all** claimants after the claims-filing deadline for each Phase—not just FRS's clients. Supplemental – Declaration of Joel K. Botzet ("Botzet Decl.") (Ex. 1), ¶ 7. Rust has adhered to all Court-ordered deadlines and has notified all late claimants that they do not qualify for a payment from the net settlement funds. *Id.* Additionally, as Rust completed the deficiency review for each Phase after that Phase's claims-filing deadline, Rust has not retroactively applied **any** deficiency cures submitted in connection with the Phase 3 Settlements to deficient claims submitted in connection with Phases 1 and 2 Settlements. *Id.,* ¶ 13.

FRS now opposes distribution of the net settlement funds because Rust and Class Counsel have not made an exception for FRS to Court-ordered deadlines from years ago that that would allow FRS to submit claims to the Phase 1A Settlements after October 13, 2015, the Phase 1B Settlements after April 3, 2018, or the Phase 2 Settlements after December 31, 2018. Obj. at 2. Additionally, Rust and Class Counsel have not made an exception for FRS to the Court-ordered deadlines and claims administration protocol that would enable FRS to retroactively apply its Phase 3 deficiency cures to deficient Phases 1 and 2 claims. *Id.*

---

[2] "Phase 1B Settlements" collectively refer to Plaintiffs' settlements with Air France, Japan Airlines, Malaysian Airlines, Singapore Airlines, and Vietnam Airlines.
[3] "Phase 2 Settlements" collectively refer to Plaintiffs' settlements with Air New Zealand, China Airlines, EVA Air, and Philippine Airlines.
[4] "Phase 3 Settlement" refers to Plaintiffs' settlement with All Nippon Airways.

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds; MDL No. 1913; Case No. 3:07-cv-05634-CRB**   2

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Rust and Class Counsel declined to make exceptions for FRS during claims administration because they endeavored to take consistent positions with respect to all potential claimants to ensure that no potential claimant would be treated differently than any other. Botzet Decl., ¶ 7. Notably, other late filers have inquired about the availability of the same relief sought by FRS, and Rust has provided them with the same response that it provided to FRS, where no good cause or extenuating circumstances were shown. *Id*. In limited circumstances, Rust and Class Counsel made narrow exceptions for certain class members who showed good cause or extenuating circumstances. *Id.,* ¶ 8. For example, Rust allowed late responses to audit letters from certain class members in Puerto Rico and Central America in light of international mailing issues that occurred (and were documented) during the COVID-19 pandemic. *Id.* But arbitrarily altering deadlines for some (or many) late filers, as FRS proposes, raises potential questions about fairness to all claimants if special accommodations are granted on an individualized, claimant-by-claimant basis outside of the claims administration protocol established for the class as a whole. Moreover, arbitrarily altering deadlines now would substantially delay distribution for an estimated **six to nine months** and result in additional claims administration expenses of at least $435,000 on top of the sum that the Court has approved in connection with the three Phases. *Id.*, ¶ 17.

## III. ARGUMENT

### A. Legal Standard

Settlement administration in a complex class action often requires courts to use their equitable powers under Federal Rule of Civil Procedure 23. *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) ("*Bone Screw*"). This is particularly so when determining whether to include untimely claims in the settlement. *Blank v. Jacobs*, No. 03-CV-2111(JS)(WDW), 2012 WL 13034912, at *3 (E.D.N.Y. Nov. 29, 2012). To determine whether to allow late claims, courts consider four factors bearing on whether the lateness constituted "excusable neglect":[5] (1) the danger of prejudice to the non-movant; (2) the length of the delay and

---

[5] The Supreme Court established this "excusable neglect" standard in the bankruptcy context. *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 395 (1993)

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds; MDL No. 1913; Case No. 3:07-cv-05634-CRB**                3

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

3-ER-422

1  its potential effect on judicial proceedings; (3) the reason for the delay, including whether it was

2  within the reasonable control of the movant; and (4) whether the movant acted in good faith. *Bone*

3  *Screw*, 246 F.3d at 322-23 (citing *Pioneer*, 507 U.S. at 395). The third factor—whether delay was

4  within the movant's control—is typically most important. *In re Oxford Health Plans, Inc.*, 383

5  Fed. Appx. 43, 45 (2d Cir. 2010) ("*Oxford*").

6  **B.    FRS's Objection Is Procedurally Invalid.**

7  As a threshold issue, FRS's objection is procedurally invalid for multiple reasons. *First*,

8  FRS is an entity that is unrepresented by counsel and, therefore, cannot appear before this Court.

9  *Second*, FRS failed to provide any information about the class members it purports to represent.

10  *Third*, FRS, failed to provide any support for the claim that it has the authority to act on behalf of

11  the class members it purportedly represents. *Fourth*, FRS has failed to intervene in this litigation,

12  wherein it is essentially seeking the alteration of Court-ordered Rule 16 deadlines.

13  Pursuant to well-settled law, a corporation or other artificial entity cannot appear in federal

14  court unless it is represented by counsel. *Rowland v. California Men's Colony, Unit II Men's*

15  *Advisory Council*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two

16  centuries … that a corporation may appear in the federal courts only through licensed counsel.");

17  *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985) ("The rule is well established that

18  a corporation is an artificial entity that … cannot appear *pro se*, and must be represented by

19  counsel."); *United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008) ("A corporation is not

20  permitted to litigate in federal court unless it is represented by a lawyer licensed to practice in that

21  court."); *Udoinyion v. The Guardian Sec.*, 440 F. App'x 731, 735 (11th Cir. 2011) ("A corporation

22  is an artificial entity that cannot appear *pro se* and must be represented by counsel.").

23

24

25  ("*Pioneer*"). Courts have adopted it for assessing late claims in class actions, finding the context
   similar. *See, e.g., In re Crazy Eddie Securities Litig.*, 906 F. Supp. 840, 844 (E.D. N.Y. 1995).

26  Some courts reject the "excusable neglect" label but nonetheless apply the same standard. *See*

27  *Bone Screw*, 246 F.3d at 316 (finding the label "excusable neglect" to be "unnecessarily
   pejorative" but noting that its "principles are nonetheless relevant").

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**                          4

3-ER-423

Here, FRS is a class action recovery firm and third-party claims filer (*i.e.*, a company that solicits potential class action members and files claims on their behalf). *See*, *e.g.*, "Frequently Asked Questions," FINANCIAL RECOVERY STRATEGIES, *available at* https://www.frsco.com/faqs/ (last visited Jan. 18, 2022) ("[Q:] What are some the services that FRS provides? [A:] FRS is a leading class action claims management consulting firm that prepares and submits our Clients' claims to participate in the recoveries provided by settlement or other resolutions of class actions that have value for our clients."). By its own admission, FRS is not a law firm and not practicing law. Declaration of Adam J. Zapala ("Zapala Decl.") (Ex. 2), ¶ 1. FRS's Objection was not submitted by an attorney, and no lawyer appears to be representing FRS. *See*, *generally*, Obj. When Class Counsel sought clarification on FRS's request that Class Counsel file its Objection—despite making a number of "filings" in this Court (and others)—FRS stated that "FRS is not a law firm. We are not practicing law. A person may 'represent' the interest of another person without being their lawyer." Zapala Decl., ¶ 1; Ex. A. FRS did not elaborate on what it meant by this, nor did it provide any authority for the remarkable statement that persons can be represented in court proceedings by persons that are not lawyers or law firms.

Furthermore, as provided in the long form notice for each Phase in this litigation, class members who object to or comment on settlements must provide, *inter alia*, their contact information and proof of settlement class membership. *See*, *e.g.*, ECF No. 1301-1 at 8 ("If you have objections to **any aspect** of the Settlement, you may express your views to the Court by writing to the address below. It must include your: • Name, address, and telephone number; . . . • Proof of membership in at least one Settlement Class" (emphasis added). FRS objects to an aspect of settlement—the distribution of the net settlement funds. FRS represents that the objection is on behalf of "82 of its clients[.]" Obj. at 1. FRS did not, however, provide, the contact information or proof of membership for any of these class members that it purportedly represents in its Objection. *See*, *generally*, Obj. Accordingly, Class Counsel cannot ascertain which class members are objecting to distribution of the net settlement funds.

3-ER-424

1    Relatedly, FRS did not provide any support for the claim that it has the authority to act on

2    behalf of the 82 class members it purportedly "represents." Putting aside for the moment the

3    dubious proposition whether any entity can "represent" what it refers to as "clients" in a court

4    proceeding without being lawyers, FRS could have (but did not) attach—to its 68 pages of

5    Objection and exhibits—agreements with class members demonstrating that it is authorized to act

6    on their behalf. In the absence of providing such information in its Objection, as a non-party, FRS

7    should have retained counsel and then moved to intervene pursuant to Federal Rule of Civil

8    Procedure 24, which it has failed to do thus far in the litigation.[6]

9    Notwithstanding the procedural invalidity of FRS's Objection, Plaintiffs will address its

10   merits *infra*.

11   **C.    FRS Failed to Show Excusable Neglect.**

12   As discussed below, FRS has failed to show excusable neglect meriting permission to file

13   late claims and apply late deficiency cures.

14   **1.    FRS Does Not Offer Any Reason for Its Failure to Submit Claims and
         Deficiency Cures in Connection with Phases 1 and 2 Before the Court-**

15   **Approved Phases 1 and 2 Deadlines.**

16   The Court should overrule FRS's Objection because FRS makes it without a showing of

17   good cause. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, and Products Liab.*

18   *Litig.*, 895 F.3d 597, 619 (9th Cir. 2018), *cert. denied sub nom. Fleshman v. Volkswagen, AG*, 139

19   S. Ct. 2645 (2019) (holding the district court did not abuse its discretion in denying a late motion

20   to opt-out where there was no excusable neglect); *In re Valdez*, 289 F. App'x. 204, 206 (9th Cir.

21   2008) (unpublished) (holding it was not an abuse of discretion to deny a late claim where there was

22   "no plausible excuse"); *S.E.C. v. Hardy*, 803 F.2d 1034, 1039 (9th Cir. 1986) (confirming a district

23

24   _____

25   [6] As set forth in Federal Rule of Civil Procedure 23, the right to object to a proposed class action settlement is a limited right and does not grant or authorize objectors to engage in free-ranging

26   motion practice in district courts, such as seeking to alter what is effectively a Federal Rule of Civil Procedure 16 case scheduling order. *See In re Homestore.com Inc.*, 225 F.R.D. 252, 254

27   (C.D. 2004) ("Objectors are not even considered parties to the litigation unless and until they have successfully moved to intervene in the lawsuit.").

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;    6
MDL No. 1913; Case No. 3:07-cv-05634-CRB

3-ER-425

court's authority to "establish deadlines for filing claims, and to bar untimely claims"). In *Oxford*, the Second Circuit held the district court did not abuse its discretion in declining to allow a late-submitted claim, in part, given the importance of the claims-filing deadline and that "it was entirely within [the late claimant's] 'reasonable control' to file a timely claim[.]" *Oxford*, 383 Fed. App'x. at 45-46. In another case, a district court similarly invalidated claims submitted after the deadline in part because there was no showing "that any delay was due to excusable neglect such that the Court should exercise its equitable powers to accept late claims." *Krakauer v. Dish Network LLC*, 2019 WL 3002883, at *2 (M.D. N.C. 2019).

FRS concedes that "the proofs of claim and deficiency cures that are the subject of this objection . . . were submitted after the Phase 1 and Phase 2 deadlines." Obj. at 2. It contends, however, that Rust and Class Counsel have not provided a reason for ignoring FRS's late claims. Obj. at 12 ("Settlement Class Counsel have offered no rational, legal or equitable bases for ignoring for years the Excluded Phase 1 & 2 Submissions, nor do any exist."). This argument misplaces the burden, which falls on late claimants to show the reason for the delay and whether it was within their reasonable control. *Bone Screw*, 246 F.3d at 322-23; *Oxford*, 383 Fed. App'x. at 45. FRS does not offer any reason for failing to submit claims and deficiency cures in connection with Phases 1 and 2 before the Court-approved Phase 1 and 2 claims-filing deadlines. *See*, *generally*, Obj. Relatedly, FRS did not identify a single factor beyond its control that caused the delay. *Id.*

## 2. Class Members Who Submitted Timely and Valid Claims Will Suffer Prejudice from the Relief FRS Seeks.

"There is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'" *In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977). In *Oxford*, the Second Circuit acknowledged "the legal system relies on deadlines to function" and ruled there was "at least some prejudice to claimants who had timely filed by diminishing those claimants' pro rata share of the settlement funds." *Oxford*, 383 Fed. App'x. at 46. Here, the claims-filing deadlines for the various Phases that

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds; MDL No. 1913; Case No. 3:07-cv-05634-CRB**

7

3-ER-426

1    Plaintiffs proposed and the Court ordered were intended to streamline claims administration.

2    Heeding those Court-ordered deadlines, Rust rejected claims filed after the claims-filing deadline

3    for each Phase. Botzet Decl., ¶ 7. Rust also did not apply Phase 3 deficiency cures to Phase 1 and 2

4    deficient claims because that was never part of the claims administration protocol. *Id.*, ¶¶ 9-16.

5         Through its Objection, FRS seeks to submit late claims to the Phases 1 and 2 Settlements

6    and retroactively apply Phase 3 deficiency cures to deficient claims submitted in Phases 1 and 2

7    Settlements. Obj. at 2. The relief FRS seeks not only diminishes qualified claimants' pro rata share

8    of the net settlement funds by FRS's clients pro rata share, it would effectively render meaningless

9    all interim deadlines approved by the Court, published in class notices, and followed by tens of

10   thousands of timely claimants. Moreover, it now reopens claims administration, delays

11   distribution, and further reduces payments to qualified claimants due to the additional claims

12   administration expenses. Botzet Decl., ¶¶ 17-20.

13        By allowing FRS and other potential claimants to file late claims and deficiency cures, Rust

14   will have to restart claims processing and apply proof of claim documentation, both of which have

15   been done for years. *Id.* Rust must also likely conduct a second audit if any late claimant's claimed

16   tickets exceed certain thresholds, if any late claimant submitted a claim form from the same

17   address or email of another claimant, or if the putative claim triggers any other fraud prevention

18   protocols by Rust. *Id.*, ¶ 17. Furthermore, Rust must notify all potential claimants of this claims

19   administration protocol change given that Rust adhered to all Court-ordered deadlines and has

20   already issued final determination letters to all claimants, including all late filers, in August 2021.

21   *Id.*, ¶ 18. Rust must also recalculate all payments to qualified claimants again. *Id.*

22        Rust anticipates that if the Court sustains FRS's position, the additional claims

23   administration that will be required will delay distribution for an estimated six to nine months and

24   result in additional claims administration expenses of at least $435,000 on top of the amounts that

25   the Court has approved in connection with the three Phases. *Id.*, ¶ 17. With Court approval, these

26   expenses would come out of the net settlement funds—further reducing qualified claimants'

27

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;
MDL No. 1913; Case No. 3:07-cv-05634-CRB**                                                    8

3-ER-427

payments pro rata share—for the sake of simply processing late claims and late deficiency cures that FRS could have submitted in a timely manner but failed to do so in good faith.

Given FRS's failure to articulate any reason for its delay, and the financial and temporal prejudice that will inure to qualified claimants from the relief it seeks, FRS's lateness does not constitute excusable neglect.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for authorization to distribute the net settlement funds and overrule FRS's objection thereto.

Dated: January 18, 2022                        Respectfully Submitted,

/s/ *Adam J. Zapala*
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Class Counsel for Plaintiffs*

**Pls.' Reply in Support of Mot. for Authorization to Distribute Net Settlement Funds;**
**MDL No. 1913; Case No. 3:07-cv-05634-CRB**          9

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

3-ER-428



Jeffrey N. Leibell
**Chief Legal & Financial Officer**
(201) 853-1246
jleibell@frsco.com

**VIA OVERNIGHT COURIER**

January 10, 2021

Honorable Charles R. Breyer
Senior District Judge
United States District Court
    for the Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102

<div align="center">

*In re Transpacific Passenger Air Transportation Antitrust Litigation*,
Civil Action No. 3:07-CV-05634-CRB, MDL No. 1913 (N.D. Cal.)

───────────

Objection of Financial Recovery Services, LLC
to
Plaintiffs' Motion for Authorization to Distribute Net Settlement Funds

</div>

Dear Judge Breyer:

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, FRS, on behalf of 82 of its clients, objects to Plaintiffs' Motion for Authorization to Distribute Net Settlement Funds, Doc. 1322 ("Pls.' Mot.").[1] Specifically, and as set forth in FRS's Initial Letter, FRS's objections are as follows:

───────────

[1] Settlement Class Counsel have conceded that the appropriate time for FRS to object to the treatment of its clients was when the motion for distribution was filed:

> [I]t is 'common practice' for those who seek to object to a proposed distribution of settlement funds to do so in response to a motion for distribution. … Here, [Settlement] Class Counsel have not moved for distribution of the settlements yet. They intend to do so after Rust has completed its audit and provided a final claim determination and calculation, which Class Counsel anticipate occurring in or around November 2020."

Settlement Class Counsel's September 21, 2020 letter to the Court ("Settlement Class Counsel's Letter") at 3 (quoting FRS's September 10, 2020 letter to the Court ("FRS's Initial Letter")). *Accord* Fed. R. Civ. P. 23(d)(1) (granting district court authority to "issue orders that," among other things, "protect class members" by allowing them an "opportunity to … intervene … or to otherwise come into the action"); *see, e.g., In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 499 (3d Cir. 1982) ("[P]urported members of the



Honorable Charles R. Breyer
January 10, 2021
Page 2

- Even though all Settlement Funds have been in *custodia legis* and on deposit in QSF escrow accounts beginning in 2014, and even though the administration of Phase 2 and Phase 3 proofs of claim remained ongoing until the end of December 2021, proofs of claim filed after a Phase 1 or the Phase 2 claims filing deadlines will not participate in the recoveries provided by those Settlements; and

- Even though at least certain Settlement Class Members did not receive deficiency notices in connection with their Phase 2 and certain Phase 1 proofs of claim, and, therefore, were not provided with an opportunity to cure those deficiencies, their responses to Phase 3 deficiency notices, which have been applied to cure their Phase 3 proofs of claim, are not being applied to cure identical deficiencies in their Phase 1 and Phase 2 proofs of claim.

FRS does not dispute that the proofs of claim and deficiency cures that are the subject of this objection (the "Excluded Submissions") were submitted after the Phase 1 and Phase 2 deadlines. However, and as explained below, that fact alone is irrelevant to whether, under the circumstances of the Settlements, they should be included in those Phases. Of particular significance to that determination is that *none* of the Excluded Submissions were filed *after* Phase 3 deadlines, and, of equal importance, because the Excluded Submissions are included in Phase 3, there can be no dispute that the data that FRS submitted establish that each of the affected claimants is a bona fide Settlement Class Member that is entitled to the relief requested herein.

---

class" need not intervene in the class proceeding to "request … that the court interpret the class order so as to include [them] and on that basis direct the payment of [their] claims."); *Knowles v. Butz*, 358 F. Supp. 228, 230 (N.D. Cal. 1973) ("There is, therefore, no need for these new class members to formally intervene."); 3 *Newberg on Class Actions* § 9:37 (5th ed. Dec. 2021) (in order to ascertain its rights, a class member need not "go[] the full length of becoming a party through intervention"). All terms with initial capitalization that are not defined herein have the meanings ascribed to them in FRS's Initial Letter. To avoid redundancy, FRS's Initial Letter and the September 24, 2020 letter to the Court that FRS submitted ("FRS's Reply Letter") in response to Settlement Class Counsel's Letter are incorporated by reference as if fully set forth herein. Because they were not docketed, they are attached. FRS respectfully requests that this objection be entered on the docket.



Honorable Charles R. Breyer
January 10, 2021
Page 3

Although Settlement Class Counsel attempt to justify their inequitable treatment of the Excluded Submissions and of all other untimely Phase 1 and Phase 2 proofs of claim and deficiency cures that were filed on or before Phase 3 deadlines (collectively, the "Excluded Phase 1 & 2 Submissions") by asserting that the three Phases are separate, the facts establish that all three Phases were administered together. For example:

- Rust, the claims administrator, did not begin its "audit" process for *any* claims – Rust did not audit any claim submitted in any Phase – until September 11, 2020, which was *after* the Phase 3 proof of claim deadline. *See* Decl. Joel K. Botzet re: Claims Admin. & Distrib. Net Settle. Fund, Doc. 1322-1 ("Botzet Decl.") at ¶¶12-19 (6:16-8:21). In other words, claims submitted in all three Phases were "audited" together, not individually in each Phase. As a result, while Rust *accepted* during Phase 3 *audit* responses submitted in connection with Phase 1 and Phase 2 claims, Rust *rejected deficiency cures* for Phase 1 and Phase 2 claims that were submitted in connection with Phase 3 claims and that also cured Phase 1 or Phase 2 deficiencies. *Compare id.* and *id.* at ¶9 (5:9-12) ("To be *equitable* to all Class Members that timely responded [to Requests for Information], responses postmarked after the 90-day deadline were not considered for correcting a deficient Proof of Claim form.") (emphasis added).

- It is not surprising, therefore, that, rather than provide separate results for each Phase, the "Final Claim Totals" that Rust reported to the Court are *cumulative* for all three Phases together. *See* Botzet Decl. at ¶21 (9:5-21) (final notices were sent to 66,395 claimants); ¶22 (9:22-10:4) (4,602 class members submitted ineligible claims because, *inter alia*, "[n]o timely response was received for requests for additional information"); ¶23 (10:5-9) (61,768 class members are authorized for payment for a total of 29,929,759 qualifying tickets).

- But, most importantly, Settlement Class Counsel have conducted *no* distributions for either Phase 1 or Phase 2; rather, all three Phases will be distributed *together* in one single distribution. *See, e.g.*, Pls.' Mot. at 1:7-21.[2]

---

[2] *Compare, e.g.*, *In re Automotive Parts Antitrust Litig.*, Master File No. 12-md-02311 (E.D. Mich.). In the Dealership Actions of the *Automotive Parts* MDL, each of the four rounds of settlements had a separate claim process and separate corresponding distribution; a proof of claim submitted in an earlier round either could be relied upon in later rounds or could be updated, but a claim submitted in a later settlement



FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
January 10, 2021
Page 4

It would appear, then, that the only claims administration components that *were* done separately for each Phase were the setting of deadlines for claim filing and deficiency cures. Under Settlement Class Counsel's piecemeal approach, any Phase 1 deficiency cures that were submitted to Rust 91 days after March 7, 2016, the date on which Rust mailed Phase 1 "Requests for Information," *see* Botzet Decl. at ¶8 (4:21-5:5), have been ignored for the last 5½ years even though Phase 2 and Phase 3 deficiency cures were still being processed, *see id.* at ¶9 ("responses postmarked after the 90-day deadline were not considered for correcting a deficient Proof of Claim form."). Those interim deadlines are thus arbitrary because they provided no benefit to the Settlement Classes—that is, because "auditing" for *all* claims was performed cumulatively *after* the Phase 3 deadline, and because, for example, no separate Phase 1 distribution was conducted in 2018, Phase 1 Settlement Class Members are still waiting for their distributions and, therefore, are no better off. Those arbitrary deadlines had no purpose and serve only to create artificial conflict among members of the Settlement Classes.

Settlement Class Counsel also argue, contrary to the law in this Circuit and everywhere else in the U.S., that the Excluded Phase 1 & 2 Submissions were rejected because "deadlines are deadlines":

> [T]here have been longstanding Court-ordered deadlines for claims in this case. The class has been on notice of them for years. Other putative class members have also been told that *deadlines are deadlines*.

---

round was not included in an earlier round that had not yet distributed. In the End-Payor Actions of that MDL, in contrast, there was only one claim process conducted for all four rounds of settlement together even though claim forms were disseminated in connection with earlier settlement rounds and settlement proceeds were deposited into escrow.



**FINANCIAL
RECOVERY
STRATEGIES**

Honorable Charles R. Breyer
January 10, 2021
Page 5

FRS Initial Letter, Ex. 6 at 1 (emphasis added).[3] That "per se" position has not been the law in this Circuit since the Ninth Circuit's opinion in *Pincay v. Andrews*, in which the en banc majority instructed district courts to consider deadlines "within the context of the particular case," and cautioned that, "the correct approach is to avoid any per se rule." 389 F.3d 853, 859-860 (9th Cir. 2004) (en banc). Nor has it been the law anywhere in the U.S. since the Supreme Court's landmark decision in *Pioneer*.[4] Although the Excluded Phase 1 & 2 Submissions were submitted after interim deadlines, "all of the relevant circumstances" here –*no distributions* were conducted for Phases 1 and 2; *all* Excluded Phase 1 & 2 Submissions were filed *before* the "final" Phase 3 deadlines; *no* legally cognizable prejudice to timely claimants will result from the inclusion of the Excluded Phase 1 & 2 Submissions;[5] and the delay in conducting the cumulative distribution for

---

[3] The same reasoning was provided by Settlement Class Counsel on October 17, 2019. *See id.*, Ex. 2 at 1 ("The deadlines to make claims for the various rounds of settlements were established and approved by the Court and have been in effect for a long time now.").

[4] *Pioneer Inv. Svces. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 391-95 (1993) ("[W]e conclude that the determination [of excusable neglect] is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission."). *Accord, e.g.*, *In re Orthopedic Bone Screw Prod. Liab. Litig.*, 246 F.3d 315, 323 (3d Cir. 2001) ("We cannot agree with the District Court that Sambolin should be excluded from the settlement class simply because he failed to meet the May 15, 1997 registration deadline.").

[5] In connection with allocating and distributing non-reversionary common funds like those provided by the Settlements—that is, where the defendant's liability is capped and every dollar distributed to one class member is one dollar less available to be distributed to other class members, the reduction in recovery for timely claimants that would be caused by allowing untimely claimants to participate is not, and, as far as FRS has been able to determine, never has been, held to be legally cognizable prejudice. As the court held in *Authentidate*, for example:

> Lead Plaintiff argues that the inclusion of the late claims would prejudice those who filed timely claims by reducing the pro-rata distribution of the Net Settlement Fund from 40% to 24% of each Authorized Claimant's Recognized Claim. That prejudice does not flow from Late Claimants' untimely filing of their claims; it flows from the conceded fact that the Late Claimants suffered substantial compensable losses. Such prejudice resulting from payout reductions attributable to a more equitable distribution among a larger group of injured parties is not a form of prejudice that warrants denial of recovery to the Late Claimants under the circumstances of this case.



**FINANCIAL RECOVERY STRATEGIES**

Honorable Charles R. Breyer
January 10, 2021
Page 6

all three Phases is *not* attributable to the Excluded Phase 1 & 2 Submissions – both law and equity require the Excluded Phase 1 & 2 Submissions to be included in that cumulative distribution.

