**No. 23-15118**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

**In re:  TRANSPACIFIC PASSENGER AIR TRANSPORTATION
ANTITRUST LITIGATION**,

MER ADLIN; FRANKLIN AJAYE; ANDREW BARTON; RACHEL DILLER;
SCOTT FREDERICK; DAVID KUO; DICKSON LEUNG; BRENDEN G.
MALOOF; DONALD WORTMAN; HARLEY ODA; ROY ONOMURA;
SHINSUKE KOBAYASHI; PATRICIA LEE; NANCY KAJIYAMA; DELLA
EWING CHOW; JAMES KAWAGUCHI; SHARON CHRISTIAN,
Plaintiffs - Appellees,
   v.

XANADU CORP.; DAVID GOULD,                Objectors - Appellants,
   v.

ALL NIPPON AIRWAYS,                Defendant.

---

**On Appeal from the Orders of the United States District Court
for the North District of California, No. 3:07-cv-05634, Hon. Charles R.
Breyer, United States District Judge**

---

## APPELLANTS' CORRECTED OPENING BRIEF

---

J. Allen Roth, Esq.
Law Office of J. Allen Roth
805 S. Alexandria St.
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

*Attorneys for Objector-Appellants
David Gould and Xanadu Corp.*

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel for Petitioners certify: 1. David Gould is an individual who is a Citizen of Israel and resides in Taiwan and Costa Rica. Gould was a claimant paid in the underlying class action.

2. Xanadu Corp., a Colorado corporation, is a privately held corporation and is the successor in interest to Trust Services, S.A., a Costa Rican corporation. Xanadu Corp., because of its Central American roots, is known as Corporacion Xanadu.

Date: May 20, 2023

*/s/ J. Allen Roth, Esq.*
J. Allen Roth, Esq.

*Attorneys for Appellants David Gould and Xanadu Corp.*

1

## TABLE OF CONTENTS

Disclosure Statement… …………………………………………………………2

Table of Contents……………………………………………………...…………3

Table of Citations………………………………………………………………..4

Jurisdictional Statement…………………………………………………… 5

Statutory Authorities……………………………………………………… 6

Issues Presented for Review..…………………………………………… 6

Statement of the Facts and the Case………………………………………….7

Summary of theArgument……………………………………………39

Standard of Review…………………………………………………... 43

Argument………………………………………………………………...43

    The district court erred by not requiring Class Counsel to notify class members of its request to convert uncashed checks to attorney fees…….. 43

    The district court abused its discretion by granting Attorney Fees from uncashed checks where  no attempt to notify the claimants occurred…..... 45

    Class Counsel and Rust Consulting breached their fiduciary duties by not notifying approved claims that checks would be disbursed, checks were returned, and checks went uncashed……………………… 46

    Uncashed domestic checks must be turned over to state unclaimed property agencies so their owners can ultimately receive their  money…. 48

    The district court erred and abused its discretion in allowing Class Counsel to reopen Xanadu's claim and have Rust Consulting apply a heightened standard of review to it……………………………… 50

Conclusion………………………………………………………………55

Form 17 Statement of Related Cases……………………………………… 57

Form 8 Certificate of Compliance Briefs……………………………………58

2

# TABLE OF CITATIONS

Statutes:

15 USC 1……………………………………………………………….5

28 USC 1291… …………………………………………………………...5

28 USC 1331……………………………………………………………5

28 USC 1337……………………………………………………………5

Rules and Rule Notes:

Federal Rule of Civil Procedure 23(h).........................................passim

Federal Rule of Civil Procedure 23(e)(2)(D)..........................6, 31, 41, 51

Fed.R.Civ.P. 23, 2003 Advisory Committee Notes, ¶ 68……...……40, 44

Federal Rule of Civil Procedure 59………….……………………....37

Federal Rule of Civil Procedure 60………………………………….37

Cases:

*Conn. Mut. Life Ins. Co. v. Moore,*
333 U.S. 541, 547, 68 S.Ct. 682, 686, 92 L.Ed. 863 (1948) ……….48-49

*Delaware v. New York,* 507 US 490 (1993).......................................................49

*Elder v. Hilton Worldwide Hldgs., Inc.*,
16‑cv‑00278, 2020 WL 11762284, *8 (N.D. Cal. Apr. 29, 2020)...........51

*Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000).............................43

*Gaffney v. City of Santa Clara*,
18‑cv‑06500, 2020 WL 12182761, *6 (N.D. Cal. Apr. 13, 2020)..........51

*Hansberry v Lee*, 311 US 32, 43-45 (1940).......................................................54

3

*In re; Transpacific Passenger Air Transportation*,
701 Fed.Appx. 554 (9th Cir. June 26, 2017)..........................................9

*In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.,*
55 F.3d 768, 801 (3d Cir.1995…………………………………………….45

*In re Mercury Interactive Corp.*,
618 F.3d 988, 994 (9th Cir. 2010)................................................40, 43, 44

*In re Optical Disk Drive Antitrust,*
3:10-md-02143-RS, Entry 3122 (N.D. Cal. Jan. 8, 2023)……………. 50

*North American Acceptance v Arnall, Golden & Gregory,*
593 F2d 642, 645 (5th Cir 1979)...,........................................................ 54

*Pennsylvania v. New York*, 407 US 206 (1972)................................................ 49

*Reynolds v. Beneficial Nat'l Bank,*
288 F.3d 277, 279–80 (7th Cir. 2002)...................................................... 46

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948, 968 (9th Cir. 2009)............................................................ 46

*Stair v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008). ……………….43

*Staton v. Boeing Co.* 327 F.3d 938, 959 (9th Cir. 2003)...................................45

*Texas v. New Jersey*, 379 U.S. 674, 677 (1965)................................................. 49

**Treatises and Other References:**

4 WILLIAM B. RUBENSTEIN,
NEWBERG ON CLASS ACTIONS § 13:40 (5th ed. 2020)................. 46

Prince and the Revolution, *Pop Life* (Paisley Park Records 1985).........40

4

## JURISDICTIONAL STATEMENT

The district court lacked jurisdiction to grant attorney fees to Class Counsel, absent reasonable notification to class members and an opportunity to object. Fed. R. Civ. Proc. 23(h).

As to the underlying civil action, the district court maintained jurisdiction pursuant to the federal-question and antitrust jurisdictional statutes at 28 U.S.C. § 1331 and § 1337 because the underlying suit alleged violations of the Sherman Act, 15 U.S.C. §1.

The district court entered its final Order granting $500,000 in attorney fees to Class Counsel, allowing Class Counsel to take the funds from approved claimants whose checks were not delivered or cashed, including Xanadu Corp.'s originally approved claim, and to redistribute those funds to other class members, and not to comply with state unclaimed property laws. 1-ER-009. Appellants filed a timely motion for reconsideration pursuant to Fed. R. Civ. Proc. 59 and 60 on the same date. 2-ER-046. On January 25, 2023, the district court denied the reconsideration. 1-ER-002. On January 26, 2023, Appellants filed a timely notice of appeal. 4-ER-598. Therefore, this Court maintains jurisdiction pursuant to 28 USC 1291.

## STATUTORY AUTHORITIES

Federal Rule of Civil Procedure 23(h)

ATTORNEY'S FEES AND NONTAXABLE COSTS. In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement. The following procedures apply:

(1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets. Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner. (2) A class member, or a party from whom payment is sought, may object to the motion.

Federal Rule of Civil Procedure 23(e)(2)(D):

SETTLEMENT, VOLUNTARY DISMISSAL, OR COMPROMISE. The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:

(2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(D) the proposal treats class members equitably relative to each other.

## ISSUES PRESENTED

 **I.** **Whether the district court erred by not requiring Class Counsel to notify class members of its request to convert uncashed checks to attorney fees?**

 **II.** **Whether it constitutes an abuse of discretion to grant Attorney Fees from uncashed checks where no attempt to notify the claimants occurred?**

III.    **Whether it is Class Counsel and Rust Consulting breached their fiduciary duties by not notifying approved claims that checks would be disbursed, checks were returned, and checks went uncashed?**

IV.    **Whether uncashed domestic checks must be turned over to state unclaimed property agencies so their owners can ultimately receive their money?**

V.    **Whether the district court erred and abused its discretion in allowing Class Counsel to reopen Xanadu's claim and have Rust Consulting apply a heightened standard of review to it?**

## STATEMENT OF THE FACT AND CASE

On November 22, 2013, Class Plaintiffs brought a Second Amended Consolidated Complaint against several international air carriers. alleged a conspiracy of numerous international air carrier defendants to fix prices in violation of the Sherman Act and sought recovery for passengers who had purchased transpacific air travel from the defendants and their co-conspirators.

