No. 23-15118

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

XANADU CORP. AND DAVID GOULD,
*Objectors-Appellants*,

v.

MEOR ADLIN, FRANKLIN AJAYE, ANDREW BARTON, RACHEL
DILLER, SCOTT FREDERICK, DAVID KUO, DICKSON LEUNG,
BRENDAN MALOOF, DONALD WORTMAN, HARLEY ODA, ROY
ONOMURA, SHINSUKE KOBAYASHI, PATRICIA LEE, NANCY
KAJIYAMA, DELLA EWING CHOW, and JAMES KAWAGUCHI,
*Plaintiffs-Appellees*.

Appeal from the United States District Court
for the Northern District of California, San Francisco Division
Hon. Charles R. Breyer
D.C. No. 3:07-cv-05634

## APPELLEES-PLAINTIFFS' ANSWERING BRIEF

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
**HAUSFELD L LP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
clebsock@hausfeld.com
mlehmann@hausfeld.com

*Attorney for Plaintiffs-Appellees*

# <u>TABLE OF CONTENTS</u>

Page

**INTRODUCTION**.................................................................................1

**JURISDICTIONAL STATEMENT**......................................................4

**ISSUE PRESENTED** ............................................................................6

**STATEMENT OF THE CASE** ..............................................................6

I.   Relevant Procedural History on Settlement Administration...........6

II.  Relevant Facts Regarding Objectors ..............................................9

    A. Objector Xanadu....................................................................9

    B. Objector David Gould ..........................................................17

**SUMMARY OF THE ARGUMENT** .....................................................**18**

**STANDARD OF REVIEW** ....................................................................**19**

**ARGUMENT** ..........................................................................................**20**

I.   Both Objectors Lack Standing to Object......................................20

    A. The District Court Correctly Found That Xanadu Is Not A Settlement Class Member ..................................................20

    B. Xanadu's Supporting Documents Suggest Xanadu Is Not A Direct Purchaser and Therefore An Ineligible Settlement Class Member ..........23

    C. Mr. Gould Received and Cashed His Settlement Payment.....................25

II.  The District Court Did Not Abuse Its Discretion in Entering the Secondary Distribution Order............................................25

    A. Plaintiffs Provided Reasonable Notice of the Secondary Distribution Motion and An Opportunity to Object ....................................25

    B. Objectors' Challenge to the Further Attorneys' Fees Award Based on An Alleged Lack of Notice Fails..................................30

i

C. Objectors' Various Arguments Regarding Deficient Notice Are Unsupported by the Facts ........................................................................... 33

D. Objectors' Accusation That Class Counsel Acted Inappropriately Is Baseless ................................................................................................... 35

III. The District Court Did Not Abuse Its Discretion in Ruling the Remaining Uncashed Settlement Funds Should Be Redistributed to Settlement Class Members, Not Escheated to States ................................................................. 36

IV. The District Court Did Not Abuse Its Discretion in Allowing Rust and Class Counsel to Re-Review Xanadu's Claim ....................................................... 39

**CONCLUSION** ....................................................................................................... **43**

# TABLE OF AUTHORITIES

Page

## Cases

*In re Airline Ticket Antitrust Litig.*,
268 F.3d 619 (8th Cir. 2001) ...............................................................33

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ...............................................................19

*Apple Inc. v. Pepper*,
139 S. Ct. 1514 (2019).........................................................................23

*In re Baby Products Antitrust Litig.*,
708 F.3d 163 (3d Cir. 2013) ...............................................................36

*Camberis v. Ocwen Loan Servicing LLC*,
No. 14-CV-02970-EMC, 2018 WL 6068999 (N.D. Cal. Nov. 20, 2018)....27, 36

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ...........................................................20

*Contant v. AMA Capital, LLC*,
66 F. 4th 59 (2d Cir. 2023) ................................................................38

*Dream Games of Ariz., Inc. v. PC Onsite*,
561 F.3d 983 (9th Cir. 2009) ...............................................................5

*In re Google Inc. St. View Elec. Commc'ns Litig.*,
21 F.4th 1102 (9th Cir. 2021), *cert. denied sub nom. Lowery v. Joffe*,
214 L. Ed. 2d 25, 143 S. Ct. 107 (2022)............................................19

*Hester v. Vision Airlines, Inc.*,
No. 2:09-CV-00117-RLH, 2017 WL 4227928 (D. Nev. Sept. 22, 2017)....26, 35

*Ill. Brick Co. v. Ill.*,
431 U.S. 720 (1977)......................................................................23, 24

*Keepseagle v. Vilsack*,
118 F. Supp. 3d 98 (D.D.C. 2015)......................................................27

*Klier v. Elf Atochem N. Am., Inc.*,
   658 F.3d 468 (5th Cir. 2011) ........................................................27, 36

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*,
   MDL No. 1891, No. 2:07-cv-05107-SJO-AGR (C.D. Cal.) ...........................29

*In re Lupron Marketing and Sales Practices Litig.*,
   677 F.3d 21 (1st Cir. 2012).................................................................27

*Meor Adlin, et al., v. All Nippon Airways, et al.*,
   No. 22-16634 (9th Cir. Oct. 24, 2022) ..............................................15

*In re Optical Disk Drive (ODD) Antitrust Litig.*,
   No. 3:10-md-02143-RS (Jan. 8, 2023), ECF No. 3122 ......................................37

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
   904 F.2d 1301 (9th Cir. 1990) ...............................................35, 36, 37

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ............................................................24

*State of California v. Levi Strauss & Co.*,
   41 Cal. 3d 460 (1986) .....................................................................37

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).....................................................................20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   No. 15-MD-02672-CRB, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)...........20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ......................................................21, 30

**Statutes**

28 U.S.C. § 1291 ...............................................................................5

Principles of the Law of Aggregate Litigation § 3.07, cmt. b (Am.
   Law Inst. 2010) ..........................................................................27

Sherman Act, 15 U.S.C. § 1 ...................................................................23

iv

**Rules**

Federal Rules in Civil Procedure

23(c)(2)(B) ............................................................................28

23(c)(2) ...........................................................................2, 6

23(e)(l) ............................................................................2, 6

23.................................................................................*passim*

23(e)(5) ..............................................................................20

**INTRODUCTION**

In this long-running antitrust class action, Objectors-Appellants Corp Xanadu (a/k/a Xanadu Corp.) ("Xanadu") and David Gould appeal (1) the district court's determination that Xanadu repeatedly failed to establish that it is a member of any settlement class and therefore lacks standing to object to a secondary distribution of remaining uncashed settlement funds to settlement class members; and (2) the district court's rejection of Objectors' claim that notice of the secondary distribution was defective. *See*, *generally*, Objectors-Appellants' Corrected Opening Brief ["Br."]. [Dkt. 11] The district court (and for that matter, the court-appointed settlement administrator, Rust Consulting, Inc. ("Rust")) did not abuse its discretion in authorizing the secondary distribution and denying Objectors' motion for reconsideration. [1-ER-009, 1-ER-002] Xanadu failed to prove its membership in any settlement class time after time, and Mr. Gould was not injured by the alleged flaws in the district court's order authorizing the secondary distribution. Despite these threshold predicates to pressing their objections on appeal, the district court further concluded that the Objectors' substantive arguments lacked merit. [1-ER-012-014, 1-ER-005-008] That conclusion was not clearly erroneous and cannot now be disturbed on appeal.

