**No. 23-15118**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

**In re: TRANSPACIFIC PASSENGER AIR TRANSPORTATION
ANTITRUST LITIGATION**,

MER ADLIN; FRANKLIN AJAYE; ANDREW BARTON; RACHEL
DILLER; SCOTT FREDERICK; DAVID KUO; DICKSON LEUNG;
BRENDEN G. MALOOF; DONALD WORTMAN; HARLEY ODA; ROY
ONOMURA; SHINSUKE KOBAYASHI; PATRICIA LEE; NANCY
KAJIYAMA; DELLA EWING CHOW; JAMES KAWAGUCHI; SHARON
CHRISTIAN,                                        Plaintiffs - Appellees,
  v.

XANADU CORP.; DAVID GOULD,          Objectors - Appellants,
  v.

ALL NIPPON AIRWAYS,                        Defendant-Appellee.

_____

**On Appeal from the Orders of the United States District Court
for the North District of California, No. 3:07-cv-05634, Hon.
Charles R. Breyer, United States District Judge**

_____

**APPELLANTS' REPLY BRIEF**

_____

J. Allen Roth, Esq.
Law Office of J. Allen Roth
805 S. Alexandria St.
Latrobe PA  15650
(724) 686-8003
office@jarothlaw.com

*Attorneys for Objector-Appellants
David Gould and Xanadu Corp.*

# TABLE OF CONTENTS

Table of Contents…………………………………………………...…………2

Table of Citations………………………………………………………….... 2

Reply Jurisdictional Statement……………………………………………… 4

Reply to Appellees' Statement of the Case…………..………………….... 4

Argument……………………………………………………………………...6

    Both Xanadu Corp and David Gould have standing………………..……... 6

    Fairness requires notice to the persons whose checks were returned
or not cashed that their funds are at risk and the Class is entitled to
notice about new attorney fees…………………………………………… 11

    Class Counsel failed to explain why Xanadu is being held to a more
strict standard and not treated "equitably relative" to the other
claimants………………………………………………………………..14

    Turning over uncashed checks to state unclaimed property agencies
is not voluntary……………………………………………………………16

Conclusion………………………………………………………………19

Form 8 Certificate of Compliance Briefs…………………………………..20

# TABLE OF CITATIONS

**Statutes:**

Section 1576(b), Code of Civil Proc. Part 3, Title 10, Chapter 7
    *Unclaimed Property Law*……………………………………………17

**Rules and Rule Notes:**

    Federal Rule of Civil Procedure 23(h)..................................,...........9

    Federal Rule of Civil Procedure 23(e)(2)(D)....................................6, 15

**Cases:**

*Baten v. Michigan Logistics, Inc.*,
    2023 WL 2440244 (C.D. Cal. 2023).......................................................18

*Diaz v. United Parcel Serv., Inc.,*
    No. 1:22-CV-00246, 2023 WL 3624779 *3 (E.D. Cal. 2023)............... 18

*Fidelity & Guar. Life Ins. Co. v. Chiang*,
    2014 WL 6090559 (E.D. Cal. Nov. 13, 2014)...................................... 17

*Gonzalez v. Xtreme Manufacturing, LLC,*
    2023 WL 3304285 (E.D. Cal. 2023)....................................................18

*In re Cendant Corp. PRIDES Litig.*,
    243 F.3d 722, 728 (3d Cir. 2001)......................................................... 11

 *In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010)................................................................ 13

*Jays Foods, L.L.C. v. Chem. Allied Prod. Workers Union, Local 20,*
    208 F.3d 610, 613-614 (7th Cir. 2000)....................................................4

*Keefe v. Prudential Property Casualty Ins. Co*.,
    203 F.3d 218, 226 (3d Cir. 2000)............................................................ 4

*Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*,
    876 F.3d 481, 488(3d Cir. 2017)............................................................ 16

*Mostajo v. Nationwide Mutual Insurance Company*,
    2023 WL 2918657 (E.D. Cal. 2023)....................................................18

*N.J. Retail Merchs. Ass'n v. Sidamon–Eristoff*,
    669 F.3d 374, 383 (3d Cir. 2012)............................................................ 16

*Razo v. AT&T Mobility Services, LLC*,
    2023 WL 3093845 (E.D. Cal. 2023)....................................................18

*Rivera v. Marriott International, Inc.*,
    2023 WL 3766504 (C.D. Cal. 2023)....................................................18

3

## REPLY JURISDICTIONAL STATEMENT

Class Counsel concedes that this Court maintains jurisdiction over this case, but bizarrely claims that the interlocutory Orders prior to the Order they classify as a "final Order" cannot be appealed because they were interlocutory. This makes no sense as the interlocutory Orders can be appealed as part of this appeal from the final Order. *See Jays Foods, L.L.C. v. Chem. Allied Prod. Workers Union, Local 20,* 208 F.3d 610, 613-614 (7th Cir. 2000)(appeal would bring up for review all nonmoot interlocutory orders issued by the district court); *Keefe v. Prudential Property Casualty Ins. Co*., 203 F.3d 218, 226 (3d Cir. 2000)(after final judgment, appeals court could decide an appeal based on interlocutory summary judgment ruling).

