No. 23-15118

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

In re: TRANSPACIFIC PASSENGER AIR TRANSPORTATION
ANTITRUST LITIGATION

---

XANADU CORP. AND DAVID GOULD,
*Objectors-Appellants*,

v.

MEOR ADLIN, et al.,
*Plaintiffs-Appellees*.

Appeal from the United States District Court
for the Northern District of California, San Francisco Division
Hon. Charles R. Breyer
D.C. No. 3:07-cv-05634

---

## PLAINTIFFS-APPELLEES' APPLICATION FOR ATTORNEYS' FEES PURSUANT TO CIRCUIT RULE 39-1.6

---

Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

Christopher L. Lebsock (184546)
Jeannine M. Kenney (*pro hac vice*)
**HAUSFELD L LP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
clebsock@hausfeld.com
jkenney@hausfeld.com

*Attorney for Plaintiffs-Appellees*

# <u>TABLE OF CONTENTS</u>

**Page No.**

I.    LEGAL STANDARD ....................................................2

II.   SUMMARY OF THE FACTS .........................................2

     A.    The Underlying Antitrust Class Action and Settlements ....................2

     B.    The Initial Distribution of Settlement Funds .........................................3

     C.    The Proposed Secondary Distribution of Settlement Funds ................3

     D.    Xanadu's Appeal of Non-Final, Interlocutory Order ...........................4

     E.    The Objectors Appeal of Order Authorizing Secondary Distribution of Settlement Funds ....................................................5

     F.    The Objectors' Appeal of Order Denying Reconsideration.................6

     G.    This Court's Affirmation of the District Court's Orders ....................6

III.  ARGUMENT............................................................7

     A.    The Court Should Award Attorneys' Fees Because the Objectors' Appeal Was Demonstrably Frivolous. ..................................................7

     B.    Plaintiffs' Application for Attorneys' Fees Is Timely .......................12

     C.    Plaintiffs' Attorneys' Fees Are Legally Justified ..............................13

IV.  CONCLUSION.........................................................14

i

## <u>TABLE OF AUTHORITIES</u>

**Page No.**

**Cases**

*Blixseth v. Yellowstone Mountain Club, LLC*,
    854 F.3d 626 (9th Cir. 2017) ................................................................ 2

*California, D Barjon v. Dalton*,
    132 F.3d 496 (9th Cir. 1997) ............................................................. 13

*Camacho v. Bridgeport Fin., Inc.*,
    523 F.3d 973 (9th Cir. 2008) ............................................................. 13

*Env't Rsch. Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, LLC*,
    850 F. App'x 572 (9th Cir. 2021) ................................................... 7, 8

*Glanzman v. Uniroyal, Inc.*,
    892 F.2d 58 (9th Cir. 1989) ........................................................... 7, 8

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992).......................................................................... 9

*Vasseli v. Wells Fargo Bank (In re Vaselli)*,
    5 F.3d 351 (9th Cir. 1993) .................................................................. 2

*In re Westwood Plaza N.*,
    889 F.3d 975 (9th Cir. 2018) ......................................................... 2, 8

**Statutes**

28 U.S.C. § 1291 ...................................................................................... 8

**Other Authorities**

Ninth Circuit Rule 39-1.6(a) ............................................................. 2, 12

Ninth Circuit Rule 39-1.6(b)(2) ............................................................ 13

Federal Rules of Civil Procedure

    23(c)(2) ............................................................................................. 3

    23(e)(l) .............................................................................................. 3

23(g) .......................................................................................................... 14

38 ............................................................................................... 2, 12, 14

39-1.6 ......................................................................................................... 1

**PLAINTIFFS-APPELLEES' MEMORANDUM IN SUPPORT OF
APPLICATION FOR ATTORNEYS' FEES
PURSUANT TO CIRCUIT RULE 39-1.6**

Plaintiffs-Appellees respectfully request that the Court award attorneys' fees[1] pursuant to Federal Rule of Appellate Procedure ("Rule") 38 as against Objectors-Appellants Xanadu Corp. ("Xanadu") and David Gould (together, "Objectors") for filing a frivolous appeal with this Court, which has unnecessarily delayed the secondary distribution of remaining settlement funds to legitimate class members by at least a year and a half. The Objectors should be jointly and severally liable for the attorneys' fees award.