Settlement Class Counsel's rejection of Excluded Phase 1 & 2 Submissions also treats Settlement Class Members inequitably relative to each other, and, therefore, violates recently amended Rule 23, as well as precedent prior to the 2018 amendments to that Rule. *See* Fed. R. Civ. P. 23(e)(2)(D) (effective Dec. 1, 2018).[6] It is indisputable here that the substantive claims

---

*In re Authentidate Hldg. Corp. Sec. Litig.*, Master File No. 05 Civ. 5323, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013); *accord, e.g., Orthopedic Bone Screw*, 246 F.3d 315 at 324 ("By excluding [the late claimant] and other similarly situated late registrants from the class, the timely registrants would receive what is essentially a "windfall," comprised of some portion of the recovery that would be owed to the otherwise deserving late registrants. As noted in *Cendant PRIDES II*, the loss of a windfall is not prejudicial.") (citing *In re Cendant Corp. PRIDES Litig.*, 235 F.3d 176, 184 (3d Cir. 2000) (reversing as "not act[ing] in the sound exercise of its discretion" the district court's misapplication of the *Pioneer* factors to a claimed mailroom misadventure)); *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 297 F.R.D. 90, 96 (S.D.N.Y. 2013) (Sweet, J.) ("[C]lass members are not prejudiced since they are obligated to share a fixed recovery with other equally entitled claimants and timely-filed claimants have no justifiable expectation of any particular payout."); *CME Grp. Inc. v. Chicago Bd. Op. Exch., Inc.*, CIV.A. 2369, 2009 WL 1856693, at *3 (Del. Ch. June 25, 2009) (Noble, V.C.) ("Even though other Group A Members' distributions will be diminished somewhat …, the additional proceeds from the settlement pool they would receive if late filers were excluded is simply a windfall. Accordingly, they suffer no prejudice"); *In re Elec. Carbon Prods. Antitrust Litig.*, 622 F. Supp.2d 144, 156 (D.N.J. 2007) ("The Court cannot find prejudice merely because, contrary to the facts of this case and the law of this Circuit, the parties assumed qualified late claimants … would not have access to the settlement."); *Dahingo v. Royal Carib. Cruises, Ltd.*, 312 F. Supp.2d 440, 446 (S.D.N.Y. 2004) (Allowing late-filed claims to participate in a settlement does not prejudice those who filed timely because "the plaintiffs who had filed timely claims had no justifiable expectation in any particular pay-out."); *In re Cendant Corp. PRIDES Litig.*, 189 F.R.D. 321, 324-25 (D.N.J. 1999) (in claims made settlement, no prejudice to defendant caused by extending claims filing date), *aff'd*, 233 F.3d 188, 196-97 (3d Cir. 2000); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 844-45 (E.D.N.Y. 1995) (in claims made settlement, no prejudice to defendants caused by allowing valid late claims); *In re Agent Orange Prod. Liab. Litig.*, 689 F. Supp. 1250, 1263 (E.D.N.Y. 1988) (Weinstein, J.) (Because "no payments have yet been made to any claimants, earlier estimates of possible payment amounts did not confer on the early claimants any right to those particular amounts.").

[6] *See* Fed. R. Civ. P. 23 Adv. Comm. Notes 2018 Amend., Subd. (e)(2) &¶¶ (C) & (D) ("Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims … ."); *accord* 4 William B. Rubenstein, Newberg on Class Actions ("Newberg") §13:56 (5th ed.) (Westlaw Dec. 2021) ("A distribution of relief that favors some class



Honorable Charles R. Breyer
January 10, 2021
Page 7

asserted on behalf of Settlement Class Members that made timely submissions and those asserted on behalf of Settlement Class Members that provided the Excluded Phase 1 & 2 Submissions are identical. And it is inarguable that timely claimants have no better right to recover from a class action settlement than do untimely claimants. *See, e.g.*, *Bear Stearns*, 297 F.R.D. at 96 (timely claimants and late claimants are "equally entitled" to "share in a fixed recovery"). And as the *Elec. Carbon* court held, "the Court has an obligation not to elevate the claims of any class member over the claims of other class members, no matter how large a class member's stake in the case might be. All legitimate class members should, if equitable, be permitted to share in the settlement." 622 F. Supp.2d at 156. Contrary to Settlement Class Counsel's "equity-based" argument, therefore, Settlement Class Members that provided the Excluded Phase 1 & 2 Submissions may not, on that basis alone, be treated less favorably than Settlement Class Members that made timely submissions. *See, e.g.*, *Radcliffe v. Hernandez*, 794 Fed. Appx. 605, 607 (9th Cir. 2019) ("Rule 23's flexible standard allows for the unequal distribution of settlement funds so long as the distribution formula takes account of *legitimate considerations* and the settlement remains 'fair, reasonable, and adequate.'") (emphasis added).[7] As the court in *True* explained well-before the 2018 amendments to Rule 23, making among class members arbitrary distinctions – that is, distinctions not based on substantive differences in the nature of their claims or in sustaining them through trial – is fatal to settlement approval:

---

members at the expense of others may be a red flag that class counsel have sold out some of the class members at the expense of others.").

[7] *Accord Gaffney v. City of Santa Clara*, No. 18-cv-06500, 2020 WL 12182761, at *6 (N.D. Cal. Apr. 13, 2020) (Tigar, J.) ("Courts generally are wary of settlement agreements where some class members are treated differently than others.") (quotations omitted); *Elder v. Hilton Worldwide Hldgs., Inc.*, No. 16-cv-00278, 2020 WL 11762284, at *8 (N.D. Cal. Apr. 29, 2020) (Tigar, J.) (Preferential treatment raises concern when a settlement "may be trading the claims of the latter group away in order to enrich the former group.") (quotation and citations omitted).



FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
January 10, 2021
Page 8

> ("[T]he settlement here draws an arbitrary distinction among class members with
> identical legal claims and injuries … . This is patently unfair, and counsels against
> approval of the proposed settlement."

*True v. Am. Honda Motor Co.*, 749 F. Supp.2d 1052, 1069 (C.D. Cal. 2010) (rejecting settlement as
not fair, reasonable and adequate because "[p]laintiffs do not suggest that those in the 'Option C'
sub-group have any different legal claims than the other class members, or that they suffered
any greater damages.") (citing cases), *quoted in, e.g.*, *Elder*, 2020 WL 11762284 at *8; *Gaffney*,
2020 WL 12182761, at *6.[8]

Unlike Settlement Class Counsel here, class counsel almost never attempt to treat
untimely claimants less favorably than timely ones. Instead, they affirmatively recommend that
courts *include* untimely claims – FRS has never encountered a circumstance in which class counsel
attempted to reject untimely deficiency cure responses that were submitted while deficiency
cures were still being processed – because doing so is the only way to treat all claimants
equitably. A recent example in this district is provided by class counsel's recommendation that
the court in the >$1 billion *LCD Indirect* settlements accept untimely claims:

> The distribution has not been delayed as a result of any late-filed claims.
> Moreover, those claimants, like all other claimants, have been injured as a result
> of the same alleged wrongful conduct. … Additionally, because all claimants are
> similarly situated, none of them has a better right to recover than any other
> claimant; in other words, because no distribution delay has been occasioned by

---

[8] *Accord Petruzzi's, Inc. v. Darling-Delaware Co., Inc.*, 880 F. Supp. 292, 300-01 (M.D. Pa. 1995) ("[T]he
same type of injury was purportedly sustained by all class members, and all class members have the same
right of recovery against Moyer. Thus, while disparate treatment of class members may be justified by a
demonstration that the favored class members have different claims or greater damages, no such
demonstration has been made here.") (citation omitted); *cf. In re Agent Orange Prod. Liab. Litig.*, 611 F.
Supp. 1396, 1411 (E.D.N.Y. 1985) ("[i]f one set of claims had a greater likelihood of ultimate success than
another set of claims, it is appropriate to weigh 'distribution of the settlement … in favor of plaintiffs
whose claims comprise the set' that was more likely to succeed.") (quotations and citations omitted), *aff'd
in part & rev'd in part on other grounds*, *In re Agent Orange Prod. Liab. Litig. MDL No. 381*, 818 F.2d 179
(2d Cir. 1987).



FINANCIAL
RECOVERY
STRATEGIES

Honorable Charles R. Breyer
January 10, 2021
Page 9

> the processing of [late] claims, the first-filed claim is no more entitled to recover
> or to recover more per unit than the last claim received and processed before the
> distribution motion is filed.

*In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. CV-07-5944, IPP's & Settling States' Jt. … Mot. to …

Distrib., Doc. 9217, at 7:17-24 (N.D. Cal. Sep. 12, 2014). And in the *DRAM* settlements, also in this

district, class counsel made a similar recommendation:

> Although the initial claims deadline was August 1, 2014, the distribution has not
> been delayed by the additional claims filed between August 1, 2014 and July 1,
> 2015, and considerations of overall fairness to the Settlement Class outweigh any
> prejudice to those class members who filed in the 'first wave' of claims by
> August 1, 2014.

*In re Dynamic Random Memory (DRAM) Antitrust Litig.*, MDL No. 1486 ("*DRAM*"), Jt. Mot. Distrib.

Settle. Funds, Doc. 2273, at 11:4-17 (N.D. Cal. May 4, 2016). Even though the circumstances of

the Settlements are at least as, if not more, compelling than those present in these and other

settlements cited here, Settlement Class Counsel argue that rejecting Excluded Phase 1 & 2

Submissions is nevertheless "equitable" because they rejected *all* of them and thus treated *all*

class members that submitted them the same way.[9] But merely applying to all Excluded

Phase 1 & 2 Submissions the same inequitable treatment relative to timely claimants does not,

given the years that the Settlement Funds have been on deposit and given that Phase 1 and

---

[9] *See, e.g.,* Settlement Class Counsel's Letter at 2-3 ("Rust and Class Counsel have adhered to all Court-ordered deadlines and have not deviated from the Court-ordered deadlines for *any* claimant to date. … Rust and Class Counsel remain mindful that they must take a consistent position with respect to all potential claimants so that no potential claimant is treated differently than any other. … Arbitrarily altering deadlines for some (or many) late-filers raises potential questions about fairness to all claimants if special accommodations are granted on an individualized, claimant by claimant basis outside of the distribution framework established for the class as a whole."). Settlement Class Counsel also misstate FRS's request as seeking special treatment for its clients. *See* Pls.' Mot. at 1:21-2:2. But as previously pointed out in FRS's Reply Letter (at 2-3), "while FRS may only speak on behalf of its clients, what we seek is equitable treatment for all Settlement Class Members. Any relief that the Court grants from Settlement Class Counsel's unfair treatment should be applied equally to all similarly situated Settlement Class Members."



Honorable Charles R. Breyer
January 10, 2021
Page 10

Phase 2 deficiency responses were ignored while Phase 3 deficiency cures were being processed, justify treating Excluded Phase 1 & 2 Submissions less favorably than timely submissions.

Settlement Class Counsel's rejection of Excluded Phase 1 & 2 Submissions also ignores their obligation to include in the distribution as many eligible class members as possible. *See, e.g.*, *In re LIBOR-Based Fin. Instr. Antitrust Litig.*, 327 F.R.D. 483, 496 (S.D.N.Y. 2018) ("The goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible.") (quoting Newberg §12:15 (5th ed.) (Westlaw 2018).[10] The recognition of class counsel's obligation to include in distributions as many class members as possible is exemplified by the recommendation to the court made by class counsel in *Bank of America*:

> GCG and Co-Lead Counsel believe that the interest of compensating as many Class Members as possible … would best be served by permitting the acceptance of all Late Claims received through August 31, 2016, a cut-off date selected so that finalization of this motion could occur, to the extent these Claims are otherwise eligible to receive payment under the Court-approved Plan of Allocation.

*In re Bank of Am. Corp. Sec., Deriv. & ERISA Litig.*, Master File No. 09 MD 2058, Mem. Supp. of Lead Pls' Mot. for … Mod. of Distrib. Ord. …, Doc. 1024, at 5 n.7 (S.D.N.Y. Nov. 14, 2016).[11]

---

[10] *Accord, e.g.*, *Krakauer v. Dish Network, LLC*, Case No. 1:14-CV-333, 2017 WL 3206324, at *7 (M.D.N.C. July 27, 2017) (citing Newberg §12.15 (5th ed. 2017)); *Rubio-Delgado v. Aerotek, Inc.*, No. 13-cv-03105, 2015 WL 3623627, at *7 (N.D. Cal. June 10, 2015) ("[T]he goal [of a class action settlement] should be to distribute settlement payments to as many class members as possible."); *Park v. The Thomson Corp.*, No. 05 Civ. 2931, 2008 WL 4684232, at *5 (S.D.N.Y. Oct. 22, 2008) ("Because the Amended Settlement enables as many Class Members as possible to receive a fair share of the settlement amount, the allocation plan is approved, and final approval is granted to the Amended Settlement."); *In re Currency Conv. Fee Antitrust Litig.*, 263 F.R.D. 110, 126 (S.D.N.Y. 2009) (same), *aff'd sub nom. Priceline.com, Inc. v. Silberman*, 405 F. App'x 532 (2d Cir. 2010).

[11] *See, e.g.*, *In re Lithium-Ion Batteries Antitrust Litig.*, No. 13-MD-02420, 2d Rpt. Claims Status & Req. Ext. Claims Deadline, Doc. 2120, at 2:4-10 (N.D. Cal. Jan. 5, 2018) (As a result of the pendency of multiple appeals, class counsel requested serial claims filing deadline extensions "to maximize the number of claims": "The distribution of the settlement corpus will be impossible while the appeals remain pending



Honorable Charles R. Breyer
January 10, 2021
Page 11

The importance of increasing class member participation in settlements, which necessarily will occur when Excluded Phase 1 & 2 Submissions are included, was codified in the 2018 amendments to Rule 23(e)(2)C). *See* 4 Newberg §13:53, *Final approval criteria— Rule 23(e)(2)(C)(ii)* (Westlaw 2021), *quoted in, e.g., Moreno v. Beacon Roofing Supply, Inc.*, No. 19cv185, 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020). Those amendments "require[ ] courts to examine 'the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp.3d 686, 694 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(2)(C)(ii)). And according to the Rule 23 Advisory Committee, it "[o]ften will be important" for courts "to scrutinize the method of claims processing to ensure that it facilitates filing legitimate claims," and that it also "may be important" to require the parties to provide "actual claims experience" in connection with a court's evaluation of whether a settlement is fair, reasonable and adequate. Fed. R. Civ. P. 23 Adv. Comm. Notes 2018 Amend., Subd. (e)(2) &¶¶ (C) & (D). Under amended Rule 23(e)(2)(C)(ii), therefore, courts, when evaluating whether a settlement is fair, reasonable and adequate must consider the level of class member participation in it. Here, however, Settlement Class Counsel have adopted and then refused to modify a claims submission process with shifting deadlines and difficult to understand requirements. Compounding matters, they then refused to allow the participation of inarguably legitimate class members even though their untimely submissions, both because they were filed before the Phase 3 deadlines and because Settlement Class Counsel have had years in which to address them, would have had absolutely no impact on the timing of the cumulative distribution. This approach is thus contrary to Settlement Class Counsel's duties

---

… . Consequently, no purpose is served by ending the claims period while the appeals are pending."); *accord In re Optical Disk Drive Prods. Antitrust Litig.*, No. 3:10-md-02143, IPPs' Mot. Prelim. App. Settle. with Defs. Samsung Elec. Co., Ltd., …, Doc. 2852, at 5:3-5 (N.D. Cal. Aug. 23, 2018) (class counsel requested that court reopen claims filing period for the prior seven settlements).



to those class members, and is exactly what in the 2018 amendments to Rule 23 Congress and the Supreme Court sought to redress.

Settlement Class Counsel have offered no rational, legal or equitable bases for ignoring for years the Excluded Phase 1 & 2 Submissions, nor do any exist.[12] That additional time will now be needed to process the Excluded Phase 1 & 2 Submissions—filings that properly should have been processed years ago, which necessarily will extend the timing of the distribution, should not bear on the outcome of this objection. The harm to timely claimants that will result from having to wait while Rust, as a result of Settlement Class Counsel's refusal properly to address Excluded Phase 1 & 2 Submissions, does what it should have done years ago, would pale in comparison to the harm that rejecting the Excluded Phase 1 & 2 Submissions would cause the claimants that submitted them.[13] Settlement Class Counsel have had years to remedy this issue by seeking leave of this Court;[14] they have chosen not to do so. As a result, Phase 1 and Phase 2 deficiency cures have sat for years unprocessed by Rust while Phase 3 deficiency cures were being processed and while all Settlement Funds have remained in escrow.

---

[12] *See, e.g.*, *Bear Stearns*, 297 F.R.D. at 95 ("Counsel argued that 'it would be unfair to deny payment of an otherwise eligible claim received while claims were still being processed because it was submitted after the Court-approved claims filing deadline.'").

[13] Settlement Class Counsel argued that the Court should not consider FRS's Initial Letter because the appropriate time for challenging the rejection of the Excluded Phase 1 & 2 Submissions would be in connection with the motion for distribution. *See* Settlement Class Counsel's Letter at 3 (Section II, "The Court May Address Late-Filed Claims at the Motion for Distribution"). Addressing this issue now rather than when, in FRS's Initial Letter (Sept. 10, 2020), FRS brought it to the Court's attention, is what Settlement Class Counsel desired.

[14] FRS brough this issue Settlement Class Counsel's attention no later than September 16, 2019, over two years ago. *See* FRS's Initial Letter, Ex. 1.



Honorable Charles R. Breyer
January 10, 2021
Page 13

<u>**CONCLUSION**</u>

For the foregoing reasons, as well as those set forth in FRS's Initial Letter and in FRS's

Reply Letter, Excluded Phase 1 & 2 Submissions should participate in all thirteen Settlements.

Respectfully submitted,

Jeffrey N. Leibell

Enclosures

Copies (via email) to:  Adam J. Zapala, Esq. (AZapala@cpmlegal.com)
                        Christopher L. Lebsock, Esq. (clebsock@hausfeld.com)
Copy (via overnight courier) to: Clerk of the Court

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | **Case No. 3:07-cv-05634-CRB** <br><br> **MDL No. 1913** <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AUTHORIZATION TO DISTRIBUTE NET SETTLEMENT FUNDS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| This Document Relates To: <br><br> **ALL ACTIONS** | |
| | Hearing Date: February 11, 2022 <br> Judge: Hon. Charles R. Breyer <br> Time: 10 a.m. <br> Courtroom: 6, 17th Floor |

LAW OFFICES
COTCHETT,
PITRE &
MCCARTHY, LLP

Pls.' Notice of Mot. and Mot. for Order Authorization to Distribute Net Settlement Funds; Mem. of
Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB

3-ER-442

1   **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

2          **PLEASE TAKE NOTICE THAT**, the Honorable Charles R. Breyer will hear this Motion

3   at the United States District Court for the Northern District of California, 450 Golden Gate

4   Avenue, Courtroom 6, 17th Floor, San Francisco, California on February 11, 2022 at 10 a.m.

5          Plaintiffs seek entry of an order authorizing distribution of the net settlement funds in

6   connection with the settlements in this matter, all of which have received final approval by the

7   Court. ECF Nos. 1009, 1259-1, 1318.

8          Plaintiffs' motion is based on this Notice of Motion and Motion; the accompanying

9   Memorandum of Points and Authorities in support thereof; the Declaration of Joel Botzet, a

10  representative from the Court-appointed claims administrator, Rust Consulting, Inc.; the Court's

11  files and records in this matter; and such other matters as the Court may consider.

12

13  Dated: January 4, 2022                Respectfully Submitted,

14                                        /s/ *Adam J. Zapala*
                                          Adam J. Zapala (245748)
15                                        Elizabeth T. Castillo (280502)
                                          **COTCHETT, PITRE & McCARTHY, LLP**
16                                        840 Malcolm Road
                                          Burlingame, CA 94010
17                                        Phone: (650) 697-6000
                                          Fax: (650) 697-0577
18                                        azapala@cpmlegal.com
                                          ecastillo@cpmlegal.com
19

20                                        Michael P. Lehmann (77152)
                                          Christopher L. Lebsock (184546)
21                                        Seth R. Gassman (311702)
                                          **HAUSFELD LLP**
22                                        600 Montgomery Street, Suite 3200
                                          San Francisco, CA 94111
23                                        Phone: (415) 633-1908
                                          Fax: (415) 358-4980
24                                        mlehmann@hausfeld.com
                                          clebsock@hausfeld.com
25                                        sgassman@hausfeld.com
26

27                                        *Lead Class Counsel for Plaintiffs*

28

**Pls.' Notice of Mot. and Mot. for Order Authorizing Distribution of Net Settlement Funds; Mem. of
Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB**

3-ER-443

1

**TABLE OF CONTENTS**

2
**Page**

3    I.     INTRODUCTION ............................................................................................1

4    II.    BACKGROUND ..............................................................................................2

5    III.   ARGUMENT ...................................................................................................3

6    IV.    CONCLUSION ................................................................................................6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Pls.' Notice of Mot. and Mot. for Authorization to Disburse Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB**     i

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

**Rules**

4

Federal Rule of Civil Procedure

5

Rule 23 ................................................................................................................................3

6

Rule 23(c)(2) ......................................................................................................................2

7

Rule 23(e)(l) .......................................................................................................................2

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Pls.' Notice of Mot. and Mot. for Authorization to Disburse Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB** ii

1

## STATEMENT OF THE ISSUE TO BE PRESENTED

2

Whether the Court should authorize the distribution of the net settlement funds given that

3

the claims administrator, Rust Consulting, Inc. ("Rust"), has processed settlement class member

4

claims and is prepared to distribute such funds.

5

## MEMORANDUM OF POINTS AND AUTHORITIES

6

## I.    INTRODUCTION

7

Plaintiffs have settled with all 13 Defendants: Air New Zealand Ltd., All Nippon Airways

8

Co. Ltd., Cathay Pacific Airlines Ltd., China Airlines Ltd., EVA Airways Corp., Philippine

9

Airlines Inc., Japan Airlines International Co. Ltd., Malaysian Airline System Berhad, Qantas

10

Airways Ltd., Singapore Airlines Ltd., Societe Air France, Thai Airways International Public Co.

11

Ltd., and Vietnam Airlines Co. Ltd. The Court has granted final approval of each of these

12

settlements. ECF Nos. 1009, 1259-1, 1318. The net settlement funds total $104,388,254.38. Decl.

13

of Joel Botzet ("Botzet Decl."), ¶ 24. Due to rounding to the nearest cent when calculating the pro

14

rata share per qualified claim, the amount of the initial distribution will be $104,387,133.10. *Id.*

15

The net settlement funds consist of the settlement funds plus interest earned thereon and the vendor

16

settlement[1] and less Court-approved attorneys' fees, litigation costs and expenses, settlement

17

notice and claims administration expenses, and class representative service awards. ECF Nos.

18

1009, 1252, 1314, 1321. Rust has processed and reviewed all claims submitted and has sent final

19

determination letters to all claimants. Botzet Decl., ¶ 21. The net settlement funds are ready for

20

distribution to class members. Accordingly, Co-Lead Class Counsel ("Class Counsel") moves the

21

Court for an order authorizing the distribution of the net settlement funds to class members.[2] While

22

FRS, a third-party claim filer, may argue that the claims administration process was not fair,

23

24

25

---

[1] As Plaintiffs informed the Court in connection with preliminary approval of the ANA settlement, following resolution of a dispute with one of Plaintiffs' litigation vendors, Plaintiffs received $1.25 million to resolve the dispute, which Plaintiffs proposed and the Court approved using to defray reimbursement of expenses. *See, e.g.*, ECF Nos. 1320, 1321.

26

27

[2] Plaintiffs understand a third-party claim filer, FRS, intends to oppose this motion in connection with its untimely filed claim forms and untimely submitted information to cure deficiencies.

28

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB**    1

3-ER-446

1    reasonable, or adequate, FRS is wrong. Rust and Class Counsel have simply not made an

2    exception for FRS to submit claims after the Court-ordered claims filing deadline.

**II.    BACKGROUND**

4    On August 6, 2009, Plaintiffs filed their Consolidated Class Action Complaint alleging that

5    the Defendants agreed to fix the prices of airline tickets for travel between the United States and

6    Asia/Oceania. After nearly 12 years of hard-fought litigation, Plaintiffs reached settlements with

7    all Defendants totaling $148,152,000. ECF No. 1307 at 1. The Court granted final approval of all

8    settlements and found that the proposed notice plan for each round of settlement was fair,

9    adequate, and reasonable; satisfied due process and Federal Rules of Civil Procedure 23(c)(2) and

10   23(e)(l); and was the best practicable under the circumstances. ECF Nos. 1009, 1259-1, 1318. The

11   Court further stated that the plan of allocation—a *pro rata* distribution of settlement funds based

12   on the number of tickets proffered by members for each settlement class—will fairly compensate

13   class members for their injuries. *See*, *e.g.*, ECF No. 1297. The Court also entered final judgments

14   of dismissal with prejudice with respect to all 13 Defendants. ECF Nos. 1014, 1016-1023, 1256-

15   1258, 1260, 1319.

16   Pursuant to the Court's Order Granting Final Approval of Settlement with Defendant All

17   Nippon Airways Co. Ltd., Rust has completed the notice plan in connection with the last

18   settlement in the action. ECF No. 1318. Class members, as defined in the 13 settlement agreements

19   and the orders granting final approval, have submitted claims to share in the net settlement funds.

20   ECF Nos. 1009, 1259-1, 1318. Rust has processed and reviewed all submitted claim forms. Botzet

21   Decl., ¶ 23. The concurrently filed Botzet Declaration confirms that claims administration in this

22   action has strictly adhered to the process and procedures approved by the Court in granting final

23   approval of the settlements. *See*, *generally*, Botzet Decl.

24   During claims administration, Rust reviewed all claim forms and notified claimants in

25   writing of any denials to the claims they submitted. *Id.*, ¶¶ 8, 10. Rust gave all claimants whose

26   claim(s) were not approved during the first review an opportunity to present supplemental

27   information and contest the determination. *Id.* Rust also gave all claimants subject to an audit an

28   opportunity to present supplemental information. *Id.*, ¶¶ 12-15. Rust accepted a variety of

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB**

2

3-ER-447

document types (*e.g.*, travel itineraries, receipts, credit card statements, affidavits/declarations) in varying formats and layouts to maximize eligibility. *Id.*, ¶ 18. In conducting both the deficiency review and audit, Rust applied fair and objective criteria in evaluating all claim forms. *Id.*, ¶¶ 8-20. The criteria applied by Rust in performing these reviews (described below and in the accompanying Botzet Declaration) were uniformly applied to ensure the net settlement funds would be distributed fairly to verified class members. *Id.*

Rust has now completed the deficiency review and subsequent audit. *See*, *generally*, Botzet Decl. The claims process has therefore come to an end, and Plaintiffs are eager to disburse settlement funds to settlement class members expeditiously. Plaintiffs respectfully request entry of an order authorizing distribution of the net settlement funds on a pro rata basis based on settlement class (*e.g.*, Japan Airlines, Thai Airways) and number of tickets as reflected in Exhibit C the Botzet Declaration (Transpacific Air Settlement Distribution and Calculation Summary).