After years of litigation, various settlements were reached in multiple phases. Each settlement provided money to be allocated from the settling airlines and then paid to claimants based on the number of tickets that they claimed.

Class Counsel reached a settlement with Japan Airlines, Air France, Vietnam Airlines, Thai Airways, Malaysian Airlines, and Cathay Pacific. The district court approved the settlement on August 11, 2014. 3-ER-592. Thereafter, Class Counsel represented to the Court that it would launch an extensive media campaign including "domestic and international notice publication through paid media in

7

English, Japanese, and Chinese" and that the maintenance of a website, www.AirlineSettlement.com, that includes the class notices and provides other information about the class settlements in those languages in which notice is otherwise disseminated." The Notice Program calls for a paid media program including publication in the United States and fourteen other countries. 3-ER-575, 583-584. In mid-December 2014, the district court entered an Amended Order granting preliminary approval of the multilanguage notice program. 3-ER-571. The district court entered an Order granting final approval to these settlements on May 26, 2015. 3-ER-564. The district court noted during 2015 that there were over 700,000 unique visits to the website. 3-ER-560. The Court overruled certain objections relating to potential post-distribution *cy pres* payments because it would only occur "if money remains after paying Class members." *Id.* The district court promised the issues about leftover money would include only a "tiny fraction of funds if money remains after paying Class members." *Id.* The district court entered final judgments of dismissal as to these airlines on June 15, 2015. 3-ER-524-563. The judgments noted that,"this court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court." *Id*.

8

This Court affirmed the settlement after an objector appeal. *In re; Transpacific Passenger Air Transportation*, 701 Fed.Appx. 554 (9th Cir. June 26, 2017).

Thereafter, similar settlements were reached with Philippine Airlines, Air New Zealand, China Airlines, and EVA Airways. The district court granted preliminary approval by signing a stipulated Order propounded by the parties. 3-ER-518.. On October 11, 2018, the district court granted final approval of the settlements. 3-ER-498. On the same date, the district court entered final judgments of dismissal against these airlines. 3-ER-506-517, 3-ER-492-497. These final judgments of dismissal noted, "this Court hereby retains continuing jurisdiction over: (a) implementation of the terms of the Settlement Agreement and any distribution to members of the Settlement Class pursuant to further orders of this Court; (b) hearing and ruling on any matters relating to the plan of allocation of the settlement proceeds…" *Id.*

Finally, settlements were reached with All Nippon Airways Co., and the district court granted preliminary approval of the settlement. 3-ER-485. On December 3, 2019, the district court granted final approval of the All Nippon Airways Co. settlement. 3-ER-480. On the same date, the district court entered a final judgment of dismissal. 3-ER-475-479. The judgment noted, " this Court hereby retains continuing jurisdiction over: (a) implementation of this settlement

and any distribution to members of the Settlement Classes pursuant to further orders of this Court; (b) disposition of the Settlement Fund…" *Id.*

During these periods, claims forms became due from class members.

Between 2017 and 2020, Xanadu lodged a claim with Rust seeking compensation for 150 American Airlines tickets, 72 Cathay Pacific Airways Tickets, 90 Delta Airlines Tickets, 800 Japan Airlines (JAL), and 225 United Airlines tickets.

On August 14, 2020, in response to a request by a group of claimants to allow late claims, Rust wrote, "Rust has been engaged in this matter as a neutral third party and does not have the authority to act outside the terms of the In re Transpacific settlement agreement."

Sometime thereafter in 2020, Rust sent Xanadu an audit letter requesting information about the ticket and requesting information be submitted no later than October 12, 2020. 2-ER-085-091.

On October 2, 2020, Xanadu. returned the requested forms and provided an affidavit attesting to the travel. *Id.*

On or about August 24, 2021, Rust issued a *Notice of Claim Final Determination* for Xanadu. It stated, "We have received and processed the Claim Form(s) that you filed in the Transpacific Airline Settlement along with any supporting documentation you may have provided at our request. Upon reviewing

the claim and purchase information provided below are the ticket counts that qualify for each of the settlement classes: * * * This letter is for informational purposes only and you do not need to do anything in response. The ticket totals are the basis for calculating the settlement benefits for which you are entitled. More information including the Settlement Class definitions is located on the website www.airlinesettlement.com." 2-ER-098.

On January 4, 2022, Class Counsel filed a motion with the Court for leave to distribute the settlement fund. Class counsel argued, "During claims administration, Rust reviewed all claim forms and notified claimants in writing of any denials to the claims they submitted. Rust gave all claimants whose claim(s) were not approved during the first review an opportunity to present supplemental information and contest the determination. Rust also gave all claimants subject to an audit an opportunity to present supplemental information. Rust accepted a variety of Case document types (e.g., travel itineraries, receipts, credit card statements, affidavits/declarations) in varying formats and layouts to maximize eligibility.. In conducting both the deficiency review and audit, Rust applied fair and objective criteria in evaluating all claim forms.. The criteria applied by Rust in performing these reviews (described below and in the accompanying Botzet Declaration) were uniformly applied to ensure the net settlement funds would be distributed fairly to verified class members. Rust has now completed the deficiency

11

review and subsequent audit. The claims process has therefore come to an end, and Plaintiffs are eager to disburse settlement funds to settlement class members expeditiously. Plaintiffs respectfully request entry of an order authorizing distribution of the net settlement funds on a pro rata basis based on settlement class (e.g., Japan Airlines, Thai Airways) and number of tickets as reflected in Exhibit C the Botzet Declaration." 3-ER-444-451.

Rust provided testimony that ,"An integral part of all of Rust's settlement administration projects is its Quality Assurance review. Rust's project team and quality assurance personnel worked throughout the administration process to ensure that Proof of Claim forms and supplemental information were processed properly; that deficiency and ineligibility message codes were properly applied to Proof of Claim Forms; that deficiency notices were mailed to the appropriate Claimants; and that Rust's computer programs were operating properly." 3-ER-460. "Letters were sent to claimants whose claimed ticket counts for individuals or businesses exceeded the following thresholds: a. Individuals: 125 tickets or more, and/or 50 or more tickets for each of the Japan (Fuel Surcharge) and/or Satogaeri Settlement Classes. b. Businesses: 1,000 or more tickets." *Id*, par 12.

"Rust reviewed all responses supplied by the claimants from the "Request for More Information" letters and determined responses to be acceptable support

for the number of tickets claimed if any of the following documentation was provided.  a. Receipts showing ticket purchases; b. Cancelled checks; c. Credit card statements; d. Travel itineraries; e. Email confirmation of ticket purchases; and/or f. Affidavit or declaration attesting that the number of tickets claimed is accurate. Non-standard documents in varying formats and layouts (extracts in the form of spreadsheets, PDFs or paper detailing flight information that included airline, invoice number, fare paid, flight ticket number, ticket issue date and/or flight date(s), organization and destination city /airport) required individual review and analysis."  3-ER-459-460.

On January 12, 2022, Financial Recovery Strategies lodged an objection with the district court that it represented eighty-two class members arguing that the claims administrator, Rust, refused to apply "data submitted to cure deficient proofs of claim in later Settlements . . .to cure the identical deficiencies in proofs of claim filed in earlier Settlements." In other words, FRS wanted Rust to apply the responses to audits from the latter settlements to the earlier settlements even though evidence was requested in 2016. 3-ER-429-441.

On January 18, 2022, Class Counsel responded to FRS' objection and argued that the deadlines announced should be complied with.  3-ER-416. Class Counsel wrote that allowing consideration of the responses, "would effectively render meaningless all interim deadlines approved by the Court, published in class

13

notices, and followed by tens of thousands of timely claimants. Moreover, it now reopens claims administration, delays distribution, and further reduces payments to qualified claimants due to the additional claims administration expenses." 3-ER-427.

On February 3, 2022, the district court allowed Rust and Class Counsel to distribute the funds without accommodating FRS. The district court held, "the Court does not enforce deadlines mindlessly, but enforces them when claimants are aware of the deadlines miss them without explanation." 3-ER-415.