In 2007, Plaintiffs-Appellees filed class action complaints alleging that Defendants—many of the world's largest air carriers—agreed to fix the prices of

airline tickets for travel between the United States and Asia/Oceania. [SER-010-024] In 2019, after 12 years of hard-fought litigation, Plaintiffs reached settlements with all Defendants in three rounds of settlements totaling $148,152,000. [3-ER-447] The Court granted final approval of all settlements and found that the proposed notice plan for each round of settlement was fair, adequate, and reasonable; satisfied due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)(l); and constituted the best notice practicable under the circumstances. [3-ER-564-574, 3-ER-498-505, 3-ER-480-484] The Court also entered final judgments of dismissal with prejudice with respect to all 13 Defendants. [3-ER-524-563, 3-ER-506-517, 3-ER-492-497, 3-ER-475-479]

On January 4, 2022, Plaintiffs moved the district court for an order authorizing the distribution of the net settlement funds of $104,388,254.38 to settlement class members based on the finally approved proposed *pro rata* plan of allocation, which the district court granted. [3-ER-413] On March 17, 2022, Plaintiffs attempted to distribute $104,387,320.59 to 61,770 class members due to rounding to the nearest cent when calculating the *pro rata* share per qualified claim. [3-ER-405] On April 7, 2022, Plaintiffs filed a notice of post-distribution accounting. [3-ER-404] As of July 31, 2022, the value of uncashed checks was $5,448,087.41. [3-ER-377]

On August 8, 2022, Plaintiffs moved the district court for an order authorizing a secondary distribution of the remaining settlement funds of $5,448,087.41 to

2

settlement class members who has previously cashed their settlement checks and who would receive a minimum payment of $10 from the secondary distribution, additional claims administration expenses of $125,921 by Rust and—at the invitation of the district court given the extensive post-final approval settlement administration work—further attorneys' fees of $1,000,000 and reimbursement of incurred litigation expenses of $4,876.85 in connection with settlement administration by Class Counsel ("Secondary Distribution Motion"). [3-ER-370] Objectors Xanadu and Mr. Gould filed objections to the Secondary Distribution Motion, though their challenges were limited to the proposed secondary distribution and request for further attorneys' fees (*i.e.*, not the additional claims administration expenses or reimbursement of incurred litigation expenses). [3-ER-348]

On January 19, 2023, the district court granted the Secondary Distribution Motion and overruled all objections ("Secondary Distribution Order"). [1-ER-009] The district court found Xanadu lacked standing to object as a settlement class member because it failed to establish that it had any qualifying purchases whatsoever. [1-ER-010-012] The district court nevertheless substantively addressed the merits of all objections raised and found that they should be rejected. [1-ER-012-014] Regarding the request for further attorneys' fees of $1 million, the Court instead awarded $500,000, which represented Class Counsel's lodestar of $341,935.50 as of the filing of the Secondary Distribution Motion, plus an additional $158,064.50 for

Class Counsel's anticipated work through the conclusion of the underlying litigation. [1-ER-014-017]

On January 19, 2023, Objectors moved for reconsideration of the Secondary Distribution Order ("Reconsideration Motion"). [2-ER-046] On January 25, 2023, the district court denied it, finding that "[m]any of the objections that Xanadu now makes to the proposed order are simply rehashes of the objections Xanadu made to the motion for secondary distribution" ("Reconsideration Order"). [1-ER-006] Furthermore, the district court stated, ". . . to the extent that Xanadu's objections raise new issues, they do not change the Court's view of the motion for secondary distribution." [1-ER-007]

The district court's Secondary Distribution Order [1-ER-009] and Reconsideration Order [1-ER-002] are reviewed for abuse of discretion and must now be affirmed by this Court.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Plaintiffs' August 8, 2022 Secondary Distribution Motion [3-ER-370] as well as Objectors' January 20, 2023 Reconsideration Motion [2-ER-046] pursuant to each of the 13 Final Judgments of Dismissal in the underlying litigation.[1]

---

[1] *See*, *e.g.*, [3-ER-476] ("The [district court] has jurisdiction over the subject matter of this litigation, and all actions within this litigation (collectively, 'Action'), and over the parties to the Settlement Agreement, including all members of the

This Court has jurisdiction over Objectors' appeal of the district court's January 19, 2023 Secondary Distribution Order [1-ER-009] and January 25, 2023 Reconsideration Order [1-ER-002] pursuant to 28 U.S.C. § 1291 because they are "final judgment[s] that dispose[ ] of all claims with respect to all parties." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 987 (9th Cir. 2009).

This Court lacks jurisdiction over the district court's September 28, 2022 Order Setting Hearing [1-ER-019] and January 17, 2023 Order Directing Proposed Order [1-ER-018] because neither of these orders are final, appealable orders within the meaning of 28 U.S.C. § 1291. Further, this Court has already dismissed Xanadu's previous attempt to appeal the September 28, 2022 Order Setting Hearing for lack of jurisdiction. [2-ER-262]

---

Settlement Classes and Defendant."); [3-ER-479] ("Without affecting the finality of the Judgment in any way, this [district court] hereby retains continuing jurisdiction over: (a) implementation of this settlement and any distribution to members of the Settlement Classes pursuant to further orders of this [district court]; (b) disposition of the Settlement Fund; (c) determining attorneys' fees, costs, expenses, and interest; (d) the Action until the Final Judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties all have been performed pursuant to the ANA Settlement Agreement; (e) hearing and ruling on any matters relating to distribution of settlement proceeds; and (f) all parties to the Action and Releasing Parties, for the purpose of enforcing and administering the Settlement Agreement and the mutual releases and other documents contemplated by, or executed in connection with the Agreement.")

**ISSUE PRESENTED**

Should this Court affirm the district court's Secondary Distribution Order [1-ER-009] and Reconsideration Order [1-ER-002] because the district court did not abuse its discretion in overruling Objectors-Appellants Xanadu and Mr. Gould's meritless objections and in authorizing a secondary distribution of the remaining uncashed settlement funds to settlement class members and further attorneys' fees in connection with settlement administration?

**STATEMENT OF THE CASE**

**I.  Relevant Procedural History on Settlement Administration**

Plaintiffs-Appellees have settled with all 13 Defendant airlines in the underlying antitrust class action, which involved an alleged conspiracy to fix the prices of airline tickets for travel between the United States and Asia/Oceania. [3-ER-446] The district court granted final approval of each of these settlements. [3-ER-480, 3-ER-498, 3-ER-564] Class Counsel and the claims administrator, Rust, previously provided notice to settlement class members for each of the three rounds of settlements. [3-ER-84, 3-ER-502-503, 3-ER-569] At the time, the district court approved these notices, finding that the notice plan and notice forms for each settlement was fair, adequate, and reasonable, satisfied due process and Federal Rule of Civil Procedure 23(c)(2) and 23(e)(l), and was the best practicable under the circumstances. [3-ER-484; 3-ER-502-503; 3-ER-569] During the claims

6

administration process, Rust analyzed all claims received and sent determination letters to all claimants. [3-ER-447-451] On March 17, 2022, with the district court's approval, Rust attempted to distribute settlement funds of $104,387,320.59 to 61,770 settlement class members who claimed a total of 29,963,888 qualifying tickets. [3-ER-405]

On August 8, 2022, given remaining uncashed settlement funds of $5,448,087.41, Plaintiffs moved for a secondary distribution of such funds to reallocate uncashed checks to those settlement class members who cashed their checks and who would receive a minimum payment of $10 from the secondary distribution as well as additional claims administration expenses and further attorneys' fees and reimbursement of expenses in connection with settlement distribution. [3-ER-370-388] Three objectors—Xanadu, Mr. Gould, and Kelly Overvold—objected thereto. [3-ER-344, 3-ER-348]

In its January 19, 2023 Secondary Distribution Order, the district court overruled all objections, finding, among other reasons:

- Xanadu did not establish that it had any qualifying purchases;

- The three objectors received notice of the proposed secondary distribution and filed objections, directly contradicting their argument that Plaintiffs and Rust failed to provide reasonable notice of such distribution;

- The three objectors received notice of Plaintiffs' request for further attorneys' fees and reimbursement of expenses and filed objections, directly contradicting their argument that Plaintiffs failed to provide reasonable notice of such request; and

- Given the amount of the remaining uncashed settlement funds, Xanadu and Mr. Gould's contention that such funds should escheat to the states is unsupported in this Circuit and in class actions generally.