Therefore, this Court maintains review power over the end result and the propriety of the district court's allowing Class Counsel to take the extraordinary step of reopening Xanadu's claim that was approved and passed the claims administrator's quality control mechanisms using the standards that applied to all of the other claimants in the case.

## REPLY TO THE APPELLEES' STATEMENT OF THE CASE

Class Counsel asserts at page 16 (ECF Page 22) of their brief that counsel for Xanadu and Gould declined to object or supplement their objection at the hearing. On the contrary, counsel rested on the written objections because, at the

time, nothing new was discussed or brought up. The district court merely asked if there was anything to add. At the time, there was not. Class Counsel/Rust had not yet issued its new decision applying a heightened burden of proof upon Xanadu that differed from every other claimant. Xanadu Corp was not afforded a hearing of any kind after the new, heightened standards were applied to it, resulting in the purported denial of its claim. The district court ruled in a snap decision, signing off on a proposed Order submitted by the Appellees, without providing any opportunity for Xanadu or Gould to respond to the proposed Order. This is made clear in the decision on reconsideration.

As to the American Airlines tickets that Class Counsel complains Xanadu redacted payment information from, Xanadu repeatedly advised the Claims Administrator and Class Counsel that the tickets were provided to show Xanadu's extensive involvement with international travel, not to create a claim or increase the amounts due it. This ticket data reflected a sampling of two months of travel and the records were retained only because of a third-party client dispute. 2-ER110 ("This data is provided to show short period more recent sampling of the vast amount of travel our agents participated in and to respond to the incorrect presumption by class counsel that 1,200 tickets over a multi-year span is somehow a large number"); 2-ER-254 ("our providing the 144 American Airline itineraries for a single month from July 2015 and August 2015 was not to seek payment in the

action, but to demonstrate a sampling of the types of flights Xanadu Corp. involved itself in. To be clear, we did not suggest that the flights fell within the settlement class. Rather, providing the documents was in response to the absurd suggestion by Class Counsel that 1,337 tickets over a course of many years somehow constituted an incredibly large claim – especially in a case where audits were not conducted for claims under 1,000 tickets. Furthermore, it is highly probable that a simple statistical analysis of the claim data for other corporate class members would place the number of tickets claimed by Xanadu well within the average range, rather than in the high range as was tacitly asserted by class counsel").

## ARGUMENT

**I.    Both Xanadu and Gould Have Standing.**

### A. Class Counsel created the purported lack of standing of Xanadu by applying a different, heightened standard to its claim

Standing should be based on the standards that applied to all of the class members, not the heightened standard created just for Xanadu.  Indeed, the entire concept of class action settlements is that members should be be treated "equitably relative to each other." *See* Fed. R. Civ. Proc. 23.1(e)(2)(D).

The claims administrator approved Xanadu's claim based on the standards they applied to every other claimant.   This standard consisted of the following policy as shown by 3-ER-459 to 461:

6

[B]usinesses that filed claims of less than 1,000 tickets were not audited. Rust reviewed all responses supplied by the claimants from the 'Request for More Information' letters and determined responses to be acceptable support for the number of tickets claimed if any of the following documentation was provided: a. Receipts showing ticket purchases; b. Cancelled checks; c. credit card statements; d. Travel itineraries; e. Email confirmation of ticket purchases; and/or f. Affidavit or declaration attesting that the number of tickets claimed is accurate." Id. at 18. Rust then passed the responses through a "Quality Assurance" review. Id at 20.

Obviously, as the claims administrator not only approved the claim, but also paid Xanadu, the enterprise met the standard of proof that applied to every other claimant.

Regardless, the class consists of persons and enterprises that purchased tickets, which Xanadu repeatedly testified by affidavit and on the video call that it did. The class does not consist of only persons who have clear records from two decades ago, long beyond the retention period, which is the heightened standard invented by Class Counsel and which was only applied to Xanadu.