The Objectors' appeal was frivolous from the outset because (1) despite having years to do so, Xanadu failed to demonstrate that it was a member of any settlement class and therefore had standing by providing a single qualifying airline ticket, and (2) Mr. Gould was not an injured settlement class member. Despite these facts, the Objectors challenged the recommendations by the claims administrator, Rust Consulting, Inc. ("Rust"), and the findings by the district court at every turn. It is precisely in these circumstances that an award of attorneys' fees is appropriate.[2]

---

[1] Plaintiffs have also incurred over $100,000 in costs in connection with the Objectors' frivolous appeal. These costs mainly relate to extended settlement administration costs while the appeal was pending for a year and a half. Plaintiffs are not, however, asking that the Court to impose these costs on the Objectors.

[2] This Memorandum is supported by the Declaration of Elizabeth T. Castillo ("Castillo Declaration") and the following exhibits thereto: (1) Exhibit 1, which is

1

## I. LEGAL STANDARD

Rule 38 provides that "[i]f a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee." Fed. R. App. P. 38. Rule 38 likewise provides a basis for an award of attorneys' fees. *In re Westwood Plaza N.*, 889 F.3d 975, 977 (9th Cir. 2018). This Court has repeatedly held that Rule 38 empowers it to award damages, attorney's fees, and other expenses incurred by an appellee in responding to a frivolous appeal. *See*, *e.g.*, *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630 (9th Cir. 2017); *Vasseli v. Wells Fargo Bank (In re Vaselli)*, 5 F.3d 351, 353 (9th Cir. 1993). Plaintiffs have timely filed this application by March 26, 2024. *See* Ninth Circuit Rule 39-1.6(a).

## II. SUMMARY OF THE FACTS

### A. The Underlying Antitrust Class Action and Settlements

In 2007, Plaintiffs filed class action complaints alleging that Defendants agreed to fix the prices of airline tickets for travel between the United States and

---

Form 9, which includes a description of services, hours, and amount claimed in connection with Plaintiffs' defense of the Objectors' frivolous appeal; (2) Exhibit 2, a summary of the total hours spent in the categories listed on Form 9 for each lawyer and staff member by firm since the Objectors filed their frivolous appeal; and (3) Exhibit 3, a detailed itemization of the tasks performed each date and the amount of time spent by each lawyer and staff member on each task by firm.

Asia/Oceania. [SER-010-024][3] In 2019, after 12 years of hard-fought litigation, Plaintiffs reached settlements with all Defendants. [3-ER-447] The settlements were reached in three separate rounds totaling $148,152,000. [3-ER-447] The Court granted final approval to each round of settlements and to each settlement and found that the proposed notice plan for each round of settlement was fair, adequate, and reasonable; satisfied due process and Federal Rules of Civil Procedure 23(c)(2) and 23(e)(l); and constituted the best notice practicable under the circumstances. [3-ER-564-574, 3-ER-498-505, 3-ER-480-484]

## B. The Initial Distribution of Settlement Funds

On January 4, 2022, Plaintiffs moved the district court for an order authorizing the distribution of the net settlement funds of $104,388,254.38 to settlement class members based on the finally approved proposed pro rata plan of allocation, which the district court granted. [3-ER-413] After this initial distribution, the value of uncashed checks was $5,448,087.41. [3-ER-377]

## C. The Proposed Secondary Distribution of Settlement Funds

On August 8, 2022, Plaintiffs moved the district court for an order authorizing a secondary distribution of the remaining settlement funds of $5,448,087.41 to settlement class members who had previously cashed their