The net settlement funds total $104,388,254.38 after adding accrued interest and the vendor settlement and deducting Court-approved attorneys' fees, litigation costs and expenses, settlement notice and claims administration expenses, and class representative service awards. ECF Nos. 1009, 1252, 1314, 1321; Botzet Decl., ¶ 24. The amount of the initial distribution will be $104,387,133.10 due to rounding to the nearest cent when calculating the pro rata share per qualified claim. Botzet Decl., ¶ 24.

## III. ARGUMENT

The court should approve distribution of the net settlement funds. Class members should receive prompt distribution of the net settlement funds due to them. It is consistent with Federal Rule of Civil Procedure 23 and in furtherance of the interests of justice to distribute the net settlement funds to class members that have submitted timely and valid claims. Plaintiffs therefore request that the Court approve distribution of the net settlement funds.

The claims administration process was fair and reasonable. Claims administration is complete and the net settlement funds may now be distributed pro rata to class members that have submitted valid claims. Rust has received and processed all 96,133 claim forms from potential

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB          3

3-ER-448

settlement class members received, which represent 66,370 unique, potential class members in accordance with the Court's orders and the underlying settlement agreements. Botzet Decl., ¶¶ 6, 21. Rust has also completed a deficiency review and audit and rendered final determinations on all claim forms. *Id.*, ¶¶ 8-23.

### Deficiency Review

Rust's deficiency review has been conducted and completed according to the following standards:

- Rust received claim forms from potential class members and subsequently verified whether the claim forms were timely submitted and ensured that they were signed by the claimant or an appropriate representative;

- For claim forms that were deemed deficient or ineligible (*e.g.*, the claim form was incomplete with no ticket purchase information, the claim form was not signed, and/or no contract to authorize representation was included with the claim form), Rust mailed "Request for Information" letters to claimants, describing the defect(s) and what was required to cure the defect(s). Rust further indicated that the claim form may be denied if the identified defect(s) were not corrected by a certain date;

- To the extent a putative settlement class member submitted additional information in response to the deficiency notice, Rust subsequently reviewed and evaluated each response to the Request for Information to determine whether the response corrected the defect(s);

- Rust sent a final determination letter to advise claimants of the final finding of deficiency or cure, as the case may be; and

- For each round of settlement, Rust completed the deficiency review.

*Id.*, ¶¶ 8-11.

Through the deficiency review, Rust determined that 101 of 47,609 claims were invalid in connection with the Phase 1 claims period, 196 of 28,957 claims were invalid in connection with the Phase 2 claims period, and 553 of 19,549 claims were invalid in connection with Phase 3 claims period. *Id.*, ¶¶ 9, 11.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB    4

3-ER-449

**Audit**

Following the deficiency review, Rust conducted and completed an audit according to the following standards:

- All claim forms were subject to review and/or audit by Rust;

- Rust engaged in a typical audit and fraud detection campaign, including, for example, by sending audit or "Request for More Information" letters to claimants whose claimed tickets exceeded certain thresholds, or to claimants who submitted a claim form from the same address or email of another claimant;

- Rust reviewed and evaluated all responses to audit or "Request for More Information" letters to determine whether the response provided acceptable support for the claimed tickets. Acceptable support included (a) receipts showing ticket purchases, (b) cancelled checks, (c) credit card statements, (d) travel itineraries, (e) email confirmation of ticket purchases, and/or (f) affidavit or declaration attesting that the number of claimed tickets is accurate;

- In response to challenges encountered by class members due to the COVID pandemic, the initial audit response deadline of October 12, 2020 was extended to November 20, 2020, allowing class members additional time to gather and provide the documentation requested due to office closures, shelter in place orders, and delays in receiving mail; and

- Rust sent final determination letters to advise claimants of the final finding of eligibility. *Id.*, ¶¶ 12-19.

Through the audit, Rust determined 2,360 claims were ineligible due to (a) the failure to respond to the Request for Information letters or (b) the documentation submitted was inadequate to substantiate the claims submitted. *Id.*, ¶ 19.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB     5

3-ER-450

**Final Claim Totals**

Among the 96,133 claims submitted, Rust determined that there are 66,650 unique claims. *Id.*, ¶¶ 6-7; Ex. D. Among the 66,370 unique claims remaining after 280 claims were withdrawn, Rust determined that there are 61,768 timely and valid claims totaling almost 30 million—29,929,759 to be exact—qualifying tickets. *Id.*, ¶¶ 6-7, 21(a), 23; Ex. D. Thus, after completion of the deficiency review and audit described above, Rust determined a total of 4,602 claims were invalid or ineligible due to one or more of the following reasons: (a) no ticket information was provided; (b) no timely response was received for requests for additional information; and (c) the flight(s) claimed were not part of any settlement classes. *Id.*, ¶ 22; Ex. D.

Exhibit A to the Botzet Declaration is a copy of the Notice of Final Determination for claims not eligible for payment. Exhibit B to the Botzet Declaration is a copy of the Notice of Final Determination for claims authorized for payment. Exhibit C to the Botzet Declaration summarizes the net settlement funds available for distribution to members of each settlement class as well as the ticket count and estimated payment amount per ticket by class. Exhibit D to the Botzet Declaration provides a statistical analysis of the resulting pro rata calculation.

Pursuant to the Northern District of California's Procedural Guidance on Class Action Settlements, within 21 days of the Court's order authorizing distribution of the net settlement funds, Class Counsel will submit a Post-Distribution Accounting detailing the status of distribution.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion and enter an order authorizing the distribution of the net settlement funds.


Dated: January 4, 2022                    Respectfully Submitted,

                                          /s/ *Adam J. Zapala*
                                          Adam J. Zapala (245748)
                                          Elizabeth T. Castillo (280502)
                                          **COTCHETT, PITRE & McCARTHY, LLP**
                                          840 Malcolm Road
                                          Burlingame, CA 94010

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB     6

3-ER-451

Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Class Counsel for Plaintiffs*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**Pls.' Notice of Mot. and Mot. for Authorization to Distribute Net Settlement Funds; Mem. of Points and Authorities in Support Thereof; MDL No. 1913; Case No. 3:07-cv-05634-CRB** 7

3-ER-452

1   Adam J. Zapala (245748)
    azapala@cpmlegal.com
2   Elizabeth Castillo (280502)
    ecastillo@cpmlegal.com
3   **COTCHETT, PITRE & McCARTHY, LLP**
    San Francisco Airport Office Center
4   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
5   Telephone: (650) 697-6000
    Facsimile: (650) 697-0577
6
7   Michael P. Lehmann (77152)
    mlehmann@hausfeldllp.com
8   Christopher Lebsock (184546)
    clebsock@hausfeldllp.com
9   Seth R. Gassman (311702)
    sgassman@hausfeldllp.com
10  **HAUSFELD LLP**
    600 Montgomery Street, Suite 3200
11  San Francisco, CA 94111
    Telephone: (415) 633-1908
12  Facsimile: (415) 358-4980
13
    *Lead Counsel for Plaintiffs*
14
15              **UNITED STATES DISTRICT COURT**
            **NORTHERN DISTRICT OF CALIFORNIA**
16                **SAN FRANCISCO DIVISION**
17
18  IN RE TRANSPACIFIC PASSENGER      | Civil Action No. 3:07-CV-05634-
    AIR TRANSPORTATION               | CRB
19  ANTITRUST
    LITIGATION                        | MDL No: 1913
20
21  ─────────────────────────────     **DECLARATION OF JOEL K.**
22  **This Document Relates to:**     **BOTZET RE: CLAIMS**
                                       **ADMINISTRATION AND**
23  **ALL ACTIONS**                   **DISTRIBUTION OF NET**
                                       **SETTLEMENT FUND**
24
25
26
27
28

JOEL K. BOTZET declares and states that:

1. I am a Program Manager for Rust Consulting, Inc. ("Rust Consulting"), the Court-appointed Claims Administrator for the class action Settlement in this case. My business address is 625 Marquette Avenue, Suite 900, Minneapolis, Minnesota 55402-2469. My business telephone number is 612-359-2035. I am authorized to make this declaration on behalf of Rust Consulting.

2. Rust Consulting has extensive experience in class action matters, having provided settlement administration services in class action lawsuits affecting millions of class members in cases involving employment, consumers, banking and financial services, property, insurance, securities and products liability, among its more than 7,500 projects.

3. Except as otherwise stated, I am fully familiar with and have personal knowledge of the matters stated in this declaration and am competent to testify about them if called upon to do so.

4. I submit this Declaration in order to provide the Court and the parties to the above-captioned action with information regarding the processing of Proof of Claim and allocation and distribution of the Net Settlement Fund to the Settlement Classes.

**Claims Processing Activities**

5.      Pursuant to the December 29, 2019, Order Granting Final Approval of the Settlement with All Nippon Airways ("ANA"), the final Proof of Claim form filing deadline was April 1, 2020.

6.      Through April of 2020, Rust received and processed a total of 96,133 Proof of Claim forms from potential Class Members for the class periods described below.  Of the forms received:

    a.      47,609 were from Phase 1 which included:

            i.      Qantas, Cathay Pacific and Thai Airways Settlements with flights between January 1, 2000 and June 15, 2015.  The claims closing date was October 13, 2015; and

            ii.     Japan Airlines (JAL), Air France, Singapore Airlines, Vietnam Airlines and Malaysian Airline Settlements with flights between January 1, 2000 and December 4, 2017. The claims closing date was April 3, 2018.

    b.      28,957 were from Phase 2 which included:

            i.      Air New Zealand (ANZ), EVA Airways, China Airlines, and Philippine Airlines (PAL) Settlements with flights between January 1, 2000 and December 1, 2016. The claims closing date was December 31, 2018.

    c.      19,549 were from Phase 3 which included:

     i.  Settlement Class III flights between January 1, 2000 and December 1, 2016. The claim closing date was April 1, 2020;

     ii.  JAL and ANA flights to Japan between February 1, 2005 and December 31, 2007 that included a fuel surcharge. The claim closing date was April 1, 2020; and

     iii.  *Satogaeri* fares purchased from JAL and ANA for flights between January 1, 2000 and April 1, 2006. The claim closing date was April 1, 2020.

    d.  18 untimely claims postmarked after the final Proof of Claim form filing deadline of April 1, 2020 and received after August 1, 2020 were not processed.

  7.  The 96,115 timely Proof of Claim forms filed represent 66,650 unique potential Class Members, of which 280 Proof of Claim forms were withdrawn by claimants.

**Deficient Proof of Claim Forms**

  8.  On March 7, 2016, Rust mailed a total of 518 "Request for Information" letters for claims submitted for the Phase 1 class periods that were determined to be deficient or ineligible (for example, the Proof of Claim form was incomplete with no ticket purchase information, the Proof of Claim form was not signed, and/or no contract to authorize representation was included with the Proof of Claim form). This letter described to the Claimants the defect(s)

with his, her or its Proof of Claim form and what, if anything, was necessary to cure the defect(s). The Request for Information letters advised claimants that, unless the indicated deficiency was corrected within ninety (90) days, the Proof of Claim form may be denied.

9. Claimants' responses to the Request for Information letters were scanned to Rust's database and associated with the corresponding Proof of Claim form. The responses were then reviewed and evaluated by Rust's team of processors. If a Claimant's response corrected the defect(s), the settlement database was updated to reflect the changes in status of the Proof of Claim. To be equitable to all Class Members that timely responded, responses postmarked after the 90-day deadline were not considered for correcting a deficient Proof of Claim form. As a result of the deficiency process, 101 of the 47,609 claims submitted in Phase 1 were considered invalid.

10. On April 28, 2020, Rust mailed 1,369 Request for Information letters for claims submitted for Phases 2 and 3 class periods that were determined to be deficient or ineligible (for example, the Proof of Claim form incomplete with no ticket purchase information, the Proof of Claim form was not signed, and/or no contract to authorize representation was included with the Proof of Claim form). This letter described to the Claimants the defect(s) with his, her or its Proof of Claim form and what, if anything, was necessary to cure the

defect(s). The letters advised claimants that unless the indicated deficiency was corrected within thirty (30) days, the Proof of Claim form may be denied.

11.     Claimants' responses to the Request for Information were scanned to Rust's database and associated with the corresponding Proof of Claim form. The responses were then reviewed and evaluated by Rust's team of processors. If a Claimant's response corrected the defect(s), the settlement database was updated to reflect the changes in status of the Proof of Claim.  To be equitable to all Class Members that timely responded, responses postmarked after the 30-day deadline were not considered for correcting a deficient Proof of Claim form.  As a result of the deficiency process, 196 of the 28,957 claims submitted in Phase 2 and 553 of the 19,549 claims submitted in Phase 3 were considered invalid.

**Audit Process**

12.     All Proof of Claim forms were subject to review and/or audit by the Claims Administrator.

13.     On September 11, 2020, Rust mailed a total of 1,767 Request for More Information letters in the audit process.   1,412 letters were sent to individual claimants, and 284 letters were sent to households with multiple claimants at the same address (comprised of 1,020 individual claimants).

14.     As part of Rust's due diligence in processing claims, Rust conducted a review of questionable claims where multiple claims were submitted from the same address and/or email.   An additional 71 letters were sent to

households with more than 35 claimants at the same address (comprising over 6,000 individual claimants) in connection with this review. (For more information, see "Quality Assurance" below.)

15.     Letters were sent to claimants whose claimed ticket counts for individuals or businesses exceeded the following thresholds:

       a.    Individuals: 125 tickets or more, and/or 50 or more tickets for each of the Japan (Fuel Surcharge) and/or Satogaeri Settlement Classes.

       b.    Businesses: 1,000 or more tickets.

16.     Over 500 audit responses were received containing over 1,800 documents.   Responses were received via USPS, email and electronically through secure Managed File Transfer (MFT) system.

17.     In response to the challenges encountered by Class Members due to the COVID pandemic, the October 12, 2020 audit response deadline was extended to November 20, 2020.   The extension allowed Class Members additional time to gather and provide the documentation requested because of office closures, shelter in place orders and delays in receiving mail.

18.     Rust reviewed all responses supplied by the claimants from the "Request for More Information" letters and determined responses to be acceptable support for the number of tickets claimed if any of the following documentation was provided:

      a.      Receipts showing ticket purchases;

      b.      Cancelled checks;

      c.      Credit card statements;

      d.      Travel itineraries;

      e.      Email confirmation of ticket purchases; and/or

      f.      Affidavit or declaration attesting that the number of tickets claimed is accurate.

Non-standard documents in varying formats and layouts (extracts in the form of spreadsheets, PDFs or paper detailing flight information that included airline, invoice number, fare paid, flight ticket number, ticket issue date and/or flight date(s), organization and destination city /airport) required individual review and analysis.

19.    Upon completion of the audit process, it was determined that a total of 2,360 Claims were ineligible, either as a result of a failure to respond to the Request for More Information letters, or because the documentation submitted was inadequate to substantiate the Proof of Claim form submitted in whole or in part.

**Quality Assurance**

20.    An integral part of all of Rust's settlement administration projects is its Quality Assurance review.  Rust's project team and quality assurance personnel worked throughout the administration process to ensure that Proof of Claim forms and supplemental information were processed properly; that

deficiency and ineligibility message codes were properly applied to Proof of Claim Forms; that deficiency notices were mailed to the appropriate Claimants; and that Rust's computer programs were operating properly.

**Final Claim Totals**

21.     On August 24, 2021, "Notice of Final Determination Letters" were mailed to 66,395 individuals and entities that filed claims that were timely and not withdrawn. Attached as Exhibit A is a copy of the Notice of Final Determination for claims not eligible for payment and attached as Exhibit B is a copy of the Notice of Final Determination for claims authorized for payment.

        a.    After mailing Final Determination Letters, the number of unique individuals and entities that filed claims was adjusted from 66,395 to 66,370 for the following reasons:

            i.    Ten (10) Proof of Claim Forms were combined with other Proof of Claim Forms after Rust received documentation establishing their link.

           ii.    Rust received fifteen (15) written requests to withdraw Proof of Claim form submissions.

22.     As of December 16, 2021, after the completion of audits, document reviews, and communications (email, USPS, and telephone) with claimants, approximately 4,602 potential Class Members submitted Proof of Claim that are not eligible due to one or more of the following reasons:

        a.    No ticket information was provided.

b.     No timely response was received for requests for additional information.

c.     The flight(s) were not part of any settlement classes.

23.     As of December 16, 2021, after the completion of audits, document reviews, and communications (email, USPS, and telephone) with claimants, there are approximately 61,768 Class Members authorized for payment totaling 29,929,759 qualifying tickets.

**Pro Rata share of Settlement Funds**

24.     Each of the thirteen Settling Defendant airlines contributed to the total Settlement Fund. The total Settlement Fund available for distribution is $104,388,254.38. The amount of initial distribution is $104,387,133.10 due to rounding to the nearest cent when calculating the *pro rata* share per qualified claim.

25.     There are eleven Settlement Classes that are defined as follows:

a.     JAL Settlement Class – Settlement Group 1

     i.     Includes 1,969,703 tickets claimed for Settlement Defendant airlines for Phase 1 class period.

     ii.     Includes Asia/Oceania originating travel (one-way or round trip) and U.S. originating travel (one-way or roundtrip).

b.     Air France/Singapore Airlines/Vietnam Settlement Class – Settlement Group 2

  i.  Includes 5,117,529 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant and Co-conspirator airlines for Phase 1 class period.

 c. Malaysian Air Settlement Class – Settlement Group 3

  i.  Includes 5,117,529 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant and Co-conspirator airlines for Phase 1 class period.

 d. Thai Airways Settlement Class – Settlement Group 4

  i.  Includes 1,275,187 tickets claimed for Settlement Defendant airlines and tickets claimed for Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. between the U.S. and the Republic of Korea for Phase 1 class period.

  ii.  Includes U.S. originating travel (one-way or roundtrip) and travel between U.S. and Republic of Korea.

 e. Cathay Pacific Airways/Qantas Settlement Class – Settlement Group 5

  i.  Includes 1,139,347 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant airlines for Phase 1 class period.

 f. ANZ Settlement Class – Settlement Group 6

  i.  Includes 5,875,811 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant and Co-conspirator airlines for Phase 1 and Phase 2 class period.

 g. EVA/China Airlines Settlement Class – Settlement Group 7

      i.    Includes 1,384,299 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant airlines for Phase 1 and Phase 2 class period.

   h.   PAL Settlement Class – Settlement Group 8

      i.    Includes 5,875,811 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant airlines for Phase 1 and Phase 2 class period.

   i.   Settlement Class III – Settlement Group 9

      i.    Includes 2,116,920 tickets claimed for U.S. originating travel (one-way or roundtrip) for Settlement Defendant airlines for Phase 1, Phase 2 and Phase 3 class period.

   j.   Japan Fuel Surcharge Settlement Class– Settlement Group 10

      i.    Includes 38,812 tickets claimed for U.S. originating travel (one-way or roundtrip) in Phase 3 class period for JAL or ANA that include a fuel surcharge.

   k.   *Satogaeri* Settlement Class – Settlement Group 11

      i.    Includes 19,611 tickets claimed for U.S. originating travel (one-way or roundtrip) in Phase 3 class period for Japan Airlines International Company, Ltd. or All Nippon Airways Company, Limited (ANA) that were *Satogaeri* fares.

26.    To calculate a claimant's *pro rata* share of the settlement funds for each of the eleven Settlement Classes, the tickets claimed on eligible Proof of Claim forms are included in each of the Settlement Classes according to the terms of Settlement for each Defendant. The settlement funds available are divided equally among the tickets included in each of the Settlement Classes. A

summary of the total tickets included and the funds available for distribution by Settlement Class is attached as Exhibit C.

27.    The total purchases by all eligible claimants for each Settlement Class and the statistical analysis of the resulting pro rata calculation is attached as Exhibit D.

**Distribution Plan for the Net Settlement Fund**

28.    Upon approval by the Court, Rust will prepare and mail checks (or wire transfers where applicable) to qualified claimants for their *pro rata* share of the Settlement Fund.

29.    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge.

Executed this 16th day of December, 2021 in Minneapolis, Minnesota.

Joel K. Botzet

# Exhibit A

Transpacific Air Transportation Settlement
c/o Rust Consulting, Inc.
P.O. Box 2209
Faribault, MN 55021-1609
USA

## IMPORTANT LEGAL MATERIALS

|||||||| *CLMNT IDNO* ||||||||  UAA <<SequenceNo>>

<<TPFCode>>

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

<<DATE>>

NOTICE OF CLAIM FINAL DETERMINATION for Class Member ID <<HHID>>

Dear Claimant

We have received and processed the Claim Form(s) that you filed in the Transpacific Airline Settlement along with any supporting documentation you may have provided at our request. Upon reviewing the claim and purchase information provided we have determined that the claim(s) you submitted are not eligible due to one or more of the reasons below:

- No ticket information was provided.
- No timely response was received for requests for additional information.
- The flight(s) were not part of any of the settlement classes.

If you have any questions, please call us toll-free at 1-800-439-1781 or send an email to: info@airlinesettlement.com.

Sincerely,

Settlement Administrator

3-ER-467

# Exhibit B

Transpacific Air Transportation Settlement
c/o Rust Consulting, Inc.
P.O. Box 2209
Faribault, MN 55021-1609
USA

## IMPORTANT LEGAL MATERIALS

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ UAA <<SequenceNo>>                    <<TPFCode>>
* C L M N T   1 D N 0 *

<<Name1>>
<<Name2>>
<<Name3>>
<<Name4>>
<<Address1>>
<<Address2>>
<<City>> <<State>> <<Zip10>>
<<CountryName>>

<<DATE>>

NOTICE OF CLAIM FINAL DETERMINATION for Class Member ID <<HHID>>

Dear Claimant

We have received and processed the Claim Form(s) that you filed in the Transpacific Airline Settlement along with any supporting documentation you may have provided at our request. Upon reviewing the claim and purchase information provided below are the ticket counts that qualify for each of the settlement classes:

| Settlement Class | Qualified Ticket Count |
|---|---|
| JAL Settlement Class: | <<TTL_SG1>> |
| Air France/Singapore Airlines/Vietnam Airlines Settlement Class: | <<TTL_SG2>> |
| Thai Airways Settlement Class: | <<TTL_SG3>> |
| Malaysian Air Settlement Class: | <<TTL_SG4>> |
| Cathay Pacific Airways/Qantas Settlement Class: | <<TTL_SG5>> |
| ANZ Settlement Class: | <<TTL_SG6>> |
| EVA/China Airlines Settlement Class: | <<TTL_SG7>> |
| PAL Settlement Class: | <<TTL_SG8>> |
| Settlement Class III: (passenger air transportation originating in the U.S. that included at least one segment to Asia/Oceania from a Defendant between January 1, 2000 and December 1, 2016) | <<TTL_SG9>> |
| Japan Settlement Class (Fuel Surcharge): | <<TTL_SG10>> |
| *Satogaeri* Settlement Class: | <<TTLSG11>> |

This letter is for informational purposes only and you do not need to do anything in response. The ticket totals are the basis for calculating the settlement benefits for which you are entitled.

More information including the Settlement Class definitions is located on the website www.airlinesettlement.com.

Sincerely,

Settlement Administrator

3-ER-469

# Exhibit C

**Transpacific Air Settlement Distribution and Calculation Summary**

| | Settlement Group | Settlement Class | Total Settlement Fund available for distribution | Amount of Initial Distribution[1] | Count of tickets | Per Ticket Estimate |
|---|---|---|---|---|---|---|
| Settlement Classes | 1 | JAL Settlement Class | 7,081,875.03 | 7,081,787.12 | 1,969,703 | 3.5954 |
| | 2 | Air France/Singapore Airlines/Vietnam Airlines Settlement Class | 7,649,841.41 | 7,649,795.56 | 5,117,529 | 1.4948 |
| | 3 | Malaysian Air Settlement Class | 672,778.13 | 672,746.96 | 5,117,529 | 0.1315 |
| | 4 | Thai Airways Settlement Class | 6,869,418.78 | 6,869,408.89 | 1,275,187 | 5.3870 |
| | 5 | Cathay Pacific Airways/Qantas Settlement Class | 5,700,909.40 | 5,700,894.69 | 1,139,347 | 5.0037 |
| | 6 | ANZ Settlement Class | 283,275.00 | 282,989.58 | 5,875,811 | 0.0482 |
| | 7 | EVA/China Airlines Settlement Class | 28,681,593.89 | 28,681,385.89 | 1,384,299 | 20.7191 |
| | 8 | PAL Settlement Class | 6,373,687.53 | 6,373,649.92 | 5,875,811 | 1.0847 |
| | 9 | Settlement Class III (ANA) | 5,311,406.28 | 5,311,022.27 | 2,116,120 | 2.5098 |
| | 10 | Japan Settlement Class Fuel Surcharge | 27,931,448.05 | 27,931,446.13 | 38,812 | 719.6601 |
| | 11 | Satogaeri Settlement Class | 7,832,020.88 | 7,832,006.12 | 19,611 | 399.3680 |
| | | | $ 104,388,254.38 | $ 104,387,133.13 | 29,929,759 | |

[1] The total amount of initial distribution is less than the amount of settlement funds available for distribution due to rounding to the nearest cent when calculating the pro rata share per qualified claim.