On an unknown date in 2022, the check, in an amount over $600,000, was mailed to Xanadu with no City, State or Zip Code visible because Rust's software inserted the officer name twice on the address portion pushing it below the envelope line. The Post Office returned it and stamped it, "Return to Sender, Temporarily Away, Unable to Forward." 2-ER-101. (At no time before January 2023 did Class Counsel disclose this letter to the parties or the district court. Class Counsel never disclosed why the thousands of other letters were returned).

On July 30, 2022, Xanadu sent an email to Rust advising, "Hello, I write once again regarding Transpacific settlement claim number 0000144970. We still haven't received our settlement check. We have now relocated our offices. As such I will appreciate it if you will send the company's settlement payment to the following address: Corp Xanadu  8605 Santa Monica Blvd #10287 West

14

Hollywood, CA 90069. Please confirm receipt of this email and let me know when we can expect to receive the payment. Furthermore, please see that the settlement check is payable ONLY to the name of the company: CORP XANADU -- and that no company officer's name is included on the check. Including a company officer's name will make it a 2-party check and will make it much more complicated for the company to negotiate the payment." 3-ER-335.

On August 8, 2022, Class Counsel filed a motion seeking to redistribute money from uncashed checks. The motion advised that uncashed checks from the litigation exceeded $5,000,000. Class Counsel represented that of 44,893 checks, 16,216 checks were not cashed. 3-ER-377. Class Counsel asked the district court "to award attorneys' fees of $1 million, or 18.355%, from the uncashed checks valued at $5,448,087.41." 3-ER-386. The remaining money from the uncashed checks would be distributed to claimants who cashed their checks. 3-ER-386-387.

On August 24, 2022, Xanadu again wrote to Rust inquiring, "Hello, I am not finding any reply from you regarding the below reissue request. Can you confirm if the settlement payment was sent to the new address or if not when we might expect to receive it?" 3-ER-336.

On August 29, 2022, Xanadu through counsel wrote to Class Counsel advising, "We received your communication relating to the TransPacific matter. We just received this issue late last week and are reviewing various Ninth Circuit

decisions to determine if this is being handled correctly from the viewpoint of a class member and whether this office will be handling the process or if local counsel will be retained.  Until we have a chance to thoroughly read the terms of the settlement and the opinions approving the same, and to determine what the client's rights and responsibilities are, we cannot at this time intelligently advise the client or respond to your request to engage in informal discovery. We hope to respond by the end of the week." 3-ER-338.

On September 2, 2022,  Class Counsel wrote to counsel for Xanadu Xanadu, through counsel, wrote to Class Counsel and stated, "Considering the representations to the Court that your firm and Rust audited the claims and approved them, we decline to make the claimant available for any form of deposition relitigating the matter. Your request for attorney fees without reasonable notice to the class violates Rule 23. Your plan to 'redistribute' claimant funds to Class Counsel without sending an email to claimants whose checks were returned is objectionable. You have a 25% fail rate and have a duty to let the people know that their checks never made it to them, especially with many claimants being international.  You need to immediately withdraw your motion for an award of fees and first notify the class and all persons affected by your plan. Reasonable notice would be at least an email to all class members about your fees. Claimants who did not receive their checks should be emailed advising them how to request their

16

funds before you seek to convert the funds into attorney fees. We trust you understand this position." 3-ER-342-343.

On September 6, 2022, Class Counsel wrote to Xanadu's attorney and stated, "Thank you for your email. We are disappointed that you and your client have refused to provide further information validating your client's alleged purchases. As you know, as Class Counsel, we have a duty to ensure that settlement funds are paid to claimants that made valid purchases. Additional information has come to light, which suggests that your client may not have valid purchases, or at least may not have the level of purchases it averred to in a declaration under oath. This is precisely why we have asked for additional information. If you and your client are not willing to provide the additional information sought in order to validate Corp. Xanadu's claim, Rust and Class Counsel will not support distribution of any funds to your client, and we will advise the Court of potential concerns surrounding Corp. Xanadu's claim. We also want to alert you to the existence of California State Bar Formal Opinion No. 1996146 and ask that you satisfy yourself that you are in compliance with all ethical provisions that govern attorney conduct in the State of California. With respect to your statement about Class Counsel's fee request, your contention is incorrect. As an initial matter, Class Counsel are seeking their fee petition at the invitation of the Court. Moreover, Class Counsel

17

previously provided notice of its intended fee. Please let us know if you reconsider your position. Thank you." 3-ER-341.

On September 7, 2022, Appellants appeared as objectors and complained about what appeared to be a clear failure of Rust to deliver the checks to the appropriate recipients. That is, over twenty-five percent (25%) of the checks went uncashed. Appellants argued, "Rust simply ran the addresses through something called a 'TRACE' Database. Common sense would be that the claimants would know their updated address better than a cryptic database. Email costs nothing, but notification to claimants that their funds never reached them most probably would eviscerate the fund leaving no attorney fees left for Class Counsel to take." 3-ER-349.

Appellants argued that, "Class Counsel does not elaborate on how many of these checks were returned and how many were simply too burdensome to the claimants to cash." Appellants questioned the failure of Rust to explain how many checks were not cashed and how many checks were returned. *Id.*

As to the attorney fees, Appellants objected that, "despite having all of the email addresses of the persons who submitted claims in this case, the only notice of the pending motion was a post on the English version of litigation website dated August 9, 2022. Neither Rust nor Class Counsel posted a notice on the Chinese or Japanese version of the website. The language probably would not

have changed the outcome because its unlikely that class members, especially foreign claimants with small claims, check the website often. An email, however, would provide fair notice." 3-ER-349-350.

As to Xanadu, it explained that Rust received the check returned to it and made no effort to contact it despite having its email address. Worse, Rust ignored a timely email to it asking it to reissue the check. 3-ER-351.

Based on the failure to contract class members whose checks were returned, Appellant argued that Class Counsel and Rust breached their fiduciary duty by not notifying approved claimants ahead of time that checks would be disbursed, that their checks were returned, or that their checks were uncashed and subject to redistribution. 3-ER-351-352. Appellants explained that a simple email to the 16,216 should have been the minimum effort. *Id.*

In addition, as the issue is not left over funds originally discussed that would be subject to *cy pres*, but actual issued checks that were uncashed, Appellants noted that counsel are under a legal requirement to turn over the uncashed checks to state unclaimed property bureaus for escheatment for an ultimate claim by the owners. Appellants provided the district court with the statutes from every state that governs unclaimed checks. 3-ER-352.

Appellants averred that pursuant to Federal Rule of Civil Procedure 23(h)(1), Class Counsel needed to provide reasonable notice to all approved

claimants (known class members) of their request for additional attorney fees, that the notice must provide adequate time for members to object, and that more notice was required than making a small note on the English language version of the website." *Id* at 5-6. Therefore, Appellants asked the district court to deny the request for attorney fees without prejudice until: (1) All persons whose checks were returned or uncashed are notified and given an opportunity to claim their funds; (2) All domestic claimants that cannot be reached, over $25, have their funds escheated to the appropriate state agency; and (3) Class Counsel provides a notice of its motion for attorney fees to class members who filed a claim by email, and in the case that no email exists in the records, via postal mail. 3-ER-353.

Appellants generally advised that, because the second distribution entailed converting money from claimants who did not receive their checks, and giving it to other claimants – which was not anticipated in the prior notices, Class Counsel needed to at least email or send a postcard to the class members who filed a claim.

As to Xanadu, after learning of the returned check and realizing the amount due it was large and could affect its request for attorney fees, Class Counsel took it upon themselves to direct Rust to re-examine and re-audit the claim – years after the audit and over one year past the time Xanadu received its approved "Notice of Final Determination" approving the claim. Appellants took the position that Class Counsel cannot relitigate its approved claim that was already audited and passed

20

Rust's "Quality Assurance" review.  Appellants pointed out that when faced with the opposite situation – FRS asking for consideration to have its responses considered in an earlier phase, both the Court and Class Counsel found that the claims period and audit response period ended.  Appellants explained that Class Counsel's position was that "a cutoff date is essential and at some point the matter must be terminated." 3-ER-354-358.  Appellants noted that apparent conflict of interest in desiring to convert the amount from Xanadu's claims to the attorney fees sought by counsel.