[1-ER-010-014]

In overruling the objections in the Secondary Distribution Order, the district court authorized a holdback of $50,000 for one claimant (Michael Chekian) based on special circumstances, reimbursement of claims administration expenses of $125,921, reimbursement of incurred litigation expenses of $4,876.85, attorneys' fees of $500,000 in connection with Class Counsel's settlement administration work (*i.e.*, half the amount of attorneys' fees sought by Class Counsel), and a secondary distribution of the remaining settlement funds less the aforementioned authorizations. [1-ER-017]

The following table sets forth the allocation of the remaining uncashed settlement funds based on the district court's Secondary Distribution Order:

| | Amount | Percent of Remaining Uncashed Settlement Funds |
|---|---|---|
| **Remaining Settlement Funds** | $5,448,087.41 | 100% |
| **Holdback for Settlement Class Member Michael Chekian** | $50,000.00 | 0.918% |
| **Additional Claims Administration Expenses** | $125,921.00 | 2.311% |

| | | |
|---|---|---|
| **Reimbursement of Litigation Expenses** | $4,876.85 | 0.090% |
| **Further Attorneys' Fees** | $500,000.00 | 9.178% |
| **Total Amount of Secondary Distribution** | $4,767,289.56 | 87.504% |

[1-ER-017]

On January 20, 2023, two of the three objectors—Xanadu and Mr. Gould—filed their Reconsideration Motion, which the district court denied in its January 2, 2023 Reconsideration Order, ruling their motion "simply rehashes [] the objections [they] made to the motion for secondary distribution" and "to the extent that [their] objections raise new issues, they do not change the Court's view of the motion for secondary distribution." [1-ER-006-007]

The district court's Secondary Distribution Order and Reconsideration Order are the subject of Objectors-Appellants' appeal. Br. at 6.

## II.    Relevant Facts Regarding Objectors

### A.    Objector Xanadu

Xanadu (claim number 0000144970) filed a claim to each of the three rounds of settlements in this action online through the settlement website (www.airlinesettlement.com). [2-ER-293] Xanadu's listed contact information in connection with its claim was:

9

First and Last Name: Corp Xanadu
Email: corpxanadu@phreakmail.com
Phone: (801) 823-1320
Address: 5042 Wilshire Boulevard #35581, Los Angeles, California 90036

*Id.* Xanadu's claim included an unverified amount of international travel, resulting in allegedly 1,337 purchased tickets. [2-ER-293] Rust audited Xanadu's claim because the audit threshold for businesses was 1,000 or more tickets. [2-ER-293] Xanadu did not verify any of its alleged purchases with actual invoices or other corporate records; instead, Xanadu's alleged 1,337 claimed tickets are exclusively supported by a one-page Affidavit, executed by the alleged Secretary of Xanadu, Carlos Suica, on October 2, 2020 in response to Rust's September 20, 2020 audit letter. [2-ER-293-294] Rust initially approved the claim. [2-ER-294]

On August 24, 2021, Rust sent a determination letter by USPS to Xanadu's Wilshire Boulevard address, which USPS returned as undeliverable with no forwarding address on September 22, 2021. [2-ER-294] On October 11, 2021, Xanadu emailed Rust indicating that it did not receive the determination letter and confirming that the Wilshire Boulevard address is correct. [2-ER-294] Rust replied to Xanadu's email and attached the determination letter. [2-ER-294]

On March 17, 2022, Rust mailed a check in the amount of $603,831.08 by USPS to Xanadu's alleged Wilshire Boulevard address, which USPS again returned as undeliverable with no forwarding address on April 11, 2022. [2-ER-294] On April 25, 2022, Rust sent the claimant names and addresses of all checks returned

10

as undeliverable, including those of Xanadu, to a vendor to obtain an updated address through an automated process called "batch trace," which did not return a better or updated address for Xanadu. [2-ER-294][2]

On July 26, 2022, consistent with the district court's order at the July 6, 2022 hearing, Class Counsel advised Rust to stop reissuing checks and proceed with voiding uncashed original checks as of July 31, 2022 and uncashed reissued checks as of August 30, 2022 because they intended on filing the Secondary Distribution Motion shortly and needed to calculate the exact amount of available funds. [2-ER-294] On July 30, 2022, Mr. Suica emailed Rust indicating that Xanadu did not receive a check and provided a new mailing address: 8605 Santa Monica Boulevard #10287, West Hollywood, California 90069. [2-ER-294] Mr. Suica's email also noted:

> . . . please see that the settlement check is payable ONLY to the name of the company: CORP XANADU -- and that no company officer's name is included on the check. Including a company officer's name will make it a 2-party check and will make it much more complicated for the company to negotiate the payment.

[2-ER-294-295] On August 24, 2022, Xanadu emailed Rust inquiring about reissuance of the check. [2-ER-295]

---

[2] Class action claims administrators, including Rust, commonly use vendors to return a better or updated address for claimants whose checks are returned as undeliverable. [3-ER-317]

On the morning of August 26, 2022, a Nicaragua-based attorney, Karla Corea, who purportedly represents Xanadu, emailed Class Counsel threatening legal action because Xanadu did not receive the check that Rust sent to it on March 17, 2022. [2-ER-295] On the same day, a Pennsylvania-based attorney, John Allen Roth, who claims to represent Xanadu and filed the Objections on behalf of Xanadu and David Gould, moved for leave to appear *pro hac vice* in the Action, which the district court granted. [2-ER-295]

Upon receiving Ms. Corea's email, Class Counsel immediately contacted Rust to gather any relevant facts. [2-ER-295] After learning that Xanadu did not provide *any* documentation to support its 1,337 claimed tickets except for Mr. Suica's one-page Affidavit, Class Counsel began investigating Xanadu's claims and Xanadu itself given the number of questionable, potentially fraudulent claimants requesting reissuance of checks since the filing of the Secondary Distribution Motion on August 8, 2022. [2-ER-295].

Regarding Xanadu's alleged purchases, Class Counsel found them to be highly suspicious. [2-ER-295] For example:

- Xanadu did not provide *any* receipt showing a ticket purchase, *any* canceled check, *any* credit card statement, *any* travel itinerary, or *any* email confirmation of ticket purchases for its claimed 1,337 tickets, which is highly unusual for a business, particularly one that purportedly purchased the tickets for its own use; and

- Xanadu failed to provide origin or destination airports or travel dates for *any* of its alleged ticket purchases.

12

[2-ER-295]

Regarding Xanadu itself, Class Counsel was unable to determine what, if any, legitimate business activity it was engaged in during the settlement class period or currently. [2-ER-295] For example:

- Class Counsel could not find *any* online presence whatsoever, including on the California Secretary of State's California Business Search website;

- Class Counsel could find no records of actual employees employed by it. No one appears to have worked for Xanadu, which raises the question of how it could have had over 1,000 claimed tickets for its own use over the relevant period;

- Xanadu's Wilshire Boulevard address is not associated with any actually operating business but is instead a private rental mailbox inside "Wilshire Mailbox," which appears to be a generic notary and shipping center in Los Angeles;

- Xanadu's Santa Monica Boulevard address is associated with a virtual mailbox provider, "Earth Class Mail";

- Alleged representatives or agents (including alleged counsel) have inconsistently referred to the company's legal name as either Corp. Xanadu or Xanadu Corp.;

- Xanadu appears to lack a corporate email system that is consistent with a legitimate and ongoing business operating with the United States, which would be unusual for an entity that had the capacity to make over a 1,000 transpacific travel purchases during the relevant period. For example, the email provided with Xanadu's claim is "corpxanadu@phreakmail.com";

- Xanadu's phone number is associated with a landline in Ogden, Utah;

- Xanadu "use" of a Nicaragua-based foreign attorney is unusual; and

- The fact that Xanadu's determination letter and check were both returned, along with the request for a reissued check to be sent elsewhere is itself worthy of investigation.