After Xanadu began complaining of its missing check and administration of the payment process, which put Class Counsel's attorney fees request at risk, they – not the claims administrator – decided that they wanted additional information about Xanadu's corporate status and to have a video call with one of Xanadu's officers.

7

Knowing that its attorney fees were at risk, the standard heightened again after Xanadu agreed to provide the corporate records and participate in the video call. Class Counsel had the claims administrator improperly data-mine other class actions to attempt to impeach the enterprise, asked for non-relevant materials such as a director's list, and requested records that are beyond the normal retention period and what other claimants were required to submit. The claims administrator asked Xanadu a few questions during the video call, yet Class Counsel spent 45 minutes interrogating the company's officer in the yet to be provided call.

Clearly, Class Counsel crossed the line and enmeshed itself in the approval process to enable its argument that Xanadu lacks standing to try to wiggle out of addressing the major flaws in the administration of payments and the 25% fail rate of checks sent to claimants.

Notably, under the heightened standard applied to Xanadu, but not the other claimants, all testimonial evidence was ignored and not addressed. Class counsel had the claims administrator deny the claim because Xanadu lacked ticket information from twenty years ago– a standard not applied to the other claimants. Class counsel latched onto the redaction of payment information about tickets not even claimed to assert that Xanadu may have been an indirect purchaser. However, the declarations submitted by Xanadu, both at the original time of audit, and after

the so-called reopening of the claim, attested that the tickets were purchased by Xanadu. 2-ER-111 ("The logs and notes from 2002 to 2008 that were available at the time that the claims was entered did contain sufficient data to provide the attached spreadsheet containing the qualifying flight data for those years, which are reflective of the qualifying flights purchased and actually claimed").

In other words, Class Counsel created the lack of standing of Xanadu by raising the hurdle not once, but twice, and never telling Xanadu what the new standard it had to meet consisted of. Standing should be defined based on the standard that all class members were subjected to, not Class Counsel's new standards and burden of proof created just for Xanadu but never applied to any other claimant.

Regardless, whether Xanadu met its heightened burden of proof as to record retention from decades ago, its testimonial evidence stated clearly that it purchased tickets falling into the class categories. Just because Class Counsel chose to ignore the testimonial evidence, and directed its claims administrator to do the same after the claim was already approved and passed the quality control review, cannot be said to take away Xanadu's standing.

9

### B. Gould Maintains Standing Because Class Members may object to attorney fees on behalf of the class.

Gould had standing to object pursuant to Fed. R. Civ. Proc. 23(h)(2) as to Class Counsel's request for attorney fees.

Class Counsel suggests that Gould may not object because the proposal to convert uncashed checks to attorney fees and for redistribution to members who cashed the checks benefits him. Indeed, it enriches Gould slightly, but there is no requirement that he exchange his desire for accountability and fairness for more money. Perhaps Class Counsel does not understand that not everyone's legal position must be about being as greedy as possible, but that Gould maintains a right to assure that class actions are properly administered before handing Class Counsel a reward for malfeasance in sending checks and a lackadaisical half-hearted attempt to merely use software to search for a better address when the claimants' emails are on file.

Gould's position is not that he should get more money, but that it is unconscionable for Class Counsel and even himself to receive other people's money– money claimants did not receive because 25% of checks did not reach their destination or were not noticed by the claimants because of the passing of time. Gould certainly maintains standing to challenge the notice to class members that obviously did not see that their money was being converted, by surreptitious motion, to attorney fees.

As to the attorney fees themselves, Gould certainly has standing to object. The attorney fees are improper as they reward Class Counsel for not making sure that 25% of claimants receive notification about their checks.

Simply put, the unique relationship between plaintiffs' counsel, plaintiffs, and defendants in class actions imposes a special responsibility upon appellate courts to hear challenges to fee awards by class members," even where the class members will not benefit from a reduction in the fees. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 728 (3d Cir. 2001). In *Cendant*, members of the class had standing to appeal the attorneys' fees even though any reduction in the amount of fees would not benefit the class. *Id*. at 728.

II. **Fairness requires notice to the persons whose checks were returned or not cashed that their funds are at risk and the Class is entitled to notice about new attorney fees.**

After it was too late to make an issue of it, Class Counsel finally provided a copy of the envelope to Xanadu showing that the city, state and zip code was missing. They rely on a bizarre sticker from the post-office that implies that nobody was home to assert that the non-delivery had nothing to do with this problem. The reality is nobody knows if the check ever reached Xanadu's post office without the city, state, or zip code. Worse, appellants ponder, why did the Claims Administrator not just mail it a second time when it saw that the information was omitted from view due to an obvious software malfunction?