---

[3] All citations to Excerpts of Record and Supplemental Excerpts of Record refer to those concurrently filed with Plaintiffs-Appellees' Answering Brief. [Dkt. No. 17]

settlement checks and who would receive a minimum payment of $10 from the secondary distribution ("Secondary Distribution Motion"). [3-ER-370] The Objectors filed an objection to the Secondary Distribution Motion, Xanadu claiming that it had not yet received its initial distribution, and Mr. Gould claiming—nonsensically—that his "payment on the second distribution would be affected by the Class." [3-ER-348]

In response to the Secondary Distribution Motion, the Objectors' objection, and the extensive red flags surrounding Xanadu and its claim,[4] on September 28, 2022, the district court entered an order setting a hearing for October 28, 2022 and stated that Class Counsel and the claims administrator, Rust, may audit Xanadu's claim in the meantime ("Order Setting Hearing"). [Case No. 22-16634, Dkt. No. 2, Ex. 1] As part of the audit, Class Counsel and Rust sought and reviewed Xanadu's supporting documentation, met with Xanadu's CEO by videoconference, and posed follow-up questions after reviewing Xanadu's alleged supporting documentation. [2-ER-260]

## D.    Xanadu's Appeal of Non-Final, Interlocutory Order

Xanadu filed two appeals relating to three orders. On October 24, 2022, while the above-referenced audit was underway, Xanadu appealed the district court's

---

[4] Plaintiffs discuss the extensive red flags relating to Xanadu and its alleged purchases in their Answering Brief [Dkt. No. 17]; consequently, Plaintiffs will not repeat them here.

Order Setting Hearing even though it was a non-final, interlocutory order, which authorized additional discovery into Xanadu's alleged claims and only affected the settlement administration process. [Case No. 22-16634] Plaintiffs moved to dismiss Xanadu's appeal for lack of jurisdiction on October 27, 2022 [Case No. 22-16634, Dkt. No. 2-1], which this Court granted on December 8, 2022. [Case No. 22-16634, Dkt. No. 7] Mr. Gould did not appeal the Order Setting Hearing, and Plaintiffs are not seeking attorneys' fees in connection with Xanadu's appeal of that order. Plaintiffs merely mention that order to show Xanadu's history of frivolous appeals.

### E. The Objectors Appeal of Order Authorizing Secondary Distribution of Settlement Funds

On January 19, 2023, the district court granted Plaintiffs' Secondary Distribution Motion and overruled all objections, including those of Objectors ("Secondary Distribution Order"). [1-ER-009] The district court found that Xanadu lacked standing to object as a settlement class member because it failed to establish that it had any qualifying purchases whatsoever. [1-ER-010-012] The district court nevertheless substantively addressed the merits of all objections raised by Objectors and found that they lacked merit and should be rejected. [1-ER-012-014]

The Objectors appealed the Secondary Distribution Order despite the district court substantively overruling all objections and despite the district court's findings regarding Xanadu's lack of standing, which were supported by Rust's declaration describing in detail the scope of, *inter alia*, Xanadu's claim; all documents and

5

information requested by Rust; all documents and information provided (and mostly, not provided) by Xanadu; and Rust's analysis and determination of Xanadu's claim. [1-ER-009]

### F. The Objectors' Appeal of Order Denying Reconsideration

On January 25, 2023, the district court denied the Objectors' motion for reconsideration of the Secondary Distribution Order, finding that "[m]any of the objections that Xanadu now makes . . . are simply rehashes of the objections Xanadu made to the motion for secondary distribution" ("Reconsideration Order"). [1-ER-006] Furthermore, the district court stated, ". . . to the extent that Xanadu's objections raise new issues, they do not change the Court's view of the motion for secondary distribution." [1-ER-007] The Objectors appealed the district court's Reconsideration Order despite the district court expressly finding the Objectors' motion for reconsideration simply recycled arguments from their objections to the Secondary Distribution Order. [1-ER-002]

### G. This Court's Affirmation of the District Court's Orders

On February 27, 2024, this Court affirmed the district court's orders by memorandum disposition, holding that (1) the Objectors lacked standing to object to Class Counsel's motion for a secondary distribution because "Xanadu had not established any qualifying ticket purchases" and Gould is not "an aggrieved class member" with standing to object; (2) the district court did not abuse its discretion