# Exhibit D

**Transpacific –Calculation Statistics**

- 96,133 claims were submitted in the three settlement phases for 66,650 unique claimants.
  - 61,768 valid claims
  - 4,602 invalid claims
  - 280 withdrawn claims
- Highest payment amount is $4,583,696.00
  - 18 payments greater than $1M
- Lowest payment amount is $1.12
  - 16,032 payments less than or equal to $10
- Average payment amount is $1,689.99
- Median payment amount is $43.53
- 99% of payments (61,268) are less than or equal to $15,000
  - Average amount for these payments is $378.64
  - 53% of these payments (32,953) are less than or equal to $50.
- 1% of payments (500) are greater than $15,000
  - Average amount for these payments is $162,376.81

**Stratification by Payment Amount**

| Payment Amount Range | | | | Number of Claims | Amount of Payments | Number of Claims Percentage | Amount of Payment Percentage |
|---|---|---|---|---|---|---|---|
| $ | 1.12 | to | $ 1,000.00 | 57,067 | 5,782,443.76 | 92.389% | 5.539% |
| $ | 1,000.01 | to | $ 5,000.00 | 3,032 | 7,180,315.66 | 4.909% | 6.879% |
| $ | 5,000.01 | to | $ 10,000.00 | 772 | 5,503,031.74 | 1.250% | 5.272% |
| $ | 10,000.01 | to | $ 15,000.00 | 397 | 4,732,934.77 | 0.643% | 4.534% |
| $ | 15,000.01 | to | $ 25,000.00 | 202 | 3,866,778.69 | 0.327% | 3.704% |
| $ | 25,000.01 | to | $ 50,000.00 | 98 | 3,359,421.04 | 0.159% | 3.218% |
| $ | 50,000.01 | to | $ 100,000.00 | 64 | 4,617,080.04 | 0.104% | 4.423% |
| $ | 100,000.01 | to | $ 500,000.00 | 107 | 22,295,378.23 | 0.173% | 21.358% |
| $ | 500,000.01 | to | $ 1,000,000.00 | 11 | 7,130,084.91 | 0.018% | 6.830% |
| $ 1,000,000.01 | | to | $ 5,000,000.00 | 18 | 39,919,664.29 | 0.029% | 38.242% |
| **Total Valid Claims** | | | | 61,768 | 104,387,133.13 | 100.000% | 100.000% |

# Transpacific –Calculation Statistics

**Claim Distribution by Settlement Group**

| | | Settlement Class | # of Valid Claims with tickets for Settlement Class | % of Valid Claims with tickets for Settlement Class |
|---|---|---|---|---|
| Settlement Classes | 1 | JAL Settlement Class | 23,554 | 38% |
| | 2 | Air France/Singapore Airlines/Vietnam Airlines Settlement Class | 35,938 | 58% |
| | 3 | Malaysian Air Settlement Class | 35,938 | 58% |
| | 4 | Thai Airways Settlement Class | 21,199 | 34% |
| | 5 | Cathay Pacific Airways/Qantas Settlement Class | 20,477 | 33% |
| | 6 | ANZ Settlement Class | 51,872 | 84% |
| | 7 | EVA/China Airlines Settlement Class | 30,228 | 49% |
| | 8 | PAL Settlement Class | 51,872 | 84% |
| | 9 | Settlement Class III (ANA) | 39,518 | 64% |
| | 10 | Japan Settlement Class Fuel Surcharge | 3,386 | 5% |
| | 11 | Satogaeri Settlement Class | 2,541 | 4% |
| | | Total Valid Claims | 61,768 | |

Joseph W. Cotchett (36324)
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Co-Lead Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **[PROPOSED] FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT ALL NIPPON AIRWAYS CO., LTD.** |

[Proposed] Final Judgment of Dismissal With Prejudice As To Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

3-ER-475

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant All Nippon Airways Co., Ltd. ("ANA" or "Defendant"). The Court, having reviewed Plaintiffs' Motion for Final Approval of Settlement with Defendant ANA ("Final Approval Motion") and Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (ECF No. 1307), having held argument on said motions on ~~October 18, 2019~~ November 15, 2019, and finding no just reason for delay, hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the Settlement Classes and ANA pursuant to the Settlement Agreement Between Plaintiffs and ANA ("Settlement Agreement") (*see* ECF No. 1297-2; Ex. A):

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.     The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2.     The following classes are certified for settlement purposes only, pursuant to Federal Rule of Civil Procedure ("Rule") 23:

> Settlement Class I ("Japan Settlement Class"): All persons and entities that directly purchased tickets for passenger air transportation from JAL or ANA, or any predecessor, subsidiary or affiliate thereof, that originated in the United States and included at least one flight segment from the United States to Japan between the period beginning February 1, 2005 and ending December 31, 2007. Excluded from the class are any tickets that did not include a fuel surcharge. Excluded from the class are any antitrust immunized fares agreed upon at IATA "Tariff Coordinating Conferences." Excluded from the class are tickets exclusively acquired through award or reward travel or any tickets acquired for infant travel with a 90% discount. Also excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' or any other commercial airline's officers, directors, employees, agents, and immediate families.
>
> Settlement Class II ("*Satogaeri* Settlement Class"): All persons and entities that directly purchased *Satogaeri* fares from JAL or

[~~Proposed~~] Final Judgment of Dismissal With Prejudice As To Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

1

3-ER-476

ANA or any predecessor, subsidiary or affiliate thereof that originated in the United States an included at least one flight segment to Japan and does not include travel to countries other than the United States and Japan between the period beginning January 1, 2000 and ending April 1, 2006. Excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families. Also excluded are purchases of "Satogaeri Special" and maerui satogaeri fares.

<u>Settlement Class III</u>: All persons and entities that directly purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from or on any of the Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3. These settlement classes shall be referred to herein as the Settlement Classes.

4. For purposes of this Order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement Agreement.

5. The Court finds the prerequisites to a class action under Rule 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

     a. There are thousands of putative members of the Settlement Classes, making joinder of all members impracticable;

     b. There are questions of fact and law that are common to all members of the Settlement Classes;

     c. The claims of the Class Representatives are typical of those of the absent members of the Settlement Classes; and

     d. Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee,

[Proposed] Final Judgment of Dismissal With Prejudice As To Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

3-ER-477

2

1        Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon
2        Christian ("Class Representatives") have and will fairly and adequately
3        protect the interests of the absent members of the relevant Settlement Class
4        or Classes and have retained counsel experienced in complex antitrust class
5        action litigation who have and will continue to adequately advance the
6        interests of the Settlement Classes.

7       6.    The Court finds that this Action may be maintained as a class action under Rule 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Classes predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.    Pursuant to Rule 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon Christian are appointed to serve as Class Representatives on behalf of the Settlement Classes.

8.    No one has either excluded themselves from, or objected to, the settlement with ANA, any of the Settlement Classes, or Class Counsel's request for fees and reimbursement of expenses.

9.    Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.    The Court has finally approved the settlement between the Class Representatives and ANA in the total amount of $58,000,000.

11.    This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

---

[Proposed] Final Judgment of Dismissal With Prejudice As To Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

3-ER-478

3

12. Without affecting the finality of the Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement and any distribution to members of the Settlement Classes pursuant to further orders of this Court; (b) disposition of the Settlement Fund; (c) determining attorneys' fees, costs, expenses, and interest; (d) the Action until the Final Judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties all have been performed pursuant to the ANA Settlement Agreement; (e) hearing and ruling on any matters relating to distribution of settlement proceeds; and (f) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Agreement.

**IT IS SO ORDERED.**

Dated: December 3, 2019

**THE HONORABLE CHARLES R. BREYER**
**UNITED STATES DISTRICT JUDGE**

---

[Proposed] Final Judgment of Dismissal With Prejudice As To Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

4

3-ER-479

1
2
3
4
5
6
7
8
## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
9
## SAN FRANCISCO DIVISION
10

| | |
|---|---|
| 11 **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB |
| 12 | MDL No. 1913 |
| 13 **This Document Relates To:** | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF SETTLEMENT WITH DEFENDANT ALL NIPPON AIRWAYS CO., LTD.** |
| 14 **ALL ACTIONS** | |
| 15 | |
| 16 | |

17
18
19
20
21
22
23
24
25
26
27
28

[Proposed] Order Granting Final Approval of Settlement With Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

3-ER-480

This matter has come before the Court to determine whether there is any cause why this Court should not grant final approval of the settlement with All Nippon Airways Co., Ltd. ("ANA"). The Court, having reviewed the motion for final approval, the ANA Settlement Agreement, the pleadings and other papers on file in this litigation, and the statements of counsel and the parties, including at the October 18, 2019 final approval hearing, hereby finds that: (1) the ANA settlement should be finally approved, and (2) that there is no just reason for delay of the entry of the Final Judgment approving the ANA Settlement Agreement. Accordingly, the Court directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to the parties to the Agreement. Good cause appearing therefore:

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, "Action"), and over the parties to the Settlement Agreement, including all members of the Settlement Classes and ANA.

2.     The Court hereby finally approves and confirms the settlement set forth in the Settlement Agreement between the Class Representatives and ANA, and finds that said settlement is, in all respects, fair, reasonable and adequate to the Settlement Classes pursuant to Federal Rules of Civil Procedure ("Rule") 23.

3.     The following classes are certified for settlement purposes, pursuant to Rule 23:

Settlement Class I ("Japan Settlement Class"): All persons and entities that directly purchased tickets for passenger air transportation from JAL or ANA, or any predecessor, subsidiary or affiliate thereof, that originated in the United States and included at least one flight segment from the United States to Japan between the period beginning February 1, 2005 and ending December 31, 2007. Excluded from the class are any tickets that did not include a fuel surcharge. Excluded from the class are any antitrust immunized fares agreed upon at IATA "Tariff Coordinating Conferences." Excluded from the class are tickets exclusively acquired through award or reward travel or any tickets acquired for infant travel with a 90% discount. Also excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and

[Proposed] Order Granting Final Approval of Settlement With Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

3-ER-481

1

Defendants' or any other commercial airline's officers, directors, employees, agents, and immediate families.

<u>Settlement Class II ("*Satogaeri* Settlement Class")</u>: All persons and entities that directly purchased *Satogaeri* fares from JAL or ANA or any predecessor, subsidiary or affiliate thereof that originated in the United States an included at least one flight segment to Japan and does not include travel to countries other than the United States and Japan between the period beginning January 1, 2000 and ending April 1, 2006. Excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families. Also excluded are purchases of "Satogaeri Special" and maerui satogaeri fares.

<u>Settlement Class III</u>: All persons and entities that directly purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from or on any of the Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

4.     These settlement classes shall be referred to herein as the Settlement Classes.

5.     The Court finds the prerequisites to a class action under Rule 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

a.     There are thousands of putative members of the Settlement Classes, making joinder of all members impracticable;

b.     There are questions of fact and law that are common to all members of the Settlement Classes;

c.     The claims of the Class Representatives are typical of those of the absent members of the Settlement Classes; and

d.     Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee,

1                     Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon

2                     Christian ("Class Representatives") have and will fairly and adequately

3                     protect the interests of the absent members of the relevant Settlement Class

4                     or Classes and have retained counsel experienced in complex antitrust class

5                     action litigation who have and will continue to adequately advance the

6                     interests of the Settlement Classes.

7        6.       The Court finds that this Action may be maintained as a class action under Rule

8 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the

9 Settlement Classes predominate over any questions affecting only the claims of individual

10 members; and (ii) a class action is superior to other available methods for the fair and efficient

11 adjudication of this controversy.

12        7.       Pursuant to Rule 23(g), the Court hereby confirms that Cotchett, Pitre &

13 McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs

14 Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson

15 Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi,

16 Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon Christian are

17 appointed to serve as Class Representatives on behalf of the Settlement Classes.

18        8.       No one has either excluded themselves from, or objected to, the settlement with

19 ANA, any of the Settlement Classes, or Class Counsel's request for fees and reimbursement of

20 expenses.

21        9.       This Court hereby dismisses on the merits and with prejudice the Actions against

22 ANA, with each party to bear their own costs and attorneys' fees.

23        10.     All persons and entities who are Releasing Parties under the terms of the

24 Settlement Agreement are hereby barred and enjoined from commencing, prosecuting or

25 continuing, either directly or indirectly, against ANA, in this or any other jurisdiction, any and all

26 claims, causes of action or lawsuits, which they had, have or in the future may have arising out of

27 or related to any of the settled claims as defined in the Settlement Agreement.

28

---

[Proposed] Order Granting Final Approval of Settlement With Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

3

11. The Released Parties as defined in the Settlement Agreement are hereby and forever released and discharged with respect to any and all claims or causes of action which the Releasing Parties had or have arising out of or related to any of the settled claims as defined in the Settlement Agreement.

12. The notice given to the Settlement Classes of the settlement set forth in the Settlement Agreement, and as approved by the Court at the time of preliminary approval, was the best notice practicable under the circumstances, including a multi-part notice program through paid media, earned media, press releases, online media and the establishment of a toll-free number. Said notice provided due and adequate notice of those proceedings and of the matters set forth therein, including the proposed settlement set forth in the Settlement Agreement, to persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(l) and the requirements of due process.

13. Without affecting the finality of the Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement and any distribution to members of the Settlement Classes pursuant to further orders of this Court; (b) disposition of the Settlement Fund; (c) determining attorneys' fees, costs, expenses, and interest; (d) the Action until the Final Judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties all have been performed pursuant to the ANA Settlement Agreement; (e) hearing and ruling on any matters relating to distribution of settlement proceeds; and (f) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Agreement.

**IT IS SO ORDERED.**

Dated: December 3, 2019

_____
**THE HONORABLE CHARLES R. BREYER**
**UNITED STATES DISTRICT JUDGE**

[Proposed] Order Granting Final Approval of Settlement With Defendant All Nippon Airways Co., Ltd.
Case No. 3:07-cv-05634-CRB

4

3-ER-484

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION | Civil Action No. 3:07-CV-05634-CRB |
| | MDL No: 1913 |
| | [PROPOSED] SECOND AMENDED ORDER GRANTING PRELIMINARY APPROVAL OF SETTLEMENT WITH DEFENDANT ALL NIPPON AIRWAYS CO., LTD AND OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION |
| This Document Relates To: | |
| All Actions | |

Plaintiffs have moved the Court for Preliminary Approval of a Class Action Settlement with Settling Defendant All Nippon Airways Co., Ltd. ("ANA"), as well as for Approval of the Notice Program, the Notice Forms, and the Plan of Allocation. The Court, having reviewed the motion and related documents, the ANA Settlement Agreement, the pleadings and other papers on file in this action, and the statements of counsel and the parties, hereby finds that the motion should be GRANTED.

IT IS HEREBY ORDERED THAT:

1.     The proposed settlement with ANA is preliminarily approved, subject to a final approval hearing of the proposed settlement (the "Fairness Hearing"). The Court finds that the proposed settlement falls within the range of possible final approval. The Court further finds that there is a sufficient basis for notifying members of the classes of the proposed settlement.

2.     The following Settlement Classes are provisionally certified for settlement purposes, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> Settlement Class I ("Japan Settlement Class"): All persons and entities that directly purchased tickets for passenger air transportation from JAL or ANA, or any predecessor, subsidiary or affiliate thereof, that originated in the United States and included at least one flight segment from the United States to Japan between the period beginning February 1, 2005 and ending December 31, 2007. Excluded from the class are any tickets that did not include a fuel surcharge. Excluded from the class are any antitrust immunized fares agreed upon at IATA "Tariff Coordinating Conferences." Excluded from the class are tickets exclusively acquired through award or reward travel or any tickets acquired for infant travel with a 90% discount. Also excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' or any other commercial airline's officers, directors, employees, agents, and immediate families.

> Settlement Class II ("*Satogaeri* Settlement Class"): All persons and entities that directly purchased *Satogaeri* fares from JAL or ANA or any predecessor, subsidiary or affiliate thereof that originated in the United States an included at least one flight segment to Japan and does not include travel to countries other than the United States and Japan between the period beginning January 1, 2000 and ending April 1, 2006. Excluded from the class are purchases by government entities, Defendants, any parent subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families. Also excluded are purchases of "Satogaeri Special" and maerui satogaeri fares.

[PROPOSED] SECOND AMENDED ORDER GRANTING PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT

MASTER FILE NO. CV-07-5634-CRB

**Settlement Class III**: All persons and entities that directly purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from or on any of the Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3.      The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes in that:

  a)  there are thousands of putative Class members, making joinder of all members impracticable;

  b)  there are questions of fact and law that are common to all members of each Class;

  c)  the claims of the Class Representatives are typical of those of the absent members of each Class;

  d)  Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon Christian have and will fairly and adequately protect the interests of the absent members of the Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Classes.

4.      The Court finds that this action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of each Class predominate over any questions affecting only the claims of individual Class members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

5.      The Court finds that the Settlement Agreement falls within the range of possible approval. The Court further finds that there is a sufficient basis for notifying the Classes of the proposed settlement, and for enjoining members of the Classes from proceeding in any other action pending the conclusion of the Fairness Hearing.

6. The Court hereby appoints the Interim Co-Lead Counsel, Cotchett, Pitre & McCarthy and Hausfeld LLP, to serve as Settlement Class Counsel.

7. The Court hereby appoints Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon Christian to serve as Class Representatives on behalf of the Settlement Classes.

8. The Court approves the proposed Notice Program, including the updated Long Form Notice and the updated Short Form Notice attached to the Notice of Revised Notice Forms as well as the letter to travel agents attached to the Declaration of Dr. Shannon R. Wheatman in support of Plaintiffs' Motion for Approval of Notice Program, Notice Forms, and Plan of Allocation. The Court further approves the claim form attached to the Joint Declaration filed in support of Plaintiffs' motion. The Court also preliminarily approves the proposed Plan of Allocation described in Plaintiffs' Motion for Approval of Notice Program, Notice Forms, and Plan of Allocation. The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution. The Court further finds that the Plan of Allocation is fair, reasonable, and adequate under the circumstances and fairly compensates class members based upon the scope of the releases provided by ANA.

9. On or before July 8, 2019, Settlement Class Counsel shall cause the notice, in substantially the same form as Exhibits referenced above, to be published in the manner and in and through the media outlets and other mediums enumerated in the Notice Program and publication schedules attached as Exhibits to the Declaration of Dr. Shannon R. Wheatman. Settlement Class Counsel shall also provide a copy of the notice to all persons who request it and shall post a copy of the notice on the internet at the address identified in the notice. Settlement Class Counsel shall notify Settling Defendant of all class members who elect to opt out of the settlement or object to the settlement within five business days of the deadline for the same.

10.     At least ten (10) days before the date fixed by this Court for the Final Fairness Hearing, Settlement Class Counsel shall cause to be filed with the Clerk of this Court a declaration by the person under whose general direction the publication of notice was made, showing that publication was made in accordance with this Order.

11.     A hearing (the "Final Fairness Hearing") shall be held by this Court on October 18, 2019 at 10:00 a.m. before the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, 94102 to make a final determination as to whether the proposed settlement is fair, adequate, and reasonable to the settlement classes and should be approved by the Court, and whether Settling Defendant should be released from claims as provided in the settlement agreement. The Court may adjourn this Final Fairness Hearing without further notice to members of the settlement classes.

12.     Any member of a settlement class may request to be excluded from the settlement class; such request of exclusion must be made no later than thirty-five days before the date of the Final Fairness Hearing, and must otherwise comply with the requirements set forth in the long form notice provided on the website established by Kinsella Media ("Settlement Website"). Any member of a settlement class who does not timely seek exclusion from said class or who wishes to object to the terms of the relevant proposed settlement must do so no later than 35 days before the date of the Final Fairness Hearing and in conformity with the requirements set forth in the long form notice provided on the Settlement Website.

13.     In the event that the proposed settlement is approved by the Court after the Final Fairness Hearing, the deadline for class members to submit claims will be the later of one hundred twenty (120) days after the Effective Date of the settlement (as that term is defined in the Settlement Agreement) or the date upon which entry of judgment against ANA is final and any appeal as to any judgment has been resolved.

14.     Settlement Class Counsel shall file with the Court their motion for final approval of the proposed settlement agreement at least fourteen days (14) days prior to the date of the Final

Fairness Hearing. Settlement Class Counsel shall post a copy of any motion and supporting papers on the Settlement Website within twenty-four hours of filing.

15. Settlement Class Counsel shall file any motion concerning the payment of and/or distribution of attorneys' fees, costs, and/or incentive awards thirty-five (35) days prior to the deadline to opt out or object to the settlement. Settlement Class Counsel shall post a copy of any motion for attorneys' fees and supporting papers on the website within twenty-four hours after it is filed with the Court. Comments and/or objections to any motion for attorneys' fees or to the settlement itself must be made in writing and comply with the requirements set forth in the long form notice posted on the Settlement Website, and must be filed with the Court, at least thirty-five (35) days prior to the Final Fairness Hearing.

16. Settlement Class Counsel are authorized to pay out of the Settlement Fund sums actually invoiced by Kinsella Media/Rust for notice and administration.

17. The above-referenced events and dates are set forth in the schedule below:

| Event | Date |
|---|---|
| Notice Program begins | Monday, July 8, 2019 |
| Plaintiffs to submit their motion for attorneys' fees, costs, and incentive awards<br><br>Plaintiffs to post a copy of the motion and supporting papers on the Settlement Website within 24 hours of filing | Friday, August 9, 2019 |
| Notice Program ends | Sunday, August 11, 2019 |
| Deadline for class members to exclude themselves from proposed settlement with ANA | Friday, September 13, 2019 |
| Deadline for class members to object to proposed settlement with ANA, or to object to motion for attorneys' fees | Friday, September 13, 2019 |
| Plaintiffs to notify ANA of all class members who excluded themselves from, or objected to, the settlement with ANA | Monday, September 16, 2019 |
| Plaintiffs to submit their motion for final approval of the proposed settlement with ANA<br><br>Plaintiffs to post a copy of the motion and supporting papers on the Settlement Website within 24 hours of filing | Friday, October 4, 2019 |

| Notice provider to submit declaration showing that publication was made in accordance with this Order | Friday, October 4, 2019 |
| Final Fairness Hearing | Friday, October 18, 2019 at 10:00 a.m. |

**IT IS SO ORDERED.**

Dated: ___May 29___, 2019



HON. CHARLES R. BREYER
United States District Judge

Joseph W. Cotchett (36324)
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Interim Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION**<br><br>**This Document Relates To:**<br><br>**ALL ACTIONS** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913<br><br>[~~PROPOSED~~] AMENDED FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT CHINA AIRLINES, LTD. |

[~~Proposed~~] Amended Final Judgment of Dismissal With Prejudice As to Defendant China Airlines, Ltd.
Case No. 3:07-cv-05634 CRB

3-ER-492

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant China Airlines, Ltd. ("CAL") (sometimes referred to herein as "Defendant"). The Court, having reviewed Plaintiffs' Motion for Final Approval of Settlements with Defendants Philippine Airlines, Inc. ("PAL"), Air New Zealand Limited ("ANZ"), CAL, and EVA Airways Corporation ("EVA") ("Final Approval Motion") and Plaintiffs' Motion for an Award of Attorneys' Fees, Reimbursement of Expenses, and Class Representative Incentive Awards (ECF No. 1227-29), having held argument on said motions on September 14, 2018, and finding no just reason for delay, hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the Settlement Class and CAL pursuant to the Settlement Agreement Between Plaintiffs and CAL ("Settlement Agreement") (see ECF No. 1112-4):

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2. The following class is certified for settlement purposes only, pursuant to Federal Rule of Civil Procedure ("Rule") 23:

> CAL SETTLEMENT CLASS: All persons and entities that purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3. This settlement class in the Settlement Agreement shall be referred to herein as the "Settlement Class."

4. For purposes of this Order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement Agreement.

5. The Court finds the prerequisites to a class action under Rule 23(a) have been

[Proposed] Amended Final Judgment of Dismissal With Prejudice As to Defendant China Airlines, Ltd.
Case No. 3:07-cv-05634 CRB

2

3-ER-493

satisfied for settlement purposes by each of the Settlement Classes in that:

      a.    There are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

      b.    There are questions of fact and law that are common to all members of the Settlement Class;

      c.    The claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

      d.    Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi ("Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.    The Court finds that this Action may be maintained as a class action under Rule 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.    Pursuant to Rule 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.    The person identified in **Exhibit A** to this Final Judgment has timely and validly requested exclusion from the Settlement Classes and, therefore, is excluded. Such person is not

[Proposed] Amended Final Judgment of Dismissal With Prejudice As to Defendant China Airlines, Ltd.
Case No. 3:07-cv-05634 CRB

3

3-ER-494

included in or bound by this final judgment.

9.    Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.    The Court has finally approved a total of four settlements between the Class Representatives and PAL, ANZ, CAL, and EVA (collectively, "Settlement Agreements") in the total amount of $50,650,000.

11.    The award of attorneys' fees, reimbursement of litigation expenses, and incentive payment to a Class Representative granted by the Court in connection with the PAL, ANZ, CAL, and EVA settlements shall be allocated pro-rata to each of the Settlement Agreements.

12.    This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

13.    Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Settlement Agreement.


**IT IS SO ORDERED.**


Dated: <u>October 11, 2018</u>

_____
**THE HONORABLE CHARLES R. BREYER**
**UNITED STATES DISTRICT JUDGE**

---

[Proposed] Amended Final Judgment of Dismissal With Prejudice As to Defendant China Airlines, Ltd.
Case No. 3:07-cv-05634 CRB                                                                                   4

# EXHIBIT A

## TRANSPACIFIC AIR PASSENGER EXCLUSION REQUESTS

| SEQ | Name1 | Name2 | Exclusion Request Timely |
| --- | --- | --- | --- |
| 1 | Elaine K Gano | | Yes |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **[PROPOSED]** ORDER GRANTING FINAL APPROVAL OF SETTLEMENTS WITH DEFENDANTS PHILIPPINE AIRLINES, INC., AIR NEW ZEALAND LIMITED, CHINA AIRLINES, LTD., AND EVA AIRWAYS CORPORATION** |

1    This matter has come before the Court to determine whether there is any cause why this

2  Court should not approve the settlements with Philippine Airlines, Inc. ("PAL"), Air New Zealand

3  Limited ("ANZ"), China Airlines, Ltd. ("CAL"), and EVA Airways Corporation ("EVA")

4  (collectively, "Settling Defendants"). The Court, having reviewed the motion, the Settlement

5  Agreements, the pleadings and other papers on file in this litigation, and the statements of counsel

6  and the parties, including at the September 14, 2018 final approval hearing, hereby finds that: (1)

7  the settlements should be finally approved, and (2) that there is no just reason for delay of the

8  entry of this Final Judgment approving these Settlement Agreements. Accordingly, the Court

9  directs entry of Judgment which shall constitute a final adjudication of this case on the merits as

10  to the parties to the Agreements. Good cause appearing therefore:

11    IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

12    1.    The Court has jurisdiction over the subject matter of this litigation, and all actions

13  within this litigation (collectively, "Action"), and over the parties to the Settlement Agreements,

14  including all members of the Settlement Class and the Settling Defendants.

15    2.    The Court hereby finally approves and confirms the settlements set forth in the

16  Settlement Agreements between the Class Representatives and the Settling Defendants, and finds

17  that said settlements are, in all respects, fair, reasonable and adequate to the Settlement Classes

18  pursuant to Federal Rules of Civil Procedure ("Rule") 23.