Another class member, Kelly Overvold filed objections to the redistribution as well.  Overvold explained that 26.54% of checks were either not delivered or remained uncashed.  Overvold noted that contact was made on May 31, 2022, with Rust to request a replacement check.  On June 1, 2022, Rust responded stating that a new check would be issued in four to eight weeks.  Overvold received the check in September 2022, but it had an expiration date of August 30, 2022.  Rust replied, "The deadline to request a reissue has passed. Payments that have passed the void date on the check are no longer being accepted. We will mark your record that you have requested your payment to be reissued but there is no guarantee that the payment will be reissued." Overvold asserted, "This is not the fault of [Overvold], it is the fault of the Class Counsel's failure to properly provide notice to Class Members." 3-ER-344-347.

21

On September 15, 2022, Class Counsel responded. 2-ER-289. For the first time, Class Counsel provided statistics as to the uncashed checks. They admitted that the Post Office returned "5,444 checks as undeliverable." Rust sent the addresses to a "vendor" to obtain updated addresses through a "batch trace" process. After receiving 3,391 new addresses, 2,314 checks were cashed. 2-ER-301-302. The final statistics provided by Class Counsel are that 44,893 checks were cashed, 16,216 remain unchased, and 3,337 checks do not have valid addresses. 2-ER-302.

As to Overvold, Class Counsel stated that Rust mailed $139.24 to the address provided. According to Class Counsel, on July 27, 2022, Rust mailed the reissued check to Ms. Overvold's updated address; the check had a void date of August 30, 2022. On August 30, 2022, Rust determined that this reissued check remained uncashed and voided it. On September 14, 2022, Ms. Overvold emailed Rust requesting a check reissue. On the same day, Rust replied to Ms. Overvold stating that the deadline to request a check reissue had passed. If the Court authorizes a secondary distribution of the remaining uncashed settlement funds, Plaintiffs and Rust are amenable to reissuing and remailing Ms. Overvold's check again. However, they cannot do so at this time while the Motion is pending. 2-ER-297-298,

As to the use of checks for the international claimants despite difficulties cashing them, Class Counsel averred, "Rust began administering claims in this action in 2015, before the common use of electronic payments in class action settlements. Electronic payment information was therefore not part of the claim filing or settlement distribution processes in this action. Id. Rust conducted all outreach to claimants by mail during the claims administration process." As to the excuse for not advising claimants that their payments – sought years before – would be mailed, Class Counsel stated, "Rust does not provide regular claim status updates to Settlement Class Members by email but does respond to Settlement Class Members' requests for claim status updates by email, phone, and mail upon request." 2-ER-298.

As for the reason that Rust did not simply send an email to the claimants who did not cash their check, Class Counsel noted in a footnote that, "Not all claimants provided an email address," but they did not elaborate further. 2-ER-298.

With respect to the position that Class Counsel had a duty to notify class members about the change in the distribution terms that included taking uncashed checks, giving $1,000,000 to counsel, and redistributing the rest of the money to claimants who cash their checks, Class Counsel argued that Rule 23(c)(2)(B) did not require any notice to class members and advised that it posted the motion on the documents section of the website within 24 hours of filing it. According to

23

Class Counsel, "The motions and notices can be downloaded on the Court Documents page, which is linked to the English, Chinese, and Japanese pages of the website. Moreover, the settlement notice materials, including the Long-Form Notice, direct Settlement Class Members to visit the website for "additional information, important documents, and case updates[.]" See, e.g., Long-Form Notice. The Long-Form Notice also provides that "[s]pecific details on the distribution are available at the website" and references the website in the footer of every page. See, generally, Long-Form Notice." 2-ER-299-300.

Notably, unlike in 2015 when it touted hundreds of thousands of people accessing the website to learn of the settlement, Class Counsel did not provide statistical information on the number of page accesses occurring in 2022. Class Counsel remained silent as to why a class member would randomly check the website every week for seven years straight.

Class Counsel averred that, "Rust is not required to email each of the 96,133 claimants in this action every time a motion is filed. Botzet Decl. ¶ 35. Neither the Court's orders nor the Rules require such notice, Rust's extensive experience in class action matters do not recommend it, and Rust did not do so in similar cases like Korean Air. " 2-ER-301.

In a footnote, Class Counsel addressed its failure to note on the site that they requested attorney fees. 2-ER-301. They stated, "The Objectors argue Rust

should have provided status updates in the Chinese and Japanese versions of the settlement website. Rust provided status updates through the initial distribution on March 17, 2022 in the English, Chinese, and Japanese webpages of the website." Class Counsel did not address the fact that it did not update the Chinese or Japanese versions of the website as to the request for counsel fees or the intent to redistribute funds being filed months after it last updated the site in March 2022, but only updated the English version to mention it filed a motion.

As to counsel not notifying the class members that they were seeking $1,000,000 in attorney fees in contravention of Rule 23(h)(1), it was stated that, "Class Counsel already provided reasonable notice to Settlement Class Members of their fee requests in connection with each of the three rounds of settlements. The deadline to object to these requests have long passed. The pending request for attorneys' fees and reimbursement of expenses relates to Class Counsel's lodestar and expenses in connection with settlement administration between August 1, 2019 and July 31, 2022." 2-ER-302. However, Class Counsel never explained why it could not provide notice by email or post-card to class members when it sought to convert unclaimed checks to additional attorney fees not previously sought.

Class Counsel then blamed the district court for not notifying the class members that they were seeking attorney fees from the money that belonged to claimants that did not cash their check. Class Counsel averred, "Second, this Court

25

invited Class Counsel to submit a further fee request given the extensive work performed in connection with settlement administration and other matters in this action." 2-ER-302.

Class Counsel suggested that the uncashed checks should be redistributed to the class members who cashed their checks, not provided to the unclaimed property agencies set up by the states to escheat uncashed checks. 2-ER-303-304.

As to Xanadu., Class Counsel provided a full on attack of its claim. Despite Rust's approving the claim over a year prior and Xanadu's passing Rust's "Quality Assurance" review, Class Counsel stated that *they*, not Rust, believed that the claim should be audited again and re-examined. Class Counsel advised that Rust used regular mail to send a $603,831.08 check on April 25, 2022, and it was returned. Rust advised that its so-called "batch trace" process did not return a better address. *Id* at 6. Class Counsel stated that on July 26, 2022, they advised Rust to stop reissuing checks immediately and proceed with voiding the original checks as of July 31, 2022 and unchased reissued checks as of August 30, 2022. Class Counsel admitted that Xanadu emailed Rust on July 30, 2022, asking for the check to be reissued to a better address. 2-ER-305-306.

Class Counsel noted that upon Xanadu making inquiries through legal counsel, they (not Rust), investigated the claim and believed it to be "suspicious." Class Counsel complained that during the audit process, Xanadu did not provide

any receipts, did not provide original or destination airports, that Class Counsel could not find any online presence for the Company, that the business was not registered in California, that it utilized a postal service to receive mail, that the email used for the claim was not an official corporate email, that the Company used the dual names Xanadu Corp. and Corp. Xanadu, that the phone number was a landline, that the Company had a Central American attorney, and that the request that the check be sent elsewhere after it was returned was "worthy of investigation." Based on this, Class Counsel, not Rust, demanded that the Company participate in a Zoom call and provide corporation formation documents. *Id.*

On September 28, 2022, the district court entered an Order setting a hearing on Class Counsel's motion for secondary distribution of the remaining settlement funds and on Mr. Chekian's claim. The district court stated, "In the intervening time, Class Counsel and Ruse may audit/re-examine [Xanadu's] claim, consistent with their obligation to pay only qualified claimants." 1-ER-019.

Considering that the Order appeared to reopen Xanadu's claim, which was already audited and allowed pursuant to a "Final Determination" over a year earlier, Xanadu considered the decision to be one granting the reopening of a judgment similar to a Fed. R. Civ. Proc. 60 decision. Therefore, it filed a Notice of Appeal to this Court on October 20, 2022. 2-ER-288.