[2-ER-295-296]

Given Xanadu's lack of an online presence and its inability to show that it has actual employees or a true mailing address, its large claim raised further red flags and fraud prevention concerns by the court-appointed claims administrator, Rust. [2-ER-296] Accordingly, on the evening of August 26, 2022, Class Counsel replied to Ms. Corea's email and included Mr. Roth, stating that they were investigating Xanadu's claims. [2-ER-296] To facilitate validation of the claims, Class Counsel requested Ms. Corea and Mr. Roth provide Xanadu's company formation documents showing that it is a bona fide company and Mr. Suica's availability by Zoom to discuss Xanadu's business and alleged purchases. [2-ER-296] Class Counsel also followed up in this request on September 2, 2022. [2-ER-296]

On September 6, 2022, Mr. Roth inexplicably declined to make a representative from his ostensible client available and did not address Class Counsel's request for Xanadu's company formation documents. [2-ER-296] While Xanadu offered to provide the Court "under seal, a copy of his identification to demonstrate that he is the person who submitted the claim[,]" this did not facilitate Class Counsel and Rust's validation of Xanadu's claims or their duty to legitimate class members to prevent fraudulent claims and dilute the settlement funds. [2-ER-

296] Class Counsel and Rust's concerns are with the legitimacy of Xanadu and its claim to the settlements in this action—not with the identification of the person who filed the claim. [2-ER-296-297] In sum, neither Class Counsel nor Rust could verify Xanadu's alleged purchases, let alone verify that such a company even exists. [2-ER-297] Class Counsel informed the district court that if Xanadu did not provide further information validating its alleged purchases, Class Counsel would recommend denying the claim in full. [2-ER-297]

The district issued an Order Setting Hearing on September 28, 2022, which expressly permitted Class Counsel and Rust to "audit/re-examine Corp. Xanadu's claim consistent with their obligation to pay only qualified claimants." [1-ER-019][3] Subsequently, Xanadu provided some documents to Rust on October 18, 2022 and its purported CEO, Rich Sutton, met with Rust and Class Counsel by Zoom on November 1, 2022. [2-ER-260] During this one-hour meeting, Rust and Class Counsel asked, and Mr. Sutton agreed, to provide certain additional documents and/or information to support Xanadu's claim. [2-ER-260] Rust requested Mr. Sutton provide these documents and/or information by November 30, 2022. [2-ER-260] Mr. Sutton, on behalf of Xanadu, ultimately did not provide sufficient

---

[3] Xanadu appealed this non-final, non-appealable September 28, 2022 Order Setting Hearing. *See Meor Adlin, et al., v. All Nippon Airways, et al.*, No. 22-16634 (9th Cir. Oct. 24, 2022). The United States Court of Appeals for the Ninth Circuit dismissed Xanadu's appeal for lack of jurisdiction. [2-ER-262]

information that would have permitted Rust to verify Xanadu's alleged purchases. [2-ER-260]

On November 4, 2022, the district court held a hearing on the Secondary Distribution Motion, which counsel for Objectors attended. [2-ER-267] At this hearing, the district court asked counsel for Objectors whether he had any objections to make or supplement multiple times. [2-ER-270-271] Counsel for Objectors declined each time. [2-ER-271]

Rust subsequently completed reviewing the documents Xanadu did provide and made a determination on Xanadu's claim. [2-ER-260] Specifically, Rust determined that "there is $0 due in settlement benefits" to Xanadu based on numerous factors. [2-ER-260] One of several factors supporting the determination was that the only supporting travel documents that Xanadu provided—American Airlines itineraries for travel between July 2015 and August 2015—redacted all payor information and Xanadu provided no documentation showing that it, as opposed to someone else, paid for such purchases, rendering it impossible for Rust to confirm that Xanadu was the payor of the claimed ticket purchases. [2-ER-260] Furthermore, in any event, Xanadu's alleged American Airlines itineraries did not support its claim for 1,337 tickets on five *other* airlines from 2003 through 2008. [2-ER-260] For these reasons, among several others, Rust determined that Xanadu did

16

not have any valid claim to the settlement funds. [2-ER-260] This determination concluded Rust's claims administration work relating to Xanadu. [2-ER-260]

On December 27, 2022, Rust communicated this determination, including a list of the factors supporting the determination, to Mr. Sutton, with copy to Xanadu's attorney, Mr. Roth, by email. [2-ER-260-261] Rust also communicated this final determination by mail to Xanadu, 8605 Santa Monica Blvd #10287, West Hollywood, CA 90069, on the same day. [2-ER-261]

The Declaration of Joel K. Botzet in Support of Plaintiffs' Further Notice Regarding Corp Xanadu's Claim describes in detail the scope of Rust's claims administration work; Xanadu's claim; all documents and information requested by Rust; all documents and information provided (and mostly, not provided) by Xanadu; and Rust's analysis and determination of Xanadu's claim. [2-ER-071-083]

## B. Objector David Gould

Like Xanadu, Mr. Gould (claim number 0000139761) filed a claim to each of the three rounds of settlements in this action online through the settlement website (www.airlinesettlement.com). [2-ER-297] Mr. Gould's claim included 96 tickets on various airlines, including eight *Satogaeri* tickets. [2-ER-297] The audit threshold established for individuals is 125 tickets or more and/or 50 or more tickets for each of the Japan (Fuel Surcharge) and/or *Satogaeri* Settlement Classes. [2-ER-297] Mr.

Gould's claimed tickets fell under the audit threshold, and Rust therefore did not audit him. [2-ER-297]

On August 24, 2021, Rust mailed Mr. Gould a determination letter. [2-ER-297] On March 17, 2022, Rust mailed Mr. Gould a check for $6,733.21, which he cashed on May 31, 2022. [2-ER-297] There is no additional correspondence between Mr. Gould and Rust. [2-ER-297] Given the foregoing, Class Counsel were surprised by Mr. Gould's objection given that he received his payment from the March 17, 2022 distribution, appears to have had no difficulty with receiving or cashing his check, and had no other communication with Rust. [2-ER-297]

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's Secondary Distribution Order [1-ER-009] and Reconsideration Order [1-ER-002] because the district court did not abuse its discretion in:

I.     Finding that Objector-Appellant Xanadu lacked standing because it did not establish that it had any qualifying purchases to be a settlement class member;

II.    Finding that Plaintiffs-Appellees provided reasonable notice of the Secondary Distribution Motion and an opportunity to object thereto, which Objectors did, directly contradicting their argument that Plaintiffs failed to provide reasonable notice of the Secondary Distribution Motion;

III. Given the amount at issue, deciding that the remaining uncashed settlement funds should be redistributed to settlement class members instead of escheated to state government; and

IV. Permitting Rust and Class Counsel to re-review Objector Xanadu's claim given the attendant red flags and fraud prevention concerns associated with the claim and the claimant.

## STANDARD OF REVIEW

This Court reviews a district court's approval of a proposed distribution of a class action settlement for abuse of discretion. *In re Google Inc. St. View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1110 (9th Cir. 2021), *cert. denied sub nom. Lowery v. Joffe*, 214 L. Ed. 2d 25, 143 S. Ct. 107 (2022) (citing *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). Similarly, this Court reviews a district court's award of attorneys' fees to class counsel as well as its method of calculation for abuse of discretion. *Id.* (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 942 (9th Cir. 2015)). Under this "extremely limited" review, this Court will affirm if the district judge applies the proper legal standard and makes findings of fact that are not clearly erroneous. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 778 (9th Cir. 2022). This Court reviews legal questions *de novo*. *Id.* at 779.

To the extent Objectors argue that the appropriate standard of review is *de novo* because this Court is reviewing whether notice of a proposed settlement satisfies due process, this Court should disregard the argument because Class Counsel already provided notice of each of the three rounds of settlements pursuant to Federal Rule of Civil Procedure 23 and due process, which the district court approved. [3-ER-564-574; 3-ER-498-505; 3-ER-480-484] Following these settlement notices, Class Counsel distributed settlement funds of $104,387,320.59 to settlement class members on March 17, 2022. [3-ER-405, 3-ER-407] The notice at issue concerns notice of the secondary distribution to settlement class members. [1-ER-002, 1-ER-009] Objectors have not provided any authority for the proposition that a comprehensive notice program is required when Class Counsel and Rust are simply seeking to redistribute the remaining uncashed settlement funds. [*See, generally*, Br. at 44-56]

## ARGUMENT

## I. Both Objectors Lack Standing to Object

Neither Objector-Appellate Xanadu nor Mr. Gould has standing to object for the reasons set forth below.