Class Counsel never tries to explain why 25% of other claimants did not cash their checks or if there was a similar problem. Class Counsel never even represented that they reviewed the other envelopes to make sure a similar addressing omission did not exist. Class Counsel neither told this Court nor the district court why the thousands of checks were returned to the claims administrator by the Postal Service or what stickers were placed thereon by the Postal Service. Certainly, objectors cannot prove the issue as the records are being concealed by Class Counsel and the district court simply seemed uninterested in the matter.

As to the money, Class Counsel continues to assert that "not all" claimants provided an email, so email notification to the parties whose checks were undelivered would not be successful. However, Class Counsel did not and will not state what "not all" means. Does "not all" mean that 1% did not provide email addresses, or does it mean 95% of class members did not provide emails? These claims were made online, so its unlikely that emails were omitted by most claimants. The Court needs to keep in mind that these claims were submitted years and years prior to the payment. Nobody knew the money was coming so the checks were easy to overlook (if they were delivered at all considering the missing city, state and zip on Xanadu's check).

As to the attorney fees, these were new attorney fees and not something contained in any notice to the class members. The fact that the district court suggested that the new fees be sought has nothing to do with whether notice needed to be given. In addition, it does not matter that the fees fall below the maximum amount mentioned in the original notices to the class seeking approval of the settlement. As stated, the fees are new and are not included in the previously awarded fees. The fact that Class Counsel possibly could have received more fees for something else has nothing to do with whether it needs to notify people of new fees.

Rule 23.1(h)(1) requires reasonable notice to the Class. Posting the motion for new fees on the "documents" section of a website that people have not looked at for years, and then only a short sentence on the English language version while saying nothing on the Japanese and Chinese versions of the website, does not constitute "reasonable notice."

Moreover, the motion was uploaded the day after it was filed and the response period was short. The only reason Xanadu and the other objector knew is because they were both hunting down their checks. Gould only knew because an executive of Xanadu told him.

Class Counsel put no statistical information in the record indicating the number of people visiting the website compared to the beginning of the litigation.

This notice procedure does not comply with the principles this Court set out in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) requiring notice and an opportunity to be heard. The procedures Class Counsel used are simply unreasonable and did not provide fair notice. Class Counsel should not be rewarded for this.

### III. Class Counsel failed to explain why Xanadu is being held to a more strict standard and not treated "equitably relative" to the other claimants.

Class Counsel – not the claims administrator – decided to demand more information about Xanadu when it complained about not receiving its money. Class Counsel cited various things that made them suspicious, such as the internet domain used, the address, the location of their telephone number, and other things. Xanadu provided clear explanations for all of these issues, both in writing under oath, and on a video call. However, without citing a single one of these issues, Class Counsel had the claims administrator to deny Xanadu's already approved claim using a heightened standard that required records from decades ago.

Obviously, most claimants did not have these types of records. That is why the claims administrator approved claims using the standards discussed in the Standing argument, supra. Under the standards applicable to all other claimants, Xanadu's claim was not only approved, but it passed the "quality control" review by the claims administrator.

Class Counsel continues to discuss the things that made it suspicious, but never mentions that Xanadu explained all of the issues, provided proof of ownership of its domain names, and that not a single issue was mentioned as a reason that Class Counsel directed the claims administrator to deny the claim after its inappropriately reopened of the audit process.

The district court admitted on reconsideration that Class Counsel most likely used a heightened standard as to Xanadu, but suggested this was not a problem. However, a central tenet of class action settlements is that members should be treated "equitably relative to each other." *See* Fed. R. Civ. Proc. 23.1(e)(2)(D). In other words, Class Counsel should apply the same standards and burdens of proof on all members of the Class.

Once Xanadu addressed its corporate structure and all of the subjective suspicions of Class Counsel, the standards applied to other claimants should have been used to review the claim. Xanadu should not have been required to produce records from 20 years ago when other claimants passed the test with only an affidavit.

Instead of focusing on the thousands of checks that did not make it to the various claimants, and despite being able to see that the check to Xanadu lacked a City, State, and Zip, Class Counsel focused on finding a way to deny the claim. Coupled with the fact that Class Counsel had a clear conflict of interest in turning

this money into $1,000,000 in attorney fees, the failure to treat Xanadu "equitably relative" to other claimants is clearly improper.

### IV. Turning over uncashed checks to state unclaimed property agencies is not voluntary.

"Every state and the District of Columbia has a set of escheat laws, under which holders of abandoned property must turn such property over to the State 'to provide for the safekeeping of abandoned property and then to reunite the abandoned property with its owner.'" *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488(3d Cir. 2017) (quoting *N.J. Retail Merchs. Ass'n v. Sidamon–Eristoff*, 669 F.3d 374, 383 (3d Cir. 2012)).