6

by approving notice of the secondary distribution; and (3) the district court did not abuse its discretion by approving the secondary distribution of settlement funds rather than directing the funds to the state treasuries associated with the last known address of each intended recipient. [Dkt. No. 41]

## III.   ARGUMENT

### A.   The Court Should Award Attorneys' Fees Because the Objectors' Appeal Was Demonstrably Frivolous.

"An appeal is frivolous if the result is obvious or if the claims of error are wholly without merit." *Env't Rsch. Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, LLC*, 850 F. App'x 572, 573 (9th Cir. 2021) (citing *Malhiot v. S. Cal. Retail Clerks Union*, 735 F.2d 1133, 1137 (9th Cir. 1984)). "[T]he decision to appeal should be a considered one, ... not a knee-jerk reaction to every unfavorable ruling." *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 61 (9th Cir. 1989) (citing *DeWitt v. Western Pac. R.R. Co.*, 719 F.2d 1448, 1451 (9th Cir.1983)). Here, Xanadu's appeal was patently frivolous.

In *Hotze Env't Rsch. Ctr., Inc. v. Hotze Health Wellness Ctr. Int'l One, LLC*, this Court awarded attorneys' fees (and costs) to appellee because appellant's challenge to non-appealable orders was frivolous. 850 F. App'x 572, 573 (9th Cir. 2021). This Court explained, "A penalty is justified in favor of those litigants who have been needlessly put to trouble and expense." *Id.* (citing *Wood v. McEwen*, 644 F.2d 797, 802 (9th Cir. 1981) (per curiam). Xanadu has a history of frivolous

7

appeals. Xanadu's initial appeal of the district court's Order Setting Hearing was frivolous because an order setting a hearing on the Secondary Distribution Motion and authorizing additional discovery into Xanadu's alleged claims is on its face non-final and non-appealable within the meaning of 28 U.S.C. § 1291. [Case No. 22-16634, Dkt. No. 2-2] Thus, Xanadu sought review of a district court order over which this Court manifestly lacked jurisdiction. This Court agreed with Plaintiffs and granted their motion to dismiss Xanadu's appeal for lack of jurisdiction on December 8, 2022. [Case No. 22-16634, Dkt. No. 7] Xanadu's first appeal was therefore frivolous under *Hotze*.

Xanadu's next appeal—which Mr. Gould joined and which is at issue here— was also frivolous. The arguments regarding Xanadu's standing to challenge the Secondary Distribution Order lacked both "foundation in law and fact," and were instead merely "knee-jerk reactions" to unfavorable rulings. *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 61 (9th Cir. 1989) (granting attorneys' fees where appellant "had no basis for appeal[,]" and "[n]either of its claims possessed a foundation in fact or law"); *see also In re Westwood Plaza N.,* 889 F.3d 975, 977–78 (9th Cir. 2018) (granting appellees' motion for sanctions and award attorney's fees, noting appellant's ongoing, abusive conduct in the district court). Despite never proving standing by providing evidence of any type that it ever purchased a single qualifying airline ticket—and having *years* to do so—Xanadu appealed the district court's

well-reasoned orders finding that Xanadu lacked standing and, in any event, substantively overruling all of Xanadu's objections one by one. Xanadu's arguments on standing were frivolous on their own. For example, Xanadu argued Class Counsel "do not want Xanadu to have standing" because "Class Counsel want the money for themselves[,]" and Class Counsel "started talking about the 'standing' as a defense to Xanadu's objections to its attorney fee demand" [Dkt. No. 11] Xanadu believed—incredibly and incorrectly—that Class Counsel could pocket as attorneys' fees any settlement funds that could not be distributed to the settlement classes.