19    3.    The following Classes are certified for settlement purposes, pursuant to Rule 23:

20  **PAL SETTLEMENT CLASS**
21  All persons and entities that purchased passenger air transportation originating in
22  the United States that included at least one flight segment to Asia or Oceania, from
    Defendants or their co-conspirators, or any predecessor, subsidiary, or affiliate
23  thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from
    the class are governmental entities, Defendants, former Defendants in the Action,
24  any parent, subsidiary or affiliate thereof, and Defendants' officers, directors,
    employees and immediate families.
25
26  **ANZ SETTLEMENT CLASS**
27  All persons and entities that purchased passenger air transportation originating in
    the United States that included at least one flight segment to Asia or Oceania, from
28  Defendants or their alleged co-conspirators, or any predecessor, subsidiary, or

affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

**CAL SETTLEMENT CLASS**
All persons and entities that purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

**EVA SETTLEMENT CLASS**
All persons and entities that purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016. Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

4.      These settlement classes shall be referred to herein as the Settlement Classes.

5.      For purposes of these Settlement Classes, the term Defendants shall be defined as set forth in each of the respective Settlement Agreements. Where co-conspirators are referenced in a settlement class definition, the term co-conspirators means: American Airlines; Asiana Airlines; British Airways; Continental Airlines; Delta Airlines; Korean Air Lines; KLM Royal Dutch Airlines; Lufthansa; Northwest Airlines; Scandinavian Airlines System; Swiss International; United Airlines; and Virgin Atlantic Airways.

6.      The Court finds the prerequisites to a class action under Rule 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

        a.      There are hundreds of thousands of putative members of the Settlement Classes, making joinder of all members impracticable;

        b.      There are questions of fact and law that are common to all members of the Settlement Classes;

c. The claims of the Class Representatives are typical of those of the absent members of the Settlement Classes; and

d. Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon Christian ("Class Representatives") have and will fairly and adequately protect the interests of the absent members of the relevant Settlement Class or Classes and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Classes.

7. The Court finds that this Action may be maintained as a class action under Rule 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Classes predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

8. Pursuant to Rule 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Classes. In addition to the foregoing, Sharon Christian is also appointed to serve as a Class Representative for the EVA Settlement Class.

9. Attached hereto and incorporated herein by reference as **Exhibit A** is a list of those settlement class members who have opted out of the foregoing settlements. The sole opt-out to this round of settlements has timely and validly requested exclusion from the Settlement Classes and, therefore, is excluded. Such person is not included in or bound by the Final Judgments. Such

person is not entitled to any recovery of the settlement proceeds obtained through these Class Settlements.

10.     One individual, Bruce Wheatley, filed a timely objection to the Class Settlements. Mr. Wheatley's objection failed to comply with the long form notice provided on the website established by Kinsella Media (www.airlinesettlement.com) because it did not attach any documents concerning his purchases of transpacific passenger air transportation that would constitute proof of membership in the Settlement Classes. Assuming his assertions that "[b]etween 2009 and 2017, [he] traveled via Philippine Airlines, between Los Angeles California and Manila, Philippines" and that he made "15 round trip flights" are true (ECF No. 1203), however, Mr. Wheatley would be a class member, and the Court considers his objection in connection with all four settlements. After a thorough review of his arguments, and Plaintiffs' responses thereto, the Court finds his objection to be meritless. Accordingly, Mr. Wheatley's objection is hereby overruled.

11.     This Court hereby dismisses on the merits and with prejudice the Actions against the Settling Defendants, with each party to bear their own costs and attorneys' fees.

12.     All persons and entities who are Releasing Parties under the terms of the Settlement Agreements are hereby barred and enjoined from commencing, prosecuting or continuing, either directly or indirectly, against the Settling Defendants, in this or any other jurisdiction, any and all claims, causes of action or lawsuits, which they had, have or in the future may have arising out of or related to any of the settled claims as defined in the Settlement Agreements.

13.     The Released Parties as defined in the Settlement Agreements are hereby and forever released and discharged with respect to any and all claims or causes of action which the Releasing Parties had or have arising out of or related to any of the settled claims as defined in the Settlement Agreements.

14.     The notice given to the Settlement Classes of the settlements set forth in the Settlement Agreements, and as approved by the Court at the time of preliminary approval, was the best notice practicable under the circumstances, including a multi-part notice program through

paid media, earned media, press releases, online media and the establishment of a toll-free number. According to the notice expert retained by Class Counsel, direct notice via postcard reached 97.65 percent of all class members who filed a claim for the previous settlements; direct notice via email reached potential class members with a 95.8 percent delivery success rate; paid media delivery reached an estimated 70 percent of U.S. Foreign Travelers an average estimated frequency of 2.3 times; and the nationwide press release was viewed 749 times. Said notice provided due and adequate notice of those proceedings and of the matters set forth therein, including the proposed settlements set forth in the Settlement Agreements, to persons entitled to such notice, and said notice fully satisfied the requirements of Rules 23(c)(2) and 23(e)(l) and the requirements of due process.

15.    Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of these settlements and any distribution to members of the Settlement Classes pursuant to further orders of this Court; (b) disposition of the Settlement Fund; (c) determining attorneys' fees, costs, expenses, interest and Class Representative incentive awards; (d) the Action until the Final Judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties all have been performed pursuant to the Settlement Agreements; (e) hearing and ruling on any matters relating to the plan of allocation of settlement proceeds; and (f) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreements and the mutual releases and other documents contemplated by, or executed in connection with the Agreement.

**IT IS SO ORDERED.**


Dated: <u>October 11, 2018</u>                    _____

**THE HONORABLE CHARLES R. BREYER**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT A

## TRANSPACIFIC AIR PASSENGER EXCLUSION REQUESTS

| SEQ | Name1 | Name2 | Exclusion Request Timely |
|-----|-------|-------|--------------------------|
| 1 | Elaine K Gano | | Yes |

Joseph W. Cotchett (36324)
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB<br><br>MDL No. 1913 |
| **This Document Relates To:**<br><br>**ALL ACTIONS** | **[PROPOSED] FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT AIR NEW ZEALAND LIMITED** |

---

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Air New Zealand Limited
Case No. 3:07-cv-05634 CRB

3-ER-506

1      This matter has come before the Court to determine whether there is any just reason for

2  delay of the entry of this final judgment with respect to the class action settlement with Defendant

3  Air New Zealand Limited ("ANZ") (sometimes referred to herein as "Defendant"). The Court,

4  having reviewed Plaintiffs' Motion for Final Approval of Settlements with Defendants Philippine

5  Airlines, Inc. ("PAL"), ANZ, China Airlines, Ltd. ("CAL"), and EVA Airways Corporation

6  ("EVA") ("Final Approval Motion") and Plaintiffs' Motion for an Award of Attorneys' Fees,

7  Reimbursement of Expenses, and Class Representative Incentive Awards (ECF No. 1227-29),

8  having held argument on said motions on September 14, 2018, and finding no just reason for

9  delay, hereby directs entry of Judgment which shall constitute a final adjudication of this case on

10  the merits as to members of the Settlement Class and ANZ pursuant to the Settlement Agreement

11  Between Plaintiffs and ANZ ("Settlement Agreement") (see ECF No. 1112-3):

12  **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

13      1.      The Court has jurisdiction over the subject matter of this litigation, and all actions

14  within this litigation (collectively, "Action") and over the parties to the Settlement Agreement,

15  including all members of the Settlement Class and Defendant.

16      2.      The following class is certified for settlement purposes only, pursuant to Federal

17  Rule of Civil Procedure ("Rule") 23:

18      ANZ SETTLEMENT CLASS: All persons and entities that purchased passenger
        air transportation originating in the United States that included at least one flight
19      segment to Asia or Oceania, from Defendants or their alleged co-conspirators, or
        any predecessor, subsidiary, or affiliate thereof, at any time between January 1,
20      2000 and December 1, 2016. Excluded from the class are governmental entities,
        Defendants, former Defendants in the Action, any parent, subsidiary or affiliate
21      thereof, and Defendants' officers, directors, employees and immediate families.

22

23      3.      This settlement class in the Settlement Agreement shall be referred to herein as the

24  "Settlement Class."

25      4.      For purposes of this Order, the terms "Defendants," "Effective Date," "Released

26  Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement

27  Agreement.

28      5.      The Court finds the prerequisites to a class action under Rule 23(a) have been

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Air New Zealand Limited
Case No. 3:07-cv-05634 CRB                                                                                            2

3-ER-507

satisfied for settlement purposes by each of the Settlement Classes in that:

      a.    There are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

      b.    There are questions of fact and law that are common to all members of the Settlement Class;

      c.    The claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

      d.    Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi ("Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.    The Court finds that this Action may be maintained as a class action under Rule 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.    Pursuant to Rule 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.    The person identified in **Exhibit A** to this Final Judgment has timely and validly requested exclusion from the Settlement Classes and, therefore, is excluded. Such person is not

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Air New Zealand Limited
Case No. 3:07-cv-05634 CRB

3

3-ER-508

1   included in or bound by this final judgment.

2       9.      Upon the Effective Date, all Releasing Parties shall be permanently barred and

3   enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any

4   of the Released Parties.

5       10.     The Court has finally approved a total of four settlements between the Class

6   Representatives and PAL, ANZ, CAL, and EVA (collectively, "Settlement Agreements") in the

7   total amount of $50,650,000.

8       11.     The award of attorneys' fees, reimbursement of litigation expenses, and incentive

9   payment to a Class Representative granted by the Court in connection with the PAL, ANZ, CAL,

10  and EVA settlements shall be allocated pro-rata to each of the Settlement Agreements.

11      12.     This Court hereby dismisses on the merits and with prejudice the Action against

12  Defendant, with each party to bear its own costs and attorneys' fees.

13      13.     Without affecting the finality of this final judgment in any way, this Court hereby

14  retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement

15  and any distribution to members of the Settlement Class pursuant to further orders of this Court;

16  (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds;

17  and (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and

18  administering the Settlement Agreement and the mutual releases and other documents

19  contemplated by, or executed in connection with the Settlement Agreement.

20

21  **IT IS SO ORDERED.**

22

23

24  Dated: _October 11, 2018_

25                                        **THE HONORABLE CHARLES R. BREYER**
                                          **UNITED STATES DISTRICT JUDGE**

26

27

28

---

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Air New Zealand Limited
Case No. 3:07-cv-05634 CRB                                                          4

# EXHIBIT A

## TRANSPACIFIC AIR PASSENGER EXCLUSION REQUESTS

| SEQ | Name1 | Name2 | Exclusion Request Timely |
|-----|-------|-------|--------------------------|
| 1 | Elaine K Gano | | Yes |

Joseph W. Cotchett (36324)
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
jcotchett@cpmlegal.com
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
Seth R. Gassman (311702)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com
sgassman@hausfeld.com

*Interim Co-Lead Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-cv-05634-CRB <br><br> MDL No. 1913 |
| **This Document Relates To:** <br><br> **ALL ACTIONS** | **[~~PROPOSED~~] FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT PHILIPPINE AIRLINES, INC.** |

[~~Proposed~~] Final Judgment of Dismissal With Prejudice As to Defendant Philippine Airlines, Inc.
Case No. 3:07-cv-05634 CRB

3-ER-512

1    This matter has come before the Court to determine whether there is any just reason for

2    delay of the entry of this final judgment with respect to the class action settlement with Defendant

3    Philippine Airlines, Inc. ("PAL") (sometimes referred to herein as "Defendant"). The Court,

4    having reviewed Plaintiffs' Motion for Final Approval of Settlements with Defendants PAL, Air

5    New Zealand Limited ("ANZ"), China Airlines, Ltd. ("CAL"), and EVA Airways Corporation

6    ("EVA") ("Final Approval Motion") and Plaintiffs' Motion for an Award of Attorneys' Fees,

7    Reimbursement of Expenses, and Class Representative Incentive Awards (ECF No. 1227-29),

8    having held argument on said motions on September 14, 2018, and finding no just reason for

9    delay, hereby directs entry of Judgment which shall constitute a final adjudication of this case on

10   the merits as to members of the Settlement Class and PAL pursuant to the Settlement Agreement

11   Between Plaintiffs and PAL ("Settlement Agreement") (see ECF No. 1112-2):

12   **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

13   1.    The Court has jurisdiction over the subject matter of this litigation, and all actions

14   within this litigation (collectively, "Action") and over the parties to the Settlement Agreement,

15   including all members of the Settlement Class and Defendant.

16   2.    The following class is certified for settlement purposes only, pursuant to Federal

17   Rule of Civil Procedure ("Rule") 23:

18   PAL SETTLEMENT CLASS: All persons and entities that purchased passenger air
     transportation originating in the United States that included at least one flight
19   segment to Asia or Oceania, from Defendants or their co-conspirators, or any
20   predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000
     and December 1, 2016. Excluded from the class are governmental entities,
21   Defendants, former Defendants in the Action, any parent, subsidiary or affiliate
     thereof, and Defendants' officers, directors, employees and immediate families.
22

23   3.    This settlement class in the Settlement Agreement shall be referred to herein as the

24   "Settlement Class."

25   4.    For purposes of this Order, the terms "Defendants," "Effective Date," "Released

26   Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement

27   Agreement.

28   5.    The Court finds the prerequisites to a class action under Rule 23(a) have been

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Philippine Airlines, Inc.
Case No. 3:07-cv-05634 CRB                                                                    2

3-ER-513

satisfied for settlement purposes by each of the Settlement Classes in that:

      a.    There are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

      b.    There are questions of fact and law that are common to all members of the Settlement Class;

      c.    The claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

      d.    Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi ("Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.    The Court finds that this Action may be maintained as a class action under Rule 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.    Pursuant to Rule 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.    The person identified in **Exhibit A** to this Final Judgment has timely and validly requested exclusion from the Settlement Classes and, therefore, is excluded. Such person is not

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Philippine Airlines, Inc.
Case No. 3:07-cv-05634 CRB

3

3-ER-514

included in or bound by this final judgment.

9.  Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10. The Court has finally approved a total of four settlements between the Class Representatives and PAL, ANZ, CAL, and EVA (collectively, "Settlement Agreements") in the total amount of $50,650,000.

11. The award of attorneys' fees, reimbursement of litigation expenses, and incentive payment to a Class Representative granted by the Court in connection with the PAL, ANZ, CAL, and EVA settlements shall be allocated pro-rata to each of the Settlement Agreements.

12. This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

13. Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Settlement Agreement.

**IT IS SO ORDERED.**

Dated: <u>October 11, 2018</u>

_____
**THE HONORABLE CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE**

---

[Proposed] Final Judgment of Dismissal With Prejudice As to Defendant Philippine Airlines, Inc.
Case No. 3:07-cv-05634 CRB

4

# EXHIBIT A

## TRANSPACIFIC AIR PASSENGER EXCLUSION REQUESTS

| SEQ | Name1 | Name2 | Exclusion Request Timely |
|-----|-------|-------|--------------------------|
| 1 | Elaine K Gano | | Yes |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Action No. 3:07-CV-05634-CRB |
| | MDL No: 1913 |
| | **STIPULATION AND [PROPOSED] ORDER SETTING FINAL APPROVAL HEARING AND SETTING INTERIM DEADLINES RE: PRELIMINARY APPROVAL OF SETTLEMENTS WITH DEFENDANTS PHILIPPINE AIRLINES, INC., AIR NEW ZEALAND LIMITED, CHINA AIRLINES, LTD., AND EVA AIRWAYS CORPORATION** |
| **This Document Relates To:** | |
| **All Actions** | |

WHEREAS, on May 16, 2018 the Court granted preliminary approval to Class Action Settlements with Settling Defendants Philippine Airlines, Inc. ("PAL"), Air New Zealand Limited ("ANZ"), China Airlines, Ltd. ("CAL"), and EVA Airways Corporation ("EVA") (collectively, the "Settling Defendants"), and approved the notice program proposed by Kinsella Media, "on the condition that the revised short form notice, Wheatman Decl., Ex. 3 (Dkt. 1160-2 at 72 of 88, be further revised to state, 'The detailed notice describes how to exclude yourself or object.'" *See* ECF No. 1161 ("Preliminary Approval Order").

WHEREAS, it is necessary and appropriate for the Court to set a schedule to complete notice, to set objection and opt-out deadlines, and to set a briefing schedule on motions for final approval and class fees and costs.

NOW THEREFORE, subject to approval of the Court, Plaintiffs, PAL, ANZ, CAL, and EVA, by and through their counsel, hereby stipulate as follows:

1.      The following Settlement Classes are provisionally certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

PAL Settlement Class

All persons and entities that purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from Defendants or their co-conspirators, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016.

ANZ Settlement Class

All persons and entities that purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from Defendants or their alleged co-conspirators, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016.

CAL and EVA Settlement Class

All persons and entities that purchased passenger air transportation originating in the United States that included at least one flight segment to Asia or Oceania, from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and December 1, 2016.

Excluded from the Settlement Classes are governmental entities, Defendants, former Defendants, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

2.      The Court hereby appoints the Interim Co-Lead Counsel, Cotchett, Pitre & McCarthy and Hausfeld LLP, to serve as Settlement Class Counsel.

3       The Court hereby appoints Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, James Kawaguchi, and Sharon Christian to serve as Class Representatives on behalf of the Settlement Classes to the extent identified in each of the various Settlement Agreements.

4.      On or before July 31, 2018, Settlement Class Counsel shall cause the notice to be published in the manner and in and through the media outlets and other mediums enumerated in the Notice Program and publication schedules attached as Exhibits to the Declaration of Dr. Shannon R. Wheatman (ECF No. 1160-2), as amended by the Court in its Preliminary Approval Order. Settlement Class Counsel shall also provide a copy of the notice to all persons who request it and shall post a copy of the notice on the internet at the address identified in the notice. Settlement Class Counsel shall notify Settling Defendants of all class members who elect to opt out of the settlements or object to the settlements within five business days of the deadline for the same.

5.      At least ten (10) days before the date fixed by this Court for the Final Fairness Hearing, Settlement Class Counsel shall cause to be filed with the Clerk of this Court a declaration by the person under whose general direction the publication of notice was made, showing that publication was made in accordance with this Order.

6.      A hearing (the "Final Fairness Hearing") shall be held by this Court on September 14, 2018 at 10:00 a.m. before the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, 94102 to make a final determination as to whether the proposed settlements are fair, adequate, and reasonable to the Settlement Classes and should be approved by the Court,

and whether Settling Defendants should be released from claims as provided in the settlement agreements. The Court may adjourn this Final Fairness Hearing without further notice to members of the Settlement Classes.

7. Any member of a Settlement Class may request to be excluded from the Settlement Class; such request of exclusion must be made no later than August 30, 2018, and must otherwise comply with the requirements set forth in the long form notice provided on the website established by Kinsella Media ("Settlement Website"). Any member of a Settlement Class who does not timely seek exclusion from said class and who wishes to object to the terms of the relevant proposed settlement must do so in writing, must mail or deliver copies of such objection to Counsel for the Settling Parties and the Clerk of the Court no later than August 30, 2018, and must otherwise comply with the requirements set forth in the long form notice provided on the Settlement Website.

8. In the event that one or more of the proposed settlements are approved by the Court after the Final Fairness Hearing, claims shall be submitted no later than December 31, 2018.

9. Settlement Class Counsel shall file with the Court their motion for final approval of the proposed settlement agreements at least fourteen (14) days prior to the date of the Final Fairness Hearing. Settlement Class Counsel shall post a copy of any motion and supporting papers on the Settlement Website within twenty-four hours of filing.

10. Settlement Class Counsel shall file any motion concerning the payment of and/or distribution of attorneys' fees, costs, and/or incentive awards thirty-five (35) days prior to the Final Fairness Hearing. Settlement Class Counsel shall post a copy of any motion for attorneys' fees and supporting papers on the website within twenty-four hours after it is filed with the Court. Comments and/or objections to any motion must be made in writing and comply with the requirements set forth in the long form notice posted on the Settlement Website, and must be received by Settlement Class Counsel, and filed with the Court, at least twenty-one (21) days prior to the Final Fairness Hearing. A reply may be filed fourteen (14) days prior to the hearing.

11. Settlement Class Counsel are authorized to pay out of the Settlement Fund sums actually invoiced by Kinsella Media/Rust for notice and administration.

**SO STIPULATED.**

Dated: May 22, 2018                    Respectfully submitted,


_____*/s/ Adam J. Zapala*_____
**COTCHETT, PITRE & McCARTHY, LLP**
Adam J. Zapala

*Interim Co-Lead Counsel for Plaintiffs*


_____*/s/ Christopher L. Lebsock*_____
**HAUSFELD, LLP**
Christopher L. Lebsock

*Interim Co-Lead Counsel for Plaintiffs*


Dated: May 22, 2018        By:    _____*/s/ James V. Dick*_____
**PILLSBURY WINTHROP SHAW PITTMAN**
James V. Dick

*Counsel for Defendant China Airlines*


Dated: May 22, 2018        By:    _____*/s/ Anita F. Stork*_____
**COVINGTON & BURLING LLP**
Anita F. Stork

*Counsel for Defendant Philippine Airlines, Inc.*


Dated: May 22, 2018        By:    _____*/s/ Tammy A. Tsoumas*_____
**KIRKLAND & ELLIS LLP**
Tammy A. Tsoumas

*Counsel for Defendant EVA Airways Corporation*


Dated: May 22, 2018        By:    _____*/s/ Scott D. Cunningham*_____

**CONDON FORSYTH LLP**
Scott D. Cunningham

*Counsel for Defendant Air New Zealand Limited*

**IT IS SO ORDERED.**

Dated: _____May 23_____, 2018

_____
HON. CHARLES R. BREYER
United States District Judge

1  Joseph W. Cotchett (36324)
   jcotchett@cpmlegal.com
2  Steven N. Williams (175489)
   swilliams@cpmlegal.com
3  Adam J. Zapala (245748)
   azapala@cpmlegal.com
4  Elizabeth Tran (280502)
   etran@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
7  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
8
   Michael P. Lehmann (77152)          Michael D. Hausfeld
9  mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
   Christopher Lebsock (184546)        Seth R. Gassman
10 clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
   **HAUSFELD LLP**                    **HAUSFELD LLP**
11 44 Montgomery Street                1700 K Street, Suite 650
   San Francisco, CA 94111             Washington, D.C. 20006
12 Telephone: (415) 633-1908           Telephone: (202) 540-7200
   Facsimile: (415) 358-4980           Facsimile: (202) 540-7201
13
14 *Interim Co-Lead Counsel for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

                 **SAN FRANCISCO DIVISION**
17
   **IN RE TRANSPACIFIC PASSENGER**    Civil Action No. 3:07-CV-05634-CRB
   **AIR TRANSPORTATION ANTITRUST**
18 **LITIGATION**                      MDL No: 1913

19                                     **FINAL JUDGMENT OF DISMISSAL**
                                       **WITH PREJUDICE AS TO**
20                                     **DEFENDANT JAPAN AIRLINES**
                                       **COMPANY, LTD.**
21
   **This Document Relates To:**
22
   **All Actions**
23

24

25

26

27

28

3-ER-524

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Japan Airlines Company, Ltd. (sometimes referred to herein as "Defendant" or "JAL"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the JAL Settlement Class and Defendant Japan Airlines Company, Ltd. pursuant to the Settlement Agreement Between Plaintiffs and Japan Airlines Company, Ltd. (the "Settlement Agreement") (*see* ECF No. 999-2):

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2.    The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> JAL SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchasers of passenger air transportation directly between the United States and the Republic of Korea purchased from Korea Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3.    This settlement class shall be referred to herein as the Settlement Class.

4.    For purposes of this order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement Agreement.

5.    The Court finds the prerequisites to a class action under Federal Rule of Civil

Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

      a.   there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

      b.   there are questions of fact and law that are common to all members of the Settlement Class;

      c.   the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

      d.   Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.     The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.     Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.     The person identified on Exhibit B to the Declaration of Joel Botzet in support of

Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is not included in or bound by this final judgment.

9. Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10. The Court has finally approved a total of eight settlements between the Class Representatives and Japan Airlines Company, Ltd., Societe Air France, Vietnam Airlines Company Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11. The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement Agreements.

12. This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

13. Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Settlement Agreement.

**IT IS SO ORDERED**.

Dated  June 11, 2015

_____
HON. CHARLES R. BREYER
United States District Court Judge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] FINAL JUDGMENT AS TO JAPAN
AIRLINES COMPANY, LTD.

-4-

CASE NO. 07-CV-05634-CRB

3-ER-528

<div style="float:left">
1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
</div>

Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
Adam J. Zapala (245748)
azapala@cpmlegal.com
Elizabeth Tran (280502)
etran@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

Michael P. Lehmann (77152)          Michael D. Hausfeld
mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
Christopher Lebsock (184546)        Seth R. Gassman
clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
**HAUSFELD LLP**                    **HAUSFELD LLP**
44 Montgomery Street                1700 K Street, Suite 650
San Francisco, CA 94111             Washington, D.C. 20006
Telephone: (415) 633-1908           Telephone: (202) 540-7200
Facsimile: (415) 358-4980           Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

<div align="center">

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

</div>

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Action No. 3:07-CV-05634-CRB |
| | MDL No: 1913 |
| | **FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT VIETNAM AIRLINES CORPORATION** |
| **This Document Relates To:** | |
| **All Actions** | |

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Vietnam Airlines Company Limited (sometimes referred to herein as "Defendant" or "VN"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the VN Settlement Class and Defendant Vietnam Airlines Company Limited pursuant to the Settlement Agreement Between Plaintiffs and Vietnam Airlines Company Limited (the "Settlement Agreement") (*see* ECF No. 999-4):

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2.      The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> VIETNAM AIRLINES SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and /or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3.      This settlement class shall be referred to herein as the Settlement Class.

4.      For purposes of this order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and Released Parties" shall be defined as set forth in the Settlement

Agreement. The term co-conspirators means: American Airlines; Asiana Airlines, Inc.; British Airways; Continental Airlines; Delta Airlines; Korean Air Lines, Ltd.; KLM Royal Dutch Airlines; Lufthansa; Northwest Airlines; Scandinavian Airlines System; Swiss International; United Airlines; and Virgin Atlantic Airways.

5.     The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

     a.   there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

     b.   there are questions of fact and law that are common to all members of the Settlement Class;

     c.   the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

     d.   Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.     The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.     Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs

Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson
Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi,
Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as
Class Representatives on behalf of the Settlement Class.

8.     The person identified on Exhibit B to the Declaration of Joel Botzet in support of
Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and
validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is
not included in or bound by this final judgment.

9.     Upon the Effective Date, all Releasing Parties shall be permanently barred and
enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of
the Released Parties.

10.    The Court has finally approved a total of eight settlements between the Class
Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company
Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System
Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and
Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of
$39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved
reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation
fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives
(collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11.    The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement
Agreements.

12.    This Court hereby dismisses on the merits and with prejudice the Action against
Defendant, with each party to bear its own costs and attorneys' fees.

13.    Without affecting the finality of this final judgment in any way, this Court hereby
retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement
and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b)
hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and

1    (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering

2    the Settlement Agreement and the mutual releases and other documents contemplated by, or

3    executed in connection with the Settlement Agreement.

4        **IT IS SO ORDERED**.