27

In the interim, to address the issues, Xanadu participated in the coveted one-hour Zoom call with its corporate officer, of which the Class Counsel never provided a transcription of.  Class Counsel interrogated the Officer for 45 minutes while Rust only asked a couple questions.  In addition, Xanadu's CEO provided Rust with a detailed declaration addressing all of Class Counsel's concerns. Xanadu testified that it objected to being singled out and placed at a higher standard than other claimants, that it did not opt out of the settlement solely because it thought it would be subject to the same standards as other claimants, that it appears that second audit is being done to favor Class Counsel's request for attorney fees, that Class Counsel appears to be attempting to convert Xanadu's funds to attorney fees.   Xanadu then addressed its corporate structure and its predecessor entity, the nature of its business, current operations, the use of the email address xanadu@phreakmail and the fact that it does operate the corporate domain xanaducorp.net since 2013 but the other domain allowed it to receive non-SPAM communications.  As to the mail, Xanadu explained that its actual offices are in Central America, but that it maintains a full time virtual office in Colorado.  Xanadu did not use that because mail is forwarded to Costa Rica. Instead, for checks, it used a mail service in California.  Xanadu did not know why the letters were returned, but that it contacted Rust.  Xanadu noted it does not conduct business in California to the extent that registration is required.  Xanadu

explained that its telephone number was not a landline as claimed by Class Counsel, but remains the enterprise's working international number. Xanadu pointed out that while it did not have tickets from 15 to 20 years ago, it did have tickets retained for some travel in July and August 2015 that it retained in connection with a dispute. These tickets show the sheer number of trips that Xanadu is involved in. Xanadu limited its claims to Japan-based flights that it had a spreadsheet of. Xanadu noted it thought the value of its claim would be around $3,000. 2-ER-103-111.

Xanadu provided Rust with copies of its corporate history beginning with its registration in Costa Rica, and ultimate domestication in Colorado, and divestiture into several Colorado entities. 2-ER-113-121.

Xanadu provided nearly 100 tickets from a two month period in 2015 not to verify the 2004 to 2008 travel, but to show the extensive travel related business it engaged in and that, if anything, the numbers were low-balled. 2-ER-122-244.

At the specific request of Rust, it provided a director's log. 2-ER-247. With respect to an unrelated class action claim involving parking heaters, Xanadu provided Rust with a purchase order to James Banta for authorization to acquire parking heaters. 2-ER-249.

On November 4, 2022, the district court held a hearing. During the hearing, Xanadu and Gould rested on their objections. The Court stated it was overruling

the objections and that the court would issue a written opinion with the conclusions. 2-ER-271. The district court then moved forward to another matter.

On December 7, 2022, Class Counsel filed a document entitled, "Plaintiff's Further Notice Regarding [Xanadu's] claim." 2-ER-264. In that document, Class Counsel advised the Court that Xanadu provided Rust some documents on October 14, 2022, and that its officer participated in a one-hour Zoom meeting on November 1, 2022. Additionally, Xanadu agreed to provide additional information by November 30, 2022. Class Counsel stated that Rust is reviewing the documents and expects to make a final determination before December 30, 2022, and that Class Counsel would further update the court on or by January 16, 2022. 2-ER-265.

On December 8, 2022, this Honorable Court dismissed Xanadu's appeal from the September 28, 2022, Order. 2-ER-262-263.

On December 22, 2022, Rust purported to deny Xanadu's claim on the assertion that the 2015 tickets did not verify Xanadu was the payor for the travel, that Xanadu no longer had tickets from 2004 or bank statements, that Xanadu did not provide a list of employees who maintained the records, and that Xanadu did not provide documents showing the nature of its business. Finally, Rust incorrectly claimed Xanadu did not provide information about parking heaters that were

claimed in a different class action when it did provide the purchase order indicating the purpose thereon. 2-ER-251-252.

On January 9, 2023, Xanadu contacted Rust and inquired why it did not provide the Company with a copy of the envelopes showing the returned mail. Xanadu also advised that the tickets provided were not meant to verify the claim, but to show a sampling of travel over a two month period which indicates the number of tickets was actually small in reality in comparison to actual travel. Xanadu objected to applying a different standard of review to it and other claimants which violates Fed. R. Civ. Proc. 23(e)(2)(D). Xanadu stated that it could not provide information showing the date the 2004 to 2008 data was destroyed because the company could not be certain it was in fact destroyed. Xanadu provided a list of the employees who managed the travel and records. Xanadu reiterated that it could not readily locate advertising material from 2004 to 2008. Finally, Xanadu provided a detailed and clear explanation as to why it acquired parking heaters but had no vehicles (because it was used for agriculture heating tests). 2-ER-254-257.

On January 16, 2023, Class Counsel filed a "Further Notice Regarding [Xanadu's] Claim." The Notice asserted that "Rust" determined that "there is $0 due in settlement benefits" to Xanadu "based on numerous factors." Class Counsel stated that "One of several factors supporting the determination was that the only

31

supporting travel documents that Corp Xanadu provided—the American Airlines itineraries for travel between July 2015 and August 2015—redacted all payor information and Corp Xanadu provided no documentation (e.g., bank statements) showing that it paid for such purchases, rendering it impossible for Rust to confirm that Corp Xanadu was the payor of the claimed ticket purchases. Furthermore, the American Airlines itineraries did not support Corp Xanadu's claim for 1,337 tickets on five airlines from 2003 through 2008. For these reasons, among several others, Rust determined that Corp Xanadu does not have any valid claim to the net settlement funds. This determination concludes Rust's claims administration work relating to Xanadu.  2-ER-260.  Class Counsel provided the district court with the various documents.  2-ER-071-257.

The next day, the district Court issued an Order directing Class Counsel to file an updated proposed Order that reflects "Rust's conclusion as to [Xanadu's] claim" and the Court's desired holdback as to the Chekian claim.  1-ER-018.

Class Counsel submitted a proposed Order on the same day.  That Proposed Order overrules Xanadu's objections to the notice provisions on the basis that it had no standing since Rust determined no money was due to it.  *Id* at p. 2, par. 2. The Proposed Order outlined Rust's purported position as to why it denied the claim.  The Proposed Order then stated, "The Court will nevertheless address the merits of all objections raised."  Therein, Class Counsel's proposed Order then

provided their position that Rule 23 did not require notice to class members prior to redistributing funds belonging to claimants who did not cash their check. The Proposed Order stated that the fact that Objectors received notice of the Proposed Order contradicts the claim that fair notice was not provided. The Proposed Order then noted an allowance of $1,000,000 in attorney fees for Class Counsel (from the uncashed check money). 2-ER-064-070.

Without providing any opportunity for Xanadu or Gould to object to the Proposed Order, on the morning of January 19, 2023, the district court signed its Order that copied Class Counsel's proposed findings of fact and conclusions of law verbatim changing nothing in paragraphs 1 through 9. 1-ER-009-014. However, as to attorney fees, the district court reduced the amount of the award to $500,000. The district court noted that, "Class Counsel is correct that they should be awarded fees for their work since the last fee award." 1-ER-014-017. The district court held that Class Counsel did not attempt to explain how their fees amounted to $658,064 ($1 million minus the current lodestar of $341,935) or 125 anticipated future hours managing class members' claims. The Court recognized that Class Counsel's percentage of recovery analysis was not appropriate because "Before the Court is not a new pot of money but a portion of the original $104,388,254.38. The remaining fund is $5,448,087.41 because that is how much money the uncashed checks add up to. If there were more uncashed checks and the remaining fund was

$10,000,000, or $20,00,000, would Class Counsel be entitled to 18% of that? More money left in the fund is not tied to a better result by Class Counsel." 1-ER-016-017. Therefore, the district court awarded $500,000, being $341,935 that is Class Counsel's alleged lodestar plus $158,064 for purported future work. 1-ER-017. The district court directed these funds to be taken from the remaining $5,448,087 from the uncashed checks. *Id.*

Less than an hour after the district court entered its Order, Xanadu and Gould lodged Objections to the Proposed Order. 2-ER-048. Appellants pointed out various problems with the Proposed Order including the fact that even if Xanadu maintained no standing, Gould had it. Xanadu noted that Rust applied a test when reviewing claims and audit responses and that Class Counsel had Rust increase the burden of proof as to Xanadu's claim. Xanadu explained that contrary to the language in the Proposed Order, Rust did not request additional documentation as directed by the court, but at the request of Class Counsel, and that Class Counsel spent 45 minutes of a 1 hour Zoom call interrogating its officer while Rust passively asked just a few questions and that the transcript was not provided. Xanadu explained that its sampling of airline tickets was not submitted to be paid on, but was to demonstrate the type of travel it was involved in (hundreds of tickets in a two month period) and that the enterprise engaged in significant travel. Xanadu again reiterated that language in the Order as to the

heightened standards used by Rust in doing the re-examination at the request of Class Counsel were substantially different than what was applied to other claimants. Xanadu addressed Class Counsel's complaint that it did not provide the name of the person who maintained the records during the time period served no purpose, and Xanadu thereafter provided the requested list of names. As to Xanadu's failure to produce advertising for its services – something no other claimant had to provide – it could not locate decades old records in that regard. Finally, Class Counsel and Rust inferred that Xanadu made a claim in another class action regarding parking heaters, but testified it had no vehicles. Xanadu made it clear that the parking heaters were not used with respect to a vehicle, but an agricultural program not involving a vehicle. Specifically, Xanadu turned over invoices showing that its agent in California, James Arthur Banta acquired the parking heaters for use to test frost protection. 2-ER-048-053.