### A. The District Court Correctly Found That Xanadu Is Not A Settlement Class Member

Under Rule 23(e)(5), any class member may object to a proposed class settlement. Fed. R. Civ. P. 23(e)(5). Courts considering class action settlements must

verify that every class member has standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2207–08 (2021). The party seeking to invoke the Court's jurisdiction—in this case, Objectors—have the burden of establishing standing. *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1116 (9th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016)). Non-class members have no standing to object to the settlement of a class action. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 15-MD-02672-CRB, 2016 WL 6248426, at *22 (N.D. Cal. Oct. 25, 2016), *aff'd sub nom. Clean Diesel*, 895 F.3d 597 (9th Cir. 2018), and *aff'd sub nom. Clean Diesel*, 741 F. App'x 367 (9th Cir. 2018).

The district court overruled Xanadu's objections because "Xanadu did not establish that it had any qualifying purchases. In failing to do so, therefore, not only has it failed to establish that it is entitled to share in the settlement proceeds, but it has also failed to establish that it is a settlement class member." [1-ER-010] To arrive at this finding, the district court considered Rust's comprehensive review and audit of Xanadu's claim and its supporting documentation, which resulted in Rust's determination that "there is $0 due in settlement benefits" to Xanadu, and the facts underlying that determination. [1-ER-010-012] Rust's analysis was based on numerous factors, which are set forth in both the Secondary Distribution Order and

Plaintiffs' Further Notice Regarding Corp Xanadu's Claim. [1-ER-011-12, 2-ER-258-61]

Notably, the 144 American Airlines itineraries that Xanadu provided for claimed ticket purchases between the dates of July 2015 and August 2015 did not verify that Xanadu was the payor of these itineraries. [1-ER-011] Indeed, Xanadu redacted the name of the payor in each of the itineraries, thereby affirmatively concealing from Rust the identity of the payor despite having no reason to do so and every incentive to demonstrate that it was the actual payor. [2-ER-122-244] Thus, even though these itineraries fell within a qualifying period for the settlement classes, Xanadu provided no documentation confirming that it paid for such itineraries. [1-ER-011] The district court noted that Xanadu's redaction of the name of the payor from all itineraries that it provided to Rust was "inconsistent with [Xanadu]'s obligation to demonstrate that it was the purchaser of these tickets." [1-ER-011] (citing *Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB, 2015 WL 758094, at *10 (N.D. Cal. Feb. 20, 2015) (holding that three objectors lacked standing to challenge settlement because none had purchased the defendant's product and suffered injury)).

Multiple other factors suggested that Xanadu does not have any valid claim to the settlement funds. For example, Xanadu's CEO informed Rust that the documents Xanadu used to determine the number of claimed ticket purchases were allegedly

destroyed; Xanadu did not provide the date for when these documents were destroyed; Xanadu did not provide supporting documentation for any travel on other qualifying airlines to substantiate its claim besides the above-referenced American Airlines itineraries for a two-month period in 2015; and Xanadu did not provide any of its marketing material and/or magazine ads for its services to confirm the nature of its business and why it would have purchased so much in transpacific travel during the relevant period. [1-ER-011-012] Based on Rust's comprehensive review and audit of the supporting documentation, and its independent review of that documentation, the district court therefore reasonably concluded that Xanadu is not a settlement class member and lacked standing to object. [1-ER-010-012]

### B. Xanadu's Supporting Documents Suggest Xanadu Is Not A Direct Purchaser and Therefore An Ineligible Settlement Class Member

To be a settlement class member, Xanadu must have directly purchased the claimed tickets from Defendants. *Ill. Brick Co. v. Ill.*, 431 U.S. 720, 746 (1977) ("I*llinois Brick*"). In *Illinois Brick*, the Supreme Court incorporated "principles of proximate cause" into an action for violation of the Sherman Act, holding "that indirect purchasers who are two or more steps removed from the violator in a distribution chain may not sue." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019). The Supreme Court wanted to avoid "the evidentiary complexities and uncertainties" that would be "multiplied in the offensive use of pass-on by a plaintiff several steps removed from the defendant in the chain of distribution." *Id.* at 732. Accordingly,

23

*Illinois Brick* "established a bright-line rule that authorizes suits by direct purchasers but bars suits by indirect purchasers." *Pepper*, 139 S. Ct. at 1521.

Here, Plaintiffs have only brought claims on behalf of direct purchasers under Section 1 of the Sherman Act, 15 U.S.C. § 1. [SER-133-135] Plaintiffs have not brought claims on behalf of indirect purchasers, as demonstrated by the complete absence of claims based on any state law authorizing recovery by indirect purchasers. [SER-003-147]

One possible explanation for Xanadu's redaction of the name of the payor from all itineraries that it provided to Rust is that Xanadu did not directly purchase its claimed tickets and that some other person or entity did in the first instance. [2-ER-122-244] If another person paid for the air travel that Xanadu provided to Rust, then that person is the settlement class member under *Illinois Brick* because that person directly purchased the qualifying claimed tickets—not Xanadu. Even assuming *arguendo* that Xanadu reimbursed that person for the claimed tickets, that would render Xanadu—at best—an indirect purchaser who does not qualify for payment from the settlement funds. *See Somers v. Apple, Inc.*, 729 F.3d 953, 961 (9th Cir. 2013) ("The indirect purchaser rule bars suits for antitrust damages by customers who do not buy directly from a defendant[.]").

24

### C.    Mr. Gould Received and Cashed His Settlement Payment

Mr. Gould likewise lacks standing to object, though for a different reason than Xanadu. As stated, *supra*, Mr. Gould received and cashed a settlement payment for $6,733.21 from Rust on May 31, 2022. [2-ER-297] Mr. Gould's objection is unexpected given that he received his payment from the distribution, appears to have had no difficulty with receiving or cashing his check, and had no other communication with Rust. [2-ER-297] Accordingly, Mr. Gould cannot reasonably claim that he has been injured in any way relevant to objections he raised in the district court, or in this appeal, and thus he has no standing to pursue them here. Indeed, Mr. Gould actually *benefits* from the district court's Secondary Distribution Order and Reconsideration Order, as he will now receive a share of the secondary distribution.

## II.    The District Court Did Not Abuse Its Discretion in Entering the Secondary Distribution Order

Turning to Objectors-Appellants' Brief, the district court did not abuse its discretion in authorizing a secondary distribution of the remaining uncashed settlement funds to settlement class members for the reasons set forth below.

### A.    Plaintiffs Provided Reasonable Notice of the Secondary Distribution Motion and An Opportunity to Object

Objectors first argue that Plaintiffs failed to meet settlement class notice requirements under Federal Rule of Civil Procedure 23 in notifying settlement class

members of the Secondary Distribution Motion. Br. at 44-45. Specifically, Objectors suggest the notice provided was not "full and complete" and "fair[.]" *Id.* at 44. But Rust and Class Counsel did, in fact, provide notice of the Secondary Distribution Motion. [1-ER-012-013] They filed the Motion with the district court and posted it on the settlement website (www.airlinesettlement.com) within 24 hours of the filing. [3-ER-370, 3-ER-301] In fact, all motions and notices related to settlements can be downloaded on the settlement website's Court Documents page, which is linked to the English, Chinese, and Japanese pages of the settlement website. [3-ER-301] Objectors had an opportunity to object to the Motion and, in fact, did so in writing. [1-ER-012-013] Objectors also attended and were invited by the district court to present or supplement their objections at the November 4, 2022 hearing on the Motion but declined. [2-ER-270-271] Objectors Xanadu and Mr. Gould claim that they "learned about the motion only because of the missing check issue[,]" [Br. at 45], but Mr. Gould was able to cash his settlement check *and* object to the Secondary Distribution Motion under the district court-approved settlement administration process. [2-ER-297]