In this case, we are dealing with uncashed or returned checks, not money that is uncategorized or money earmarked that was never claimed.   Simply put, these are uncashed checks that the recipients have no clue were even sent.  This means that somebody made a claim, wanted to be paid, was paid, but did not receive their money because they moved during the years and years that they waited for the appeals to be resolved or the check was misaddressed like Xanadu's check (containing no visible city, state or zip).

The claims administrator will not be required to turn over all of the uncashed checks as most states have a limit of $25 or $50 before the funds need to be turned

over to the State. Certainly, checks under these statutory amounts can be "redistributed" to the class members.

In addition, it is unclear whether checks to foreign individuals or companies need to be turned over to a state. *See Eaton Corp. v. Geisenberger*, 486 F. Supp. 3d 770 (D. Del. 2020)(denying preliminary injunction to Delaware's foreign address escheatment provisions made applicable to companies domiciled in Delaware).

However, unclaimed property laws are not voluntary. They are requirements. In California, there exist strict penalties for failing to comply with the provisions of the Code of Civil Procedure Part 3, Title 10, Chapter 7 – Unclaimed Property Law. Section 1576(b) provides for fines up to $50,000 if a holder fails to turn the money over. States may audit the claims administrator with respect to the uncashed checks that it did not turn over. *See, e.g., Fidelity & Guar. Life Ins. Co. v. Chiang*, 2014 WL 6090559 (E.D. Cal. Nov. 13, 2014)(court denying injunction seeking to bar California from receiving records of nationwide property not escheated).

There exists no exemption just because a settlement occurred in federal court. There is no federal common law preempting these state statutes and requirements. There are no equitable reasons for not complying with the laws. There is no requirement that the parties must agree in a settlement agreement to comply with the laws.

Class Counsel cites bad habit– moreless stating it is not habit of the courts to require escheatment of uncashed checks. The issue simply does not often come up. However, that is not an excuse to evade the requirements. Indeed, some administrators have recognized their duties, and the courts have cited it with approval. *See, e.g., Diaz v. United Parcel Serv., Inc.,* No. 1:22-CV-00246-CDB, 2023 WL 3624779 *3 (E.D. Cal. May 24, 2023)(the Parties propose that the funds represented by uncashed checks be tendered to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code § 1500 et seq., for the benefit of those Class Members who did not cash their checks, until such time that they claim their property, in compliance with Code of Civil Procedure section 384(b), and subject to the Court's approval); *Rivera v. Marriott International, Inc.*, 2023 WL 3766504 (C.D. Cal. 2023); *Gonzalez v. Xtreme Manufacturing, LLC*, 2023 WL 3304285 (E.D. Cal. 2023); *Razo v. AT&T Mobility Services, LLC*, 2023 WL 3093845 (E.D. Cal. 2023); *Mostajo v. Nationwide Mutual Insurance Company*, 2023 WL 2918657 (E.D. Cal. 2023); *Baten v. Michigan Logistics, Inc.*, 2023 WL 2440244 (C.D. Cal. 2023).

Clearly, turning over uncashed checks to unclaimed property is not that unusual or burdensome, and it would be a great disservice to class members to hold that Class Counsel can ignore the laws requiring the claims administrator to do so.

18

## CONCLUSION

The Orders of the district court must be reversed or vacated and remanded with instructions to: (1) Direct Class Counsel and Rust to contact *by email* or, where no email exists, *letter*, to all claimants whose checks were returned or uncashed and to reissue the checks on request; (2) To provide the uncashed checks to United States addresses to the appropriate unclaimed property agency of the state of the last known address of the claimant; (3) To notify all class members that filed a claim of Class Counsel's request for additional attorney fees by sending an email where available or post-card if no email is available with sufficient time for class members to file objections; and (4) To direct Rust Consulting to reissue Xanadu's check forthwith.

Date: August 14, 2023.

Respectfully submitted,

Law Office of J. Allen Roth

*/s/ J. Allen Roth, Esq.*

J. Allen Roth, Esq. (PA 30347)
805 S. Alexandria Street
Latrobe PA 15650
(724) 686-8003
office@jarothlaw.com

*Attorneys for Appellants David Gould and Xanadu Corp.*

19

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form:*
*http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)  No. 23-15118.**

I am the attorney or self-represented party.

**This brief contains 3,923 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X] complies with the word limit of Cir. R. 32-1.

**Signature**  */s/ J. Allen Roth, Esq.*          **Date**   August 14, 2023