Likewise, Mr. Gould lacked standing, and his appeal was frivolous. According to this Court, Mr. Gould was not an injured class member: "He has not articulated any concrete and particularized injury arising from other class members not receiving notice of the motion or notice of their uncashed checks, and he did not object to the amount of the fees or otherwise argue that he should have received additional funds from the subsequent distribution. Gould therefore lacks Article III standing to object to the order granting supplemental distribution. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)." Additionally, counsel for Mr. Gould never identified any injury for him whatsoever. Indeed, as this Court held, Mr. Gould did not suffer any injury because he cashed his check, received notice of the Secondary Distribution Motion, and stood to receive additional money from the

Secondary Distribution Order. [Dkt. No. 41] Like Xanadu, Mr. Gould's appeal was frivolous.

The Objectors' appeal imposed significant harm on the settlement classes, delaying the secondary distribution of the remaining settlement funds and challenging Class Counsel and Rust's duty to pay legitimate claims only. Indeed, the Objectors likely hoped that either Class Counsel or Rust would bow in response to their pressure for the greater interests of the classes. Their conduct was not unlike a frivolous objector to final approval of a class action settlement.

Due to the Objectors' frivolous appeal, Class Counsel incurred significant attorneys' fees defending them.[5] The Objectors' appeal was frivolous for a number of different reasons, including:

- The Objectors sought appeal of the Secondary Distribution Order despite (1) Xanadu failing to establish that it had any qualifying purchases though it had multiple opportunities and months after Plaintiffs filed their Secondary Distribution Motion (arguably, years, given settlement administration in the underlying antitrust class action began in 2015) to prove its standing with evidence of just a single qualifying airline ticket, and (2) Mr. Gould did not suffering any injury in connection with the Secondary Distribution Order;

---

[5] As stated in footnote 1, *supra*, Class Counsel also incurred substantial costs defending the appeals and for extended settlement administration costs pending resolution of the appeals but are not seeking such fees through this application.

- Xanadu sought to appeal a non-final and non-appealable Order Setting Hearing, which this Court dismissed for lack of jurisdiction, but only after Plaintiffs were forced to file a motion to dismiss;

- Xanadu sought to appeal the Secondary Distribution Order despite failing to articulate a cogent basis for finding that the court-appointed claims administrator abused its substantial discretion in making claims determinations—specifically, here, that Xanadu was not a qualified claimant entitled to share in the settlement proceeds;

- The Objectors appealed the Reconsideration Order despite the district court finding that their motion for reconsideration raised no new issues and rehashed the same arguments raised in their objections to Plaintiffs' Secondary Distribution Motion;

- Xanadu failed to offer any colorable argument that the district court clearly erred in finding that Xanadu had not established any qualifying ticket purchases and that Xanadu therefore lacked standing;

- The Objectors failed to show how the district court abused its discretion in issuing the Secondary Distribution Order; and

- The Objectors forced Plaintiffs to oppose their frivolous appeal, expending substantial time and money in the course of doing so. And, not only this, the Objectors' frivolous appeal required the settlement classes to wait for

11

additional settlement money to be paid to them since such payments necessarily had to await a final ruling from this Court on their appeal.

The Objectors affirmatively delayed the secondary distribution of the remaining settlement funds to legitimate class members and indeed, Xanadu attempted to usurp a substantial portion of such funds for itself despite its lack of any qualifying airline ticket purchase. When Plaintiffs filed their Secondary Distribution Motion with the district court in August 2022, they were prepared to effectuate a secondary distribution of the remaining settlement funds in September 2022. Castillo Decl. ¶ 3. The Objectors' appeal has delayed the secondary distribution until at least May 2024[6]—over a year and a half after the secondary distribution should have occurred but for the Objectors' objection and appeal. *Id.* Given the Objectors' frivolous appeal, this Court should award attorneys' fees to Plaintiffs under Rule 38.