5

6    Dated   June 11, 2015

_____

HON. CHARLES R. BREYER
United States District Court Judge

1   Joseph W. Cotchett (36324)
    jcotchett@cpmlegal.com
2   Steven N. Williams (175489)
    swilliams@cpmlegal.com
3   Adam J. Zapala (245748)
    azapala@cpmlegal.com
4   Elizabeth Tran (280502)
    etran@cpmlegal.com
5   **COTCHETT, PITRE & McCARTHY, LLP**
    San Francisco Airport Office Center
6   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
7   Telephone: (650) 697-6000
    Facsimile:  (650) 697-0577
8
    Michael P. Lehmann (77152)            Michael D. Hausfeld
9   mlehmann@hausfeldllp.com              mhausfeld@hausfeldllp.com
    Christopher Lebsock (184546)          Seth R. Gassman
10  clebsock@hausfeldllp.com              sgassman@hausfeldllp.com
    **HAUSFELD LLP**                      **HAUSFELD LLP**
11  44 Montgomery Street                  1700 K Street, Suite 650
    San Francisco, CA 94111               Washington, D.C. 20006
12  Telephone: (415) 633-1908             Telephone: (202) 540-7200
    Facsimile:  (415) 358-4980            Facsimile:  (202) 540-7201
13
14  *Interim Co-Lead Counsel for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**
16           **NORTHERN DISTRICT OF CALIFORNIA**
                **SAN FRANCISCO DIVISION**

17  **IN RE TRANSPACIFIC PASSENGER**      Civil Action No. 3:07-CV-05634-CRB
    **AIR TRANSPORTATION ANTITRUST**
18  **LITIGATION**                        MDL No: 1913

19                                        **FINAL JUDGMENT OF DISMISSAL**
                                          **WITH PREJUDICE AS TO**
20                                        **DEFENDANT THAI AIRWAYS**
                                          **INTERNATIONAL PUBLIC CO., LTD.**
21
    **This Document Relates To:**
22
    **All Actions**
23

24

25

26

27

28

3-ER-534

1   This matter has come before the Court to determine whether there is any just reason for delay

2   of the entry of this final judgment with respect to the class action settlement with Defendant Thai

3   Airways International Public Co., Ltd. (sometimes referred to herein as "Defendant" or "TG"). The

4   Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and

5   Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22,

6   2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For

7   Fees (*see* ECF No. 1009), and finding no just reason for delay hereby directs entry of Judgment

8   which shall constitute a final adjudication of this case on the merits as to members of the TG

9   Settlement Class and Defendant Thai Airways International Public Co., Ltd. pursuant to the

10  Settlement Agreement Between Plaintiffs and Thai Airways International Public Co., Ltd. (the

11  "Settlement Agreement") (*see* ECF No. 999-5):

12      IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

13      1.   The Court has jurisdiction over the subject matter of this litigation, and all actions

14  within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement,

15  including all members of the Settlement Class and Defendant.

16      2.   The following class is certified for settlement purposes only, pursuant to Rule 23 of

17  the Federal Rules of Civil Procedure:

18          THAI AIRWAYS SETTLEMENT CLASS:
19          All persons and entities that purchased passenger air transportation
            that included at least one flight segment between the United States and
20          Asia or Oceania from Defendants, or any predecessor, subsidiary or
            affiliate thereof, at any time between January 1, 2000 and the Effective
21          Date. Excluded from the class are governmental entities, Defendants,
            former Defendants in the Action, any parent, subsidiary or affiliate
22          thereof, and Defendants' officers, directors, employees and immediate
23          families.

24      3.   This settlement class shall be referred to herein as the Settlement Class.

25      4.   For purposes of this order, the terms "Defendants," "Effective Date," "Released

26  Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement

27  Agreement.

28      5.   The Court finds the prerequisites to a class action under Federal Rule of Civil

---

Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

    a.   there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

    b.   there are questions of fact and law that are common to all members of the Settlement Class;

    c.   the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

    d.   Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.    The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.    Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.    The person identified on Exhibit B to the Declaration of Joel Botzet in support of

Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is not included in or bound by this final judgment.

9.     Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.     The Court has finally approved a total of eight settlements between the Class Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company Limited, Thai Airways International Public Co., Ltd.,  Malaysian Airline System Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11.     There were no objections lodged with respect to the settlements between the Class Representatives and Thai Airways International Public Co., Ltd. (*see* ECF No. 1001, Order Granting Stipulation Regarding Partial Withdrawal of Objection of Amy Yang).

12.     The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement Agreements.

13.     This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

14.     Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or

executed in connection with the Settlement Agreement.

**IT IS SO ORDERED**.

Dated  June 11,  2015

_____
HON. CHARLES R. BREYER
United States District Court Judge

1  Joseph W. Cotchett (36324)
   jcotchett@cpmlegal.com
2  Steven N. Williams (175489)
   swilliams@cpmlegal.com
3  Adam J. Zapala (245748)
   azapala@cpmlegal.com
4  Elizabeth Tran (280502)
   etran@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
7  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
8
   Michael P. Lehmann (77152)          Michael D. Hausfeld
9  mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
   Christopher Lebsock (184546)        Seth R. Gassman
10 clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
   **HAUSFELD LLP**                    **HAUSFELD LLP**
11 44 Montgomery Street                1700 K Street, Suite 650
   San Francisco, CA 94111             Washington, D.C. 20006
12 Telephone: (415) 633-1908           Telephone: (202) 540-7200
   Facsimile: (415) 358-4980           Facsimile: (202) 540-7201
13
14 *Interim Co-Lead Counsel for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**

16            **NORTHERN DISTRICT OF CALIFORNIA**

                 **SAN FRANCISCO DIVISION**
17
   **IN RE TRANSPACIFIC PASSENGER**      Civil Action No. 3:07-CV-05634-CRB
18 **AIR TRANSPORTATION ANTITRUST**
   **LITIGATION**                        MDL No: 1913
19
                                         **FINAL JUDGMENT OF DISMISSAL**
20                                       **WITH PREJUDICE AS TO**
                                         **DEFENDANT SOCIÉTÉ AIR FRANCE**
21
22 **This Document Relates To:**

23 **All Actions**

24

25

26

27

28

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Société Air France (sometimes referred herein as "Defendant" or "AF"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the AF Settlement Class and Société Air France pursuant to the Settlement Agreement Between Plaintiffs and Société Air France (the "Settlement Agreement") (*see* ECF No. 999-3):

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2. The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> SOCIÉTÉ AIR FRANCE SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and /or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3. This settlement class shall be referred to herein as the Settlement Class.

4. For purposes of this order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement Agreement. The term co-conspirators means: American Airlines; Asiana Airlines, Inc.; British

3-ER-540

Airways; Continental Airlines; Delta Airlines; Korean Air Lines, Ltd.; KLM Royal Dutch Airlines; Lufthansa; Northwest Airlines; Scandinavian Airlines System; Swiss International; United Airlines; and Virgin Atlantic Airways.

5. The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

     a. there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

     b. there are questions of fact and law that are common to all members of the Settlement Class;

     c. the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

     d. Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6. The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7. Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung,

1   Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee,

2   Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class

3   Representatives on behalf of the Settlement Class.

4        8.    The person identified on Exhibit B to the Declaration of Joel Botzet in support of

5   Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and

6   validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is

7   not included in or bound by this final judgment.

8        9.    Upon the Effective Date, all Releasing Parties shall be permanently barred and

9   enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of

10  the Released Parties.

11       10.    The Court has finally approved a total of eight settlements between the Class

12  Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company

13  Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System

14  Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and

15  Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of

16  $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved

17  reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation

18  fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives

19  (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

20       11.    The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement

21  Agreements.

22       12.    This Court hereby dismisses on the merits and with prejudice the Action against

23  Defendant, with each party to bear its own costs and attorneys' fees.

24       13.    Without affecting the finality of this final judgment in any way, this Court hereby

25  retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement

26  and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b)

27  hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and

28  (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering

the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Settlement Agreement.

**IT IS SO ORDERED**.

Dated  June 11, 2015

_____
HON. CHARLES R. BREYER
United States District Court Judge

1  Joseph W. Cotchett (36324)
   jcotchett@cpmlegal.com
2  Steven N. Williams (175489)
   swilliams@cpmlegal.com
3  Adam J. Zapala (245748)
   azapala@cpmlegal.com
4  Elizabeth Tran (280502)
   etran@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
7  Telephone: (650) 697-6000
   Facsimile:  (650) 697-0577
8
   Michael P. Lehmann (77152)            Michael D. Hausfeld
9  mlehmann@hausfeldllp.com              mhausfeld@hausfeldllp.com
   Christopher Lebsock (184546)          Seth R. Gassman
10 clebsock@hausfeldllp.com              sgassman@hausfeldllp.com
   **HAUSFELD LLP**                      **HAUSFELD LLP**
11 44 Montgomery Street                  1700 K Street, Suite 650
   San Francisco, CA 94111               Washington, D.C. 20006
12 Telephone: (415) 633-1908             Telephone: (202) 540-7200
   Facsimile:  (415) 358-4980            Facsimile:  (202) 540-7201
13
14 *Interim Co-Lead Counsel for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**
16            **NORTHERN DISTRICT OF CALIFORNIA**
                 **SAN FRANCISCO DIVISION**
17

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Action No. 3:07-CV-05634-CRB |
| | MDL No: 1913 |
| | **FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT SINGAPORE AIRLINES LIMITED** |
| **This Document Relates To:** | |
| **All Actions** | |

18
19
20
21
22
23
24
25
26
27
28

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Singapore Airlines Limited (sometimes referred to herein as "Defendant" or "SQ"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015, and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay, hereby directs entry of Judgment, which shall constitute a final adjudication of this case on the merits as to members of the SQ Settlement Class and Defendant Singapore Airlines Limited, pursuant to the Settlement Agreement between Plaintiffs and  Singapore Airlines Limited (the "Settlement Agreement") (*see* ECF No. 999-9).

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2.    The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> SINGAPORE AIRLINES SETTLEMENT CLASS
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time from January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3.    This settlement class shall be referred to herein as the Settlement Class.

4.    For purposes of this order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement

1    Agreement.  The term co-conspirators means: American Airlines; Asiana Airlines, Inc.; British

2    Airways; Continental Airlines; Delta Airlines; Korean Air Lines, Ltd.; KLM Royal Dutch Airlines;

3    Lufthansa; Northwest Airlines; Scandinavian Airlines System; Swiss International; United Airlines;

4    and Virgin Atlantic Airways.

5         5.     The Court finds the prerequisites to a class action under Federal Rule of Civil

6    Procedure 23(a) have been satisfied for settlement purposes by  the Settlement Class in that:

7               a.   there are hundreds of thousands of putative members of the Settlement Class,

8                   making joinder of all members impracticable;

9               b.   there are questions of fact and law that are common to all members of the

10                  Settlement Class;

11              c.   the claims of the Class Representatives are typical of those of the absent members

12                  of the Settlement Class; and

13              d.   Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott

14                  Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley

15                  Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della

16                  Ewing Chow and James Kawaguchi (the "Class Representatives") have and will

17                  fairly and adequately protect the interests of the absent members of the Settlement

18                  Class and have retained counsel experienced in complex antitrust class action

19                  litigation who have and will continue to adequately advance the interests of the

20                  Settlement Class.

21        6.     The Court finds that this Action may be maintained as a class action under Federal

22   Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to

23   the members of the Settlement Class predominate over any questions affecting only the claims of

24   individual members; and (ii) a class action is superior to other available methods for the fair and

25   efficient adjudication of this controversy.

26        7.     Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre &

27   McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs

28

Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.    The person identified on Exhibit B to the Declaration of Joel Botzet in support of Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is not included in or bound by this final judgment.

9.    Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.    The Court has finally approved a total of eight settlements between the Class Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11.    The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement Agreements.

12.    This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

13.    Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b)

1   hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and

2   (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering

3   the Settlement Agreement and the mutual releases and other documents contemplated by, or

4   executed in connection with the Settlement Agreement.

5          **IT IS SO ORDERED**.

6

7   Dated  June 11, 2015                          _____

8                                                HON. CHARLES R. BREYER
                                                 United States District Court Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Joseph W. Cotchett (36324)
    jcotchett@cpmlegal.com
2   Steven N. Williams (175489)
    swilliams@cpmlegal.com
3   Adam J. Zapala (245748)
    azapala@cpmlegal.com
4   Elizabeth Tran (280502)
    etran@cpmlegal.com
5   **COTCHETT, PITRE & McCARTHY, LLP**
    San Francisco Airport Office Center
6   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
7   Telephone: (650) 697-6000
    Facsimile:  (650) 697-0577
8
    Michael P. Lehmann (77152)            Michael D. Hausfeld
9   mlehmann@hausfeldllp.com              mhausfeld@hausfeldllp.com
    Christopher Lebsock (184546)          Seth R. Gassman
10  clebsock@hausfeldllp.com              sgassman@hausfeldllp.com
    **HAUSFELD LLP**                      **HAUSFELD LLP**
11  44 Montgomery Street                  1700 K Street, Suite 650
    San Francisco, CA 94111               Washington, D.C. 20006
12  Telephone: (415) 633-1908             Telephone: (202) 540-7200
    Facsimile:  (415) 358-4980            Facsimile:  (202) 540-7201
13
    *Interim Co-Lead Counsel for Plaintiffs*
14
                    **UNITED STATES DISTRICT COURT**
15
                  **NORTHERN DISTRICT OF CALIFORNIA**
16
                      **SAN FRANCISCO DIVISION**
17
    **IN RE TRANSPACIFIC PASSENGER**      Civil Action No. 3:07-CV-05634-CRB
18  **AIR TRANSPORTATION ANTITRUST**
    **LITIGATION**                        MDL No: 1913
19
                                          **FINAL JUDGMENT OF DISMISSAL**
20                                        **WITH PREJUDICE AS TO**
                                          **DEFENDANT QANTAS AIRWAYS**
21                                        **LIMITED**

22  **This Document Relates To:**

23  **All Actions**

24

25

26

27

28

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Qantas Airways Limited (sometimes referred to herein as "Defendant" or "Qantas"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the Qantas Settlement Class and Defendant Qantas Airways Limited pursuant to the Settlement Agreement Between Plaintiffs and Qantas Airways, Limited (the "Settlement Agreement") (*see* ECF No. 999-8):

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2. The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> QANTAS SETTLEMENT CLASS
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are government entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees, and immediate families.

3. This settlement class shall be referred to herein as the Settlement Class.

4. For purposes of this order, the term "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement Agreement.

5.    The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

      a.    there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

      b.    there are questions of fact and law that are common to all members of the Settlement Class;

      c.    the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

      d.    Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.    The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.    Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.     The person identified on Exhibit B to the Declaration of Joel Botzet in support of Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is not included in or bound by this final judgment.

9.     Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.    The Court has finally approved a total of eight settlements between the Class Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System Berhad, Qantas Airways Limited, Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11.    There were no objections lodged with respect to the settlements between the Class Representatives and Qantas (*see* ECF No. 1001, Order Granting Stipulation Regarding Partial Withdrawal of Objection of Amy Yang).

12.    The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement Agreements.

13.    This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

14.    Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering

the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Settlement Agreement.

**IT IS SO ORDERED**.

Dated July 11, 2015

HON. CHARLES R. BREYER
United States District Court Judge

1  Joseph W. Cotchett (36324)
   jcotchett@cpmlegal.com
2  Steven N. Williams (175489)
   swilliams@cpmlegal.com
3  Adam J. Zapala (245748)
   azapala@cpmlegal.com
4  Elizabeth Tran (280502)
   etran@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
7  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
8
   Michael P. Lehmann (77152)              Michael D. Hausfeld
9  mlehmann@hausfeldllp.com                mhausfeld@hausfeldllp.com
   Christopher Lebsock (184546)            Seth R. Gassman
10 clebsock@hausfeldllp.com                sgassman@hausfeldllp.com
   **HAUSFELD LLP**                        **HAUSFELD LLP**
11 44 Montgomery Street                    1700 K Street, Suite 650
   San Francisco, CA 94111                 Washington, D.C. 20006
12 Telephone: (415) 633-1908               Telephone: (202) 540-7200
   Facsimile: (415) 358-4980               Facsimile: (202) 540-7201
13
14 *Interim Co-Lead Counsel for Plaintiffs*

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Action No. 3:07-CV-05634-CRB |
| | MDL No: 1913 |
| | **FINAL JUDGMENT OF DISMISSAL WITH PREJUDICE AS TO DEFENDANT MALAYSIAN AIRLINE SYSTEM BERHAD** |
| **This Document Relates To:** | |
| **All Actions** | |

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Malaysian Airline System Berhad (sometimes referred to herein as "Defendant" or "MAS"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to  members of the MAS Settlement Class and Defendant Malaysian Airline System Berhad pursuant to the Settlement Agreement Between Plaintiffs and Malaysian Airline System Berhad (the "Settlement Agreement") (*see* ECF No. 999-6):

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.    The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2.    The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> MALAYSIA AIRLINES SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia/Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees or immediate families.

3.    This settlement class shall be referred to herein as the Settlement Class.

4.    For purposes of this order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement

Agreement. The term co-conspirators means: American Airlines; Asiana Airlines, Inc.; British Airways; Continental Airlines; Delta Airlines; Korean Air Lines, Ltd.; KLM Royal Dutch Airlines; Lufthansa; Northwest Airlines; Scandinavian Airlines System; Swiss International; United Airlines; and Virgin Atlantic Airways.

5.     The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

    a.   there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

    b.   there are questions of fact and law that are common to all members of the Settlement Class;

    c.   the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

    d.   Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.     The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.     Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs

Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class Representatives on behalf of the Settlement Class.

8.    The person identified on Exhibit B to the Declaration of Joel Botzet in support of Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is not included in or bound by this final judgment.

9.    Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.    The Court has finally approved a total of eight settlements between the Class Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11.    The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement Agreements.

12.    This Court hereby dismisses on the merits and with prejudice the Action against Defendant, with each party to bear its own costs and attorneys' fees.

13.    Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and

1  (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering

2  the Settlement Agreement and the mutual releases and other documents contemplated by, or

3  executed in connection with the Settlement Agreement.

4        **IT IS SO ORDERED**.

5

6  Dated  June 11, 2015

              _____

              HON. CHARLES R. BREYER
              United States District Court Judge

1  Joseph W. Cotchett (36324)
   jcotchett@cpmlegal.com
2  Steven N. Williams (175489)
   swilliams@cpmlegal.com
3  Adam J. Zapala (245748)
   azapala@cpmlegal.com
4  Elizabeth Tran (280502)
   etran@cpmlegal.com
5  **COTCHETT, PITRE & McCARTHY, LLP**
   San Francisco Airport Office Center
6  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
7  Telephone: (650) 697-6000
   Facsimile:  (650) 697-0577
8
   Michael P. Lehmann (77152)          Michael D. Hausfeld
9  mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
   Christopher Lebsock (184546)        Seth R. Gassman
10 clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
   **HAUSFELD LLP**                    **HAUSFELD LLP**
11 44 Montgomery Street                1700 K Street, Suite 650
   San Francisco, CA 94111             Washington, D.C. 20006
12 Telephone: (415) 633-1908           Telephone: (202) 540-7200
   Facsimile:  (415) 358-4980          Facsimile:  (202) 540-7201
13
14 *Interim Co-Lead Counsel for Plaintiffs*

15              **UNITED STATES DISTRICT COURT**

               **NORTHERN DISTRICT OF CALIFORNIA**
16
                  **SAN FRANCISCO DIVISION**
17
   **IN RE TRANSPACIFIC PASSENGER**      Civil Action No. 3:07-CV-05634-CRB
18 **AIR TRANSPORTATION ANTITRUST**
   **LITIGATION**                        MDL No: 1913
19
                                         **FINAL JUDGMENT OF DISMISSAL**
20                                       **WITH PREJUDICE AS TO**
                                         **DEFENDANT CATHAY PACIFIC**
21                                       **AIRWAYS LIMITED**

22 **This Document Relates To:**

23 **All Actions**

24

25

26

27

28

This matter has come before the Court to determine whether there is any just reason for delay of the entry of this final judgment with respect to the class action settlement with Defendant Cathay Pacific Airways Limited (sometimes referred to herein as "Defendant"). The Court, having reviewed the Motion for Final Approval of certain settlements (*see* ECF No. 999) and Plaintiffs' Fees Motion (*see* ECF No. 986), and having held argument on the motion on May 22, 2015 and having issued an Order Granting Motion For Final Approval And Granting Motion For Fees (*see* ECF No. 1009), and finding no just reason for delay,  hereby directs entry of Judgment which shall constitute a final adjudication of this case on the merits as to members of the Settlement Class and Cathay Pacific Airways Limited, pursuant to the Settlement Agreement Between Plaintiffs and Cathay Pacific Airways Limited (the "Settlement Agreement") (*see* ECF No. 999-7):

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.     The Court has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, the "Action") and over the parties to the Settlement Agreement, including all members of the Settlement Class and Defendant.

2.     The following class is certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> CATHAY PACIFIC SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3.     This settlement class in the Settlement Agreement shall be referred to herein as the "Settlement Class."

4.     For purposes of this Order, the terms "Defendants," "Effective Date," "Released Claims," "Releasing Parties," and "Released Parties" shall be defined as set forth in the Settlement

Agreement.

5.     The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes by each of the Settlement Classes in that:

   a.   there are hundreds of thousands of putative members of the Settlement Class, making joinder of all members impracticable;

   b.   there are questions of fact and law that are common to all members of the Settlement Class;

   c.   the claims of the Class Representatives are typical of those of the absent members of the Settlement Class; and

   d.   Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi (the "Class Representatives") have and will fairly and adequately protect the interests of the absent members of the Settlement Class and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Settlement Class.

6.     The Court finds that this Action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the members of the Settlement Class predominate over any questions affecting only the claims of individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

7.     Pursuant to Fed. R. Civ. P. 23(g), the Court hereby confirms that Cotchett, Pitre & McCarthy and Hausfeld LLP are appointed as Settlement Class Counsel, and that Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow and James Kawaguchi are appointed to serve as Class

Representatives on behalf of the Settlement Class.

8.     The person identified on Exhibit B to the Declaration of Joel Botzet in support of Plaintiffs' motion for final approval of the Class Settlements (*see* ECF No. 999-19) has timely and validly requested exclusion from the Settlement Class and, therefore, is excluded. Such person is not included in or bound by this final judgment.

9.     Upon the Effective Date, all Releasing Parties shall be permanently barred and enjoined from instituting, commencing, prosecuting or asserting any Released Claim against any of the Released Parties.

10.     The Court has finally approved a total of eight settlements between the Class Representatives and Japan Airlines Company, Ltd., Société Air France, Vietnam Airlines Company Limited, Thai Airways International Public Co., Ltd. ("Thai Airways"), Malaysian Airline System Berhad, Qantas Airways Limited ("Qantas"), Cathay Pacific Airways, Ltd. ("Cathay Pacific"), and Singapore Airlines Limited (collectively the "Settlement Agreements") in the total amount of $39,502,000.00, approved an award of attorneys' fees in the amount of $9,000,000.00, approved reimbursement to Class Counsel of expenses in the amount of $2,807,699.73, approved a litigation fund of $3,000,000.00, and approved an award of $7,500.00 for each of the Class Representatives (collectively the "Approved Fees and Costs") (*see* ECF No. 1009).

11.     There were no objections lodged with respect to the settlement between the Class Representatives and Cathay Pacific Airways Limited (*see* ECF No. 1001, Order Granting Stipulation Regarding Partial Withdrawal of Objection of Amy Yang).

12.     The Approved Fees and Costs shall be allocated pro-rata to each of the Settlement Agreements.

13.     This Court hereby dismisses on the merits and with prejudice all claims in the Action against Cathay Pacific Airways Limited, with each party to bear its own costs and attorneys' fees.

14.     Without affecting the finality of this final judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds; and

1    (c) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering

2    the Settlement Agreement and the mutual releases and other documents contemplated by, or

3    executed in connection with the Settlement Agreement.

4          **IT IS SO ORDERED**.

5

6    Dated  June 11, 2015                                    _____
                                                             HON. CHARLES R. BREYER
7                                                            United States District Court Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TRANSPACIFIC PASSENGER AIR
TRANSPORTATION ANTITRUST
LITIGATION

This Document Relates to:
ALL ACTIONS

_____/

No. C 07-05634 CRB

**ORDER GRANTING MOTION FOR
FINAL APPROVAL AND GRANTING
MOTION FOR FEES**

Now pending are (1) the Motion for Final Approval (dkt. 999) of the settlements

between Plaintiffs and the "Settling Defendants" (Societe Air France, Cathay Pacific

Airways Limited, Japan Airlines International Company, Ltd., Malaysian Airline System

Berhad, Qantas Airways Limited, Singapore Airlines Limited, Thai Airways International

Public Co., Ltd., and Vietnam Airlines Corporation),[1] and (2) Plaintiffs' Fees Motion (dkt.

986), filed in connection with the settlements. The Court preliminarily approved these

settlements in two rounds—first in August 2014 and then in October 2014. See Orders

Granting Prelim. Approval (dkts. 924, 951). At the motion hearing held Friday, May 22,

2015, the Court found the settlement fair, reasonable, and adequate under Federal Rule of

Civil Procedure 23(e)(2). The Court issues this Order to explain in greater detail its rulings

on two particular issues: first, the amount of fees, and second, the objections.

---

[1] Not all Defendants in the case have settled; in fact, the non-settling Defendants, Philippine
Airlines, Inc., Air New Zealand Ltd., China Airlines Ltd., All Nippon Airways Co., Ltd., and EVA
Airways Corporation, wrote separately "to clarify that they are not party to the present settlement
proceedings, and accordingly are not bound by any resolution of certain merits issues that have been
raised in those proceedings." See Letter (dkt. 1005).

1.      **Fees**

The Settling Defendants created a Settlement Fund of $39,502,000.  Mot. for Final

Approval at 1.  Out of that Fund, Plaintiffs seek:

•      $13,154,166 in attorneys' fees, Fees Mot. at 13;

•      $3,829,582.01 in expenses, Supp. Williams Decl. (dkt. 1003) at 1;

•      $3,000,000 "for future expenses to be used in ongoing litigation against the non-
       Settling Defendants," Fees Mot. at 1;

•      and $7,500 for each of the fifteen Class Representatives (a total of $112,500),
       <u>see</u> Williams Decl. (dkt. 987) ¶¶ 82-84.[2]

•      Plaintiffs would also deduct "approximately $2.4 million" from the Settlement Fund,
       "for costs associated with sending notice and administering the Settlements."
       <u>See</u> Mot. for Approval of Notice Program (dkt. 968) (granted December of 2014 (dkt.
       968)).

At the motion hearing, the Court awarded Plaintiffs $9,000,000 in fees.  The Court's

reasoning is as follows.