As to the notice provisions, Appellants objected to the order on the basis that class members must be given reasonable notice about the attorney fees and given an opportunity to object to the motion. Appellants suggested that simply adding the motion to the documents portion of the website is not reasonable as ample time needed to be provided. 2-ER-053. With respect to turning the uncashed checks over to unclaimed property, Appellants provided the district court with information showing that it is a legal requirement under state law. Appellants made it clear that

the money did not consist of "remaining settlement funds' but were checks belonging to claimants who did not receive them. 2-ER-054-055.

Most importantly, Appellants advised the district court that the submission by Class Counsel provided the first glimpse of why the check to Xanadu was returned.  The check shows that Rust's address software repeated lines from the check, obscuring the City, State, and Zip.  This showed that delivery was impossible and constitutes *prima facie* evidence that the returned checks need to be examined. 2-ER-061-063.

On the same date, because Appellants' filed their objections as the district court lodged its Order, they sought reconsideration pursuant to Fed. R. Civ. Proc. 59 and 60. 2-ER-046-047.  In the motion, Appellants argued that the district court's granting the Order and moreless copying Class Counsel's proposal without providing an opportunity to object violated due process and constituted surprise or excusable neglect.  *Id.*

On January 20, 2023, Class Counsel objected to the Motion for Reconsideration and argued that the objections were improperly filed after the entry of the Order.  Class Counsel restated that telling class members to "visit this website periodically for updates" was sufficient even when they did not update the Chinese or Japanese versions of the website. 2-ER-043-045.

Appellants replied to the opposition and pointed out that class members do not click on websites every day for fifteen years, especially where the claims were lodged five to eight years prior. 2-ER-028-029. Appellants reiterated that the problem was serious and that 25% of claimants did not receive their checks. Appellants noted that California makes it clear that uncashed checks are unclaimed property that must be turned over, that non-compliance with the law constitutes a problem and exposes enterprises to liability. 2-ER-029-030.

Class Counsel filed a sur-reply arguing that the post office stamped the returned Xanadu check as "temporarily away," so the claim that the check was returned because it lacked a City, State or Zip Code was "flatly wrong." 2-ER-023. As to notifying class members who filed claims of the intent to convert the money from the uncashed checks and award themselves attorney fees, Class Counsel stated there was no "precedent for emailing or mailing motion to claims when they are available on the settlement website" and that Rust does not have email addresses for "all" of the claimants. 2-ER-024.

On January 25, 2023, the district court denied reconsideration finding that Rules 59 and 60 did not provide a remedy even though the district court issued a snap Order without allowing Xanadu a chance to object. 1-ER-002. The Court noted in a footnote that, "Xanadu complains repeatedly that Rust required more of Xanadu than it did of other claimants. This is likely true." 1-ER-006.

The court recognized that Rust mismailed Xanadu's check, but without asking Class Counsel for more information as to other checks, stated that, "Xanadu leaps from its own 'mismailed' check to suggesting that "in reality, Rust's checks"—plural—'were mismailed and over 25% of claimants did not receive or did not cash their checks.' This is an unwarranted leap, based on a single check. Moreover, while the envelope for that single check only shows the addressee's names and street address (cutting off the city, state, and zip code), the envelope also shows that it was stamped 'RETURN TO SENDER -TEMPORARILY AWAY - UNABLE TO FORWARD,'suggesting that the missing city, state, and zip code were not the impediment to delivery. Beyond that, whether or not Rust properly addressed the envelope with the reissued payment, Rust undertook a re-audit of Xanadu's claim, with the Court's blessing, and reasonably concluded that Xanadu had failed to provide the documentation needed to support its claim. Xanadu's additional accusation that Class Counsel was inappropriately 'enmesh[ed]' in the audit process, and motivated by its desire for increased attorneys' fees, is unsupported." 1-ER-007.

As to Xanadu's claim and Rust's reliance on a claim in an unrelated proceeding, the district court stated, "And while Xanadu apparently has a plausible response to Rust's suggestion that it acted improperly in the *In re: Parking Heaters* settlement, the Court's decision does not depend on Xanadu's actions in the *In re:*

*Parking Heaters settlement.* See Order ¶ 4 (listing six subparts supporting Rust's conclusion, of which the In re: Parking Heaters settlement was one)." *Id.*

The district court, however, noted, "Xanadu repeatedly states that 'this Court's Order made findings of fact and conclusions of law, and that it appears 'as if a full evidentiary hearing occurred and that this Court is making findings,'. Not so. The Court held that, 'Rust determined there is '$0 due in settlement benefits' to Corp Xanadu,' and it listed 'numerous factors' upon which Rust based its decision." 1-ER-008, note 10. In other words, the district court simply gave complete deference to Rust and Class Counsel and did not perform a review.

On January 26, 2023, Appellants filed a timely Notice of Appeal. 4-ER-598.

## SUMMARY OF THE ARGUMENT

> *Is the mailman jerking you 'round?*
> *Did he put your million dollar check*
> *In someone else's box?*
>
> –Prince and the Revolution, *Pop Life*,
> (Paisley Park Records 1985)

In a worldwide class action regarding transpacific airline travel, where the claims period ended seven years prior to payment, without any advance notice, Rust Consulting, the administrator, mailed checks to claimants. Over twenty-five percent (25%) of all approved claimants either did not receive their checks – including Xanadu's check for $603,831 that the Claims

Administrator, Rust Consulting, forgot to place a City, State and Zip in a
visible area on it, along with thousands of others.  In total, over 16,000
checks were not cashed. A seventy-five percent cash rate constitutes a clear
failure.

Instead of notifying the claimants whose checks were returned or
uncashed by sending an email, or postcard, Class Counsel had a better idea:
Quietly have $1,000,000 of the uncashed checks go into their pocket to
reward them for this disastrously mishandled situation.  In violation of Fed.
R. Civ. Proc. 23(h), they simply added it to the "documents" section of the
website a day after they filed it– giving class members less than two weeks
to find it and object.  However, "[i]n setting the date objections are due, the
court should provide sufficient time after the full fee motion is on file to
enable potential objectors to examine the motion." *In re Mercury Interactive
Corp.*, 618 F.3d 988, 994 (9th Cir. 2010), *citing* Fed.R.Civ.P. 23,  2003
Advisory Committee Notes, ¶ 68.

In addition, nothing in the settlement agreement or original
distribution motions had provisions that approved claimants would lose their
money if they did not receive their checks.  This is a complete change of the
settlement agreement which should require notice to the class members at

40

least those whose money was being converted to attorney fees and given to other claimants.

Regardless, uncashed checks are not unallocated settlement funds. They belong to the claimant. Under the laws of the fifty states, Class Counsel has a legal obligation to turn the checks over to unclaimed property agencies.

Xanadu Corp., trying to have its misaddressed check reissued through emails to Rust, was ignored. Rust did not bother to reply. Xanadu hired legal counsel and learned of the pending motion and complained to Class Counsel and objected to the district court.

Instead of investigating how and why Rust sent out a $600,000 check without a City, State, or Zip, or to see if other class members were similarly affected, Class Counsel decided to attack Xanadu's claim to try to show it did not have standing to present its notice-based objections. Class Counsel demanded that Xanadu provide corporate information and participate in a Zoom call, even though Rust already approved it and subjected it to Quality Assurance review. Xanadu did participate in the Zoom call, succumbed to 45 minutes of interrogation by Class Counsel, and provided a sampling of travel from 2015 to show the norm of international travel. In violation of Rule 23(e)(2)(D), Class Counsel and Rust used a heightened standard that

differed from other claimants, which the district court recognized they did, but abused its discretion by giving unfettered discretion to Class Counsel.