More importantly, Rust and Class Counsel *already* provided comprehensive notice of each of the three rounds of settlements pursuant to Federal Rule of Civil Procedure 23, and the district court granted final approval thereof in 2015, 2018, and 2019, respectively. [1-ER-012-013] Each of these notices were multilayered

26

and included long- and short-form notices, paid media, earned media, a settlement website, toll-free phone number, and post office box. [3-ER-406-407] Notice for the second and third round of settlements also included direct email or mail notice [3-ER-405-406], and notice for the third round of settlement also included notice to travel agencies. [3-ER-406-407] The notice materials for each of the three rounds of settlements direct settlement class members to visit the settlement website for "additional information, important documents, and case updates[.]" [2-ER-301] The long-form notice also provides that "[s]pecific details on the distribution are available at the website" and references the website in the footer of every page. [2-ER-301]

Regardless, secondary distributions of uncashed settlement funds in class actions are routine. *See Hester v. Vision Airlines, Inc.*, No. 2:09-CV-00117-RLH, 2017 WL 4227928, at \*2 (D. Nev. Sept. 22, 2017) (ordering *pro rata* redistribution of unclaimed funds from a judgment and settlement exceeding $6 million and stating, "Redistribution of the residual settlement proceeds to the Class is appropriate in this case. As set forth above, the proceeds 'belong solely to the class members' and a second *pro rata* distribution to the Class properly ensures that 100% of the settlement funds remain in the hands of class members."); *Klier v. Elf Atochem N. Am., Inc.*, 658 F.3d 468, 474-75 (5th Cir. 2011); *In re Lupron Marketing*

27

*and Sales Practices Litig.*, 677 F.3d 21, 32 (1st Cir. 2012); Principles of the Law of Aggregate Litigation § 3.07, cmt. b (Am. Law Inst. 2010).

Objectors have provided no authority for the proposition that comprehensive notice pursuant to Rule 23 is required when Class Counsel and the district court are merely seeking to perform a secondary distribution of uncashed settlement funds as part of the settlement administration process. [1-ER-012-013] *See*, *e.g.*, *Camberis v. Ocwen Loan Servicing LLC*, No. 14-CV-02970-EMC, 2018 WL 6068999, at *3 (N.D. Cal. Nov. 20, 2018); *see also Keepseagle v. Vilsack*, 118 F. Supp. 3d 98, 117 (D.D.C. 2015) (noting that "as a general matter, 'a court's goal in distributing class action damages is to get as much of the money to the class members in as simple a manner as possible'"). The authorities to which Objectors cite simply require "reasonable" notice and an "opportunity to object" [Br. at 44-45], which Rust and Class Counsel provided in connection with the Secondary Distribution Motion. [1-ER-012-013] Even if Objectors properly invoked Federal Rule of Civil Procedure 23, Rule 23 only requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The district court previously found Plaintiffs met Rule 23's settlement notice requirements. [3-ER-564-574, 3-ER-498-505, 3-ER-480-484] Indeed, 96,133 potential class members received notice of the settlements in this action and filed claims, including Objectors. [3-ER-

406, 2-ER-293, 2-ER-297] Any suggestion by Objectors that Plaintiffs failed to satisfy Rule 23's settlement notice requirements is therefore meritless and undermined by the fact that they received notice themselves and objected.

Despite receiving actual notice of the Secondary Distribution Motion, Objectors argue that Rust and Class Counsel should have notified other settlement class members about returned or uncashed checks before filing the Secondary Distribution Motion. Br. at 45. Objectors also contend that Rust and Class Counsel should have emailed or, alternatively, mailed settlement class members to notify them of the Secondary Distribution Motion. *Id.* But the initial notices explicitly advised class members to check the settlement website frequently for updates as settlement administration is a dynamic process. [2-ER-301] And, settlement class members that claimed on the settlement and cashed their checks will benefit from the redistribution of the remaining settlement funds. [3-ER-381] For these reasons, Rust determined there was no efficiency or precedent for emailing or mailing the Secondary Distribution Motion to claimants when the Motion and supporting papers were (and remain) available on the settlement website. [2-ER-300]

Rust's settlement administration process here followed the process in similar cases, such as *In re Korean Air Lines Co., Ltd. Antitrust Litigation*, MDL No. 1891, No. 2:07-cv-05107-SJO-AGR (C.D. Cal.) ("*Korean Air*"). [2-ER-301] Contrary to Objectors' argument that Rust and Class Counsel should have provided more notice

[Br. at 45], Rust is not required to email or, alternatively, mail each of the tens of thousands of claimants in this litigation every time a motion or notice is filed in the district court, and any new requirement to do so would be extremely burdensome, costly, and contrary to Federal Rule of Civil Procedure 23. [2-ER-301] Neither the Court's orders nor the Federal Rules of Civil Procedure require such notice, Rust's extensive experience in class action matters does not recommend it, and claims administrators have not done so in similar cases, like *Korean Air.* [2-ER-301]

None of the authorities to which Objectors cite support their argument. Br. at 46-47. These authorities merely stand for the unremarkable proposition that Class Counsel and the district court have a fiduciary duty to the class, which no one disputes. *Id.* But Objectors have not presented any facts showing that Rust, Class Counsel, or the district court breached such a duty. Specifically, Objectors fail to point to any "factors, considerations, 'subtle signs,' and red flags" suggesting that "class counsel have allowed pursuit of their own self-interest[] and that of certain class members to infect" the settlements or distribution thereof here. *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

### B. Objectors' Challenge to the Further Attorneys' Fees Award Based on An Alleged Lack of Notice Fails

Objectors do not appear to contest the amount of the further attorneys' fees granted by the district court. Br. at 46-47. Hoping to leverage the attorneys' fee

award into payment of their apparently fraudulent claim, Objectors contend, however, that the district court should not have authorized such fees unless Rust and Class Counsel notified claimants "that checks would be disbursed, checks were returned, and checks went uncashed." *Id.* at 46. Objectors' challenge to the further attorneys' fees based on an alleged lack of notice to these claimants ignores three important facts.

*First*, all claimants already received notice of the settlements, including Class Counsel's fee requests, through the district court-approved comprehensive notice program for each of the three rounds of settlements discussed *supra*. [2-ER-301] The deadline to object to each of the three rounds of settlements and related requests for attorneys' fees has long passed. [2-ER-302] None of the Objectors objected to those proposed attorneys' fees at the appropriate time. [3-ER-564-574, 3-ER-498-505, 3-ER-480-484]

*Second*, *it was the district court itself* that invited Class Counsel to submit a supplemental fee request given the extensive work performed in connection with settlement administration and other matters in this action. [1-ER-013] Class Counsel did so and provided reasonable notice of their request through filing the Secondary Distribution Motion with the district court on August 8, 2022 and posting the Motion on the settlement website. [2-ER-302] Settlement class members had a full and fair opportunity to object (as demonstrated by Objectors), if they even have

that right to begin with: Pursuant to Local Rules of Practice in Civil Proceedings before the United States District Court for the Northern District of California 7-3, the original deadline to oppose the motion was August 22, 2022, which the district court extended to September 7, 2022, providing a full 30 days for settlement class members to weigh in on the Motion. [2-ER-302]

*Third*, the total attorneys' fees noticed by Class Counsel in the settlement notices has not been exceeded by the district court's various fee awards, either in connection with each of three rounds of settlements or in the aggregate—even considering the $500,000 in further attorneys' fees for settlement administration awarded by the district court as part of the Secondary Distribution Order. [1-ER-017] By way of illustration, Class Counsel noticed attorneys' fees of 33% (*i.e.*, $18,647,081.15) of the net of the third round of settlements of $56,506,306.52. [3-ER-302] The district court instead granted reduced attorneys' fees of 25% (*i.e.*, $14,126,576.64). [3-ER-302] Even adding the further attorneys' fees award of $500,000 to the previous fee award of $14,126,576.64, this would only increase the fee award to 25.88% (*i.e.*, $14,626,576.64)—far less than the 33% noticed. [3-ER-302] These facts underscore that notice of attorneys' fees sought by Class Counsel was reasonable throughout the settlement administration process.