**B.     Plaintiffs' Application for Attorneys' Fees Is Timely**

Plaintiffs' application for attorneys' fees is timely pursuant to Ninth Circuit Rule 39-1.6(a). This Court issued its memorandum disposition of the Objectors' appeal of the Secondary Distribution Order and Reconsideration Order on February 27, 2024. The Objectors did not petition for rehearing, and the period within which

---

[6] Although it would highly likely be denied, Xanadu may petition the United States Supreme Court for a writ of certiorari to review this Court's February 27, 2024 memorandum disposition of its appeal. [Dkt. No. 41]

12

it could do so expired on March 12, 2024. Plaintiffs have filed this request for attorneys' fees no later than 14 days after the expiration of that date.

### C. Plaintiffs' Attorneys' Fees Are Legally Justified

Class Counsel's hourly rates must be legally justified pursuant to Ninth Circuit Rule 39-1.6(b)(2). Reasonable hourly rates are based on the prevailing rates in the Northern District of California or a community shown to be comparable to the Northern District of California. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The established standard when determining a reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* (citing of *California, D Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997). "Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *Id.* at 980 (citing *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir.1990)).

Here, Class Counsel's hourly rates are consistent with the prevailing rates for attorneys and staff with similar experience and abilities in the relevant market (*i.e.*, the Northern District of California). Castillo Decl. ¶ 7. Class Counsel are primarily based in the Bay Area (or other major metropolitan markets) and have deep and specialized experience in bringing antitrust cases, and in particular, complex

13

antitrust class actions. *Id.* Indeed, the district court appointed Cotchett, Pitre & McCarthy, LLP and Hausfeld LLP as interim co-lead counsel for the putative class pursuant to Federal Rule of Civil Procedure 23(g) and appointed them as Settlement Class Counsel for each settlement reached in the underlying class action. *Id.*

Plaintiffs' hours and rates are reasonable and justified given the length and complexity of the underlying antitrust class action and Class Counsel's many years of experience in prosecuting complex antitrust class actions. *Id.* ¶ 8. The detailed itemization of attorneys' fees incurred in connection with Plaintiffs' defense of Xanadu's frivolous appeal was prepared from contemporaneous, daily time records regularly prepared and maintained by Class Counsel. *Id.* The attorneys' fees reflected in these summaries are for work performed by Class Counsel or their staff members for the benefit of the settlement classes. *Id.* The hourly rates for the attorneys and staff members included in these summaries are the usual and customary hourly rates charged by Class Counsel during this period. *Id.*

## IV. CONCLUSION

This Court should award attorneys' fees in the amount of $170,360 as against Objectors pursuant to Rule 38 because of their patently frivolous appeal, which has unnecessarily delayed a secondary distribution of millions of dollars in remaining settlement funds to legitimate class members by at least a year and a half. The Court should rule that Objectors are jointly and severally liable for attorneys' fees award.

Dated: March 26, 2024      **COTCHETT, PITRE & McCARTHY, LLP**

*/s/ Elizabeth T. Castillo*
Adam J. Zapala (245748)
Elizabeth T. Castillo (280502)
840 Malcolm Road
Burlingame, CA 94010
Phone: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

**HAUSFELD LLP**

*/s/ Christopher L. Lebsock*
Christopher L. Lebsock (184546)
Jeannine M. Kenney (pro hac vice)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Phone: (415) 633-1908
Fax: (415) 358-4980
clebsock@hausfeld.com
jkenney@hausfeld.com

*Attorney for Appellees-Plaintiffs*

## CERTIFICATE OF COMPLIANCE

Pursuant to the Federal Rules of Appellate Procedure, I certify that:

I am one of the attorneys for Appellees-Plaintiffs.

This brief contains 3,527 words, excluding the items exempted by Federal Rule of Appellate Procedure ("Rule") 32(f). The brief's type size and typeface comply with Rule 27(d)(2)(A).

I certify that this brief complies with Circuit Rule 32-1.

Dated: March 26, 2024      **COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Elizabeth T. Castillo*
Elizabeth T. Castillo

*Counsel for Appellees-Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that on March 26, 2024, I electronically filed this document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Dated: March 26, 2024      **COTCHETT, PITRE & McCARTHY, LLP**

/s/ *Elizabeth T. Castillo*
Elizabeth T. Castillo

*Counsel for Appellees-Plaintiffs*