While it is not an abuse of discretion to calculate fees based on the gross fund, <u>see</u> In

<u>re Online DVD-Rental Antitrust Litig.</u>, 779 F.3d 934, 953 (9th Cir. 2015); <u>see also</u> <u>Powers v.</u>

<u>Eichen</u>, 229 F.3d 1249, 1258 (9th Cir. 2000) (no particular approach to determining fees

mandated; "choice of whether to base an attorneys' fee award on either net or gross recovery

should not make a difference so long as the end result is reasonable"), Plaintiffs cite to no

authority <u>requiring</u> the Court to use the gross.  This Court has had a longstanding preference

for using the net, and is not alone in that preference.  <u>See, e.g.</u>, <u>Redman v. Radioshack Corp.</u>,

768 F.3d 622, 633 (7th Cir. 2014) ("the central consideration is what class counsel achieved

for the members of the class rather than how much effort class counsel invested in the

litigation"); <u>In re Wells Fargo Secs. Litig.</u>, 157 F.R.D. 467, 471 (N.D. Cal. 1994) ("If an

attorney risks losing some portion of his fee award for each additional dollar in expenses he

incurs, the attorney is sure to minimize expenses"); <u>Miles v. AlliedBarton Security Svcs.</u>,

---

[2] Plaintiffs informed the Court at the motion hearing that there are 15 representative class members.

United States District Court
For the Northern District of California

1   LLC, No. 12-5761 JD, 2014 WL 6065602, at *5 (N.D. Cal. Nov. 12, 2014) ("the fees paid to

2   the settlement administrator—does not constitute a benefit to the class members").

3       The Court therefore subtracts the various expenses from the gross Settlement Fund.

4   The Court subtracts $2,807,699.73 in expenses,[3] $3,000,000 "for future expenses,"

5   $2,400,000 in notice costs, and $112,500 in individual awards to the Representative

6   Plaintiffs—a total of $8,320,199.73— from $39,502,000, leaving a net Settlement Fund of

7   $31,181,800.27.  Plaintiffs' proposed fee award of $13,154,166 is not 33.3% of the Fund, as

8   they assert, see Fees Mot. at 1, but 42% of the net Fund.  That $13,154,166 is reportedly less

9   than 35% of Plaintiffs' lodestar of $38,685,058.25,  Fees Mot. at 13, is cold comfort.

10      In the Ninth Circuit, the benchmark is of course twenty-five percent.  See Powers v.

11  Eichen, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have also established twenty-five percent

12  of the recovery as a 'benchmark' for attorneys' fees calculations under the

13  percentage-of-recovery approach.").  In some cases, however, the twenty-five percent

14  benchmark is "inappropriate."  See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th

15  Cir. 2002).  Courts must not arbitrarily apply a percentage but show why that percentage and

16  the award is appropriate based on the facts of the case.  Id.  Courts may consider "the extent

17  to which class counsel achieved exceptional results for the class, whether the case was risky

18  for class counsel, whether counsel's performance generated benefits beyond the cash

19  settlement fund," etc.  See In re Online DVD-Rental Antitrust Litig., 779 F.3d at 954-55.

20  This case involved two rounds of motions to dismiss, filed by numerous defendants (one

21  round prompting a 47-page Order from the Court), a grueling discovery process (involving

22

---

23      [3] The Fees Motion, filed April 7, 2015, sought expenses of $2,807,699.73. Fees Mot. at 1.
Plaintiffs then filed a supplemental declaration on May 15, 2015, requesting a total of $3,829,582.01
24  in expenses, Supp. Williams Decl. at 1 (explaining that the earlier amount "did not reflect two additional
invoices that Class Counsel have incurred."). The Court notes that the far larger of the two additional
25  invoices was dated February 27, 2015, and there is no apparent reason why Plaintiffs could not have
included it in their earlier request.  See id. Ex. A (2/27/15 invoice from Nathan Associates Inc. for
26  $914,938.09). Moreover, as Objector Amy Yang noted at the motion hearing, class members were not
able to assess the settlement in light of the additional one million dollars in expenses before they were
27  required to either object or opt-out, and this is plainly improper under In re Mercury Interactive Corp.
Sec. Litig., 618 F.3d 988, 993-95 (9th Cir. 2010) ("obligation of the district court to ensure that the class
28  has an adequate opportunity to review and object to its counsel's fee motion"). Accordingly, the Court
finds that the appropriate remedy is to award $2,807,699.73, rather than $3,829,582.01, in expenses.

3-ER-566

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   65 depositions and almost 7 million pages in documents), and summary judgment (requiring

2   a 60-page omnibus Opposition brief and resulting in an Order keeping the majority of claims

3   in the case). Fees Mot. at 3-8. The settlement process, which began in late 2008, yielded a

4   substantial recovery for the class and demanded of Plaintiffs' counsel risky, challenging, and

5   as-yet uncompensated work. Id. at 8-9; 11-13. Plaintiffs note a study from 2008 showing

6   that awards of thirty percent were given in 11 of 16 antitrust cases with recoveries of less

7   than $100 million. Id. at 11 (citing Robert H. Lamde & Joshua P. Davis, Benefits from

8   Private Antitrust Enforcement: An Analysis of Forty Cases, 42 U.S.F. L. Rev. 879, 911 tbl.

9   7A (2008)). As the Court stated at the motion hearing, this was not a run-of-the-mill class

10  action that settled relatively early; it was a heavily litigated, complicated case that was filed

11  in 2007. Plaintiffs are therefore entitled to $9,000,000 in fees, which is roughly thirty

12  percent of $31,181,800.27.

13      **2.      Objections**

14      As for objections, there is just one, despite a class of hundreds of thousands. Mot. for

15  Final Approval at 1. This alone suggests that the settlements are fair. See Nat'l Rural

16  Telecomms. Coop v. DIRECTV, Inc.. 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is

17  established that the absence of a large number of objections to a proposed class action

18  settlement raises a strong presumption that the terms of a proposed class action settlement are

19  favorable to the class members."). Objector Amy Yang, the wife of an attorney at the Center

20  for Class Action Fairness, see Mot. for Final Approval at 1, raises a number of objections to

21  the settlements. The Court held at the motion hearing that it was overruling Yang's

22  objections, aside from her objection to the requested attorneys' fees, see Objection (dkt. 993)

23  at 6-8, addressed above. The Court's reasoning is as follows.

24      First, Yang states that the settlements inappropriately treat all class members the same

25  despite differences in the value of their claims. Objection at 2. Specifically, Yang believes

26  that purchasers of US-originating flights and foreign-originating flights should be treated

27  differently, and that direct and indirect purchasers should be treated differently. Id. at 3-5.

28  The Court declines the opportunity to wade into the Illinois Brick issue at this time. See

4

Letter at 1 ("This motion is not the proper vehicle for this Court to adjudicate whether certain class members are indirect purchasers subject to an <u>Illinois Brick</u> defense"). Although the Court's 2011 Order on one of the rounds of motions to dismiss held that the FTAIA barred recovery for flights originating in Asia/Oceania, <u>see generally</u> Order on MTD (dkt. 467), Plaintiffs represent that the Japan Airlines settlement took place before that ruling, <u>see</u> Mot. for Final Approval at 9, and they noted at the motion hearing that they could still appeal that ruling. Ultimately the Court does not believe that its role is to "differentiat[e] within a class based on the strength or weakness of the theories of recovery." <u>See</u> <u>Sullivan v. DB Investments, Inc.</u>, 667 F.3d 273, 328 (3d Cir. 2011). The Ninth Circuit explained in <u>Lane v. Facebook</u> that while some class members' claims might have been more valuable than others at trial, "that does not cast doubt on the district court's conclusion as to the fairness and adequacy of the overall settlement amount to the class <u>as a whole</u>." 696 F.3d 811, 824 (9th Cir. 2012) (emphasis in original). The court explained that class actions "necessarily reflect[] the parties' pre-trial assessment as to the potential recovery of the entire class, with all of its class members' varying claims." <u>Id.</u> So too here, while there might be differences in the values of individual class members' claims at trial (or following appeal), the Court finds that the settlement as a whole is substantial, and fair. The Court therefore rejects Yang's argument that there is a conflict between the class members necessitating either a different valuation of claims or subclasses.

Second, Yang argues that the $3 million "future litigation fund" is improper and should be denied. Objection at 8-9. The Court disagrees. <u>See</u> Alba Conte, 1 Attorney Fee Awards § 2:20 (3d ed. 2004) (courts have "permitted class plaintiffs who have settled with fewer than all defendants to expend class-settlement monies, or a portion thereof, for litigation expenses to prosecute the action against remaining, non-settling defendants") (collecting cases); <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, No. 07-1827 SI, Order Granting Direct Purchaser Class Plaintiffs' Motion for the Advancement of Litigation Expenses From Settlement Funds (dkt. 2474) (N.D. Cal. Feb. 17, 2011) (granting $3 million in future litigation expenses, holding: "The advanced litigation funds will benefit direct

**United States District Court**
For the Northern District of California

**United States District Court**
For the Northern District of California

1    purchaser class members by assisting Class Counsel to prosecute this case effectively.").

2    The Court has no reason to believe that Plaintiffs would misuse the funds.

3         Third, Yang complains that notice was inadequate because it did not include direct

4    notice to individual class members. Objection at 10-12. But due process does not mandate

5    individual notice—what it mandates is the "best notice that is practicable under the

6    circumstances" and "through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); <u>Silber v.</u>

7    <u>Mabon</u>, 18 F.3d 1449, 1453-54 (9th Cir. 1994). Plaintiffs have presented evidence that

8    individual notice to all class members here was not possible. <u>See</u> Mot. For Final Approval at

9    5 (Qantas, Japan Airlines). Moreover, the notice program, which the Court already

10   approved, reached 80.3% of the potential class members in the United States an average of

11   2.6 times and "at least 70%" of members of the Settlement Classes living in Japan. <u>See</u> Mot.

12   for Final Approval at 4; Wheatman Decl. ¶¶ 8, 18. The notice also included paid media in 13

13   other countries. <u>Id.</u>; ¶ 25. There were 700,961 unique visits to the website, toll-free numbers

14   in 15 countries received over 2,693 calls, and 1,015 packages were mailed to potential class

15   members. <u>Id.</u> ¶¶ 6, 9, 10. It was therefore adequate. <u>See</u> <u>In re Google Referrer Header</u>

16   <u>Privacy Litig.</u>, No. 10-4809 EJD, 2015 WL 1520475, at *3 (N.D. Cal. March 31, 2015)

17   ("individual notice is not always practical. When that is the case, publication or some similar

18   mechanism can be sufficient to provide notice.").

19        Fourth, Yang contends that the Notice was inadequate because it did not include the

20   identity of the potential <u>cy pres</u> recipient. Objection at 12-13. Again, the Court has already

21   approved notice here. Moreover, in this case, payment to a Court-approved <u>cy-pres</u> would

22   only take place for a "tiny fraction of funds if money remains after paying Class members."

23   Mot. for Final Approval at 6; Objection at 12. Judge Illston recently approved a similar

24   provision. <u>See</u> <u>In re TFT-LCD (Flat Panel) Antitrust Litig.</u>, No. 07-1827 SI, 2013 WL

25   1365900, at *5 (N.D. Cal. Apr. 3, 2013) (granting final approval, notwithstanding <u>Dennis v.</u>

26   <u>Kellogg Co.</u>, 697 F.3d 858 (9th Cir. 2012), where only provision in plan involving <u>cy pres</u>

27   was provision for residual funds to be distributed in court's discretion). The Court is not

28   troubled by the lack of a named <u>cy-pres</u> in this case.

United States District Court
For the Northern District of California

1     Fifth, Yang asserts that the class definition lacks an end date. Objection at 13-14. She

2 is incorrect: the end date is defined in the settlement agreements and in the notice as the date

3 "(a) the Court has entered Judgment; and (b) the time for appeal has expired, or if an appeal

4 occurs, the Judgmenthas been affirmed and no further appeals are possible." Mot. for Final

5 Approval at 13-14; Long Form Notice on website. Moreover, Plaintiffs assert that they will

6 post the exact effective date on the website when the criteria are met. Mot. for Final

7 Approval at 14. This is adequate.

8     Finally, Yang maintains that the class definition should exclude potential appellate

9 judges. Objection at 15. This objection is meritless; appellate judges may always recuse

10 themselves if they are conflicted.

11     Accordingly, finding the settlements fair, reasonable, and adequate, and rejecting the

12 objections, the Court GRANTS both final approval and fees in the amount explained above.

13     **IT IS SO ORDERED.**

14

15 Dated: May 26, 2015

16                                           CHARLES  R. BREYER

17                                           UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28

1   Joseph W. Cotchett (36324)
    jcotchett@cpmlegal.com
2   Steven N. Williams (175489)
    swilliams@cpmlegal.com
3   Adam J. Zapala (245748)
    azapala@cpmlegal.com
4   **COTCHETT, PITRE & McCARTHY, LLP**
    San Francisco Airport Office Center
5   840 Malcolm Road, Suite 200
    Burlingame, CA 94010
6   Telephone: (650) 697-6000
    Facsimile:  (650) 697-0577
7
    Michael P. Lehmann (77152)              Michael D. Hausfeld
8   mlehmann@hausfeldllp.com                mhausfeld@hausfeldllp.com
    Christopher Lebsock (184546)            Seth R. Gassman
9   clebsock@hausfeldllp.com                sgassman@hausfeldllp.com
    **HAUSFELD LLP**                        **HAUSFELD LLP**
10  44 Montgomery Street                    1700 K Street, Suite 650
    San Francisco, CA 94111                 Washington, D.C. 20006
11  Telephone: (415) 633-1908               Telephone: (202) 540-7200
    Facsimile:  (415) 358-4980              Facsimile:  (202) 540-7201
12
    *Interim Co-Lead Counsel for Plaintiffs*
13
                    **UNITED STATES DISTRICT COURT**
14
                  **NORTHERN DISTRICT OF CALIFORNIA**
15
                       **SAN FRANCISCO DIVISION**
16  **IN RE TRANSPACIFIC PASSENGER**        Civil Action No. 3:07-CV-05634-CRB
    **AIR TRANSPORTATION ANTITRUST**
17  **LITIGATION**                          MDL No: 1913

18                                          **AMENDED ORDER GRANTING**
                                            **PLAINTIFFS' MOTION FOR**
19                                          **APPROVAL OF NOTICE**
                                            **PROGRAM, NOTICE FORMS, AND**
20                                          **PLAN OF ALLOCATION**
    **This Document Relates To:**
21
    **All Actions**
22
23
24
25
26
27
28

3-ER-571

Plaintiffs have moved the Court for approval of their proposed notice program and forms ("Notice Program") and the Plan of Allocation ("Plan of Allocation"). The Court, having reviewed the motion, the accompanying declarations, the pleadings and other papers on file in this action, and the statements of counsel and the parties, hereby finds that the motion should be GRANTED.

IT IS HEREBY ORDERED THAT:

1.      The Court approves the proposed Notice Program, including the Long Form Notice, the Short Form Notice, attached to the Declaration of Dr. Shannon R. Wheatman in support of Plaintiffs' Motion for Approval of Notice Program, Notice Forms, and Plan of Allocation. The Court further approves the claim form attached to the Declaration of Christopher L. Lebsock in support of Plaintiffs' Motion for Approval of Notice Program, Notice Forms, and Plan of Allocation. The Court also preliminarily approves the proposed Plan of Allocation described in Plaintiffs' Motion for Approval of Notice Program, Notice Forms, and Plan of Allocation. The Court finds that the manner of notice proposed constitutes the best practicable notice under the circumstances as well as valid, due and sufficient notice to all persons entitled thereto and complies fully with the requirements of the Federal Rule of Civil Procedure 23 and the due process requirements of the United States Constitution. The Court further finds that the Plan of Allocation is fair, reasonable, and adequate under the circumstances and fairly compensates class members based upon the scope of the releases provided by Settling Defendants.

2.      On or before March 29, 2015 Settlement Class Counsel shall cause the notice, in substantially the same form as Exhibits referenced above, to be published in the manner and in and through the media outlets and other mediums enumerated in the Notice Program and publication schedules attached as Exhibits to the Declaration of Dr. Shannon R. Wheatman. Settlement Class Counsel shall also provide a copy of the notice to all persons who request it and shall post a copy of the notice on the Internet at the address identified in the notice. Settlement Class Counsel shall notify Settling Defendants of all class members who elect to opt out of the settlements or object to the settlements within five business days of the deadline for the same.

3.      At least ten (10) days before the date fixed by this Court for the Final Fairness Hearing, Settlement Class Counsel shall cause to be filed with the Clerk of this Court a declaration by the person under whose general direction the publication of notice was made, showing that

publication was made in accordance with this Order.

4. A hearing (the "Final Fairness Hearing") shall be held by this Court on Friday, May 22, 2015 at 10:00 a.m. before the Honorable Charles R. Breyer at the United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, 94102 to make a final determination as to whether the proposed settlements are fair, adequate, and reasonable to the settlement classes and should be approved by the Court, and whether Settling Defendants should be released from claims as provided in the settlement agreements. The Court may adjourn this Final Fairness Hearing without further notice to members of the settlement classes.

5. Any member of a settlement class may request to be excluded from the settlement class; such request of exclusion must be made no later than thirty-five days before the date of the Final Fairness Hearing, and must otherwise comply with the requirements set forth in the long form notice provided on the website established by Kinsella Media ("Settlement Website"). Any member of a settlement class who does not timely seek exclusion from said class and who wishes to object to the terms of the relevant proposed settlement must do so in writing, must mail or deliver copies of such objection to Counsel for the Settling Parties and the Clerk of the Court no later than thirty-five days before the Final Fairness Hearing, and must otherwise comply with the requirements set forth in the long form notice provided on the Settlement Website.

6. In the event that one or more of the proposed settlements are approved by the Court after the Final Fairness Hearing, the deadline for class members to submit claims will be the later of one hundred twenty (120) days after the Effective Date of each of the respective settlements (as that term is defined in each of the Settlement Agreements) or the date upon which entry of judgment against each respective Settling Defendant is entered by the Court.

7. Settlement Class Counsel shall file with the Court their motion for final approval of the proposed settlement agreements at least fourteen (14) days prior to the date of the Final Fairness Hearing. Settlement Class Counsel shall post a copy of any motion and supporting papers on the Settlement Website at least ten (10) days prior to the Final Fairness Hearing.

8. Settlement Class Counsel shall file any motion concerning the payment of and/or distribution of attorneys' fees, costs, and/or incentive awards forty-five (45) days prior to the Final

[PROPOSED] AMENDED ORDER GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS & PLAN OF ALLOCATION    MASTER FILE NO. CV-07-5634-CRB

3-ER-573

Fairness Hearing. Settlement Class Counsel shall post a copy of any motion for attorneys' fees and supporting papers on the website within twenty-four hours after it is filed with the Court. Comments and/or objections to any motion must be made in writing and comply with the requirements set forth in the long form notice posted on the Settlement Website, and must be received by Settlement Class Counsel, and filed with the Court, at least thirty-five (35) days prior to the Final Fairness Hearing.

9. Settlement Class Counsel are authorized to pay out of the Settlement Fund sums actually invoiced by Kinsella Media/Rust for notice and administration.

**IT IS SO ORDERED.**

Dated: December 15, 2014

_____
HON. CHARLES R. BREYER
United States District Judge

Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com
Steven N. Williams (175489)
swilliams@cpmlegal.com
Adam J. Zapala (245748)
azapala@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

Michael P. Lehmann (77152)          Michael D. Hausfeld
mlehmann@hausfeldllp.com            mhausfeld@hausfeldllp.com
Christopher Lebsock (184546)        Seth R. Gassman
clebsock@hausfeldllp.com            sgassman@hausfeldllp.com
**HAUSFELD LLP**                    **HAUSFELD LLP**
44 Montgomery Street                1700 K Street, Suite 650
San Francisco, CA 94111             Washington, D.C. 20006
Telephone: (415) 633-1908           Telephone: (202) 540-7200
Facsimile:  (415) 358-4980          Facsimile:  (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE TRANSPACIFIC PASSENGER AIR TRANSPORTATION ANTITRUST LITIGATION** | Civil Case No. 3:07-CV-05634-CRB<br>MDL 1913 |
| _____ | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION; AND MEMORANDUM IN SUPPORT THEREOF** |
| **This Document Relates To:** | |
| **All Actions** | |
| | Hearing Date: Friday December 12, 2014<br>Judge:          Hon. Charles R. Breyer<br>Time:            10:00 a.m.<br>Courtroom:   6, 17th Floor |

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR          MASTER FILE NO. CV-07-5634-CRB
APPROVAL  OF NOTICE PROGRAM, NOTICE FORMS,
AND PLAN OF ALLOCATION

3-ER-575

<u>**NOTICE OF MOTION AND MOTION**</u>

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on Friday December 12, 2014 at 10:00 a.m., before the Honorable Charles R. Breyer, United States District Court for the Northern District of California, 450 Golden Gate Ave., Courtroom 6, 17th Floor, San Francisco, California, Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23(c), for the entry of an Order approving use of the notice program, forms, and preliminarily approving the plan of allocation and claim form set forth in this Motion.

The Motion should be granted because the robust and comprehensive proposed notice program and forms will fairly apprise potential class members of the existence of the class settlements in this action and their rights under those settlements, and are consistent with, and in fact exceed, the requirements of Rule 23 and due process. Plaintiffs' plan of allocation should also be approved because it is fair and adequate to the Classes. This Motion is supported by: (i) this Notice of Motion and Motion, (ii) the supporting Memorandum of Points and Authorities, (iii) the accompanying Declaration of Christopher L. Lebsock, (iv) the accompanying Declaration of Dr. Shannon R. Wheatman and its exhibits; (v) any further papers filed in support of this motion, (vi) the argument of counsel, and (vii) all matters of record in this action.

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ...........................................................v

SUMMARY OF ARGUMENT ...............................................................................1

I.   OVERVIEW OF PLAINTIFFS' NOTICE PROGRAM...................................2

     A.   Plaintiffs Have Retained a Renowned Notice Expert Specializing in the Provision of Class Action Notification Programs...................................2

     B.   The Proposed Notice Program Combines Publication Through Paid and Earned Media, Online Advertising and Social Media, and Internet Notice......................3

          1.   Domestic and International Notice Publication .........................4

          2.   Press Release Notice Publication.............................................5

          3.   Online Banner Advertisements and Social Media ....................5

          4.   Website Publication ..................................................................6

          5.   Toll Free Customer Service Line ..............................................6

II.  PLAINTIFFS' PROPOSED NOTICE PROGRAM COMPORTS WITH THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ..................................6

III. PLAINTIFFS' PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE...8

IV. CONCLUSION ..................................................................................9

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Four in One Co. V. S.K. Foods, L.P.*,
2:08-CV-3017 KJM EFC, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) ............................ 8

*In re Agent Orange Prod. Liab. Litig.*,
818 F.2d 145 (2d Cir.1987)........................................................................................ 7

*In re Citric Acid Antitrust Litig.*,
145 F. Supp. 2d 1152 (N.D. Cal. 2001) .............................................................. 8, 9

*In re Dynamic Random Memory Antitrust Litig.*,
MDL No. 1486 (N.D. Cal.) .......................................................................................... 2

*In re Holocaust Victims Assets Litig.*,
No. CV 96-4849 (E.D.N.Y.) ........................................................................................ 2

*In re International Air Transportation Surcharge Antitrust Litig.*,
No. 06-cv-01793-CRB (N.D. Cal.)............................................................................ 1

*In re Katrina Canal Breaches Consolidated Litig.*,
No. 05-4182 (E.D. La.) ................................................................................................ 3

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................. 8

*In re Owens Corning*, Chapter 11, No 00-03837 (Bankr. D. Del.)............................ 2

*In re Prudential Ins. Co. of Amer. Sales Prac. Litig.*,
177 F.R.D. 216 (D.N.J. 1997)..................................................................................... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
MDL No. 1827 (N.D. Cal.) .......................................................................................... 2

*In re Western Union Money Transfer Litigation*,
Master File No. CV 01 0335 (E.D.N.Y.) .................................................................. 2

*In re: Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*,
MDL No. 2179 (E.D. La.)............................................................................................. 2

*Kramer v. B2Mobile, LLC*,
No. 10-cv-02722 (N.D. Cal.) ...................................................................................... 2

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION     iii     MASTER FILE NO. CV-07-5634-CRB

3-ER-578

*Lamb v. Bitech, Inc.*,
No. 3:11-cv-05583-EDL MED, 2013 WL 4013166 (N.D. Cal. Aug. 5, 2013) ...................... 8

*Lockwood v. Certegy Check Services, Inc.*
No. 8:07CV-1434 (M.D. Fla.) ............................................................................. 3

*Ross v. Trex Co.*,
No. 09-00670-JSW, 2013 WL 791129 (N.D. Cal. Mar. 4, 2013) ........................................... 7

RULES

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 6

Fed. R. Civ. P. 23(c) ....................................................................................................... 1

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................................ 7

OTHER AUTHORITIES

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions, § 11:53 ................................. 8

1

**STATEMENT OF ISSUES TO BE DECIDED**

2      1.      Whether the proposed notice plan and forms fairly apprise potential class

3  members of the existence of the settlements in this action and their rights under them?

4      2.      Whether the proposed notice plan and forms conform to the requirements of

5  Federal Rule of Civil Procedure 23 and due process?

6      3.      Whether Plaintiffs' proposed plan of allocation is fair and adequate?

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
APPROVAL  OF NOTICE PROGRAM, NOTICE FORMS,                    MASTER FILE NO. CV-07-5634-CRB
AND PLAN OF ALLOCATION

v

3-ER-580

## SUMMARY OF ARGUMENT

Pursuant to Federal Rule of Civil Procedure 23(c) and the Court's August 13, 2014 Order granting Plaintiffs' Amended Motion for Preliminary Approval of Settlements, *see* ECF Nos. 924, Plaintiffs move the Court for an Order (1) approving the proposed notice program and forms ("Notice Program") attached to the accompanying Declaration of Dr. Shannon R. Wheatman as Exhibits; (2) approving the claim form attached to the accompanying Declaration of Christopher L. Lebsock; and (3) preliminarily approving Plaintiffs' proposed plan of allocation ("Plan of Allocation"). The Notice Program sets forth a robust, multifaceted approach to deliver plain and easy-to-understand information regarding the settlements reached between Plaintiffs and Defendants Cathay Pacific Airways Limited, Japan Airlines International Company, Ltd., Malaysian Airline Systems Berhad, Qantas Airways Limited, Singapore Airlines Limited, Societe Air France, Thai Airways International Public Company, Ltd., and Vietnam Airlines Company, Ltd. (collectively, the "Settling Defendants," and with Plaintiffs, the "Settling Parties").