The decisions must be reversed. Class members must receive reasonable notice and an opportunity to be heard before attorney fees are awarded from uncashed checks. People whose checks were returned or uncashed should be contacted by, at a minimum, email. If they do not respond, the money should be turned over to state unclaimed property units, not given to Class Counsel or other claimants.

As to Xanadu, its claim should be paid. Every "red flag" raised by Class Counsel as to the reason for reopening the claim a year after approval by its own claims administrator, using standards Class Counsel directed, was addressed. A heightened standard applicable solely to Xanadu, when Class Counsel had a clear conflict of interest and desire to find that standing did not exist to quash the attorney fee issues, should not be allowed.

## STANDARD OF REVIEW

This Court reviews the district court's award of attorney fees and compliance with the Fed. R. Civ. Proc. 23 for abuse of discretion. *In re Mercury Interactive Corp.*, 618 F.3d 988, 994 (9th Cir. 2010) "Any element of legal analysis which figures in the district court's decision is reviewed *de novo." Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000).

## ARGUMENT

### I. The district court erred by not requiring Class Counsel to notify class members of its request to convert uncashed checks to attorney fees.

While the district court properly halved Class Counsel's demand for attorney fees taken from uncashed checks from $1,000,000 to $500,000, this does not cure the fact that full and complete notice must be given to all class members. Federal Rule of Civil Procedure 23(h) cannot be more clear. Class members are entitled to fair notice. Rule 23(h)(1) explains, "Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." *See also Stair v. Thomas & Cook*, 254 F.R.D. 191, 203 (D.N.J. 2008).

Rule 23(h)(2) explains that, "A class member, or a party from whom payment is sought, may object to the motion." Of course, without being aware of

the motion, class members cannot object. Xanadu and Gould learned about the motion only because of the missing check issue.

Simply put, "[i]n setting the date objections are due, the court should provide sufficient time after the full fee motion is on file to enable potential objectors to examine the motion." *In re Mercury Interactive Corp.*, 618 F.3d 988, 994 (9th Cir. 2010), *citing* Fed.R.Civ.P. 23, 2003 Advisory Committee Notes, ¶ 68. Class members must be "allowed an opportunity to object to the fee 'motion' itself, not merely to the preliminary notice that such a motion will be filed." Id. at 993-94. Here, Class Counsel filed a motion and quietly noted it on the English language website. As to the foreign language website, they merely buried the motion in the documents section and no notice whatsoever occurred.

Because Class Counsel violated Rule 23(h)(1) and (2), this Court should vacate the award of attorney fees without prejudice until: (1) All persons whose checks were returned or uncashed are notified and given an opportunity to claim their funds; (2) All domestic claimants that cannot be reached, over $25, have their funds escheated to the appropriate state agency; and (3) Class Counsel provides a notice of its motion for attorney fees to class members who filed a claim by email, and in the case that no email exists in the records, via postal mail.

44

**II. The district court abused its discretion by granting Attorney Fees from uncashed checks where no attempt to notify the claimants occurred.**

The district court reduced the amount of attorney fees and recognized that the money constituted uncashed checks. However, neither Rust nor Class Counsel made any effort to contact the claimants to advise them that their checks were returned or went uncashed. This is particularly problematic considering what occurred with Xanadu's check – sent without any City, State or Zip. Class Counsel (and the Court) committed a clear error by surmising when they believed that the Post Office's "temporarily away" sticker meant the check actually reached the mailbox but nobody was home. Common sense dictates that when a letter lacks a City, State, and Zip Code, it will not be delivered. Neither Class Counsel nor Rust disclosed the reasons why the thousands of other checks were returned, breaching their fiduciary duty to inquire. *See*, *e.g., Staton v. Boeing Co.* 327 F.3d 938, 959 (9th Cir. 2003)(class counsel ultimately owe their fiduciary responsibility to the class as a whole and are therefore not bound by the views of the named plaintiffs regarding any settlement); *In re GMC Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 801 (3d Cir.1995) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed").

It is often said that judges act as fiduciaries for absent class members.

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 968 (9th Cir. 2009); *Reynolds v.*

*Beneficial Nat'l Bank,* 288 F.3d 277, 279–80 (7th Cir. 2002) ("We and other courts

have gone so far as to term the district judge in the settlement phase of a class

action suit a fiduciary of the class."); 4 WILLIAM B. RUBENSTEIN, NEWBERG

ON CLASS ACTIONS § 13:40 (5th ed. 2020) (noting that in class action litigation

"the law requires the judge to act as a fiduciary" of absent class members).

To award Class Counsel any attorney fees from uncashed checks constitutes

an abuse of discretion where no effort was made to contact the clients.

### III. Class Counsel and Rust Consulting breached their fiduciary duties by not notifying approved claims that checks would be disbursed, checks were returned, and checks went uncashed.

In this case, class members lodged their claims from 2015 through 2019.

Years passed without class members hearing anything. In 2022, Class Counsel filed

its motion to distribute funds. While a notice along with the motion was placed on

the website, emails were not sent to class members suggesting they be on the

lookout for their payment or that they should update their address if it changed.

As a result of the lack of communication with class members, 16,216 checks

either did not reach their destination or were not cashed. That is a fail rate in

excess of 25%.

In this case, Class Counsel did not direct Rust Consulting to send a simple email to the 16,216 people who did not receive their money.

With all due respect, the reason appears obvious: Class Counsel seeks approval to take a portion of the remaining funds as attorney fees without giving the class members any notification of their request. There simply exists no incentive to disperse the remaining funds to their rightful owner when Class Counsel want the money for themselves. It is the clear reason why they also do not want Xanadu to have standing.

To reiterate, Class Counsel and the court had a fiduciary duty to the claimants to keep them informed and, at a minimum, it should have been announced before checks were sent (on the websites in all languages, or by email where Rust had it). As to returned checks or uncashed checks, Class Counsel had a duty to at least try to contact the claimants. While Rust asserts that they did not have emails for all claimants, they provided zero statistics.

The standards require more. *See* Discussion above citing fiduciary duties of the court and Class Counsel. Clearly, both the district court and Class Counsel breached their fiduciary duties by not notifying class members of returned checks and uncashed checks.

47

**IV. Uncashed domestic checks must be turned over to state unclaimed property agencies so their owners can ultimately receive their money.**

Appellants make it clear that we are not dealing with excess money not distributed, such as extra money in the settlement fund. The issue in this case consists of uncashed checks that the recipient did not receive because Rust failed to put the City, State or Zip on it or simply because in the seven years the claimant moved. Possibly the claimants, after seven years, thought the mail was junk. The district court sloughed off the issue without any analysis and just copied Class Counsel's Proposed Order verbatim including case law.

Every state has an unclaimed property law governing uncashed checks. State escheat laws cannot be ignored based on an agreement, settlement or convenience simply because the award originated from a federal class action. There exists no federal preemption or federal common law.

As a technical matter, state unclaimed property laws are not "true escheat" laws, which refer to laws in which the states take title to the property. Rather, all state unclaimed property laws are now "custodial escheat" laws, in which the states take custody of property for the owner of the property, who can reclaim it at any time. States have the power to enact abandoned property laws which are rooted in the common-law doctrine of escheat. *See Conn. Mut. Life Ins. Co. v. Moore,* 333

U.S. 541, 547, 68 S.Ct. 682, 686, 92 L.Ed. 863 (1948) ("The right of appropriation by the state of abandoned property has existed for centuries in the common law.").

Once a claimant filed his claim and that claim was approved, the claimant became the creditor and Rust the debtor.

In *Texas v. New Jersey*, 379 U.S. 674, 677 (1965), the Supreme Court first considered the question of when a state has the right and jurisdiction to escheat unclaimed intangible property. Importantly, the Court recognized that unclaimed property is the "debt" that is owed by the debtor to the creditor. *Id* at 680. Reasoning that a debt is the property of the creditor and not the debtor, the Court established a "primary rule" that "the right and power to escheat the debt should be accorded to the State of the creditor's last known address as shown by the debtor's books and records." *Id* at 680-681. The Court chose this primary rule because it "involves a factual issue simple and easy to resolve, and leaves no legal issue to be decided." *Id*.

The Supreme Court affirmed these rules in *Pennsylvania v. New York*, 407 US 206 (1972)(dispute between states over uncashed money orders) and *Delaware v. New York,* 507 US 490 (1993)(dispute over uncashed dividend checks).

Here, the uncashed checks are no different than the dispute in *Delaware v. New York*, and the unclaimed property laws of the claimant's last known address apply.