32

### C.      Objectors' Various Arguments Regarding Deficient Notice Are Unsupported by the Facts

Objectors suggest that Rust and Class Counsel should have provided direct notice to settlement class members of uncashed or returned checks. Br. at 47-48. Such direct email or mail notice to claimants was not feasible. Contrary to Objectors' suggestion, Class Counsel could not have instructed Rust "to send a simple email to the 16,216 people who did not receive their money" or "[a]s to returned checks or uncashed checks . . . try to contact the claimants." Br. at 48.[4] Not all claimants provided an email address [2-ER-298], and claimants of returned checks are unlikely to receive further mail. [2-ER-298-299] Regardless, there is no efficiency or precedent for emailing or mailing the Notice of Post-Distribution Accounting and the Secondary Distribution Motion to claimants of returned or uncashed checks when they are readily available on the settlement website. [2-ER-300] And, of course, doing so would itself expend much of the remaining uncashed settlement funds. [2-ER-303]

Objectors also state that Rust and Class Counsel should have "disclosed the reasons why [] thousands of other checks were returned, breaching their fiduciary duty to inquire." Br. at 46. In the Secondary Distribution Motion, Plaintiffs reported

---

[4] Objectors misstate the number of claimants who "did not receive their money." *Id.* Plaintiffs clarify that the number of uncashed checks was 16,216. [2-ER-299] Of those, 3,337 checks did not have mailable addresses. [2-ER-299]

33

the following: The number and value of checks cashed or assumed cashed were 44,893 and $98,939,233.18, respectively. [2-ER-299] The number and value of uncashed checks were 16,216 and $5,448,087.41, respectively. [2-ER-299] After distribution occurred on March 17, 2022, USPS returned 5,444 checks as undeliverable to Rust. [2-ER-298] Rust subsequently traced the 5,444 undeliverable checks, which returned 3,391 alternative addresses. [2-ER-298-9] Rust remailed checks to the 3,391 alternative addresses and 2,314 of such checks were cashed. [2-ER-299] In the Secondary Distribution Motion, Rust reported that, ultimately, only 3,337 of the 16,216 uncashed checks did not have mailable addresses. [2-ER-299] Thus, USPS returned some checks because they were undeliverable or did not have mailable addresses. [2-ER-299] Rust and Class Counsel have acted reasonably under the circumstances, and it is common in almost every class action case that certain claimants do not cash their settlement checks. *See*, *e.g.*, *In re Airline Ticket Antitrust Litig.*, 268 F.3d 619, 621 (8th Cir. 2001) (out of 25,082 settlement checks mailed out in an $86 million dollar settlement, some checks were returned as undeliverable and some were never cashed, resulting in about $600,000 in unclaimed funds).

Finally, Objectors' suggestion that Rust mis-mailed the settlement check to Xanadu because the window envelope with the returned check was allegedly missing a city, state, and zip code is incorrect (and also irrelevant). [Br. at 46] Rust

did not mis-mail the settlement check; although the city, state, and zip code are not visible from the *scanned* copy of the window envelope with the settlement check, [2-ER-101], Rust used the same address for the initial determination letter, which included the city, state, and zip code, which are visible from the scanned copy of the window envelope with the initial determination letter. [2-ER-097] In other words, there was no change in Xanadu's address between the mailing of the initial determination letter and the mailing of the settlement check, so the address was identical and included city, state, and zip code. [2-ER-097, 2-ER-101] Moreover, the district court already found that the window envelope with the settlement check was stamped "RETURN TO SENDER - TEMPORARILY AWAY - UNABLE TO FORWARD," suggesting that any missing address information was not the impediment to delivery. [1-ER-007] Regardless, given the numerous red flags associated with Xanadu's claim, it was not entitled to a settlement payment, so Xanadu's complaints in this regard ring hollow.

### D. Objectors' Accusation That Class Counsel Acted Inappropriately Is Baseless

Objectors accuse Class Counsel of not providing notice to claimants about their returned or uncashed checks because they sought to "take a portion of the remaining funds as attorney fees without giving the class members any notification of their request[.]" Br. at 48. This wild accusation is unfounded and contrary to the record. As stated, *supra*, Class Counsel filed the Secondary Distribution Motion and

35

promptly posted it to the settlement website. [2-ER-301] The district court provided—and extended—an opportunity for settlement class members to file objections and also to be heard on the Motion. [2-ER-302] And it was the district court—*not Class Counsel*—that suggested further attorneys' fees for Class Counsel's ongoing and extensive work administering the settlements. [1-ER-013] Class counsel therefore acted properly throughout the settlement administration process.

**III.  The District Court Did Not Abuse Its Discretion in Ruling the Remaining Uncashed Settlement Funds Should Be Redistributed to Settlement Class Members, Not Escheated to States**

Objectors maintain that the remaining *domestic* uncashed settlement funds should escheat to the relevant states. Br. at 49-51. As an initial matter, this suggestion is contrary to Mr. Gould's pecuniary interests because it will prevent him from receiving *any* additional payment from the secondary distribution for which he would otherwise be entitled. Accordingly, he has no standing to make this argument because he will benefit from this Court affirming the Secondary Distribution Order [1-ER-009] and Reconsideration Order [1-ER-002] to which he purportedly objects.

Further, while escheatment to the government is one way to distribute unclaimed funds, the determination of how the district court disposes of unclaimed funds falls within the general equity powers of the district court. [1-ER-012-013] *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1307 (9th Cir.

1990) ("*Mexican Workers*") ("Federal courts have broad discretionary power in shaping equitable decrees for distributing unclaimed class action funds.") (citation omitted). District courts have correctly trended, however, toward redistributing funds *pro rata* among claiming class members. *See*, *e.g.*, *Hester*, 2017 WL 4227928, at *2 ("[R]edistribution of unclaimed class action funds to existing class members is proper and preferred"); *In re Baby Products Antitrust Litig.*, 708 F.3d 163, 173 (3d Cir. 2013) (stating that "direct distributions to the class are preferred" because the "private causes of action aggregated in this [antitrust] class action—as in many other—were created by Congress to allow plaintiffs to recover compensatory damages for their injuries"); *Klier*, 658 F.3d at 474–75 (stating that "[t]he settlement-fund proceeds, having been generated by the value of the class members' claims, belong solely to the class members").

Here, the district court properly authorized a secondary distribution of the remaining uncashed settlement funds to settlement class members. [1-ER-009-017] Redistribution provides class members with additional settlement funds. *Camberis v. Ocwen Loan Servicing LLC*, No. 14-CV-02970-EMC, 2018 WL 6068999, at *3 (N.D. Cal. Nov. 20, 2018) (citing *Keepseagle*, 118 F. Supp. 3d at 117). In the Secondary Distribution Order, the district court stated that "escheat to the government could be appropriate in certain kinds of cases, like FLSA wage damage cases" but remarked that "*Mexican Workers* by no means held that allowing

unclaimed funds to escheat was required in all class action cases." [1-ER-013] The district court also noted that escheatment to the government is "nowhere to be found in any of the settlement agreements at issue." [1-ER-014]

This Court has expressed that the next best alternative to a direct secondary distribution to settlement class members is a *cy pres* distribution by providing an indirect benefit to the class. *Mexican Workers*, 904 F.2d at 1305. Furthermore, settlement funds should only escheat if the district court is unable to develop an appropriate *cy pres* distribution or finds *cy pres* no longer appropriate. *Id.* at 1309. To compel the use of escheat would cripple the "substantial compensatory function" of the private class action. *State of California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 478 (1986) (citation omitted).

Citing the Amended Order Extending Time to Complete Second Round of Distribution of Settlement Funds in *In re Optical Disk Drive (ODD) Antitrust Litigation*, No. 3:10-md-02143-RS (Jan. 8, 2023), ECF No. 3122, Objectors represent that "turning over uncashed checks to the state is the preferred method of dealing with [unclaimed funds]." Br. at 51. That case is factually distinguishable as the *ODD* court authorized a distribution to settlement class members followed by a secondary distribution to them *before* ordering escheat to government as the final step in distribution. *See* Order Approving Indirect Purchaser Plaintiffs' Revised Plan of Distribution and Schedule, *In re Optical Disk Drive (ODD) Antitrust Litig.*, No.