Plaintiffs have retained a recognized notice expert, Kinsella Media, which has designed a notice scheme that squarely and comprehensively addresses the specific nature of the settlements and the settlement classes in this action. *See generally* Wheatman Decl.; *see also* Lebsock Decl. ¶¶ 2-3. Kinsella Media prepared the highly successful notice program approved by this Court in *In re International Air Transportation Surcharge Antitrust Litig.*, No. 06-cv-01793-CRB (N.D. Cal.). *See* Wheatman Decl. ¶ 6.

The Notice Program combines the provision of: (1) multiple and targeted publications of the class notice in those domestic and international paid media outlets most likely to inform potential class members about the settlements; (2) press releases (i.e., earned media) that are uniquely targeted towards potential class members; (3) placement of the class notice on internet banner advertisements, including through the social media outlet Facebook; (4) establishment of a website that provides notice of the settlements; and (5) a toll free telephone support line to service class members' inquiries regarding the notice, which in turn will allow them to request a

1   copy of the notice delivered via direct mail.

2         As set forth in more detail *infra*, Plaintiffs' Notice Program will fairly apprise potential

3   class members of the existence of the settlement agreements in this action and their options

4   under them. *See* Wheatman Decl. ¶¶ 5, 13-16, 19, 29, 35, 37, 48-52; *see also* Lebsock Decl. ¶¶ 2-

5   4. The proposed Plan of Allocation would fairly compensate class members based on the scope

6   of the release provided by each of the Settling Defendants. Lebsock Decl. ¶ 5. Accordingly, the

7   Court should approve dissemination of class notice and preliminarily approve the allocation of

8   settlement funds and claim form in the manner and form proposed herein.

9   **I.    OVERVIEW OF PLAINTIFFS' NOTICE PROGRAM**

10        **A.    Plaintiffs Have Retained a Renowned Notice Expert Specializing in the
              Provision of Class Action Notification Programs**

12        Plaintiffs have retained Dr. Shannon R. Wheatman, the President of Kinsella Media, LLC

13  ("Kinsella Media"), a firm that specializes in the design and implementation of legal notification

14  programs. Wheatman Decl. ¶ 1. Dr. Wheatman developed the Notice Program in conjunction

15  with Katherine Kinsella, Kineslla Media's founder and a court-recognized notice expert with

16  twenty-one years of experience in the design and execution of legal notice programs. *Id.* ¶¶ 2-4.

17  Kineslla Media is renowned for devising notice programs to apprise class members of their

18  rights, including extensive notice programs in foreign countries, such as *In re Holocaust Victims*

19  *Assets Litig.*, No. CV 96-4849 (E.D.N.Y.); *In re Owens Corning*, Chapter 11, No 00-03837

20  (Bankr. D. Del.) (involving publication notice in 57 countries); and *In re Western Union Money*

21  *Transfer Litigation*, Master File No. CV 01 0335 (E.D.N.Y.) (involving publication notice in 83

22  countries). *Id.* ¶ 6.

23        Dr. Wheatman has personally been involved in some of the largest and most complex

24  notice programs in the country, including *In re Dynamic Random Memory Antitrust Litig.*, MDL

25  No. 1486 (N.D. Cal.) (involving tens of millions of consumers); *In re TFT-LCD (Flat Panel)*

26  *Antitrust Litig.*, MDL No. 1827 (N.D. Cal.) (involving tens of millions of consumers); *In re: Oil*

27  *Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010,* MDL No.

28  2179 (E.D. La.); *Kramer v. B2Mobile, LLC*, No. 10-cv-02722 (N.D. Cal.) (text messaging case

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
APPROVAL OF NOTICE PROGRAM, NOTICE FORMS,          MASTER FILE NO. CV-07-5634-CRB
AND PLAN OF ALLOCATION
2

3-ER-582

involving 40 million consumers); *In re Katrina Canal Breaches Consolidated Litig.*, No. 05-4182 (E.D. La.) (settlement obtained for Hurricane Katrina and Rita survivors); *Lockwood v. Certegy Check Services, Inc.* No. 8:07CV-1434 (M.D. Fla.) (data theft settlement involving over 37 million consumers). *Id.* ¶ 10. Dr. Wheatman has been recognized as an expert in legal notice by courts evaluating class action notice programs, *id.* ¶¶ 7-8, developed the Federal Judicial Center's illustrative model notice forms, *id.* ¶ 11, and published extensively on various aspects of legal notice, *id.* ¶ 12. She has substantial experience administering notice programs with international and foreign language elements. *Id.* ¶ 9.

Dr. Wheatman has leveraged this expertise and experience to design a notice program that provides the best notice practicable to members of the settlement classes, in light of the class members' demographics and the mechanism by which they can best be reached. *Id.* ¶¶ 13-52.

### B.     The Proposed Notice Program Combines Publication Through Paid and Earned Media, Online Advertising and Social Media, and Internet Notice

Kinsella Media has created a comprehensive five part notification program that employs multiple platforms to reach members of the settlement classes,[1] including:

(1) Domestic and international notice publication through paid media in English, Japanese, and Chinese, including dissemination in newspapers, and consumer magazines such as Time, National Geographic, and People, reaching potential class members in at least fifteen different countries;

(2) press releases uniquely targeted towards potential class members, including PR Newswire's National and Pan Asia Wires, and similar distributions in Western Europe, the Philippines, Vietnam, and New Zealand, in English, Chinese, Bahasa Indonesian, Japanese, Korean, Malay, Thai, and Vietnamese;

(3) online banner advertisements through popular websites and social media outlets including Google, Bing, Advertising.com, Facebook, Specific Media, and Xaxis in Bahasa Indonesian, Chinese, English, Japanese, Korean, Malay, Thai, and

---

[1] The settlement classes are composed of individuals who purchased transpacific air passenger flights, principally for leisure, visiting family and friends. *See* Wheatman Decl. Ex. 1 at 13. A minority of class members purchased transpacific air passenger flights for business purposes. *Id.* 50% of the members of the classes reside in the United States, 19% in Japan, and 31%  outside of the United States and Japan. *See id.* ¶ 18.

Vietnamese;

(4) the maintenance of a website, www.AirlineSettlement.com, that includes the class notices and provides other information about the class settlements in those languages in which notice is otherwise disseminated; and

(5) establishment of toll-free phone numbers allowing the members of the settlement classes to call and request that a Notice be mailed to them and listen to answers to frequently asked questions in those languages in which notice is otherwise disseminated, as well as the establishment of a post office box to allow members of the settlement classes to contact Settlement Class by mail with any specific written requests or questions.

*See* Wheatman Decl. ¶¶ 15, 17-50. Because passenger mailing lists are not available from Defendants, this combination of Internet and publication notice is an appropriate mechanism to reach the settlement classes. *Id.* ¶¶ 15, 22. The "Notice Program was designed to reach the greatest practicable number of class members, ensuring that they will be exposed to the Notice and able to see, review, and understand it[,]" *id.* ¶ 13, the notice is "clear, concise, and in plain, easily understood language[,]" *id.* ¶ 14, and the program "represents the best notice practicable," *id.* ¶ 16.

### 1.      Domestic and International Notice Publication

The Notice Program calls for a paid media program including publication in the United States and fourteen other countries. Wheatman Decl. ¶ 17. The program also will distribute the notice in seventeen major cities spanning thirteen countries, representing over 100,000 flight itineraries included in the settlements. *Id.*

Domestically, the Notice Program calls for publication in consumer magazines, newspapers, and a newspaper supplement in order to reach the broadest audience practicable. *Id.* ¶ 22.  The Notice Program includes circulation in Parade, a newspaper supplement inserted into the Sunday editions of 750 newspapers, with an estimated circulation of 32,000,000, as well as National Geographic (circulation of 3,500,000), People (3,475,000), Time (3,250,000), and 32 newspapers across the United States in Chinese, English, and Japanese. *Id.* ¶¶ 23-25.

Internationally, the Notice Program calls for publication in Japanese newspapers,

including, *inter alia*, Yomiuri Shimbun, Asahi Shimbun, and Japan News, with a combined circulation exceeding 18,160,000, *id.* ¶ 33, as well as dissemination in 29 other foreign newspapers, spanning 17 cities across 13 other countries, s*ee id.* ¶¶ 36-37; *see also id.* Ex. 1, Ex. A (detailing the full list of foreign newspapers, the countries in which they are distributed, and their circulations). Finally, notice targeted at business travelers will be published in the Global Edition of the Wall Street Journal, reaching an estimated audience of 1,624,000 in the US, Asia, and Europe. *Id.* ¶ 40.

### 2. Press Release Notice Publication

In addition to paid media, Kineslla Media also proposes distributing notice through targeted press releases (i.e., earned media), which highlight the toll-free telephone number and website address so that members of the settlement classes can obtain complete information about their rights. Wheatman Decl. ¶ 43. The press release will be distributed on PR Newswire's US1 National and Pan Asia Wires, as well as counterparts in the Philippines, Vietnam, and New Zealand. *Id.* Distribution will extend to Europe as well. *Id.*

### 3. Online Banner Advertisements and Social Media

Notice will also be published through Internet advertising, to afford members of the settlement classes opportunities beyond the print program set forth in Sections I.B.1 and 2, *supra. See* Wheatman Decl. ¶¶ 27-28, 34, 40-41. The proposed Internet advertising delivers immediate messages and allows the viewer of an advertisement to instantly click through to the settlement website (described *infra*) for further information. *Id.* Online banner advertisements targeted at United States class members will appear on a rotating basis on Advertising.com, Specific Media, Xaxis, and social media outlet Facebook. *Id.* Banner advertisements targeted at foreign class members will appear on a rotating basis on Yahoo! Japan, Xaxis, the Wall Street Journal's global websites, and Google Display Network's global sites. *Id.* Banner advertisements will run in Chinese, English, Indonesian, Japanese, Korean, Thai, and Vietnamese. *Id.* ¶ 41.

As a complement to these online banner advertisements, the Notice Program also calls for sponsored keywords and phrases with major search enginges Google (including Google, AOL, and Ask.com) and Bing (including Bing/MSN and Yahoo!); these functions display a sponsored

links to the settlement website when users search for one of the specified search terms of phrases. *Id.* ¶ 42. These keyword searches will be sponsored in Bahasa Indonesian, English, Japanese, Korean, Malay, Chinese, Thai, and Vietnamese. *Id.*

### 4. Website Publication

Notice will also be disseminated on a website, www.AirlineSettlement.com, which will include additional information about the settlements and the litigation, including pertinent pleadings, motion papers, and orders, as well as updates on the litigation. Wheatman Decl. ¶ 46. This long form notice will be available on the website in Bahasa Indonesian, Chinese, English, Japanese, Korean, Malay, Thai, and Vietnamese. *Id.* ¶ 52. The toll-free service lines will also be displayed on the class notices, banner advertisements, and the website (discussed *infra*). *Id.*

### 5. Toll Free Customer Service Line

Lastly, the Notice Program provides toll-free service lines that will allow members of the settlement classes to call and (a) request that a notice be mailed to them and (b) listen to answers to frequently asked questions in Indonesian, English, Japanese, Khmer, Korean, Malay, Chinese, Thai, and Vietnamese. Wheatman Decl. ¶ 45. Class members can also leave a message and their call with be returned during business hours of the chosen country in the requested language. *Id.* A post office box will also be established allowing members of the settlement classes to contact settlement class counsel by mail with specific requests or questions, providing class members additional avenues to obtain pertinent information about their rights. *Id.* ¶ 46.

## II. PLAINTIFFS' PROPOSED NOTICE PROGRAM COMPORTS WITH THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

In the context of Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances," and that notice "must clearly and concisely state in plain, easily understood language:"

(i) the nature of the action;
(ii) the definition of the class certified;
(iii) the class claims, issues, or defenses;
(iv) that a class member may enter an appearance through an attorney if the member so desires;
(v) that the court will exclude from the class any member who requests exclusion;

1       (vi) the time and manner for requesting exclusion; and

2       (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

3 Fed. R. Civ. P. 23(c)(2)(B). It is well-settled that notice by publication is appropriate where, as

4 here,[2] "class members' names and addresses cannot be determined with reasonable efforts." *Ross*

5 *v. Trex Co.*, No. 09-00670-JSW, 2013 WL 791129, at *2 (N.D. Cal. Mar. 4, 2013) (quoting *Juris*

6 *v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012)); *see also In re Agent Orange Prod. Liab.*

7 *Litig.,* 818 F.2d 145, 168–69 (2d Cir.1987) (finding that unidentified absent class members that

8 could not be located through reasonable efforts did not need to be provided with individual,

9 mailed notice in order to be bound).

10       The Notice Program proposed by Plaintiffs provides a thorough, multilayered approach to

11 notice by publication designed to reach the members of the settlement classes, and in fact to do

12 so multiple times. The multifaceted program is the best practicable approach available and is

13 "adequate and reasonable under the circumstances." Wheatman Decl. ¶ 52; *see also, e.g.*, *Ross*,

14 2013 WL 791229, at *1 ("[A]ctual notice is not required . . . . Due Process does not entitle a

15 class member to 'actual notice,' but rather to the best notice practicable, reasonably calculated

16 under the circumstances to apprise him of the pendency of the class action and give him a chance

17 to be heard.") (quoting *In re Prudential Ins. Co. of Amer. Sales Prac. Litig.*, 177 F.R.D. 216, 231

18 (D.N.J. 1997)) ("Courts have consistently recognized that due process does not require that every

19 class member receive actual notice so long as the court reasonably selected a means likely to

20 appraise interested parties"). The rigorous Notice Program proposed by Kinsella Media plainly

21 satisfies requirements imposed by Rule 23 and the Due Process clause of the United States

22 Constitution. *See* Section I, *supra*; *see also* Wheatman Decl. ¶ 52.

23       Moreover, the contents of the notice satisfactorily inform the members of the settlement

24 classes of their rights under the settlements. *See* Wheatman Decl. Ex. 1, Exs. E and F. The

25 proposed notice form includes: (i) the case caption; (ii) a description of the classes; (iii) a

26 description of the settlement agreements, including the monetary consideration provided to the

27 settlement classes; (iv) the names of settlement class counsel; (v) a description of the releases

28 ───────────────

[2] *See* Wheatman Decl. ¶¶ 15, 22.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
APPROVAL OF NOTICE PROGRAM, NOTICE FORMS,
AND PLAN OF ALLOCATION           7            MASTER FILE NO. CV-07-5634-CRB

3-ER-587

1  provided by the settlement classes; (vi) the Fairness Hearing date; (vii) information about the
2  Fairness Hearing; (viii) information about the deadline for filing objections to the settlement
3  agreements; (ix) a statement of the deadline for filing requests for exclusion from the settlement
4  classes; (x) the consequences of exclusion or remaining in the settlement classes; (xi) how the
5  Class Counsel will be compensated and that additional information regarding Class Counsel's
6  fees and costs will be posted on the website prior to the deadline for objections; and (xii) how to
7  obtain further information about the proposed settlement agreements. *See id.*; *see also* 4 Alba
8  Conte & Herbert B. Newberg, Newberg on Class Actions, § 11:53, at 167 (notice is "adequate if
9  it may be understood by the average class member"); *Lamb v. Bitech, Inc.*, No. 3:11-cv-05583-
10  EDL MED, 2013 WL 4013166, at *4 (N.D. Cal. Aug. 5, 2013) (class settlement notice forms
11  adequate where they were "reasonably calculated to adequately apprise class members" of their
12  rights).

13      Accordingly, the Notice Program and accompanying forms are reasonable and adequate
14  under the circumstances, and are fairly calculated to apprise class members of their rights under
15  the settlements. *See* Wheatman Decl. ¶ 52.

## III.  PLAINTIFFS' PROPOSED PLAN OF ALLOCATION IS FAIR AND REASONABLE

17      "Approval of a plan for the allocation of a class settlement fund is governed by the same
18  legal standards that are applicable to approval of the settlement; the distribution plan must be
19  'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154
20  (N.D. Cal. 2001) (internal citations omitted). When allocating funds, "[i]t is reasonable to
21  allocate the settlement funds to class members based on the extent of their injuries or the strength
22  of their claims on the merits." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1045-
23  46 (N.D. Cal. 2008) (internal citations omitted) (approving securities class action settlement
24  allocation on a "per-share basis"); *Four in One Co. V. S.K. Foods, L.P.*, 2:08-CV-3017 KJM
25  EFC, 2014 WL 4078232, at * (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing
26  for a pro rata distribution of the net settlement fund based on verified claimants' volume of
27  qualifying purchases" as "fair, adequate, and reasonable").

Plaintiffs' proposed Plan of Allocation will distribute settlement funds to settlement class members pro rata based upon the scope of the releases provided by the Settling Defendants. *See* Lebsock Decl. ¶ 5. For Plaintiffs' settlement with Japan Airlines Company Limited ("JAL"), class members will be compensated *pro rata* for their purchases of US originating flights and Asia/Oceania originating travel; for all other settlements that are the subject of the Notice Program, class members will be compensated *pro rata* only for US originating travel. *See id.* For all settlements other than with JAL, settlement class members "are not releasing claims for Asia/Oceania originating travel as part of the settlement agreements." *See id.* Plaintiffs' proposed claim form asks class members to identify the number of qualifying purchases that they made by airline, including the direction of travel, thereby allowing Settlement Class Counsel to accurately calculate the proper distributions to be made to class members under the settlement agreements. *See id.* This Plan of Allocation is thus "fair, adequate, and reasonable" and merits approval by the Court. *See Citric Acid*, 145 F. Supp. at 1154. The proposed claim form will allow the administrator to make the appropriate calculations. *See* Lebsock Decl., Ex. A.

Settlement Class Counsel also requests that the Court authorize it to pay the actual invoices of Kinsella Media/Rust out of the Settlement Funds for costs associated with sending notice and administering the Settlements. Kinsella Media/Rust has estimated these costs at approximately $2.4 million. *See* Lebsock Decl., Ex B. The Settlement Agreements provide that in the event that the Court does not finally approve the Settlements, the funds expended need not be refunded to the Settling Defendants.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court issue an Order approving the Notice Program and preliminarily approving the Plan of Allocation and claim form.

Dated: October 13, 2014         Respectfully submitted,

/s/*Steven N. Williams*_____
Joseph W. Cotchett (36324)
jcotchett@cpmlegal.com

/s/*Christopher L. Lebsock*_____
Michael P. Lehmann (77152)
mlehmann@hausfeldllp.com

1  Steven N. Williams (175489)
   swilliams@cpmlegal.com
2  Adam J. Zapala (245748)
   azapala@cpmlegal.com
3  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
4  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
5  Telephone: (650) 697-6000
   Facsimile: (650) 697-0577
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Christopher Lebsock (184546)
clebsock@hausfeldllp.com
**HAUSFELD LLP**
44 Montgomery Street
San Francisco, CA 94111
Telephone: (415) 633-1908
Facsimile: (415) 358-4980

Michael D. Hausfeld
mhausfeld@hausfeldllp.com
Seth R. Gassman
sgassman@hausfeldllp.com
**HAUSFELD LLP**
1700 K Street, Suite 650
Washington, D.C. 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201

*Interim Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Christopher Lebsock, declare that I am over the age of eighteen (18) and not a party to the entitled action. I am a partner at the law firm of HAUSFELD LLP, and my office is located at 44 Montgomery Street, Suite 3400, San Francisco, California 94104.

On October 10, 2014, I caused to be served a true and correct copy of the following:

1) **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION; AND MEMORANDUM IN SUPPPORT THEREOF**

2) **DECLARATION OF CHRISTOPHER L. LEBSOCK IN SUPPORT OF PLAINTIFFS' MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION**

3) **DECLARATION OF SHANNON R. WHEATMAN, PH.D. IN SUPPORT OF PLAINTIFF'S MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION**

4) **[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION FOR APPROVAL OF NOTICE PROGRAM, NOTICE FORMS, AND PLAN OF ALLOCATION**

5) **CERTIFICATE OF SERVICE**

with the Clerk of the Court using the Official Court Electronic Document Filing System which served copies on all interested parties registered for electronic filing.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Executed on October 10, 2014 at San Francisco, California.

 */s/ Christopher Lebsock*
 Christopher Lebsock

1  Joseph W. Cotchett (36324)
   jcotchett@cpmlegal.com
2  Pete N. McCloskey (024541)
   pmccloskey@cpmlegal.com
3  Steven N. Williams (175489)
   swilliams@cpmlegal.com
4  **COTCHETT, PITRE & McCARTHY**
   San Francisco Airport Office Center
5  840 Malcolm Road, Suite 200
   Burlingame, CA 94010
6  Telephone: (650) 697-6000
   Facsimile:  (650) 697-0577
7
   Michael P. Lehmann (77152)              Michael D. Hausfeld
8  mlehmann@hausfeldllp.com                mhausfeld@hausfeldllp.com
   Christopher Lebsock (184546)            Seth R. Gassman
9  clebsock@hausfeldllp.com                sgassman@hausfeldllp.com
   **HAUSFELD LLP**                        **HAUSFELD LLP**
10 44 Montgomery Street                    1700 K Street, Suite 650
   San Francisco, CA 94111                 Washington, D.C. 20006
11 Telephone: (415) 633-1908               Telephone: (202) 540-7200
   Facsimile:  (415) 358-4980              Facsimile:  (202) 540-7201
12
   *Interim Co-Lead Counsel for Plaintiffs*
13
                    **UNITED STATES DISTRICT COURT**
14
                   **NORTHERN DISTRICT OF CALIFORNIA**
15
                       **SAN FRANCISCO DIVISION**
16 **IN RE TRANSPACIFIC PASSENGER**        Civil Action No. 3:07-CV-05634-CRB
   **AIR TRANSPORTATION ANTITRUST**
17 **LITIGATION**                          MDL No: 1913

18                                         **ORDER GRANTING PRELIMINARY**
                                           **APPROVAL OF SETTLEMENTS WITH**
19                                         **DEFENDANTS JAPAN AIRLINES**
                                           **INTERNATIONAL COMPANY, LTD.;**
20                                         **SOCIETE AIR FRANCE; VIETNAM**
                                           **AIRLINES COMPANY, LTD.; THAI**
   **This Document Relates To:**           **AIRWAYS INTERNATIONAL PUBLIC**
21                                         **COMPANY, LTD.; MALAYSIAN**
   **All Actions**                         **AIRLINE SYSTEMS BERHAD; AND**
22                                         **CATHAY PACIFIC AIRWAYS LIMITED**
23
24
25
26
27
28

Plaintiffs have moved the Court for Preliminary Approval of Class Action Settlements with Settling Defendants Japan Airlines International Company, Limited ("JAL"); Societe Air France ("Air France"); Vietnam Airlines Company, Limited ("VN"); Thai Airways International Public Company, Limited ("Thai Airways"); Malaysian Airline System Berhad ("Malaysian Air"); and Cathay Pacific Airways Limited ("CX") (collectively, the "Settling Defendants"). The Court, having reviewed the motion, the Settlement Agreements, the pleadings and other papers on file in this action, and the statements of counsel and the parties, hereby finds that the motion should be GRANTED.

IT IS HEREBY ORDERED THAT:

1.     The Proposed Settlements with the Settling Defendants are preliminarily approved, subject to a final approval hearing of the Proposed Settlements (the "Fairness Hearing"). The Court finds that the Proposed Settlements fall within the range of possible final approval. The Court further finds that there is a sufficient basis for notifying Class members of the Proposed Settlements.

2.     The following Classes are provisionally certified for settlement purposes only, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

> JAL SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary, or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchasers of passenger air transportation directly between the United States and the Republic of Korea purchased from Korea Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

> AIR FRANCE/VN/ SETTLEMENT CLASS:
> All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air

transportation between the United States and the Republic of South Korea purchased from Korea Air Lines, Ltd. and /or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary, or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

THAI AIRWAYS SETTLEMENT CLASS:
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date.  Excluded from the class are governmental entities, Defendants, former Defendants in the Action, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

MALAYSIAN AIRWAYS SETTLEMENT CLASS:
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia/Oceania from Defendants or their co-conspirators, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date. Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc. Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees or immediate families.

CX SETTLEMENT CLASS:
All persons and entities that purchased passenger air transportation that included at least one flight segment between the United States and Asia or Oceania from Defendants, or any predecessor, subsidiary or affiliate thereof, at any time between January 1, 2000 and the Effective Date.  Excluded from the class are purchases of passenger air transportation between the United States and the Republic of South Korea purchased from Korean Air Lines, Ltd. and/or Asiana Airlines, Inc.  Also excluded from the class are governmental entities, Defendants, former defendants in the Actions, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees and immediate families.

3.    The Court finds the prerequisites to a class action under Federal Rule of Civil Procedure 23(a) have been satisfied for settlement purposes by each of the above-described Classes in that:

a)  there are hundreds of thousands of putative Class members, making joinder of all members impracticable;

b) there are questions of fact and law that are common to all members of the Classes;

c) the claims of the Class Representatives are typical of those of the absent members of the Classes;

d) Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, and James Kawaguchi have and will fairly and adequately protect the interests of the absent members of the Classes and have retained counsel experienced in complex antitrust class action litigation who have and will continue to adequately advance the interests of the Classes.

4.    The Court finds that this action may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement because: (i) questions of fact and law common to the Class members predominate over any questions affecting only the claims of individual Class members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

5.    The Court finds that the Settlement Agreements fall within the range of possible approval. The Court further finds that there is a sufficient basis for notifying the Classes of the proposed settlements, and for enjoining Class members from proceeding in any other action pending the conclusion of the Fairness Hearing.

6.    The Court hereby appoints the Interim Co-Lead Counsel, Cotchett, Pitre & McCarthy and Hausfeld LLP, to serve as Settlement Class Counsel.

7.    The Court hereby appoints Plaintiffs Meor Adlin, Franklin Ajaye, Andrew Barton, Rachel Diller, Scott Fredrick, David Kuo, Dickson Leung, Brendan Maloof, Donald Wortman, Harley Oda, Roy Onomura, Shinsuke Kobayashi, Patricia Lee, Nancy Kajiyama, Della Ewing Chow, and James Kawaguchi to serve as Class Representatives on behalf of the Settlement Classes.

8.    The Court hereby provisionally establishes a litigation expense fund in the amount of $3 million to reimburse Plaintiffs for litigation expenses incurred to date and pay for litigation expenses that will be incurred in the future.

9. The Court will conduct a Fairness Hearing on a date to be set following notice to the class, which will determine the following:

    a) Whether the proposed settlements are fair, reasonable, and adequate and should be granted final approval;

    b) Whether final judgment should be entered dismissing the claims of the classes against Settling Defendants, with prejudice as required by the Settlement Agreements; and

    c) Such other matters as the Court may deem appropriate.

**IT IS SO ORDERED.**

Dated: August 8, 2014



HON. C_____
United _____

IT IS SO ORDERED

Judge Charles R. Breyer