Finally, turning over uncashed checks to the state is a preferred method of dealing with it. "To the extent the remaining funds represent uncashed checks that were made payable to specific claimants, it will be permissible to submit those funds to the unclaimed property funds of those persons' respective states of residence, as may be provided by the laws of those states." *See In re Optical Disk Drive Antitrust,* 3:10-md-02143-RS, Entry 3122 (N.D.Cal. Jan. 8, 2023)(denying class counsel's request to bulk escheat funds with California).

Neither Class Counsel, nor the district court in copying Class Counsel's Proposed Order, provide any reason why federal class action bad habits and lawlessness for convenience and frugality somehow nullify the state abandoned property laws applicable to uncashed checks enacted in every state. For this reason, the decision of the district court must be reversed.

### V. The district court erred and abused its discretion in allowing Class Counsel to reopen Xanadu's claim and have Rust Consulting apply a heightened standard of review to it.

In this case, Rust approved Xanadu's claim. It audited the claim and the information passed Rust's quality control. Only after Class Counsel sought $1,000,000 in attorney fees from uncashed checks, and faced with Xanadu demanding that the $600,000 check be reissued, did Class Counsel make a decision not to investigate Rust's failure to put a City, State, or Zip on the check, but to

attack everything about Xanadu from its legal counsel being licensed in a foreign jurisdiction to its phone number and email. Xanadu, despite cooperating and addressing every issue raised by Class Counsel, was still denied its claim based on a heightened standard that differed from what was stated, under oath, to apply to the claims review process. Ironically, none of the issues that gave Class Counsel its suspicions were sustained or turned out to be accurate, and Xanadu spent over one hour being interrogated not by Rust but by Class Counsel. However, its claim was denied purportedly by Rust, but most likely at the direction of Class Counsel who provided new, heightened standards considering that Class Counsel directed the Zoom meeting and interrogated Xanadu.

The district court stated, "Xanadu complains repeatedly that Rust required more of Xanadu than it did of other claimants. ***This is likely true***." 1-ER-006. However, Fed. R. Civ. Proc. 23(e)(D) explains that a factor in approving a settlement includes that, "the proposal treats class members equitably relative to each other." *Gaffney v. City of Santa Clara*, No. 18‑cv‑06500, 2020 WL 12182761, at *6 (N.D. Cal. Apr. 13, 2020) (Tigar, J.) ("Courts generally are wary of settlement agreements where some class members are treated differently than others."); *Elder v. Hilton Worldwide Hldgs., Inc.*, No. 16‑cv‑00278, 2020 WL 11762284, at *8 (N.D. Cal. Apr. 29, 2020) (Tigar, J.) (Preferential treatment raises

51

concern when a settlement "may be trading the claims of the latter group away in order to enrich the former group.").

The standard Rust used as to other claimants was:

"Rust reviewed all responses supplied by the claimants from the 'Request for More Information" letters and determined responses to be acceptable support for the number of tickets claimed if any of the following documentation was provided. a. Receipts showing ticket purchases; b. Cancelled checks; c. Credit card statements; d. Travel itineraries; e. Email confirmation of ticket purchases; and/or f. Affidavit or declaration attesting that the number of tickets claimed is accurate. Non-standard documents in varying formats and layouts (extracts in the form of spreadsheets, PDFs or paper detailing flight information that included airline, invoice number, fare paid, flight ticket number, ticket issue date and/or flight date(s), organization and destination city /airport) required individual review and analysis." 3-ER-459-460.

Obviously, Xanadu met this standard or its original claim would not have been approved. Like the rest of the claimants, it submitted an affidavit. When Class Counsel became "concerned" after seeking $1,000,000 in attorney fees – and started talking about the "standing" as a defense to Xanadu's objections to its attorney fee demand, they hysterically found suspicions of which every one of them was addressed and fully answered with documentation. Indeed, Class Counsel initially promised it would consider reissue if Xanadu merely provided corporate documents and participated in a Zoom call. 2-ER-305-306. However, when the Zoom call occurred it became a deposition with Class Counsel doing the interrogation and Rust asking very few questions. The Corporate papers and history were fully disclosed.

To justify denying the claim, Rust challenged the sampling and stated that Xanadu did not prove it paid for the tickets. However, the sampling was from a two month period in 2015 and the tickets that formed the claim were from 2008.

Certainly, once each and every one of Class Counsel's "suspicions" were addressed, and Xanadu proved itself to be an actual entity, with the same valid phone number for 10 years, with the corporate email domain name, an explanation of its addresses, why it had a Central American attorney (as its in Central America), and all the other brouhaha mentioned by Class Counsel, the regular standards should have applied just like every other claimant.

The district court's Order – which just copies Class Counsel's proposed Order verbatim – is admittedly not an adjudication.  The district court stated that it did not conduct an analysis of the evidence, but simply deferred to Rust (which deferred to Class Counsel), "Xanadu repeatedly states that 'this Court's Order made findings of fact and conclusions of law,'and that it appears 'as if a full evidentiary hearing occurred and that this Court is making findings,'. Not so. The Court held that 'Rust determined there is '$0 due in settlement benefits' to Corp Xanadu,' and it listed 'numerous factors' upon which Rust based its decision. 1-ER-008, note 10.

Xanadu was entitled to more.  It was entitled to be treated under the same standards as other claimants once it addressed the issues raised by Class Counsel,

53

none of which resulted in the denial of its claim. Rather, the only reason Xanadu's claim was denied was the heightened standard created by Class Counsel not applicable to other claimants.

Moreover, the district court's allowing the reopening of Xanadu's claim over a year after the "Final Determination" approved it is unprecedented when it denied claimants the right to submit late claims on the basis of finality. Class Counsel advised over a year prior that it was complete with the entire audit process. Class Counsel never provided any justification or explanation for why Xanadu's claim was approved in the first place if it did not meet the proper standards.

At a minimum, Class Counsel had a conflict of interest when it was seeking to turn Xanadu's $600,000 into, at least part, attorney fees for themselves, coupled with the fact that they turned their heightened-standard claim denial into an argument that no standing existed for Xanadu to try to wiggle out of the challenges to the attorney fees issues. *See North American Acceptance v Arnall, Golden & Gregory,* 593 F2d 642, 645 (5th Cir 1979) ("[I]f at any time the trial court realizes that class counsel should be disqualified, it is required to take appropriate action."). In policing against conflicts of interest, the class action rule implements values that have a foundation in the Due Process Clause. *See Hansberry v Lee*, 311 US 32, 43-45 (1940). Here, the district court should have eliminated the conflict of

54

interest of class counsel by preliminarily denying them attorney fees for any portion of Xanadu's claim.

The bottom line is that Class Counsel, not Rust, opened this claim. Rust, the neutral decision maker, never truly questioned Xanadu's claim until pointedly directed to. It was improper, unprecedented, and unfair to disturb the original Final Determination once Xanadu proved its existence and the plausibility of the claim. Class actions require claimants to be treated equally and Xanadu was prejudiced as a result. The decision must be reversed.

## CONCLUSION

Based on the above, the Orders of the district court must be reversed or vacated and remanded with instructions to: (1) Direct Class Counsel and Rust to contact *by email* or, where no email exists, *letter*, to all claimants whose checks were returned or uncashed and to reissue the checks on request; (2) To provide the uncashed checks to United States addresses to the appropriate unclaimed property agency of the state of the last known address of the claimant; (3) To notify all class members that filed a claim of Class Counsel's request for additional attorney fees by sending an email where available or post-card if no email is available with sufficient time for class members to file objections; and (4) To direct Rust Consulting to reissue Xanadu's check forthwith.

Date:  May 20, 2023.

Respectfully submitted,

Law Office of J. Allen Roth

*/s/ J. Allen Roth, Esq.*
J. Allen Roth, Esq. (PA 30347)
805 S. Alexandria Street
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

*Attorneys for Appellants David Gould and*
*Xanadu Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)**:   No. 23-15118

The undersigned attorney or self-represented party states the following:

[X ]   I am unaware of any related cases currently pending in this court.

[ ]  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ]  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  _/J. Allen Roth, Esq._____  **Date** __May 20, 2023__

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)  No. 23-15118.**

I am the attorney or self-represented party.

**This brief contains 11,429 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X] complies with the word limit of Cir. R. 32-1.

**Signature**  *_/s/ J. Allen Roth, Esq._*_____  **Date** __May 20, 2023_____