3:10-md-02143-RS (Apr. 7, 2022), ECF No. 3089; Amended Order Extending Time to Complete Second Round of Distribution of Settlement Funds, *ODD* (Jan. 8, 2023), ECF No. 3122. Furthermore, the ODD court agreed with the settlement administrator's "interest of maximizing the dollar amount returned to class members[.]" Amended Order Extending Time to Complete Second Round of Distribution of Settlement Funds, *ODD* (Jan. 8, 2023), ECF No. 3122.

This Court should therefore affirm that the district court's sensible order authorizing the redistribution of the remaining funds under the wide latitude provided to it under abuse of discretion standard.

## IV. The District Court Did Not Abuse Its Discretion in Allowing Rust and Class Counsel to Re-Review Xanadu's Claim

Objector Xanadu asserts that Rust and Class Counsel should have ignored all the attendant red flags associated with Xanadu's claim for 1,337 tickets between 2002 and 2008—initially supported by a one-page Affidavit only—and reissued the settlement payment of $603,831.08, even though USPS returned Rust's original payment mailed to Xanadu's private rental mailbox as undeliverable with no forwarding address. [Br. at 51-56, 1-ER-002-004]. That is nonsense.

Class Counsel, Rust, and ultimately the district court have an obligation to screen out fraudulent claims and only pay qualifying claims. They are not required to put on blinders and pay a claim without question if they suspect fraud after initially approving a claim. *See*, *e.g.*, *Contant v. AMA Capital, LLC*, 66 F. 4th 59, 67-68 (2d

Cir. 2023) (upholding the claims administrator's decision to reject a claim because the claimant failed to follow the class counsel's request to provide necessary account or trade statements to validate the claim). While Rust initially determined that Xanadu's Affidavit constituted acceptable support for the 1,337 tickets claimed and approved the claim valued at $603,831.08 in its entirety, Rust and Class Counsel's subsequent investigation into the validity of Xanadu's claims and Xanadu itself—conducted after USPS returned the check to Xanadu as undeliverable and upon receiving Nicaragua-based attorney Ms. Corea's email threatening legal action—revealed Xanadu was not a bona fide settlement class member. [1-ER-003] Consequently, Class Counsel sought and received the district court's approval to re-review Xanadu's claim and seek additional supporting documentation which Xanadu ultimately (and inexplicably) failed to provide. [1-ER-003]

The district court acknowledges that it is "likely true" that "Rust required more of Xanadu than it did of other claimants." [1-ER-006] But it also recognized that:

> . . . Rust did not do so in a vacuum. It did so after a number of irregularities raised suspicion about whether Xanadu was actually a class member, and after the Court agreed that re-auditing Xanadu's claim was appropriate. At that point, it would have been meaningless for Rust to subject Xanadu only to the original process in place for verifying claims. Nor was Rust limited to the particular issues that raised its alarm in the first place (internal citations omitted).

[1-ER-006] The district court therefore reasonably allowed Rust and Class Counsel to re-review Xanadu's claim because it raised a host of reg flags. [1-ER-003] Before the re-review, for example, Xanadu did not provide any receipt showing a ticket purchase, any canceled check, any credit card statement, any travel itinerary, or any email confirmation of ticket purchases for its claimed 1,337 tickets, which is highly unusual for a business, particularly one that purportedly purchased the tickets for its own use. [2-ER-295] Xanadu also failed to provide origin or destination airports or travel dates for any of its alleged ticket purchases. [2-ER-295] And Class Counsel could not find any online presence for Xanadu whatsoever, any records of its actual employees, or a true mailing address. [2-ER-295] Xanadu's relatively large claim therefore contained credible indicia of fraud. [2-ER-296]

After re-reviewing Xanadu's claim, which included a one-hour Zoom meeting between Class Counsel, Rust, and Xanadu's purported CEO Rich Sutton on November 1, 2022 and analyzing all additional supporting documentation provided by Xanadu, Rust determined that "there is $0 due in settlement benefits" to Xanadu based on numerous factors. [1-ER-011-012] One of the factors supporting Rust's determination was that the only supporting travel documents that Xanadu provided—the American Airlines itineraries for travel between July 2015 and August 2015—redacted all payor information and Xanadu provided no documentation showing that it paid for such purchases, rendering it impossible for

Rust to confirm that Xanadu was the payor of the claimed ticket purchases. [1-ER-011]

Furthermore, the American Airlines itineraries provided by Xanadu did not support its claim for 1,337 tickets on five other airlines from 2003 through 2008. [2-ER-260] For these reasons, among others set forth in the Secondary Distribution Order, Rust determined that Xanadu did not have any valid claim to the settlement funds. [1-ER-011-012]

Xanadu accuses Rust and Class Counsel of failing to treat class members equitably relative to each other by subjecting its claim to a "heightened standard" of review. Br. at 52-55. Xanadu cites various cases for the undisputed proposition that all class members should be treated the same. *Id.* at 52-53. But Xanadu has failed to establish that it is a settlement class member. [1-ER-010-011] None of the supporting documentation Xanadu provided established that it had any qualifying purchases—let alone, directly paid for the purchases itself—which is required to be eligible for a settlement payment. *See*, *supra*, at § I(B). Rust and Class Counsel are not required to treat Xanadu as if it is a qualifying claimant; indeed, they should not for equitable reasons under the case law referenced by Xanadu. Br. at 46-47.

Finally, Xanadu reiterates that Class Counsel had a "conflict of interest" when it sought both further attorneys' fees in connection with settlement administration from the remaining uncashed settlement funds and to re-review Xanadu's claim. Br.

at 55-56. No conflict of interest exists here. The remaining uncashed settlement funds total $5,448,087.41. [1-ER-013] Xanadu's claim, if it qualified, would have been worth $603,831.08. [2-ER-294] Class Counsel sought $1 million and instead received $500,000 in further attorneys' fees for settlement administration. [1-ER-015-017] In other words, the district court did not have to pick between paying Xanadu's claim or awarding further attorneys' fees to Class Counsel. Plaintiffs' request for further attorneys' fees "reimbursing Class Counsel for the work they actually did, and will do, in effectuating everything post-settlement" is therefore entirely proper, as the district court ruled. [1-ER-016]

## CONCLUSION

Plaintiffs respectfully request that the Court affirm the district court's Secondary Distribution Order and Reconsideration Order because the district court did not abuse its discretion in overruling Objectors Xanadu and David Gould's frivolous objections and authorizing a secondary distribution of the remaining uncashed settlement funds and further attorneys' fees in connection with settlement administration.

Dated: June 22, 2023            **COTCHETT, PITRE & McCARTHY, LLP**

                                */s/ Elizabeth T. Castillo*
                                Adam J. Zapala (245748)
                                Elizabeth T. Castillo (280502)
                                840 Malcolm Road
                                Burlingame, CA 94010
                                Phone: (650) 697-6000

Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

**HAUSFELD LLP**

*/s/ Christopher L. Lebsock*
Michael P. Lehmann (77152)
Christopher L. Lebsock (184546)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
mlehmann@hausfeld.com
clebsock@hausfeld.com

*Attorney for Appellees-Plaintiffs*

44

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2023, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Dated: June 22, 2023 **COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Elizabeth T. Castillo*
Elizabeth T. Castillo

*Counsel for Appellees-Plaintiffs*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-15118

I am the attorney or self-represented party.

**This brief contains** | 9,561 | **words,** including | 0 | words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(●) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

[ ] it is a joint brief submitted by separately represented parties.

[ ] a party or parties are filing a single brief in response to multiple briefs.

[ ] a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [                ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/Elizabeth T. Castillo | **Date** | June 22, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**      *Rev. 12/01/22*